## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **MICHAEL COREY JENKINS,** ) | |
| ) | |
| **EDDIE TERRELL PARKER** ) | |
| ) | |
| **PLAINTIFFS,** ) | |
| ) | |
| **v.** ) | **CASE NO.** |
| ) | 3:23-cv-374-DPJ-FKB |
| ) | |
| **RANKIN COUNTY, MISSISSIPPI** ) | |
| ) | |
| **RANKIN CO. SHERIFF BRYAN BAILEY** ) | |
| ) | |
| **Individually, and in his official capacity** ) | |
| ) | |
| **RANKIN CO. DEPUTY HUNTER ELWARD** ) | |
| ) | |
| **Individually, and in his official capacity** ) | |
| ) | |
| **RANKIN CO. DEPUTY BRETT MC'ALPIN** ) | |
| ) | |
| **Individually, and in his official capacity** ) | |
| ) | |
| **RANKIN CO. DEPUTY CHRISTIAN DEDMON** ) | |
| ) | |
| **Individually, and in his official capacity** ) | |
| ) | |
| ) | |
| **JOHN DOE DEPUTIES 1-3** ) | |
| ) | |
| **Individually, and in their official capacity** ) | |

**DEFENDANTS,**

**EXHIBIT 1**

## COMPLAINT FOR CIVIL DAMAGES

Comes now, MICHAEL COREY JENKINS and EDDIE TERRELL PARKER, residents of RANKIN COUNTY, Mississippi, by way of counsel, and hereby formally file suit against RANKIN COUNTY, Mississippi SHERIFF BRYAN BAILEY, DEPUTIES HUNTER ELWARD, CHRISTIAN DEDMON, BRETT MC'ALPINE and others for their tortious violations of Mississippi civil statutes, and under the color of law, multiple violations of the United States Constitution. The nearly two-hour ordeal described in this Complaint is one of the worst and most bizarre incidents of police misconduct in United States history. The egregious conduct described in this Complaint is torturous and hateful. The acts described herein, committed under the color of law, set the standard of what is wrong with policing today in America.

### JURISDICTION AND VENUE

1. This Court has concurrent jurisdiction over the federal constitutional claims and the Mississippi civil claims in this matter pursuant to 42 U.S.C. § 1983; 42 U.S.C. § 1981; 28 U.S.C. § 1331; and 28 U.S.C. § 1367.

### NOTICE OF CLAIM

2. In correspondence dated February 16, 2023, the Plaintiffs caused to be filed and delivered on the date of February 22, 2023, via registered mail to RANKIN COUNTY, Mississippi, c/o RANKIN COUNTY Chancery Clerk Larry Swales, 211 East Government Street, Suite

D, Brandon, MS 39042. Plaintiff's Notice of Claim letter contained the acts and claims set forth herein, pursuant to Miss. Code Ann.§11-46-11, 42 U.S.C.§1983, 42 U.S.C.§1981, and any and all other applicable state or federal statute(s) or constitutional provision(s), or any applicable state or federal common law cause(s) of action. The Plaintiffs delivered a 2nd Notice of Claim to RANKIN COUNTY on April 19, 2023, to Sheriff Bryan Bailey and the Rankin County Attorney, via certified mail. Plaintiffs submit that Defendants have been on formal notice for at least 116 days prior to filing the instant. Defendants have also received constructive notice of this high-profile public incident since the date of its occurrence on January 24, 2023.

## **PARTIES**

3. MICHAEL COREY JENKINS, at all times relevant herein, was a 32-year old African - American resident of RANKIN COUNTY, Mississippi. MICHAEL JENKINS, at the time of this occurrence, was of slight build, weighed approximately 155 pounds, and stood 5 foot 9 inches tall. Eddie Parker stood 5 foot 10 inches and weighed about 170 pounds.

4. EDDIE TERRELL PARKER, at all times relevant herein, was a 35-year-old African American resident of RANKIN COUNTY, Mississippi.

5. Defendant HUNTER ELWARD, upon information and belief, is an adult resident citizen of RANKIN COUNTY, Mississippi, who may be served with process where found and is hereby sued in individual and his official capacity.

6. Defendant CHRISTIAN DEDMON, upon information and belief, is an adult resident citizen of RANKIN COUNTY, Mississippi, who may be served with process where found and is hereby sued in individual and his official capacity.

7. Defendant BRETT MC'ALPIN, upon information and belief, is an adult resident citizen of RANKIN COUNTY, Mississippi, who may be served with process where found is hereby sued in individual and his official capacity.

8. Defendant RANKIN COUNTY is a governmental entity organized and existing under and by virtue of the laws of the State of Mississippi. RANKIN COUNTY, Mississippi, is subject to suit pursuant to Miss. Code Ann. § 11-46-5 and 11-46-7.

9. Defendant SHERIFF BRYAN BAILEY, at all times relevant herein, was the Sheriff of the RANKIN COUNTY Sheriff's Department with supervisory control over RANKIN COUNTY deputies. SHERIFF BAILEY is hereby sued in individual capacity as supervisor of RANKIN COUNTY SHERIFF'S DEPT., and in his official capacity.

10. Defendant RANKIN COUNTY, MISSISSIPPI, is a governmental entity organized and existing under and by virtue of the laws of the State of Mississippi. RANKIN COUNTY, Mississippi, is subject to suit pursuant to Miss. Code Ann. § 11-46-5 and 11-46-7 and may be served with process through the president or clerk of the board of supervisors at 211 E Government St A, Brandon, MS 39042. RANKIN CO. **is** vicariously liable for the acts its employees committed in the course and scope of their employment.

11. DEPUTIES, JOHN DOE DEFENDANTS 1-3 are RANKIN COUNTY Deputies who directly participated in the acts described herein but whose identities are unknown to the Plaintiffs at the filing of this Complaint but who are liable for the acts or omissions committed resulting in the subject incident herein and against whom Plaintiffs will seek recovery of damages.

## **STATEMENT OF FACTS**

12. All events described herein, in reference to Plaintiffs, occurred in Braxton, Mississippi,

which is in Rankin County, Mississippi.

13. On the night of January 24, 2023, between 9:30 and 10:00 p.m., six White RANKIN COUNTY Sheriff's deputies illegally raided the private residence where EDDIE TERRELL PARKER and MICHAEL COREY JENKINS were lawfully residing . The deputies forcibly entered the residence, and they did not possess a valid search warrant.

14. According to eyewitnesses, the identity of these six officers included; RANKIN CO. Miss. Deputy BRETT MC'ALPIN, RANKIN CO. Miss. Deputy CHRISTIAN DEDMON, and RANKIN COUNTY Mississippi Deputy HUNTER ELWARD.

15. RANKIN COUNTY, Mississippi, is 73.5% White, 21% Black, according to 2019 data. MICHAEL JENKINS and EDDIE PARKER were allegedly the only two Black males residing within a two-mile area of the location of this occurrence.

16.  The Rankin County Deputies would intentionally de-activate their body camera equipment prior to this ordeal, and upon its conclusion, the six Rankin County Deputies involved would steal from the property in question video computer equipment that recorded a critical portion of this ordeal. Rankin County has possession of such stolen equipment.


Warrantless Entry, Kidnapping, and Racial Bias

17. Defendants ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 forced their entry into the premises from several entry points without a warrant. The six deputies promptly subdued and handcuffed both JENKINS and PARKER.

18. No reasonable suspicion or probable cause existed for the Defendants actions. No cause for warrantless entry into the premises existed.

19. At this point, nor at any point, did either victim ever resist, run away from, or oppose the deputies in any way. Throughout this nearly two-hour occurrence, MICHAEL JENKINS and EDDIE PARKER would completely comply with law enforcement.

20. While under the Defendants' custody, MICHAEL JENKINS and EDDIE PARKER were repeatedly and directly called "niggers" and "monkeys" and other specific racial slurs by these White officers.

21. Upon entry, RANKIN COUNTY deputies, including deputies ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3, also accused the African-American men of "dating White women" and having committed other racial violations. Deputies intentionally and freely used random racial epithets during all actions described herein over the course of nearly two hours.

22. All six RANKIN COUNTY deputies maintained complete control of both victims for the entirety of this nearly two-hour occurrence.

23. Without lawful cause or justification, in this severe event of police brutality, RANKIN COUNTY deputies, including deputies ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3, began punching and slapping their handcuffed African-American victims.

24. Throughout the nearly two-hour ordeal, the six deputies would punch and beat two handcuffed men at will, hurting and humiliating both Jenkins and Parker. Deputies also repeatedly and gratuitously kicked the men as if they were animals while they lay subdued and handcuffed.

25. At all times relevant, these acts occurred under the supervision of SHERIFF BRYAN BAILEY, Sheriff of RANKIN COUNTY.

Taser use while Handcuffed.

26. In an escalation of their use of excessive force, deputies ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 began firing tasers on the handcuffed Michael Jenkins Eddie Parker. The tasing included multiple drive-stuns into the bodies of both PARKER and JENKINS.

27. Throughout the course of this nearly two-hour use of force event, deputies from Defendant RANKIN COUNTY, deputies under the supervision of SHERIFF BRYAN BAILEY, would engage in a sadistic contest with each other as to which Taser would be most effective when fired against these two victims. Deputies are believed to have fired their Tasers 20-30 times on both victims. No cause existed for using this unconstitutional force against the victims by the deputies.

28. JENKINS and PARKER never offered any resistance whatsoever that would justify initially, or at any point, being repeatedly tased while handcuffed by RANKIN COUNTY deputies. Heavily redacted Taser reports received from Defendant RANKIN COUNTY verify the timeline of this incident and support these allegations.

29. At all times relevant, Defendant's acts of tasing JENKINS and PARKER, while handcuffed, occurred under the supervision of SHERIFF BRYAN BAILEY and  RANKIN CO. During these acts, deputies used vicious racial slurs such as "nigger" and "monkey" against JENKINS and PARKER.


Waterboarding Acts

30. During this prolonged, nearly two-hour torture session, with both men in complete custody and control, MICHAEL C. JENKINS and EDDIE PARKER were also subject to waterboarding techniques by Defendants ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3. Deputies tried to coerce the JENKINS and PARKER, ostensibly to illicit a confession from the men in their custody.

31. Waterboarding, or "water torture," is a brutal practice whereby an interrogator uses techniques to convince the person in his custody to believe they are drowning. It is a paradigmatic torture technique that has long been considered a war crime, and the United States has prosecuted enemy soldiers — and even U.S. troops — for engaging in the practice.

32. Although this barbaric practice has been uniformly renounced by the United States and other nations committed to human dignity and the rule of law, the technique has reportedly been used against terror suspects in C.I.A. custody in so-called "black site" prisons. (Source: American Civil Liberties Union).

33. The items used to conduct the deputies' waterboarding acts were a variety of liquids obtained from the premises.

34. Rankin deputies waterboaded JENKINS and PARKER by continuously pouring the liquids on their faces while both men were handcuffed men and forced on their backs.

35. At all times relevant, these acts of torture and humiliation occurred while deputies were under the supervision of SHERIFF BRYAN BAILEY, RANKIN COUNTY. During these acts, deputies used vicious racial slurs such as "nigger" and "monkey" against JENKINS and PARKER.

Sexual Assault and Humiliation

36. RANKIN COUNTY deputies ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN
    DOE'S 1-3, or a combination thereof, attempted to use a dildo or sexual device against Mr.
    Jenkins and Mr. Parker in the course of this torture session on January 24, 2023.

37. Photographic evidence confirms that a dildo or sexual device was used by deputies at the
    crime scene.

38. Both victims, JENKINS and PARKER, allege and have informed the Mississippi Bureau of
    Investigation M.B.I. that RANKIN COUNTY deputies possessed the dildo and they were
    attempting to use the sexual device on both of them.

39. JENKINS and PARKER were sitting on the couch with their hands cuffed behind their backs
    and surrounded by Defendants ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN
    DOE'S 1-3.

40. Deputies attempted to put the dildo (sexual device) in the mouths of both JENKINS and
    PARKER, but they were unsuccessful.

41. Deputies then turned MICHAEL JENKINS on his stomach in an attempt to use the sexual
    device (dildo) on JENKINS from the rear but discovered that JENKINS had defecated on
    himself.   Deputies laughed and mocked JENKINS at this point.

42. JENKINS and PARKER allege that but for JENKINS defecating on himself, the sexual
    device (dildo) would have been inserted in his anal cavities by the Rankin deputies.

43. These shocking, sick, and sadistic attempted sexual assaults were designed to harm and
    humiliate JENKINS and PARKER.

44. On top of this outrage, in this period, the six Rankin Defendants ELWARD, MC'ALPIN,
    DEDMON, and DEPUTIES JOHN DOE'S 1-3, in a very juvenile and bizarre manner, hurled
    eggs at the handcuffed men. The eggs hurled by Defendants at JENKINS and PARKER left

residue and visible markings all over the walls and eggshells on the floor of the house deputies had illegally raided.

45. In an effort to sanitize their acts, in the middle of this torture ordeal, RANKIN COUNTY deputies, including those individually named deputies, ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3, ordered both African-American men to strip naked and shower together.

46. Incredibly, both African-American citizens, JENKINS and PARKER, were forced by deputies to shower naked together in the same shower stall.

47. JENKINS and PARKER were forced to shower together naked by Defendants ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3, or they would face violent punishment by the six White deputies.

48. RANKIN COUNTY deputies Forcing JENKINS and PARKER to shower together was designed to humiliate and intimidate them and also to conceal evidence of the eggs being hurled and the Plaintiff's defecating on themselves after the attempted sexual assault against them.

49. At all times relevant, these acts of sexual assault occurred while deputies were under the supervision of SHERIFF BRYAN BAILEY and RANKIN COUNTY. During these acts, deputies used vicious racial slurs such as "nigger" and "monkey" against JENKINS and PARKER.

Threats to Kill

50. During this prolonged kidnapping of JENKINS and PARKER, RANKIN COUNTY Deputies ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 repeatedly placed their guns to the heads of both handcuffed men and threatened to kill them.

51. JENKINS and PARKER never committed any act of resistance to justify Defendant's pointing guns at their heads, assaulting them, and threatening to kill them.

52. At all times relevant, these acts of assaults, pointing guns at their head and threatening to kill JENKINS and PARKER, occurred while deputies were under the supervision of SHERIFF BRYAN BAILEY and RANKIN COUNTY. During these acts, deputies used vicious racial slurs such as "nigger" and "monkey" against JENKINS and PARKER.

Attempt to Kill Michael Corey Jenkins:

53. At the crescendo of this nearly two-hour torture session, on January 24, 2023, at around 11:40 p.m., Plaintiffs allege that RANKIN COUNTY deputy Hunter Elward shoved his service weapon inside Michael Jenkins's mouth while he was handcuffed.

54. Rankin deputy HUNTER ELWARD spoke angrily to MICHAEL JENKINS, and then ELWARD shot JENKINS inside his mouth.

55. ELWARD, under the color of law, intentionally shot handcuffed MICHAEL COREY JENKINS in the mouth, almost killing him.

56. RANKIN COUNTY Deputies MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 conspired, aided, and abetted ELWARD in shooting MICHAEL JENKINS inside his mouth.

57. ELWARD'S gunshot inside JENKINS mouth shattered JENKINS' jaw and severely lacerated his tongue. Several of Michael's arteries were severely damaged, and he almost died.

58. ELWARD fired his shot with malice aforethought, and he intended to kill MICHAEL COREY JENKINS.

59. At no point in this occurrence did JENKINS commit any act to warrant such cruel, physical, and deadly force to be used against him by RANKIN COUNTY, Mississippi deputies.

60. The attempt to kill JENKINS occurred while Defendant Deputies ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 were under the supervision of SHERIFF BRYAN BAILEY and RANKIN COUNTY. In the course of this act, deputies used vicious racial slurs such as "nigger" and "monkey" against JENKINS and PARKER.

61. JENKINS was not armed at any point, and he was completely compliant with, and in fear of deputies under the supervision and control of Defendant BRYAN BAILEY and RANKIN COUNTY.

Failure to Intervene/ Failure to aid JENKINS

62. JENKINS and PARKER, in interviews with agents from the Mississippi Bureau of Investigation (M.B.I.), confirmed both victims' accounts that Deputies ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 jointly participated and encouraged each other in these outrageous, hateful and violent acts.

63. None of the six deputies intervened [in word or action] to stop any of the aforementioned acts in the course of this ordeal, including the shooting of JENKINS.

64. Not a single deputy, at any point, objected or took any affirmative action to stop any of their fellow deputies from inflicting the pain and punishment that was inflicted on JENKINS and PARKER for nearly two hours.

65. During this violent, twisted, tragic melee, no Rankin deputy chose to withdraw from this prolonged, twisted, and sick ordeal. In fact, the contrary is true; each deputy, including ELWARD MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3, consciously, knowingly, and willingly participated in the terrible acts described in this Complaint.

66. Once JENKINS was shot inside the mouth, he was severely injured, left alone to care for and treat himself as he stumbled out the door and fell. RANKIN COUNTY deputies ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 would not assist him in any way. For twenty or more minutes, each deputy consciously and deliberately disregarded their specific duty to render medical attention to JENKINS.

67. JENKINS would receive medical attention only when emergency medical personnel arrived. At the University of Mississippi Medical Center, Michael Jenkins finally received adequate medical care, which included multiple life-saving surgeries.

68. Unfortunately, JENKINS has suffered permanent physical injuries, permanent cognitive damage, long-term psychological damage, permanent disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage and numbness.   PARKER has suffered. Eddie Parker suffered injuries from his mistreatment and sought prompt medical attention.

69.  ON JANUARY 25, 2023, Deputy Hunter ELWARD would file and notarize a false and fictitious affidavit of criminal charges against Michael Jenkins, claiming Jenkins had a firearm and pointed it in the direction of ELWARD.

70.  At no point ever, during the facts stipulated herein, did Michael Corey Jenkins or Eddie Terrell Parker ever possess or display any type of weapon.


Supervisory Liability by BAILEY and MONELL violations by RANKIN COUNTY


71. Sheriff BRYAN BAILEY directly participates in acts of excessive force with the deputies he supervises and has been denied qualified immunity by this court. In U.S. District Court

Civil Action No. 3:21-CV-124-HTW-LGI 31-year-old Pierre Woods died of multiple gunshot wounds. (WLBT) – A federal judge has issued a ruling saying Rankin County Sheriff Bryan Bailey is not exempt from a wrongful death lawsuit. Judge Henry Wingate stated: "Sheriff BRYAN BAILEY is individually liable because: he was present at the scene; he was actively involved in the negotiations; and he played an important role in the use of the alleged excessive force which led to Woods' death." Based on the record before it, this court cannot state that SHERIFF BAILEY'S actions were reasonable under the circumstances."

72. The Court, in Civil Action No. 3:21-CV-124-HTW-LGI further stated Defendant Rankin County Deputy HUNTER ELWARD, the officer, allegedly to have been struck by Wood's weapon, states that he discharged his rifle approximately 8 times in Woods's direction after Woods exited the residence. Deputy ELWARD claims that Woods threw his pistol at Deputy ELWARD as Woods fell to the ground after taking fire. [Docket no. 47-4 p.5]. This court notes, too, that the Video shows is that once Woods was shot, he immediately fell to the ground and did not move. The officers continued to shoot for at least seven (7) more seconds after Woods hit the ground. Yet, the Affidavits submitted by Rankin County Deputies [Dockets. No 75-1 and 75-2] state that all RANKIN COUNTY. Deputies fired only at the residence's bedroom window when Woods was inside the residence and that none of them shot at Woods as he exited the front door. This testimony does not comport with the Video presented, which depicts officers firing their weapons at a face-down Woods for at least 7 seconds after he exited the front door. This court also notes that SHERIFF BAILEY held the authority to order a "ceasefire," which would have immediately stopped the officers' shooting. Based on the record before it, this court cannot state that Sherriff Bailey's actions

were reasonable under the circumstances. This court finds that the record evidence is sufficient to overcome SHERIFF BAILEY'S qualified immunity defense.

73. Despite actual notice of SHERIFF BAILEY'S denial of qualified immunity actions for his supervisory actions, and despite HUNTER ELWARD'S denial of qualified immunity by this Court for his deadly use of force on Woods, BAILEY, and ELWARD, both remained employed and unsanctioned by RANKIN COUNTY. Such continued employment, without the sanction of ELWARD and BAILEY by RANKIN COUNTY, constituted a custom of tolerance and acceptance of constitutional violations.

74. SHERIFF BAILEY failed to reprimand, monitor, or re-train Deputy MC'ALPIN. Such failures and deliberate indifference to MCALPIN'S acts are the proximate cause as to why Defendant has repeated such acts against JENKINS and PARKER.

75. At the time of the attack on JENKINs and PARKER on 1/24/2023, Deputy BRETT MC'ALPIN has remained an active deputy for Rankin County despite this Court denying his qualified immunity for committing the same type of violations that the Plaintiffs allege in the instant case. MC'ALPIN'S previously similar conduct was

- Breaking into premises without a warrant:
- Holding guns to the heads of the person he held in captivity
- Using racial slurs in the commission of the use of force
- Refusing to identify themselves after committing rogue acts

76. In the United States Court of Appeals for the 5th Circuit, Case No. 17-60287, Appellant BRETT MC'ALPIN lost his appeal of the U.S. District Court's order denying him qualified immunity in a case involving similar circumstances to the instant case with JENKINS and PARKER.

77. The Complaint Stated: Without warning, notice, or provocation, officers from the City of Pearl Police Department and Rankin County Sheriff's Department in a joint venture to make a profit, immediately drew their weapons and without authority or provocation, broke into the Plaintiffs' home, slammed certain Plaintiffs to the floor, held guns to the temple of some Plaintiffs and the backs of other Plaintiffs. Even after the other officers informed Officer MC'ALPIN that he was at the wrong house, the officers had to physically pull MC'ALPIN off of Brett (Plaintiff). The officers refused to identify themselves and then promptly left. Brett suffered injuries solely because of the physical assault by Officer MC'ALPIN following the illegal entry by the Rankin County Sheriff's Department and the Pearl Police Department into his home. None of the officers ever identified themselves as police officers before, during, or even after the illegal entry into the Plaintiffs' home.

78. Despite actual notice of Deputy MC'ALPIN'S denial of qualified immunity for his rogue actions, he remained a deputy employed by RANKIN COUNTY and under the supervision of SHERIFF BRYAN BAILEY. Such continued employment of MC'ALPIN, without sufficient monitoring, re-training, or reprimand, by RANKIN COUNTY created a custom of tolerance and acceptance of constitutional violations by RANKIN COUNTY.

79. SHERIFF BAILEY failed to reprimand, monitor, or re-train Deputy MC'ALPIN. Such failures and deliberate indifference to MCALPIN'S acts are the proximate cause as to why Defendant has repeated such acts against JENKINS and PARKER.

80. On July 26, 2021, Defendant Hunter ELWARD was involved in the subduing of unarmed Damien Cameron. Cameron died after being harshly restrained by Rankin Deputies Luke Stickman and ELWARD.

81. In her affidavit dated April 13, 2023, Monica Lee, Cameron's mother and a witness to the occurrence, affirms that Rankin Deputy Luke Stickman, with the assistance of Hunter ELWARD, in the manner of Derek Chauvin, who killed George Floyd, choked Cameron to death by placing a knee across the back of his neck, long after Cameron was completely immobilized. Cameron's last words to ELWARD and Stickman were that he *could not breathe* (Lee v. RANKIN COUNTY Circuit Court for Rankin County, Cause No. 2022-073).

82. SHERIFF BAILEY failed to reprimand HUNTER ELWARD for failing to activate his body camera; failed to train ELWARD in the use of body cameras, and thereby BAILEY created a custom that Rankin Deputies were permitted to turn off body-worn cameras to cover up their misdeeds.

83. BAILEY'S failure to supervise and reprimand his v Rankin County Deputies in the Lee case and other cases cited herein amounted to ratification of their action. Such deliberate indifference to how customs created under his command were the proximate cause of JENKINS and PARKER'S constitutional rights being violated on January 24, 2023.

84. In the instant raid against JENKINS and PARKER, Defendant deputies intentionally turned off their body cameras to escape video recording of the incident. Body camera logs reveal that Rankin Deputy Napoleon Valino last activated his camera at 9:41 p.m., two hours before another deputy shot Michael Corey Jenkins in the mouth. The next recording took place at 1:25 a.m., with Deputy Hunter Lewis activating his camera for nearly 20 minutes.

85. Despite actual and constructive notice of the above facts, Defendant RANKIN COUNTY failed to create new policies to correct such deficiencies; failed to create a police review board; failed to make the use of body-worn cameras, and failed to take any meaningful

action to stop the abuse of citizens taking place by the Sheriff's Department under RANKIN COUNTY's authority.

86. RANKIN COUNTY, under its budgetary authority, continued to finance SHERIFF BAILEY without implementing any policy reforms or controls. All the failures of Defendant RANKIN COUNTY created an environment where both SHERIFF BAILEY and ELWARD, MC'ALPIN, DEADMAN, and JOHN DOE'S 1-3 operated with impunity, which is the proximate cause of the atrocities committed upon JENKINS and PARKER in this case.

87. Attached to this Complaint are Exhibits 1-10, which give greater clarity and support to all allegations contained herein.

## COUNT I

### DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983-EXCESSIVE FORCE

### ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3
**(Attempting to kill Michael C. Jenkins)**

88. Plaintiffs hereby incorporate paragraphs 1-87 as if fully set forth herein.

89. Plaintiffs further allege that the defendants' HUNTER ELWARD, along with MC'ALPIN, DEDMON and DEPUTY JOHN DOE'S 1-3, with deliberate indifference to, and in reckless disregard for the safety and well-being of MICHAEL COREY JENKINS and in violation of the 4th Amendment to the Constitution, did on January 24, 2023, commit acts which deprived Plaintiff MICHAEL JENKINS of his constitutional right to be free from excessive force.

90. Plaintiffs allege Defendant DEPUTY ELWARD, under the color of law, without justification of cause, did place his service weapon inside JENKINS' mouth while he

was handcuffed. Did intentionally shoot MICHAEL JENKINS in his mouth, shattering his jaw, nearly mortally wounding him.

91. Plaintiffs allege ELWARD MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 all conspired, aided or abetted, to attempt to kill MICHAEL JENKINS by way of deadly excessive force.

92. Clearly, no force was warranted against Plaintiff's person under these circumstances as JENKINS posed no threat to ELWARD, MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, or any RANKIN COUNTY Deputy on 1/24/2023.

93. As a direct and proximate result of the actions of Defendants ELWARD MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3, Plaintiff was deprived of his liberty and almost killed by DEPUTY ELWARD, acting well outside the parameters of law and decency.

94. As a result of the excessive use of force by Defendants, JENKINS has suffered permanent physical injuries, permanent cognitive damage, long-term psychological damage, permanent disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage and numbness. Eddie Parker suffered injuries from his mistreatment, sought prompt medical attention, and also suffered long-term psychological damage from the trauma of the ordeal.

Punitive Damages

95. All Defendants acted with *actual malice* towards MICHAEL C. JENKINS and EDDIE PARKER and intended to cause injury to Plaintiffs with their despicable, violent conduct.

96. Prior to JENKINS being shot inside the mouth, Defendants ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3  consciously and deliberately illegally seized

MICHAEL JENKINS and EDDIE PARKER without cause for nearly two hours. Defendants possessed a willful and conscious disregard for the right of Plaintiff's JENKINS and the public at-large to be free from the use of dangerous, excessive force.

97. Furthermore, ELWARD MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3, in their repeated use of racial slurs in the course of their violent acts, were oppressive and hateful against their African- American victims. Defendants were motivated on the basis of race and the color of the skin of the persons they assaulted. Such despicable conduct by these six White deputies subjected JENKINS amounts to cruel and unjust hardship in conscious disregard of not only Plaintiff's rights but exhibited a reckless disregard for Plaintiff's, as well as the public at-large's constitutional rights of equal protection under the law as afforded by the 14th Amendment.

98. Punitive damages are required to punish all Defendants and to deter similar misconduct in the future by all Defendants, lest such egregious human rights violations repeat themselves.

WHEREFORE, Plaintiff MICHAEL JENKINS demands judgment against Defendants, in the full and fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages and punitive damages plus interest and costs.

## COUNT II

### DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983

### ELWARD, ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3
(Unconstitutional Search and Seizure)

99. Plaintiffs hereby incorporate paragraphs 1-87 as if fully set forth herein.

100. Plaintiff further alleges that the defendant deputies ELWARD MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3, under the color of law, with deliberate indifference to and in reckless disregard for the safety and well-being of the Plaintiffs and in violation of the 4th Amendment to the Constitution, did on January 24, 2023, commit many acts which deprived Plaintiffs MICHAEL JENKINS and EDDIE T. PARKER of their constitutional rights to be free from unreasonable seizure of their persons.

101. Plaintiffs allege Defendant's ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3, without reasonable suspicion or probable cause, forcibly entered the address in Braxton, Mississippi, where Plaintiff's PARKER was living, AND JENKINS was visiting. Both men were not outside, and they were resting in separate rooms.

102. ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3 did not possess a search warrant. No circumstances for warrantless entry into the premises existed.

103. JENKINS and PARKER were immediately subdued and handcuffed by Defendants ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3.

104. All Defendant deputies wrongfully entered the premises, wrongfully seized, and falsely imprisoned Plaintiffs when clearly no seizure was warranted and no force warranted against their persons.

105. As a direct and proximate result of the actions of the Defendant officer, Plaintiff was deprived of his liberty and injured by Defendant RANKIN COUNTY deputies, acting far outside the parameters of law and decency.

106. As a result of this violation of the 4th Amendment violation by ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3.

107. As a result of the excessive use of force by Defendants, JENKINS has suffered

permanent physical injuries, permanent cognitive damage, long-term psychological damage, permanent disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage and numbness. Eddie Parker suffered injuries from his mistreatment, sought prompt medical attention, and also suffered long-term psychological damage from the trauma of the ordeal.

## Punitive Damages

108. All Defendants acted with *actual malice* towards MICHAEL C. JENKINS and EDDIE PARKER and intended to cause injury to Plaintiffs with their despicable, violent conduct.

109. Defendants ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 consciously and deliberately seized MICHAEL JENKINS and EDDIE PARKER for nearly two hours, and they possessed a willful and conscious disregard for the rights and the right of Plaintiffs JENKINS, PARKER, and the public at-large to be free from the use of unconstitutional searches, seizures, and excessive force.

110. Furthermore, ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, in their repeated use of racial slurs while breaking the laws of the 4th Amendment, were oppressive and hateful against their African- American victims. Defendants were motivated upon the basis of race and the color of the skin of the persons they wrongfully seized and used force upon. Such despicable conduct by these six White deputies subjected JENKINS and PARKER amounts to cruel and unjust hardship in conscious disregard of not only Plaintiff's rights but exhibited a reckless disregard for Plaintiff's, as well as the public at-large's 4th Amendment rights and their constitutional rights of equal protection under the law as afforded by the 14th Amendment.

111. Punitive damages are required to punish these Defendants, ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 in order to deter similar misconduct in the future by all Defendants, lest such egregious human rights violations repeat themselves.

WHEREFORE, Plaintiffs MICHAEL JENKINS and EDDIE PARKER demand judgment against Defendants, in the full and fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages and punitive damages plus interest and costs.

## COUNT III

### DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983

**ELWARD MC'ALPIN, DEDMON, AND JOHN DOE'S 1-3**
**(Excessive Force- Taser Use)**

112. Plaintiffs hereby incorporate paragraphs 1-87 as if fully set forth herein.

113. Plaintiff further alleges that Defendant's ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, under the color of law, with deliberate indifference to, and in reckless disregard for the safety and well-being of the Plaintiffs and in violation of their constitutional rights, did on January 24, 2023, commit many acts which deprived Plaintiffs MICHAEL C. JENKINS and EDDIE PARKER of their constitutional rights to be free from excessive force.

114. Plaintiffs allege Defendants ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3 deployed their taser devices and used them repeatedly and gratuitously against both JENKINS and PARKER while they were subdued and handcuffed.

115. ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3 did not have justification or cause for using force by way of tasering JENKINS and PARKER while they were defenseless, incapable of harm, and handcuffed.

116. At no point did JENKINS or PARKER give any justification or cause for the use of force by Defendants. Clearly, no force at all was warranted against their person under the circumstances.

117. As a direct and proximate result of the actions of the Defendants, Plaintiffs were deprived of their constitutional right to be free from the use of force, by way of tasering, by the Defendant RANKIN COUNTY Defendants, acting far outside the parameters of law and decency.

118. As a result of the excessive use of force by Defendants, JENKINS has suffered permanent physical injuries, permanent cognitive damage, long-term psychological damage, permanent disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage and numbness. Eddie Parker suffered injuries from his mistreatment, sought prompt medical attention, and has also suffered long-term psychological damage from the trauma of the ordeal.

## Punitive Damages

119. All Defendants acted with *actual malice* towards MICHAEL C. JENKINS and EDDIE PARKER and intended to cause injury to Plaintiffs with their despicable, violent conduct.

120. Defendant's ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3  consciously and deliberately assaulted MICHAEL JENKINS and EDDIE PARKER for nearly two hours, and they possessed a willful and conscious disregard for the rights and the right of Plaintiff's

JENKINS, PARKER, and the public at-large to be free from the use of dangerous, excessive force.

121. Furthermore, ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, in their repeated use of racial slurs in the course of their use of excessive force, were oppressive and hateful against their African- American victims. Defendants were motivated upon the basis of race and the color of the skin of the persons they wrongfully seized and used force upon. Such despicable conduct by these six White deputies subjected JENKINS and PARKER amounts to cruel and unjust hardship in conscious disregard of not only Plaintiff's rights but exhibited a reckless disregard for Plaintiff's, as well as the public at-larges' right to be free from the unconstitutional use of force, and violations of their constitutional rights to equal protection under the 14th Amendment.

122. Punitive damages are required to punish these Defendants, ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3.  in order to deter similar misconduct in the future by all Defendants, lest such egregious human rights violations repeat themselves.

WHEREFORE, Plaintiffs MICHAEL JENKINS and EDDIE PARKER demand judgment against Defendant, in the full and fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages and punitive damages plus interest and costs.

## COUNT IV

### Deprivation of Civil Rights, 42 U.S.C. § 1983

### ELWARD MC'ALPIN, DEDMON AND JOHN DOE'S 1-3
### (Excessive Force- Physical Assaults)

123. Plaintiffs hereby incorporate paragraphs 1-87 as if fully set forth herein.

124. Plaintiff further alleges that Defendants ELWARD, MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, under the color of law, with deliberate indifference to, and in reckless disregard for the safety and well-being of the Plaintiffs and in violation of their constitutional rights, did on January 24, 2023, commit specific acts which deprived Plaintiffs MICHAEL C. JENKINS and EDDIE T. PARKER of their constitutional rights to be free from excessive force.

125. Plaintiffs allege Defendants ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3 repeatedly punched, kicked and beat, and otherwise gratuitously used unwarranted force against both JENKINS and PARKER while they were subdued, handcuffed, and not resisting.

126. Plaintiffs allege Defendants ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1- 3 repeatedly hurled eggs at JENKINS and PARKER, striking and humiliating them. Defendants used this type of unwarranted force against both JENKINS and PARKER while they were subdued, handcuffed, and not resisting.

127. ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3 did not have justification or cause for using force by way of kicking, punching, beating, hurling eggs at, and knocking to the floor JENKINS and PARKER, who were handcuffed, defenseless, and incapable of harm.

128. At no point did JENKINS or PARKER give any justification or cause for such use of violent force by Defendants. Clearly, no force was warranted against their person under the circumstances.

129. As a direct and proximate result of the actions of the Defendants, Plaintiffs were deprived of their constitutional right to be free from the use of force by way of being repeatedly

punched, kicked, and beaten, and being pelted with eggs at both JENKINS and PARKER by

RANKIN COUNTY Defendants, acting far outside the parameters of law and decency.

130. As a result of the excessive use of force by Defendants, JENKINS has suffered

permanent physical injuries, permanent cognitive damage, long-term psychological

damage, permanent disfigurement, and impairment. One side of JENKINS face

suffers permanent nerve damage and numbness. Eddie Parker suffered injuries from

his mistreatment, sought prompt medical attention, and has also suffered long-term

psychological damage from the trauma of the ordeal.

Punitive Damages

131. All Defendants acted with *actual malice* towards MICHAEL C. JENKINS and EDDIE

PARKER and intended to cause injury to Plaintiffs with their despicable, violent conduct.

132. Defendant's ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3 consciously and

deliberately assaulted MICHAEL JENKINS and EDDIE PARKER for nearly two hours, and

they possessed a willful and conscious disregard for the rights and the right of Plaintiff's

JENKINS, PARKER, and the public at-large to be free from the use of dangerous, excessive

force.

133. Furthermore, ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, in

their repeated use of racial slurs in the course of their beating, punching, kicking, and hurling

eggs at Plaintiff, were oppressive and hateful against their African- American victims.

Defendants were motivated upon the basis of race and the color of the skin of the persons

they attacked and used force upon. Such despicable conduct by these six White deputies

subjected JENKINS and PARKER amounts to cruel and unjust hardship in conscious

disregard of not only Plaintiff's rights but exhibited a reckless disregard for Plaintiff's, as well

as the public at-larges' right to be free from the unconstitutional use of force, and violations of their constitutional rights to equal protection under the 14th Amendment.

134. Punitive damages are required to punish these Defendants, ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 in order to deter similar misconduct in the future by all Defendants, lest such egregious human rights violations repeat themselves.

WHEREFORE, Plaintiffs MICHAEL JENKINS and EDDIE PARKER demand judgment against Defendant, in the full and fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages and punitive damages plus interest and costs.

## COUNT V

### Deprivation of Civil Rights, 42 U.S.C. § 1983

### ELWARD MC'ALPIN, DEDMON AND JOHN DOE'S 1-3
(Unreasonable Seizure, Excessive force  -Waterboarding)

135. Plaintiffs hereby incorporate paragraphs 1-87 as if fully set forth herein.

136. Plaintiff further alleges that the Defendants ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3, under the color of law, with deliberate indifference to, and in reckless disregard for the safety and well-being of the Plaintiffs and in violation of their constitutional rights, did on January 24, 2023, commit specific acts which deprived Plaintiffs MICHAEL C. JENKINS and EDDIE T. PARKER of their constitutional rights to be free from excessive force and unreasonable seizure.

137. Plaintiffs allege Defendants ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3 used waterboarding techniques against both JENKINS and PARKER while they

were handcuffed, bound, and on their back. These acts amounted to a form of torturing their captives.

138. ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3 did not have justification or cause for using force in the form of the use of waterboarding techniques against JENKINS and PARKER under any circumstances.

139. At no point did JENKINS OR PARKER give any justification or cause for such use of waterboarding techniques by Defendants because there is never a justification for the use of illegal waterboarding techniques by law enforcement.

140. As a direct and proximate result of the actions of the Defendants, Plaintiffs were deprived of their constitutional right to be free from excessive force and unreasonable seizure by way of waterboarding tactics against both JENKINS and PARKER by RANKIN COUNTY Defendants, acting far outside the parameters of law and decency.

141. As a result of the excessive use of force by Defendants, JENKINS has suffered permanent physical injuries, permanent cognitive damage, long-term psychological damage, permanent disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage and numbness. Eddie Parker suffered injuries from his mistreatment, sought prompt medical attention, and also suffered long-term psychological damage from the trauma of the ordeal.

Punitive Damages

142. All Defendants acted with *actual malice* towards MICHAEL C. JENKINS and EDDIE PARKER and intended to cause injury to Plaintiffs with their despicable, outrageous, torturous conduct.

143. Defendants ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 consciously and deliberately assaulted MICHAEL JENKINS and EDDIE PARKER for nearly two hours, and they possessed a willful and conscious disregard for the rights and the right of Plaintiffs JENKINS, PARKER, and the public at-large to be free from the use of excessive force and torture in the form of waterboarding.

144. Furthermore, ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, in their repeated use of racial slurs in the course of their use of excessive force, were oppressive and hateful against their African- American victims. Defendants were motivated upon the basis of race and the color of the skin of the persons they wrongfully seized and used force upon. Such despicable conduct by these six White deputies subjected JENKINS and PARKER amounts to cruel and unjust hardship in conscious disregard of not only Plaintiff's rights but exhibited a reckless disregard for Plaintiff's, as well as the public at-larges' right to be free from the unconstitutional use of force, and violations of their constitutional rights to equal protection under the 14th Amendment.

145. Punitive damages are required to punish these Defendants, ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 in order to deter similar misconduct in the future by all Defendants, lest such egregious human rights violations repeat themselves.

WHEREFORE, Plaintiffs MICHAEL JENKINS and EDDIE PARKER demand judgment against Defendant, in the full and fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages and punitive damages plus interest and costs.

**COUNT VI**

**Deprivation of Civil Rights, 42 U.S.C. § 1983**

**ELWARD MC'ALPIN, DEDMON AND JOHN DOE'S 1-3**

(Sexual assault, Excessive force, Unreasonable seizure)

146. Plaintiffs hereby incorporate paragraphs 1-87 as if fully set forth herein.

147. Plaintiff further alleges that the Defendants ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, under the color of law, with deliberate indifference to, and in reckless disregard for the safety and well-being of the Plaintiffs and in violation of their constitutional rights, did on January 24, 2023, commit specific acts which deprived Plaintiffs MICHAEL C. JENKINS and EDDIE T. PARKER of their constitutional rights to be free from excessive force

148. Plaintiffs allege Defendants ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, or a combination thereof, attempted to use a sexual device, a dildo, against both JENKINS and PARKER in their mouths, and towards Jenkins' anal cavity while they were handcuffed and bound.

149. Furthermore, the Plaintiffs allege Defendants ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3 forced both JENKINS and PARKER to strip naked and take a shower together. Allegedly, JENKINS and PARKER were forced to strip naked and shower together in order to clean up the mess that was made by the deputies hurling eggs at them, the mess from the liquids poured in their mouths and on their faces used in the course of their waterboarding, and the deification of the victims whom they attempted to assault sexually.

150. In committing both acts of attempting to assault the Plaintiffs with a sexual device (dildo) sexually and then forcing both African-American men to strip naked and shower together, Defendants committed a form of torture against the Plaintiffs.

151. ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, or a combination thereof, did not have justification or cause for attempting to use a sexual device, a dildo,

against both JENKINS and PARKER while they were handcuffed, bound and surrounded by Defendants. No such justification exists for such shocking and outrageous acts under any circumstances.

152. ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, or a combination thereof, did not have justification or cause for forcing both JENKINS and PARKER to strip naked and to take a shower together. Because there is never, under any circumstances, lawful justification for the above-described sexual assaults and sex acts committed against JENKINS and PARKER

153. As a direct and proximate result of the actions of the Defendants, Plaintiffs were deprived of their constitutional rights to be free from excessive force and unreasonable seizure, by way of sick and perverted sexual assaults and sex acts, against both JENKINS and PARKER by RANKIN COUNTY Defendants, acting far, far outside the parameters of law and decency.

154. As a result of the acts by Defendants, JENKINS has suffered permanent physical injuries, permanent cognitive damage, long-term psychological damage, permanent disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage and numbness. Eddie Parker suffered injuries from his mistreatment, sought prompt medical attention, and also suffered long-term psychological damage from the trauma of the ordeal.

Punitive Damages

155. All Defendants acted with *actual malice* towards MICHAEL C. JENKINS and EDDIE PARKER and intended to cause injury to Plaintiffs with their despicable, twisted, and sick conduct.

156. Defendant's ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3  consciously and deliberately sexually assaulted MICHAEL JENKINS and EDDIE PARKER in the course of torturing them for nearly two hours, and they possessed a willful and conscious disregard for the rights and the right of Plaintiff's JENKINS, PARKER and the public at-large to be free from the use of dangerous, excessive force. Defendants humiliated Plaintiffs by forcing them to strip naked and shower together.

157. Furthermore, ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3,  in their repeated use of racial slurs, in the course of their sexual assaults, use of sexual devices on Plaintiffs, and forcing their captives to strip naked and shower together, were oppressive and hateful against their African- American victims. Defendants were motivated on the basis of race and the color of the skin of the persons they sexually assaulted and humiliated. Such despicable conduct by these six White deputies subjected JENKINS and PARKER to cruel and unjust hardship and a conscious disregard of not only Plaintiff's rights but exhibited a reckless disregard for Plaintiff's, as well as the public at-larges' right to be free from the unconstitutional use of excessive force and unreasonable seizure, and violations of their constitutional rights to equal protection under the 14th Amendment.

158. Punitive damages are required to punish these Defendants, ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 in order to deter similar misconduct in the future by all Defendants, lest such egregious human rights violations repeat themselves.

WHEREFORE, Plaintiffs MICHAEL JENKINS and EDDIE PARKER demand judgment against Defendant, in the full and fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages and punitive damages plus interest and costs.

## COUNT VI

## DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983

## ELWARD, MC'ALPIN, DEDMON, AND DEPUTIES JOHN DOE'S 1-3
### (Excessive Force- Threats To Kill )

159. Plaintiffs hereby incorporate paragraphs 1-87 as if fully set forth herein.

160. Plaintiff further alleges that Defendants ELWARD, MC'ALPIN, DEDMON and JOHN DOE'S 1-3, under the color of law, with deliberate indifference to, and in reckless disregard for the safety and well-being of the Plaintiffs and in violation of their constitutional rights, did on January 24, 2023, commit specific acts which deprived Plaintiffs MICHAEL C. JENKINS and EDDIE T. PARKER of their constitutional rights to be free from excessive force.

161. Plaintiffs allege Defendants ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, or a combination thereof, repeatedly pointed their guns to their heads and in the faces and threatened to kill both JENKINS and PARKER. Defendants assaulted both JENKINS and PARKER with their service weapons while Plaintiffs were subdued and handcuffed and not resisting.

162. ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3 did not have justification or cause for using force by way of repeatedly pointing guns in the face of JENKINS and PARKER and threatening to kill them.

163. At no point did JENKINS or PARKER give any justification or cause for such use of violent force by Defendants. Clearly, no force was warranted against their person under the circumstances.

164. As a direct and proximate result of the actions of the Defendants, the Plaintiffs were deprived of their constitutional right to be free from the use of excessive force, acting far outside the parameters of law and decency.

165. As a result of the acts by Defendants, JENKINS has suffered permanent physical injuries, permanent cognitive damage, long-term psychological damage, permanent disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage and numbness. Eddie Parker suffered injuries from his mistreatment, sought prompt medical attention, and has also suffered long-term psychological damage from the trauma of the ordeal.

Punitive Damages

166. All Defendants acted with *actual malice* towards MICHAEL C. JENKINS and EDDIE PARKER and intended to cause injury to Plaintiffs with their despicable, violent conduct.

167. Defendant's ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3   consciously and deliberately assaulted MICHAEL JENKINS and EDDIE PARKER for nearly two hours, and they possessed a willful and conscious disregard for the rights of Plaintiffs JENKINS, PARKER, and the public at-large to be free from the use of dangerous, excessive force.

168. Furthermore, ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, in their repeated use of racial slurs during their use of excessive force, were oppressive and hateful against their African- American victims. Defendants were motivated upon the basis of race and the color of the skin of the persons they wrongfully seized and used force upon. Such despicable conduct by these six White deputies subjected JENKINS and PARKER amounts to cruel and unjust hardship in conscious disregard of not only Plaintiff's rights but

exhibited a reckless disregard for Plaintiff's, as well as the public at-larges' right to be free from the unconstitutional use of force, and violations of their constitutional rights to equal protection under the 14th Amendment.

169. Punitive damages are required to punish these Defendants, ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 in order to deter similar misconduct in the future by all Defendants, lest such egregious human rights violations repeat themselves.

WHEREFORE, Plaintiffs MICHAEL JENKINS and EDDIE PARKER demand judgment against Defendant, in the full and fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages and punitive damages plus interest and costs.

## COUNT VII

### DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1981

### ELWARD, MC'ALPIN, DEDMON, AND DEPUTIES JOHN DOE'S 1-3
(14th Amendment Equal Protection Violation on the Basis of Race)

170. Plaintiffs hereby incorporate paragraphs 1-87 as if fully set forth herein.

171. Plaintiff further alleges that Defendants ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, under the color of law, with deliberate indifference to, and in reckless disregard for the safety and well-being of the Plaintiffs and in violation of their constitutional rights, did on January 24, 2023, commit specific acts which deprived Plaintiffs MICHAEL C. JENKINS and EDDIE T. PARKER of their constitutional rights to be free from deprivation of their rights of equal protection guaranteed under the 14th Amendment.

172. Defendants deprived both JENKINS and PARKER of their 14th Amendment Rights to be free from police harassment and misconduct on the basis of race.

173. The Equal Protection Clause of the U.S. Constitution directs that persons similarly situated

should be treated alike. The elimination of racial discrimination remains at the heart of the Fourteenth Amendment. The Constitution does not tolerate intentional police harassment of racial minorities.

174. Plaintiffs allege that Defendants ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 repeatedly used racial epithets, i.e., calling JENKINS and PARKER "niggers' and "monkeys' and questioning them about "dating White women," and coupled their use of their offensive words with physical harassment and numerous of acts of violence described in this Complaint.

175. Such words, coupled with the violent actions of RANKIN COUNTY deputies, deprived Plaintiffs of equal protection of the laws guaranteed under the United States Constitution.

176. As a direct and proximate result of the actions of the Defendants, Plaintiffs JENKINS and PARKER were deprived of their constitutional rights of equal protection and to be free from racially motivated violence at the hands of law enforcement, acting far outside the parameters of law and decency.

177. As a result of the acts by Defendants, JENKINS has suffered permanent physical injuries, permanent cognitive damage, long-term psychological damage, permanent disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage and numbness. Eddie Parker suffered injuries from his mistreatment, sought prompt medical attention, and also suffered long-term psychological damage from the trauma of the ordeal.

### Punitive Damages

178. All Defendants acted with *actual malice* towards MICHAEL C. JENKINS and EDDIE PARKER and intended to cause injury to Plaintiffs with their despicable, violent conduct.

179. Defendant's ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3 consciously and deliberately assaulted MICHAEL JENKINS and EDDIE PARKER for nearly two hours, and they possessed a willful and conscious disregard for the rights and the right of Plaintiff's JENKINS, PARKER, and the public at-large to be free from violations of the equal protection clause of the United States Constitution.

180. Furthermore, ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, in their repeated use of racial slurs in the course of their use of excessive force, were oppressive and hateful against their African- American victims. Defendants were motivated upon the basis of race and the color of the skin of the persons they wrongfully seized and used force upon. Such despicable conduct by these six White deputies subjected JENKINS and PARKER amounts to cruel and unjust hardship in conscious disregard of not only Plaintiff's rights but exhibited a reckless disregard for Plaintiff's, as well as the public at-larges right to be free from violations of their constitutional rights to equal protection under the 14th Amendment.

181. Punitive damages are required to punish these Defendants, ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 in order to deter similar misconduct in the future by all Defendants, lest such egregious human rights violations repeat themselves.

WHEREFORE, Plaintiffs MICHAEL JENKINS and EDDIE PARKER demand judgment against Defendant, in the full and fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages and punitive damages plus interest and costs.

## COUNT VIII

## DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983

## ELWARD, MC'ALPIN, DEDMON, AND DEPUTIES JOHN DOE'S 1-3

**(Failure to Intervene)**

182. Defendant Deputies consciously deprived JENKINS and PARKER of their constitutional rights;

183. Each law enforcement officer, ELWARD MC'ALPIN, DEDMON AND DEPUTIES JOHN DOE'S 1-3 had a realistic opportunity to intervene and prevent the harm, (2) the officers knew the victim's constitutional rights were being violated, and (3) the officers did not take reasonable steps to intervene.

184. At all times relevant herein, when any one of Defendant Deputies was not actively participating in any specific tort described in this Complaint, the Deputy was, in-fact, failing to take action to prevent another Rankin County deputy from violating the law.

185. Therefore, ELWARD, MC'ALPIN, DEDMON, AND DEPUTIES JOHN DOE'S 1-3 are criminally responsible for all the acts described herein, including the attempt to kill Michael Jenkins.

186. Defendants' actions are pursuant to a purposeful ongoing, concerted policy, practice, or custom undertaken with the intent to violate the Plaintiffs' constitutional rights.

187. As a direct and proximate result of the actions or omissions of the Defendants, the Plaintiffs were deprived of their constitutional right to be free from the use of excessive force, violations of their 4th Amendment Rights and human rights, and acting far outside the parameters of law and decency.

188. As a result of the acts by Defendants, JENKINS has suffered permanent physical injuries, permanent cognitive damage, long-term psychological damage, permanent disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage and numbness. Eddie Parker suffered injuries from his mistreatment, sought

prompt medical attention, and has also suffered long-term psychological damage from the trauma of the ordeal.

Punitive Damages

189. All Defendants acted with *actual malice* towards MICHAEL C. JENKINS and EDDIE PARKER when they failed to intervene to prohibit fellow deputies' misconduct.

190. When Defendant's ELWARD MC'ALPIN, DEDMON and JOHN DOE'S 1-3 consciously and deliberately failed to stop or even withdraw from the attacks on MICHAEL JENKINS and EDDIE PARKER for nearly two hours, and they possessed a willful and conscious disregard for the rights of Plaintiffs JENKINS, PARKER, and the public at-large to be free from the use of dangerous, excessive force.

191. Furthermore, ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3 used racial slurs while failing to intervene to stop the violations against their African- American victims. The Defendants' failure to intervene was motivated upon the basis of race and the color of the skin of the persons they failed to assist.

192. Such despicable conduct by these six White deputies subjected JENKINS and PARKER amounts to cruel and unjust hardship in conscious disregard of not only Plaintiff's rights but exhibited a reckless disregard for Plaintiff's, as well as the public at-larges' right to be free from the unconstitutional acts and failure and deputies have offended the public's constitutional rights to equal protection under the 14th Amendment.

193. Punitive damages are required to punish these Defendants, ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 in order to deter similar misconduct in the future by all Defendants, lest such egregious human rights violations repeat themselves.

WHEREFORE, Plaintiffs MICHAEL JENKINS and EDDIE PARKER demand judgment against Defendant, in the full and fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages and punitive damages plus interest and costs.

## COUNT IX

### 42 U.S.C. § 1983- FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE

### SHERIFF BRYAN BAILEY

194. Plaintiffs hereby incorporate paragraphs *1-87* as if fully set forth herein.

195. Defendant SHERIFF BRYAN BAILEY acted negligently, carelessly, recklessly, and with deliberate indifference to the safety and constitutional rights of the Plaintiffs and the citizens of the State of Mississippi by failing to properly train, supervise, control, direct, monitor, and discipline its officers in their duties and responsibilities.

196. Citizen complaints, lawsuits, public news, and public records verify that SHERIFF BAILEY is specifically aware that its deputies have committed and are likely to commit constitutional violations of the type that Plaintiff suffered described herein in this lawsuit.

197. As a direct and proximate result of the acts and omissions and deliberate indifference of defendants SHERIFF BAILEY, Plaintiffs MICHAEL JENKINS, and EDDIE PARKER were wrongfully imprisoned, unlawfully seized, assaulted, sexually assaulted, waterboarded, otherwise tortured, and had their constitutional rights violated by RANKIN COUNTY deputies who also attempted to kill JENKINS by shooting Plaintiff inside of his mouth.

198. Defendant SHERIFF BAILEY had actual and/or constructive knowledge before this ordeal that its officer /employees were imprisoning persons without probable cause, seizing citizens without justification and using excessive force, and using torture tactics while violating the U.S. Constitution.

Ratification

199. SHERIFF BAILEY, in this specific case, failed to discipline and reprimand Defendants ELWARD MC'ALPIN. DEDMON and DEPUTIES JOHN DOE'S 1-3, who were under their direct supervision and control

200. Rather, SHERIFF BRYAN BAILEY, once again, has failed to act, failed to discipline or reprimand ELWARD MC'ALPIN. DEDMON and DEPUTIES JOHN DOE'S 1-3, despite public pledges by Sheriff Bailey to hold his officers accountable if there was wrongdoing by his deputies found in this ordeal.

201. SHERIFF BAILEY, as in several other adverse incidents, failed to discipline and reprimand his deputies in this incident, despite such blatant wrongdoing as the events on January 24, 2023, which occurred against JENKINS and PARKER

202. Therefore, SHERIFF BRYAN BAILEY has authorized and ratified Defendant Deputies' conduct. SHERRIF BAILEY encourages such conduct through his lack of action.

203. As a result of the acts or omission by Defendant, JENKINS has suffered permanent physical injuries, permanent cognitive damage, long-term psychological damage, permanent disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage and numbness. Eddie Parker suffered injuries from his mistreatment, sought prompt medical attention, and also suffered long-term

psychological damage from the trauma of the ordeal.

WHEREFORE, Plaintiffs MICHAEL JENKINS and EDDIE PARKER demand judgment against Defendant, in the full and fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages plus interest and costs.

## COUNT X

### 42 U.S.C. § 1983 – MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL CUSTOM, PRACTICE, OR POLICY

### RANKIN COUNTY

204. Plaintiffs hereby incorporate paragraphs *1-87* as if fully set forth herein.

205. Based upon the principles set forth in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), on and for some time prior to January 24, 2023, and continuing to the present date, defendant RANKIN CO., acting with reckless and deliberate indifference to the rights and liberties of the public in general, and of PLAINTIFF's JENKINS and PARKER, and of persons in their class, situation, and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

- The use of excessive force on African American citizens

- The use of excessive force on the citizenry at large

- 4th Amendment violations, unlawful searches, and seizures

- 14th Amendment equal protection violations

- Using torture tactics in the course of interrogation.

- Failing to ensure officers were adequately trained and supervised

206. By reason of the aforementioned policies and practices by RANKIN CO., Plaintiffs were subjected to constitutional violations, beatings, torture, humiliation, excessive force, other torts, attempts to kill JENKINS, and other crimes described herein.

207. Defendant RANKIN CO., together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated, and through actions and inactions, thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies concerning the constitutional rights of JENKINS, PARKER, Plaintiff, and other individuals similarly situated

208. As a result of the acts or omissions by Defendant, JENKINS has suffered permanent physical injuries, permanent cognitive damage, long-term psychological damage, permanent disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage and numbness. Eddie Parker suffered injuries from his mistreatment, sought prompt medical attention, and also suffered long-term psychological damage from the trauma of the ordeal.

WHEREFORE, Plaintiffs MICHAEL JENKINS and EDDIE PARKER demand judgment against DEFENDANT RANKIN CO., in the full and fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages plus interest and costs.

## COUNT XI

## FALSE IMPRISONMENT

### ELWARD, MC'ALPIN, DEDMON, AND DEPUTIES JOHN DOE'S 1-3

209. Plaintiffs hereby incorporate paragraphs *1-87* as if fully set forth herein.

210. ELWARD, MC'ALPIN, DEDMON, AND DEPUTIES JOHN DOE'S 1-3 unlawfully broke

into the residence where JENKINS and PARKER resided and unlawfully imprisoned JENKINS and PARKER for nearly two hours.

211. Defendants ELWARD MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3, upon unlawful entry into the premises, immediately handcuffed JENKINS and PARKER FOR nearly two hours, committing false imprisonment upon Plaintiff.

212. The Defendants' actions were not objectively reasonable.

213. As a result of the acts or omissions by Defendants, JENKINS has suffered permanent physical injuries, permanent cognitive damage, long-term psychological damage, permanent disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage and numbness. Eddie Parker suffered injuries from his mistreatment, sought prompt medical attention, and has also suffered long-term psychological damage from the trauma of the ordeal.

214. At the time that the above-referenced false imprisonment was committed upon Plaintiff, the defendant officer was acting within the scope of their employment for and at the direction of Defendant.

215. WHEREFORE, Plaintiffs MICHAEL JENKINS and EDDIE PARKER demand judgment against DEFENDANT'S RANKIN CO., SHERIFF BRYAN BAILEY, in the full and fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages plus interest and costs.

## COUNT XII

## ASSAULT AND BATTERY

### ELWARD MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3

216. Plaintiff's JENKINS and PARKER hereby incorporate *Paragraphs 1-87* as if fully set forth herein.

217. The defendant deputies, without proper grounds, willfully and maliciously, repeatedly assaulted Plaintiffs by:

- Beating them, kicking and punching Plaintiffs,
- Placing guns to their heads and faces threatening to kill JENKINS and PARKER.
- Waterboarding Plainitff's
- Sexually Assaulting Plaintiffs
- Shooting Michael Corey Jenkins

218. Defendants ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 intended to cause a harmful or offensive contact with JENKINS and PARKER and committed battery upon Plaintiffs through numerous physical attacks and acts described herein

219. Each of the injuries suffered by Plaintiff was inflicted without provocation from the Plaintiffs, and while they were subdued and handcuffed and not presenting no immediate threat to anyone.

220. As a result of the acts by Defendants, JENKINS has suffered permanent physical injuries, permanent cognitive damage, long-term psychological damage, permanent disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage and numbness. Eddie Parker suffered injuries from his mistreatment, sought prompt medical attention, and also suffered long-term psychological damage from the trauma of the ordeal.

WHEREFORE, Plaintiffs MICHAEL JENKINS and EDDIE PARKER demand judgment against ELWARD, MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3 in the full

and fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages and punitive damages plus interest and costs.)

## COUNT XIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
ELWARD, MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3

221. Plaintiffs hereby incorporate paragraphs *1-87* as if fully set forth herein.

222. Plaintiffs JENKINS and PARKER allege that Defendants ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3, through extreme and outrageous conduct, intentionally and recklessly caused severe emotional distress to MICHAEL JENKINS and EDDIE PARKER.

223. Defendants intentionally committed the aforementioned extreme acts described in this Complaint against the handcuffed Plaintiffs, including acts of torture, waterboarding sexual assault, forcing Plaintiffs to shower naked, sexual assault with sexual devices (dildos), pointing guns to Plaintiff's heads and threatening to kill them, kidnapping them nearly two hours, pelting them with eggs and attempting to kill MICHAEL JENKINS BY WAY of placing a gun inside JENKINS' mouth and attempting to kill him.

224. Defendant ELWARD MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S actions, as set forth above, were rooted in an abuse of power or authority.

225. Defendant Officers' conduct, as set forth above, was undertaken with the intent to cause or with reckless disregard for the high probability that the conduct would cause severe emotional distress to JENKINS and PARKER.

226. As a result of the acts or omissions by Defendants, JENKINS has suffered permanent

physical injuries, permanent cognitive damage, long-term psychological damage, permanent

disfigurement, and impairment. One side of JENKINS face suffers permanent nerve damage

and numbness. Eddie Parker suffered injuries from his mistreatment, sought prompt medical

attention, and suffered long-term psychological damage from the trauma of the ordeal.

227. The acts of Defendants ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S

individually, jointly, and severally were a proximate cause as to the injuries and damages

sustained by Plaintiffs.

WHEREFORE, Plaintiffs MICHAEL JENKINS and EDDIE PARKER demand judgment

against ELWARD MC'ALPIN, DEDMON and DEPUTIES JOHN DOE'S 1-3 in the full and

fair amount of Four Hundred Million Dollars ($400,000,000), in compensatory damages and

punitive damages plus interest and costs.)

## JURY TRIAL DEMANDED

228. Plaintiff hereby demands a trial by jury pursuant to Federal Rules of Civil Procedure 38(b)

on all issues so triable.

Respectfully submitted on 6/12/ 2023 by:

**BLACK LAWYERS FOR JUSTICE**
(B.L.J.)

 _/s/_  MALIK SHABAZZ  ESQ /S/ 
**MALIK SHABAZZ, Esq.**
The   Law Office of Malik Shabazz, Esq.
[Pro Hac Vice Motion Pending]
D.C. Bar # 458434
6305 Ivy Lane,
Suite 608
Greenbelt, MD 20770

Email:Attorney.shabazz@yahoo.com
Tel: (301) 513-5445
Fax: (301) 513-5447
(Lead counsel for Plaintiff)


  /S/ TRENT WALKER ESQ /S/
**TRENT WALKER, Esq.**
The Law Offices of Trent Walker
M.S.B. #10475
5245 Keele Street
Suite A
Jackson, Mississippi
39206
Email:Trent@Trentwalkeresq.com
(Mississippi Local Counsel)
(601) 321-9540



**EXHIBIT 1**
**MICHAEL COREY JENKINS**
**BLACK LAWYERS FOR JUSTICE**

**Photo Credit: Jenkins Family**
**Member**
**BLACK LAWYERS FOR JUSTICE**



**EXHIBIT 2**
**RANKIN COUNTY SHERIFF HUNTER ELWARD**
**BLACK LAWYERS FOR JUSTICE**

**Photo Credit: TikTok**
WaltCoAct

| Seq # | Local Time [DD-MM-YYYY hh:mm:ss] | Event [Event Type] | Duration [Seconds] | Temp [Degrees Celsius] | Batt Remaining [%] |
|---|---|---|---|---|---|
| 3951 | 12 Jan 2023 23:38:29 | Safe | 5 | 22 | 83 |
| 3952 | 19 Jan 2023 20:24:23 | Armed | | 22 | 83 |
| 3953 | 19 Jan 2023 20:24:39 | Safe | 16 | 22 | 83 |
| 3954 | 24 Jan 2023 22:16:13 | Armed | | 18 | 83 |
| 3955 | | | | | |
| 3956 | | | | | |
| 3957 | | | | | |
| 3958 | | | | | |
| 3959 | | | | | |
| 3960 | | | | | |
| 3961 | | | | | |
| 3962 | | | | | |
| 3963 | | | | | |
| 3964 | | | | | |
| 3965 | | | | | |
| 3966 | | | | | |
| 3967 | | | | | |
| 3968 | | | | | |
| 3969 | | | | | |
| 3970 | | | | | |
| 3971 | | | | | |
| 3972 | | | | | |
| 3973 | | | | | |
| 3974 | | | | | |
| 3975 | | | | | |
| 3976 | | | | | |
| 3977 | | | | | |
| 3978 | | | | | |
| 3979 | | | | | |
| 3980 | | | | | |

**EXHIBIT 3**
**RANKIN COUNTY SHERIFF'S**
**TASER REPORT**
**BLACK LAWYERS FOR JUSTICE**

| Seq # | Local Time (DD/MM/YYYY hh:mm:ss) | Event (Event Type) | Duration (Seconds) | Temp (Degrees Celsius) | Batt Remaining (%) |
|---|---|---|---|---|---|
| 3981 | ███ | ███ | ███ | ███ | ███ |
| 3982 | ███ | ███ | ███ | ███ | ███ |
| 3983 | ███ | ███ | ███ | ███ | ███ |
| 3984 | ███ | ███ | ███ | ███ | ███ |
| 3985 | ███ | ███ | ███ | ███ | ███ |
| 3986 | ███ | ███ | ███ | ███ | ███ |
| 3987 | ███ | ███ | ███ | ███ | ███ |
| 3988 | ███ | ███ | ███ | ███ | ███ |
| 3989 | ███ | ███ | ███ | ███ | ███ |
| 3990 | ███ | ███ | ███ | ███ | ███ |
| 3991 | ███ | ███ | ███ | ███ | ███ |
| 3992 | ███ | ███ | ███ | ███ | ███ |
| 3993 | ███ | ███ | ███ | ███ | ███ |
| 3994 | ███ | ███ | ███ | ███ | ███ |
| 3995 | ███ | ███ | ███ | ███ | ███ |
| 3996 | ███ | ███ | ███ | ███ | ███ |
| 3997 | ███ | ███ | ███ | ███ | ███ |
| 3998 | ███ | ███ | ███ | ███ | ███ |
| 3999 | ███ | ███ | ███ | ███ | ███ |
| 4000 | ███ | ███ | ███ | ███ | ███ |
| 4001 | ███ | ███ | ███ | ███ | ███ |
| 4002 | ███ | ███ | ███ | ███ | ███ |
| 4003 | 24 Jan 2023 23:09:37 | Safe | 3 | 22 | 82 |
| 4004 | 25 Jan 2023 11:09:52 | Armed | | 14 | 82 |
| 4005 | 25 Jan 2023 11:09:53 | Safe | 1 | 15 | 82 |
| 4006 | 25 Jan 2023 11:09:54 | Armed | | 15 | 82 |
| 4007 | 25 Jan 2023 11:09:54 | Safe | 0 | 14 | 82 |
| 4008 | 25 Jan 2023 11:09:57 | Armed | | 14 | 82 |
| 4009 | 25 Jan 2023 11:09:58 | Safe | 1 | 15 | 82 |
| 4010 | 25 Jan 2023 11:09:58 | Armed | | 15 | 82 |

# EXHIBIT 3
## RANKIN COUNTY SHERIFF'S
## TASER REPORT
### BLACK LAWYERS FOR JUSTICE

| Seq # | Local Time (DD.MM.YYYY hh:mm:ss) | Event (Event Type) | Duration (Seconds) | Temp (Degree Celsius) | Batt Remaining (%) |
|-------|----------------------------------|--------------------|--------------------|-----------------------|---------------------|
| 4011 | 25 Jan 2023 11:09:58 | Trigger | 1 | | 82 |
| 4012 | 25 Jan 2023 11:09:59 | Safe | 1 | 15 | 82 |
| 4013 | 25 Jan 2023 11:10:59 | Armed | | 14 | 82 |
| 4014 | 25 Jan 2023 11:11:00 | Safe | 1 | 15 | 82 |
| 4015 | 25 Jan 2023 11:11:42 | USB Connected | | | |
| 4016 | 25 Jan 2023 11:01:35 | Time Sync | 25 Jan 2023 11:11:43 to 25 Jan 2023 11:01:35 | | |

**EXHIBIT 3**
**RANKIN COUNTY SHERIFF'S**
**TASER REPORT**
**BLACK LAWYERS FOR JUSTICE**

| Seq # | Local Time [DD-MM-YYYY hh:mm:ss] | Event [Event Type] | Duration (Seconds) | Temp [Degrees Celsius] | Batt Remaining [%] |
|-------|------------------------------|------------|---------|------|------|
| 2601 | 19 Jan 2023 20:29:20 | Armed | | 24 | 51 |
| 2602 | 19 Jan 2023 20:29:37 | Safe | 17 | 25 | 51 |
| 2603 | 19 Jan 2023 21:33:32 | Armed | | 21 | 51 |
| 2604 | 19 Jan 2023 21:34:26 | Safe | 54 | 23 | 51 |
| 2605 | 19 Jan 2023 21:35:54 | Armed | | 21 | 51 |
| 2606 | 19 Jan 2023 21:36:05 | Safe | 11 | 21 | 51 |
| 2607 | 19 Jan 2023 21:36:22 | Armed | | 21 | 51 |
| 2608 | 19 Jan 2023 21:36:22 | Safe | 0 | 22 | 51 |
| 2609 | 19 Jan 2023 21:36:23 | Armed | | 22 | 51 |
| 2610 | 19 Jan 2023 21:36:23 | Safe | 0 | 22 | 51 |
| 2611 | 19 Jan 2023 21:36:23 | Armed | | 22 | 51 |
| 2612 | 19 Jan 2023 21:36:23 | Safe | 0 | 21 | 51 |
| 2613 | 19 Jan 2023 21:36:24 | Armed | | 22 | 51 |
| 2614 | 19 Jan 2023 21:36:25 | Safe | 1 | 22 | 51 |
| 2615 | 19 Jan 2023 21:36:25 | Armed | | 22 | 51 |
| 2616 | 19 Jan 2023 21:36:26 | Safe | 1 | 22 | 51 |
| 2617 | 19 Jan 2023 21:36:32 | Armed | | 22 | 51 |
| 2618 | 19 Jan 2023 21:37:03 | Safe | 31 | 23 | 51 |
| 2619 | 19 Jan 2023 21:37:08 | Armed | | 23 | 51 |
| 2620 | 19 Jan 2023 21:37:49 | Safe | 41 | 24 | 51 |
| 2621 | 19 Jan 2023 21:37:54 | Armed | | 25 | 51 |
| 2622 | 19 Jan 2023 21:37:55 | Safe | 1 | 24 | 51 |
| 2623 | 19 Jan 2023 21:38:29 | Armed | | 23 | 51 |
| 2624 | 19 Jan 2023 21:38:58 | Safe | 29 | 25 | 51 |
| 2625 | 23 Jan 2023 13:30:14 | Armed | | 27 | 51 |
| 2626 | 23 Jan 2023 13:30:15 | Safe | 1 | 26 | 51 |
| 2627 | 24 Jan 2023 22:04:42 | Armed | | 23 | 51 |
| 2628 | 24 Jan 2023 22:04:46 | Safe | 4 | 24 | 51 |
| 2629 | ███ | ███ | ███ | ███ | ███ |
| 2630 | | | | | |

**EXHIBIT 3**
**RANKIN COUNTY SHERIFF'S**
**TASER REPORT**
BLACK LAWYERS FOR JUSTICE

| Seq # | Local Time<br>(DD:MM:YYYY:hh:mm:ss) | Event<br>[Event Type] | Duration<br>[Seconds] | Temp<br>[Degrees Celsius] | Batt Remaining<br>[%] |
|---|---|---|---|---|---|
| 2631 | | | | | |
| 2632 | | | | | |
| 2633 | | | | | |
| 2634 | | | | | |
| 2635 | | | | | |
| 2636 | | | | | |
| 2637 | | | | | |
| 2638 | | | | | |
| 2639 | | | | | |
| 2640 | | | | | |
| 2641 | | | | | |
| 2642 | | | | | |
| 2643 | | | | | |
| 2644 | | | | | |
| 2645 | | | | | |
| 2646 | | | | | |
| 2647 | | | | | |
| 2648 | | | | | |
| 2649 | | | | | |
| 2650 | | | | | |
| 2651 | | | | | |
| 2652 | | | | | |
| 2653 | | | | | |
| 2654 | | | | | |
| 2655 | | | | | |
| 2656 | | | | | |
| 2657 | | | | | |
| 2658 | | | | | |
| 2659 | | | | | |
| 2660 | | | | | |

# EXHIBIT 3
## RANKIN COUNTY SHERIFF'S
## TASER REPORT
### BLACK LAWYERS FOR JUSTICE

| Seq # | Local Time [DD-MM-YYYY hh:mm:ss] | Event [Event Type] | Duration [Seconds] | Temp [Degrees Celsius] | Batt Remaining [%] |
|---|---|---|---|---|---|
| 2661 | | | | | |
| 2662 | | | | | |
| 2663 | | | | | |
| 2664 | | | | | |
| 2665 | | | | | |
| 2666 | | | | | |
| 2667 | | | | | |
| 2668 | | | | | |
| 2669 | | | | | |
| 2670 | | | | | |
| 2671 | | | | | |
| 2672 | | | | | |
| 2673 | | | | | |
| 2674 | | | | | |
| 2675 | 24 Jan 2023 22:58:41 | Safe | 2 | 26 | 50 |
| 2676 | 26 Jan 2023 08:57:19 | Armed | | 13 | 50 |
| 2677 | 26 Jan 2023 08:57:20 | Safe | 1 | 13 | 50 |
| 2678 | 26 Jan 2023 08:57:20 | Armed | | 14 | 50 |
| 2679 | 26 Jan 2023 08:57:21 | Safe | 1 | 14 | 50 |
| 2680 | 26 Jan 2023 10:40:19 | Armed | | 23 | 50 |
| 2681 | 26 Jan 2023 10:40:20 | Safe | 1 | 23 | 50 |
| 2682 | 26 Jan 2023 10:43:46 | USB Connected | | | |
| 2683 | 26 Jan 2023 10:45:15 | Time Sync | 26 Jan 2023 10:43:48 to 26 Jan 2023 10:45:15 | | |

**EXHIBIT 3**
**RANKIN COUNTY SHERIFF'S**
**TASER REPORT**
BLACK LAWYERS FOR JUSTICE

Agency: RCSO          Incident No: 2023011577

Author:

Entered Date/Time:  1/25/2023   6:17     Report Type/Sequence: I   1

Title:

On 01/24/2023 I, Investigator [redacted] along with other deputies responded to 135 Conerly Road in reference to reports of narcotic activity. Upon arrival I came in contact with a black male [redacted] Michael Jenkins. [redacted] two bags containing what appeared to be Methamphetamine.



I noticed a firearm [redacted].

I called for dispatch to send medical to our location. Once Medics arrived Jenkins was transported by ambulance and all units backed out of the residence to await the arrival of MBI.

Parker was transported to Rankin County Jail for possession of drug paraphernalia.

END

AP-PRAR 002

**EXHIBIT 4**
**RANKIN COUNTY INCIDENT REPORT**
**BLACK LAWYERS FOR JUSTICE**



**EXHIBIT 5**
**CRIME SCENE 1 - DILDO**
BLACK LAWYERS FOR JUSTICE



**EXHIBIT 6**
**CRIME SCENE 2 - EGGS**
BLACK LAWYERS FOR JUSTICE

Name: Michael Corey Jenkins | DOB: ████ | MRN: ███ | PCP: NONE, NO PCP | Legal Name: Michael Corey Jenkins

# Note From Your Admission on 01/25/23

## Progress Notes by Dr. L Ling, MD at 01/30/23 0550

Attestation signed by Dr. C Iwuchukwu, MD at 02/26/23 1432

I saw and evaluated the patient with the resident on 1/30/23, and I agree with the findings and plan as documented in resident's note.

Chinenye Iwuchukwu, MD MPH
Trauma/ Acute Care Surgery
P:601-929-3218

| Trauma Progress Note |
|---|

**Patient:** Unknown Bo Jade
**Patient MRN:** ████
**Patient DOB:** ████

**Admit Date: 1/25/2023**
**Days in Hospital Hospital Day: 6**
**POD 4 Days Post-Op**

**Service date:** 1/30/2023
**Patient location:** UH 317/UH 317-01

**Referring physician:** Dr. Zaza

**Reason for Consult:** Post-trauma management

| HPI |
|---|

Michael Jenkins is a 32 year old male who presented to the ED as an alpha trauma s/p GSW to the right face. Per EMS report, the police called EMS to the scene after the patient was found to have sustained a GSW to the right face. EMS stated that the patient was GCS15 and reported that he was cold. He received a 500cc bolus in route to the hospital. Upon arrival to the trauma bay, patient was unable to move mouth to speak, but reported being cold. There were copious bloody secretions in the mouth and bifurcated tongue noted. There was concern of airway compromise and the patient was intubated for airway protection. During the procedure, the patient became bradycardic and was given 0.5mg atropine. He was giving 2u PRBC, 1PLT, 2g calcium gluconate and 5u vasopressin in the trauma bay before going to the CT scanner. The patient then went to the OR for a right neck exploration for an expanding neck hematoma.

**Procedure(s):**
1/25: Right neck exploration with evacuation of hematoma. Open tracheostomy and Direct laryngoscopy
1/26: Direct laryngoscopy with repair of tongue laceration/partial avulsion. Maxillomandibular fixation

**EXHIBIT 7**
**MEDICAL RECORDS**
BLACK LAWYERS FOR JUSTICE

**INTERVAL HISTORY**

**1/25:** Patient presented as alpha trauma to the ED and was taken to the OR as a level A due to hypotension and concern for continued hemorrhage. He underwent Right neck exploration with evacuation of hematoma. Open tracheostomy and Direct laryngoscopy. Through out the day patient intermittently hypotensive through out the day with MAPs of 60 left femoral QVC placed and Dual lumen left subclavian placed. Repeat CTA obtained which showed concern for contrast extravasation and traumatic AVM.

**1/26:** Underwent direct laryngoscopy with repair of tongue laceration/partial avulsion and Maxillomandibular fixation.

**1/27:** NAEON. POD1 s/p MMF & DL w/ tongue laceration repair. No pressor requirements overnight. No significant epistaxis or oral cavity bleeding. Wean ventilator to PS as tolerated 1/28: Remains on trach collar. Hemodynamically stable. Restarted DVT ppx, no bleeding. 1/29: Remained on trach collar, no acute events. Hemodynamically stable. Able to communicate via yes/no nodding. 1/30: will consider switching out cuffed trach for non-cuffed trach. Otherwise, NAEON.

**Review of Systems**

ROS: Pertinent 10 system ROS noted in Interval HX or negative

No past medical history on file.

**Past Surgical History:**

Procedure Laterality Date • BRONCHOSCOPY, RIGID N/A 1/26/2023 *Performed by Andrea F. Lewis, MD at UH DAY SURGERY OR*

• CLOSED TREATMENT MANDIBULAR FRACTURE N/A 1/26/2023 *Performed by Andrea F. Lewis, MD at UH DAY SURGERY OR*

• exploration right neck, tracheostomy, DL Right 1/25/2023 *Performed by Mouayyad Zaza, MD at UH ADULT OR*

• IR ARTERIOGRAM CEREBRAL 1/25/2023 *IR ARTERIOGRAM CEREBRAL 1/25/2023 Gustavo Luzardo, MD UH INTERVENTIONAL RADIOLOGY*

• LARYNGOSCOPY, RIGID N/A 1/26/2023 *Performed by Andrea F. Lewis, MD at UH DAY SURGERY OR*

**Social History**

Socioeconomic History
  • Marital status: Unknown
      Spouse name: Not on file
  • Number of children: Not on file
  • Years of education: Not on file
  • Highest education level: Not on file
Occupational History
  • Not on file
Tobacco Use
  • Smoking status: Unknown
  • Smokeless tobacco: Not on file
Substance and Sexual Activity
  • Alcohol use: Defer
  • Drug use: Defer
  • Sexual activity: Defer
Other Topics Concern
  • Not on file
Social History Narrative
  • Not on file

MyChart® licensed from Epic Systems Corporation © 1999 - 2023

**EXHIBIT 7**
**MEDICAL RECORDS**
**BLACK LAWYERS FOR JUSTICE**



## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
Commissioner Sean Tindell

---

**FOR IMMEDIATE RELEASE**
**January 25, 2023**

**Contact: Bailey Martin**
**Email: bmartin@dps.ms.gov**

### MBI INVESTIGATING OFFICER INVOLVED SHOOTING IN BRAXTON

**JACKSON, Miss**. – The Mississippi Bureau of Investigation (MBI) is investigating an officer-involved shooting that occurred on January 24th, 2023, at approximately 11:45 p.m. near 135 Conerly Road in Braxton, Mississippi.

Rankin County Sheriff's Department deputies were conducting a narcotics investigation when they encountered a subject that displayed a gun towards the deputies. The subject was transported to a nearby hospital. The officers received no injuries.

MBI is currently assessing this critical incident and gathering evidence. Upon completing the investigation, agents will share their findings with the Attorney General's Office.

##

## EXHIBIT 8
## MDPS STATEMENT
### BLACK LAWYERS FOR JUSTICE



**EXHIBIT 9**
**CRIME SCENE**
BLACK LAWYERS FOR JUSTICE



f

**EXHIBIT 10**
**Rankin County Sheriff Brett McAlpin**
**BLACK LAWYERS FOR JUSTICE**

**Photo Credit: WLBT**
**BLACK LAWYERS FOR JUSTICE**



**EXHIBIT 11**
**Eddie Parker**
BLACK LAWYERS FOR JUSTICE



**EXHIBIT 11**
**Eddie Parker**
BLACK LAWYERS FOR JUSTICE



**EXHIBIT 12**
**Rankin County Sherriff Bryan Bailey**
BLACK LAWYERS FOR JUSTICE

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MICHAEL C. JENKINS
EDDIE T. PARKER

**DEFENDANTS**

RANKIN COUNTY, SHERIFF BRYAN BAILEY, HUNTER ELWARD, CHRISTIAN DEADMON, BRETT MC'ALPIN

**(b)** County of Residence of First Listed Plaintiff    RANKIN COUNTY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    RANKIN COUNTY
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
TRENT WALKER, Esq.   The Law Offices of Trent Walker
M.S.B. #10475
5245 Keele Street   Suite A   Jackson, Mississippi

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability   Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |   ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☒ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander   Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability   ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 340 Marine | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability   **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability   ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury   ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice   ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations   ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment   ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other   **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education   ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983; 42 U.S.C. § 1981
Brief description of cause:
ACTION FOR DEPRIVATION OF CIVIL RIGHT UNDER THE COLOR OF LAW

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
$400,000,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 06/12/2023 | /s/TRENT WALKER/S/ ESQ |

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

AMSSDC-5136025