## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**MICHAEL COREY JENKINS,**                                              **PLAINTIFFS**
**EDDIE TERRELL PARKER**

**v.**                                                    **CAUSE NO. 3:23cv374-DPJ-FKB**

**RANKIN COUNTY, MISSISSIPPI,**
**RANKIN CO. SHERIFF BRYAN BAILEY,**
**Individually, and in his official capacity; et al.**                **DEFENDANTS**
_____

### ANSWER AND DEFENSES OF RANKIN COUNTY AND SHERIFF BRYAN BAILEY
_____

**NOW COME** Defendants, Rankin County, Mississippi and Sheriff Bryan Bailey, in his

individual and official capacities, by and through their undersigned counsel of record, and

submit this, their Answer and Defenses in the above styled and numbered cause, in response

to the [1] Complaint filed herein against them, as follows:

### FIRST DEFENSE

These Defendants specifically assert and invoke all defenses available to them as set

forth in FED. R. CIV. P. 12(b)(1) through 12(b)(7) for which a good faith legal and/or factual

basis exists or may exist in their favor.

### SECOND DEFENSE

These Defendants affirmatively assert and invoke all substantive and procedural

defenses available unto them for which a good faith legal and/or factual basis exists or may

exist in their favor pursuant to MISS. CODE ANN. § 11-46-1 *et seq.*, specifically including MISS.

CODE ANN. §§ 11-46-5, 11-46-7, 11-46-9, 11-46-11, 11-46-13, 11-46-15, and 11-46-17 as to

Plaintiffs' state law claims. To the extent that Plaintiffs' [1] Complaint, or any subsequently

filed pleading, may seek a trial by jury on state law claims against these Defendants, they

**EXHIBIT 2**

move this Court to strike any such jury demand on the basis that the same is prohibited by the aforesaid statutes.

### THIRD DEFENSE

These Defendants possess sovereign, absolute and/or qualified immunity herein from suit and/or liability and/or damages.

### FOURTH DEFENSE

The [1] Complaint fails to state a claim upon which relief can be granted as to these Defendants.

### FIFTH DEFENSE

These Defendants did not breach any duty owed to Plaintiffs, nor did they violate any right or privilege of Plaintiffs, and are, therefore, not liable in damages.

### SIXTH DEFENSE

These Defendants, at all times complained of herein, acted in good faith and without malice, without reckless disregard, without injurious intent, without evil motive, without deliberate indifference, without any intent to cause harm, and are not guilty of tortious conduct or omission.  The actions taken by these Defendants were taken in good faith and in good faith reliance upon then-existing law.

### SEVENTH DEFENSE

The matters set forth in Plaintiffs' [1] Complaint herein do not rise to the level of a constitutional violation and such matters are improperly before this Court.

### EIGHTH DEFENSE

These Defendants committed no act or omission which caused any injury, damage, and/or deprivation to Plaintiffs and they are, therefore, not liable in damages.

**NINTH DEFENSE**

As a matter of law, Plaintiffs are not entitled to any relief from Rankin County and/or Sheriff Bailey.

**TENTH DEFENSE**

Plaintiffs' alleged injuries or harms were caused, unforeseeably, by persons, forces, or entities for whom / which Rankin County and/or Sheriff Bailey are not liable, such being efficient, intervening, superseding causes, breaking any alleged causative link to these Defendants.

**ELEVENTH DEFENSE**

**NOW COME** Rankin County and Sheriff Bailey, by and through counsel, and state that unless specifically admitted herein, these Defendants deny all allegations of the [1] Complaint.

For answers to the allegations of the [1] Complaint, Rankin County and Sheriff Bailey state as follows:

To the extent there are any allegations against these Defendants in the introductory paragraph of Plaintiffs' [1] Complaint, same are denied.

**JURISDICTION AND VENUE**

1.      In response to ¶ 1 of Plaintiffs' [1] Complaint, these Defendants admit that federal question jurisdiction exists herein and that venue is proper with this Court.  Except where otherwise specifically admitted herein, the allegations in ¶ 1 of Plaintiff's [1] Complaint are denied.

**NOTICE OF CLAIM**

2.      The allegations in ¶ 2 of Plaintiffs' Complaint are denied.

## **PARTIES**

3.      These Defendants are without specific information or belief to admit or deny the allegations in ¶ 3 of Plaintiffs' [1] Complaint, and accordingly deny same.

4.      These Defendants are without specific information or belief to admit or deny the allegations in ¶ 4 of Plaintiffs' [1] Complaint, and accordingly deny same.

5.      These Defendants are without specific information or belief to admit or deny the allegations in ¶ 5 of Plaintiffs' [1] Complaint, and accordingly deny same.

6.      These Defendants are without specific information or belief to admit or deny the allegations in ¶ 6 of Plaintiffs' [1] Complaint, and accordingly deny same.

7.      These Defendants are without specific information or belief to admit or deny the allegations in ¶ 7 of Plaintiffs' [1] Complaint, and accordingly deny same.

8.      In response to ¶ 8 of Plaintiffs' [1] Complaint, these Defendants admit that Rankin County, Mississippi is a political subdivision within the State of Mississippi. Except where otherwise specifically admitted herein, the allegations in ¶ 8 of Plaintiffs' [1] Complaint are denied.

9.      In response to ¶ 9 of Plaintiffs' [1] Complaint, these Defendants admit that Bryan Bailey is the duly elected and acting Sheriff of Rankin County, Mississippi, and that he is subject to and abided by any and all laws, rules, and/or regulations applicable to him. Except where otherwise specifically admitted herein, the allegations in ¶ 9 of Plaintiffs' [1] Complaint are denied.

10.      In response to ¶ 10 of Plaintiffs' [1] Complaint, these Defendants admit that Rankin County may be served with summons according to law. Except where otherwise specifically admitted herein, the allegations in ¶ 10 of Plaintiffs' [1] Complaint are denied.

11.     As Plaintiffs have not identified the John Doe Defendants 1-3, these Defendants are without specific information and/or belief to admit or deny their whereabouts, and accordingly deny said allegations in ¶ 11 of Plaintiffs' [1] Complaint. Except where otherwise specifically admitted herein, the allegations in ¶ 11 of Plaintiffs' [1] Complaint are denied.

### STATEMENT OF FACTS

12.     In response to ¶ 12 of Plaintiffs' [1] Complaint, these Defendants admit that some of the events at issue occurred in Rankin County, Mississippi. Except where otherwise specifically admitted herein, the allegations in ¶ 12 of Plaintiffs' [1] Complaint are denied.

13.     In response to ¶ 13 of Plaintiffs' [1] Complaint, these Defendants admit that Brett McAlpin, Jeffrey Middleton, Christian Dedmon, Hunter Elward, and/or Daniel Opdyke (collectively "the former deputies") have been convicted of various criminal offenses, including but not limited to breaking and entering with the intent to commit an assault, concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 13 of Plaintiffs' [1] Complaint are denied.

14.     In response to ¶ 14 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 14 of Plaintiffs' [1] Complaint are denied.

15.     In response to ¶ 15 of Plaintiffs' [1] Complaint, these Defendants admit that according to most recent census data, Rankin County, Mississippi is comprised of 71.9% "White alone, not Hispanic or Latino" and 22.7% "Black or African American alone." Except where otherwise specifically admitted herein, the allegations in ¶ 15 of Plaintiffs' [1] Complaint are denied.

16.     In response to ¶ 16 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 16 of Plaintiffs' [1] Complaint are denied. Rankin County specifically denies that it possesses "stolen equipment."

<u>Warrantless Entry, Kidnapping, and Racial Bias</u>

17.     In response to ¶ 17 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 17 of Plaintiffs' [1] Complaint are denied.

18.     In response to ¶ 18 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 18 of Plaintiffs' [1] Complaint are denied.

19.     In response to ¶ 19 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 19 of Plaintiffs' [1] Complaint are denied.

20.     In response to ¶ 20 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 20 of Plaintiffs' [1] Complaint are denied.

21.     In response to ¶ 21 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 21 of Plaintiffs' [1] Complaint are denied.

22.     In response to ¶ 22 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 22 of Plaintiffs' [1] Complaint are denied.

23.     In response to ¶ 23 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 23 of Plaintiffs' [1] Complaint are denied.

24.     In response to ¶ 24 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 24 of Plaintiffs' [1] Complaint are denied.

25.     In response to ¶ 25 of Plaintiffs' [1] Complaint, these Defendants admit that Bryan Bailey is the duly elected and acting Sheriff of Rankin County, Mississippi, and that he is subject to and abided by any and all laws, rules, and/or regulations applicable to him. Except where otherwise specifically admitted herein, the allegations in ¶ 25 of Plaintiffs' [1] Complaint are denied.

<u>Taser Use While Handcuffed</u>

26.     In response to ¶ 26 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 26 of Plaintiffs' [1] Complaint are denied.

27.     In response to ¶ 27 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 27 of Plaintiffs' [1] Complaint are denied.

28.     In response to ¶ 28 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 28 of Plaintiffs' [1] Complaint are denied.

29.     In response to ¶ 29 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 29 of Plaintiffs' [1] Complaint are denied.

<u>Waterboarding Acts</u>

30.     In response to ¶ 30 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 30 of Plaintiffs' [1] Complaint are denied.

31.    As ¶ 31 of Plaintiffs' [1] Complaint does not contain any allegations against these Defendants, they are not required to admit or deny same. To the extent that ¶ 31 of Plaintiffs' [1] Complaint does contain allegations against these Defendants, same are denied.

32.    As ¶ 32 of Plaintiffs' [1] Complaint does not contain any allegations against these Defendants, they are not required to admit or deny same. To the extent that ¶ 32 of Plaintiffs' [1] Complaint does contain allegations against these Defendants, same are denied.

33.    In response to ¶ 33 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 33 of Plaintiffs' [1] Complaint are denied.

34.    In response to ¶ 34 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 34 of Plaintiffs' [1] Complaint are denied.

35.    In response to ¶ 35 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 35 of Plaintiffs' [1] Complaint are denied.

<u>Sexual Assault and Humiliation</u>

36.    In response to ¶ 36 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 36 of Plaintiffs' [1] Complaint are denied.

37.    In response to ¶ 37 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 37 of Plaintiffs' [1] Complaint are denied.

38.    In response to ¶ 38 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 38 of Plaintiffs' [1] Complaint are denied.

39.    In response to ¶ 39 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 39 of Plaintiffs' [1] Complaint are denied.

40.    In response to ¶ 40 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 40 of Plaintiffs' [1] Complaint are denied.

41.    In response to ¶ 41 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 41 of Plaintiffs' [1] Complaint are denied.

42.    In response to ¶ 42 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the

incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 42 of Plaintiffs' [1] Complaint are denied.

43.    In response to ¶ 43 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 43 of Plaintiffs' [1] Complaint are denied.

44.    In response to ¶ 44 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 44 of Plaintiffs' [1] Complaint are denied.

45.    In response to ¶ 45 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 45 of Plaintiffs' [1] Complaint are denied.

46.    In response to ¶ 46 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 46 of Plaintiffs' [1] Complaint are denied.

47.    In response to ¶ 47 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 47 of Plaintiffs' [1] Complaint are denied.

48.      In response to ¶ 48 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 48 of Plaintiffs' [1] Complaint are denied.

49.      In response to ¶ 49 of Plaintiffs' [1] Complaint, these Defendants admit that Bryan Bailey is the duly elected and acting Sheriff of Rankin County, Mississippi. Further, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 49 of Plaintiffs' [1] Complaint are denied.

<u>Threats to Kill</u>

50.      In response to ¶ 50 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 50 of Plaintiffs' [1] Complaint are denied.

51.      These Defendants are without specific information and/or belief to admit or deny the allegations in ¶ 51 of Plaintiff's Complaint, and accordingly, deny same.

52.      In response to ¶ 52 of Plaintiffs' [1] Complaint, these Defendants admit that Bryan Bailey is the duly elected and acting Sheriff of Rankin County, Mississippi. Further, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 52 of Plaintiffs' [1] Complaint are denied.

<u>Attempt to Kill Michael Corey Jenkins</u>

53.    In response to ¶ 53 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 53 of Plaintiffs' [1] Complaint are denied.

54.    In response to ¶ 54 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 54 of Plaintiffs' [1] Complaint are denied.

55.    In response to ¶ 55 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 55 of Plaintiffs' [1] Complaint are denied.

56.    In response to ¶ 56 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 56 of Plaintiffs' [1] Complaint are denied.

57.    These Defendants are without specific information and/or belief to admit or deny the allegations in ¶ 57 of Plaintiff's Complaint, and accordingly, deny same.

58.    In response to ¶ 58 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 58 of Plaintiffs' [1] Complaint are denied.

59.    These Defendants are without specific information and/or belief to admit or deny the allegations in ¶ 59 of Plaintiff's Complaint, and accordingly, deny same.

60.    In response to ¶ 60 of Plaintiffs' [1] Complaint, these Defendants admit that Bryan Bailey is the duly elected and acting Sheriff of Rankin County, Mississippi. Further, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 60 of Plaintiffs' [1] Complaint are denied.

61.    These Defendants are without specific information and/or belief to admit or deny the allegations in ¶ 61 of Plaintiff's Complaint, and accordingly, deny same.

Failure to Intervene / Failure to Aid Jenkins

62.    In response to ¶ 62 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 62 of Plaintiffs' [1] Complaint are denied.

63.    In response to ¶ 63 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 63 of Plaintiffs' [1] Complaint are denied.

64.    In response to ¶ 64 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 64 of Plaintiffs' [1] Complaint are denied.

65.     In response to ¶ 65 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 65 of Plaintiffs' [1] Complaint are denied.

66.     In response to ¶ 66 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 66 of Plaintiffs' [1] Complaint are denied.

67.     In response to ¶ 67 of Plaintiffs' [1] Complaint, these Defendants admit that Jenkins received medical attention from paramedics and/or at UMMC. Except where otherwise specifically admitted herein, the allegations in ¶ 67 of Plaintiffs' [1] Complaint are denied.

68.     These Defendants are without specific information and/or belief to admit or deny the allegations in ¶ 68 of Plaintiff's Complaint, and accordingly, deny same.

69.     In response to ¶ 69 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 69 of Plaintiffs' [1] Complaint are denied.

70.     These Defendants are without specific information and/or belief to admit or deny the allegations in ¶ 70 of Plaintiff's Complaint, and accordingly, deny same.

Supervisory Liability by Bailey and Monell Violations by Rankin County

71.     In response to ¶ 71 of Plaintiffs' [1] Complaint, these Defendants admit that the U.S. District Court for the Southern District of Mississippi entered the [102] Order in

*Barrett v. City of Pelahatchie*, No. 3:21cv124-HTW-LGI [Dkt. 102] (S.D. Miss. Mar. 17, 2023), the contents of which are contained therein. Except where otherwise specifically admitted herein, the allegations in ¶ 71 of Plaintiffs' [1] Complaint are denied.

72.     In response to ¶ 72 of Plaintiffs' [1] Complaint, these Defendants admit that the U.S. District Court for the Southern District of Mississippi entered the [102] Order in *Barrett v. City of Pelahatchie*, No. 3:21cv124-HTW-LGI [Dkt. 102] (S.D. Miss. Mar. 17, 2023), the contents of which are contained therein. Except where otherwise specifically admitted herein, the allegations in ¶ 72 of Plaintiffs' [1] Complaint are denied.

73.     In response to ¶ 73 of Plaintiffs' [1] Complaint, these Defendants admit that Bryan Bailey is the duly elected and acting Sheriff of Rankin County, Mississippi. Except where otherwise specifically admitted herein, the allegations in ¶ 73 of Plaintiffs' [1] Complaint are denied.

74.     The allegations in ¶ 74 of Plaintiff's [1] Complaint are denied.

75.     The allegations in ¶ 75 of Plaintiff's [1] Complaint are denied.

76.     In response to ¶ 76 of Plaintiffs' [1] Complaint, these Defendants admit that the holding in *Gerhart v. Barnes*, 724 F. App'x 316 (5th Cir. 2018) speaks for itself. Except where otherwise specifically admitted herein, the allegations in ¶ 76 of Plaintiffs' [1] Complaint are denied.

77.     In response to ¶ 77 of Plaintiffs' [1] Complaint, these Defendants admit that the plaintiffs' complaints, with amendments, and their answers to same, are contained in the docket of the Southern District of Mississippi in litigation styled *Gerhart v. Rankin County* and bearing cause number 3:11cv586-HTW-LRA. Except where otherwise specifically admitted herein, the allegations in ¶ 77 of Plaintiffs' [1] Complaint are denied.

78.     The allegations in ¶ 78 of Plaintiff's [1] Complaint are denied.

79.     The allegations in ¶ 79 of Plaintiff's [1] Complaint are denied.

80.     In response to ¶ 80 of Plaintiffs' [1] Complaint, these Defendants admit that Elward assisted with subduing Damien Cameron on or around July 26, 2021, and that Cameron departed this life the following day.  Except where otherwise specifically admitted herein, the allegations in ¶ 80 of Plaintiffs' [1] Complaint are denied.

81.     The allegations in ¶ 81 of Plaintiff's [1] Complaint are denied.

82.     The allegations in ¶ 82 of Plaintiff's [1] Complaint are denied.

83.     The allegations in ¶ 83 of Plaintiff's [1] Complaint are denied.

84.     In response to ¶ 84 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 84 of Plaintiffs' [1] Complaint are denied. These Defendants specifically deny that Deputy Napoleon Valino was involved in the incident at issue.

85.     The allegations in ¶ 85 of Plaintiff's [1] Complaint are denied.

86.     In response to ¶ 86 of Plaintiffs' [1] Complaint, these Defendants admit that Sheriff Bailey has a budget in compliance with Miss. Code Ann. § 19-25-13. Except where otherwise specifically admitted herein, the allegations in ¶ 86 of Plaintiffs' [1] Complaint are denied.

87.     In response to ¶ 87 of Plaintiffs' [1] Complaint, these Defendants admit that Plaintiffs attach exhibits to their [1] Complaint. Except where otherwise specifically admitted herein, the allegations in ¶ 87 of Plaintiffs' [1] Complaint are denied.

**COUNT I – DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C § 1983 – EXCESSIVE FORCE**
**ELWARD, MCALPIN, DEDMON, and DEPUTIES JOHN DOES 1-3**
**(Attempting to Kill Michael C. Jenkins)**

88.     In response to ¶ 88 of Plaintiffs' [1] Complaint, Rankin County and Sheriff Bailey re-allege and restate herein the admissions and/or denials herein.

89.     In response to ¶ 89 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 89 of Plaintiffs' [1] Complaint are denied.

90.     In response to ¶ 90 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 90 of Plaintiffs' [1] Complaint are denied.

91.     In response to ¶ 91 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 91 of Plaintiffs' [1] Complaint are denied.

92.     These Defendants are without specific information and/or belief to admit or deny the allegations in ¶ 92 of Plaintiff's Complaint, and accordingly, deny same.

93.     In response to ¶ 93 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 93 of Plaintiffs' [1] Complaint are denied.

94.     The allegations in ¶ 94 of Plaintiffs' [1] Complaint are denied.

<u>Punitive Damages</u>

95.     To the extent ¶ 95 of Plaintiffs' [1] Complaint contains allegations against Rankin County and/or Sheriff Bailey, same are denied.

96.     In response to ¶ 96 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 96 of Plaintiffs' [1] Complaint are denied.

97.     In response to ¶ 97 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 97 of Plaintiffs' [1] Complaint are denied.

98.     Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 98 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in nature, or of any kind or quantum whatsoever. Further, Rankin County specifically denies that it can be liable for punitive damages under § 1983.

### **COUNT II – DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C § 1983**
**ELWARD, MCALPIN, DEDMON, and DEPUTIES JOHN DOES 1-3**
**(Unconstitutional Search and Seizure)**

99.     In response to ¶ 99 of Plaintiffs' [1] Complaint, Rankin County and Sheriff Bailey re-allege and restate herein the admissions and/or denials herein.

100.    In response to ¶ 100 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 100 of Plaintiffs' [1] Complaint are denied.

101.    In response to ¶ 101 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 101 of Plaintiffs' [1] Complaint are denied.

102.    In response to ¶ 102 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 102 of Plaintiffs' [1] Complaint are denied.

103.    In response to ¶ 103 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 103 of Plaintiffs' [1] Complaint are denied.

104.    In response to ¶ 104 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 104 of Plaintiffs' [1] Complaint are denied.

105.    In response to ¶ 105 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the

incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 105 of Plaintiffs' [1] Complaint are denied.

106.    In response to ¶ 106 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 106 of Plaintiffs' [1] Complaint are denied.

107.    The allegations in ¶ 107 of Plaintiffs' [1] Complaint are denied.

<u>Punitive Damages</u>

108.    To the extent ¶ 108 of Plaintiffs' [1] Complaint contains allegations against Rankin County and/or Sheriff Bailey, same are denied.

109.    In response to ¶ 109 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 109 of Plaintiffs' [1] Complaint are denied.

110.    In response to ¶ 110 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 110 of Plaintiffs' [1] Complaint are denied.

111.    Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 111 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in

nature, or of any kind or quantum whatsoever. Further, Rankin County specifically denies that it can be liable for punitive damages under § 1983.

## COUNT III – DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C § 1983
### ELWARD, MCALPIN, DEDMON, and DEPUTIES JOHN DOES 1-3
### (Excessive Force – Taser Use)

112.    In response to ¶ 112 of Plaintiffs' [1] Complaint, Rankin County and Sheriff Bailey re-allege and restate herein the admissions and/or denials herein.

113.    In response to ¶ 113 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 113 of Plaintiffs' [1] Complaint are denied.

114.    In response to ¶ 114 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 114 of Plaintiffs' [1] Complaint are denied.

115.    In response to ¶ 115 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 115 of Plaintiffs' [1] Complaint are denied.

116.    In response to ¶ 116 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 116 of Plaintiffs' [1] Complaint are denied.

117.    In response to ¶ 117 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 117 of Plaintiffs' [1] Complaint are denied.

118.    The allegations in ¶ 118 of Plaintiffs' [1] Complaint are denied.

Punitive Damages

119.    To the extent ¶ 119 of Plaintiffs' [1] Complaint contains allegations against Rankin County and/or Sheriff Bailey, same are denied.

120.    In response to ¶ 120 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 120 of Plaintiffs' [1] Complaint are denied.

121.    In response to ¶ 121 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 121 of Plaintiffs' [1] Complaint are denied.

122.    Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 122 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in nature, or of any kind or quantum whatsoever. Further, Rankin County specifically denies that it can be liable for punitive damages under § 1983.

**COUNT IV – DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C § 1983**
**ELWARD, MCALPIN, DEDMON, and DEPUTIES JOHN DOES 1-3**
**(Excessive Force – Physical Assaults)**

123.   In response to ¶ 123 of Plaintiffs' [1] Complaint, Rankin County and Sheriff Bailey re-allege and restate herein the admissions and/or denials herein.

124.   In response to ¶ 124 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 124 of Plaintiffs' [1] Complaint are denied.

125.   In response to ¶ 125 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 125 of Plaintiffs' [1] Complaint are denied.

126.   In response to ¶ 126 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 126 of Plaintiffs' [1] Complaint are denied.

127.   In response to ¶ 127 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 127 of Plaintiffs' [1] Complaint are denied.

128.   In response to ¶ 128 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the

incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 128 of Plaintiffs' [1] Complaint are denied.

129.    In response to ¶ 129 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 129 of Plaintiffs' [1] Complaint are denied.

130.    The allegations in ¶ 130 of Plaintiffs' [1] Complaint are denied.

<u>Punitive Damages</u>

131.    To the extent ¶ 131 of Plaintiffs' [1] Complaint contains allegations against Rankin County and/or Sheriff Bailey, same are denied.

132.    In response to ¶ 132 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 132 of Plaintiffs' [1] Complaint are denied.

133.    In response to ¶ 133 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 133 of Plaintiffs' [1] Complaint are denied.

134.    Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 134 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in

nature, or of any kind or quantum whatsoever. Further, Rankin County specifically denies that it can be liable for punitive damages under § 1983.

<u>**COUNT V – DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C § 1983**</u>
**ELWARD, MCALPIN, DEDMON, and DEPUTIES JOHN DOES 1-3**
**(Unreasonable Seizure, Excessive Force - Waterboarding)**

135.    In response to ¶ 135 of Plaintiffs' [1] Complaint, Rankin County and Sheriff Bailey re-allege and restate herein the admissions and/or denials herein.

136.    In response to ¶ 136 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 136 of Plaintiffs' [1] Complaint are denied.

137.    In response to ¶ 137 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 137 of Plaintiffs' [1] Complaint are denied.

138.    In response to ¶ 138 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 138 of Plaintiffs' [1] Complaint are denied.

139.    In response to ¶ 139 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 139 of Plaintiffs' [1] Complaint are denied.

140.    In response to ¶ 140 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 140 of Plaintiffs' [1] Complaint are denied.

141.    The allegations in ¶ 141 of Plaintiffs' [1] Complaint are denied.

<u>Punitive Damages</u>

142.    To the extent ¶ 142 of Plaintiffs' [1] Complaint contains allegations against Rankin County and/or Sheriff Bailey, same are denied.

143.    In response to ¶ 143 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 143 of Plaintiffs' [1] Complaint are denied.

144.    In response to ¶ 144 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 144 of Plaintiffs' [1] Complaint are denied.

145.    Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 145 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in nature, or of any kind or quantum whatsoever. Further, Rankin County specifically denies that it can be liable for punitive damages under § 1983.

**COUNT VI – DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C § 1983**
**ELWARD, MCALPIN, DEDMON, and DEPUTIES JOHN DOES 1-3**
**(Sexual Assault, Excessive Force, Unreasonable Seizure)**

146.     In response to ¶ 146 of Plaintiffs' [1] Complaint, Rankin County and Sheriff Bailey re-allege and restate herein the admissions and/or denials herein.

147.     In response to ¶ 147 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 147 of Plaintiffs' [1] Complaint are denied.

148.     In response to ¶ 148 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 148 of Plaintiffs' [1] Complaint are denied.

149.     In response to ¶ 149 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 149 of Plaintiffs' [1] Complaint are denied.

150.     In response to ¶ 150 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 150 of Plaintiffs' [1] Complaint are denied.

151.     In response to ¶ 151 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the

incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 151 of Plaintiffs' [1] Complaint are denied.

152.    In response to ¶ 152 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 152 of Plaintiffs' [1] Complaint are denied.

153.    In response to ¶ 153 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 153 of Plaintiffs' [1] Complaint are denied.

154.    The allegations in ¶ 154 of Plaintiffs' [1] Complaint are denied.

Punitive Damages

155.    To the extent ¶ 155 of Plaintiffs' [1] Complaint contains allegations against Rankin County and/or Sheriff Bailey, same are denied.

156.    In response to ¶ 156 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 156 of Plaintiffs' [1] Complaint are denied.

157.    In response to ¶ 157 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 157 of Plaintiffs' [1] Complaint are denied.

158.    Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 158 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in nature, or of any kind or quantum whatsoever. Further, Rankin County specifically denies that it can be liable for punitive damages under § 1983.

## COUNT VII (Misnumbered VI) – DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C § 1983
### ELWARD, MCALPIN, DEDMON, and DEPUTIES JOHN DOES 1-3
### (Excessive Force – Threats to Kill)

159.    In response to ¶ 159 of Plaintiffs' [1] Complaint, Rankin County and Sheriff Bailey re-allege and restate herein the admissions and/or denials herein.

160.    In response to ¶ 160 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 160 of Plaintiffs' [1] Complaint are denied.

161.    In response to ¶ 161 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 161 of Plaintiffs' [1] Complaint are denied.

162.    In response to ¶ 162 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 162 of Plaintiffs' [1] Complaint are denied.

163.    In response to ¶ 163 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 163 of Plaintiffs' [1] Complaint are denied.

164.    In response to ¶ 164 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 164 of Plaintiffs' [1] Complaint are denied.

165.    The allegations in ¶ 165 of Plaintiffs' [1] Complaint are denied.

<u>Punitive Damages</u>

166.    To the extent ¶ 166 of Plaintiffs' [1] Complaint contains allegations against Rankin County and/or Sheriff Bailey, same are denied.

167.    In response to ¶ 167 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 167 of Plaintiffs' [1] Complaint are denied.

168.    In response to ¶ 168 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 168 of Plaintiffs' [1] Complaint are denied.

169.    Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 169 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the

amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in nature, or of any kind or quantum whatsoever. Further, Rankin County specifically denies that it can be liable for punitive damages under § 1983.

### COUNT VIII (Misnumbered VII) – DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C § 1983
### ELWARD, MCALPIN, DEDMON, and DEPUTIES JOHN DOES 1-3
### (14th Amendment Equal Protection Violation on the Basis of Race)

170.    In response to ¶ 170 of Plaintiffs' [1] Complaint, Rankin County and Sheriff Bailey re-allege and restate herein the admissions and/or denials herein.

171.    In response to ¶ 171 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 171 of Plaintiffs' [1] Complaint are denied.

172.    The allegations in ¶ 172 of Plaintiffs' [1] Complaint are denied.

173.    As ¶ 173 of Plaintiffs' [1] Complaint contains no allegations against these Defendants, they are not required to admit or deny same. To the extent ¶ 173 of Plaintiffs' [1] Complaint contains allegations against these Defendants, same are denied.

174.    In response to ¶ 174 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 174 of Plaintiffs' [1] Complaint are denied.

175.    The allegations in ¶ 175 of Plaintiffs' [1] Complaint are denied.

176.    The allegations in ¶ 176 of Plaintiffs' [1] Complaint are denied.

177.    The allegations in ¶ 177 of Plaintiffs' [1] Complaint are denied.

<u>Punitive Damages</u>

178.    To the extent ¶ 178 of Plaintiffs' [1] Complaint contains allegations against Rankin County and/or Sheriff Bailey, same are denied.

179.    In response to ¶ 179 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 179 of Plaintiffs' [1] Complaint are denied.

180.    In response to ¶ 180 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 180 of Plaintiffs' [1] Complaint are denied.

181.    Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 181 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in nature, or of any kind or quantum whatsoever. Further, Rankin County specifically denies that it can be liable for punitive damages under § 1983.

**COUNT IX (Misnumbered VIII) – DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C § 1983**
**ELWARD, MCALPIN, DEDMON, and DEPUTIES JOHN DOES 1-3**
**(Failure to Intervene)**

182.    In response to ¶ 182 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the

incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 182 of Plaintiffs' [1] Complaint are denied.

183.    In response to ¶ 183 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 183 of Plaintiffs' [1] Complaint are denied.

184.    In response to ¶ 184 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 184 of Plaintiffs' [1] Complaint are denied.

185.    In response to ¶ 185 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 185 of Plaintiffs' [1] Complaint are denied.

186.    The allegations in ¶ 186 of Plaintiffs' [1] Complaint are denied.

187.    The allegations in ¶ 187 of Plaintiffs' [1] Complaint are denied.

188.    The allegations in ¶ 188 of Plaintiffs' [1] Complaint are denied.

<u>Punitive Damages</u>

189.    To the extent ¶ 189 of Plaintiffs' [1] Complaint contains allegations against Rankin County and/or Sheriff Bailey, same are denied.

190.    In response to ¶ 190 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the

incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 190 of Plaintiffs' [1] Complaint are denied.

191.    In response to ¶ 191 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 191 of Plaintiffs' [1] Complaint are denied.

192.    In response to ¶ 192 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 192 of Plaintiffs' [1] Complaint are denied.

193.    Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 193 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in nature, or of any kind or quantum whatsoever. Further, Rankin County specifically denies that it can be liable for punitive damages under § 1983.

### COUNT X (Misnumbered IX)
### 42 U.S.C § 1983 – FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE
### SHERIFF BRYAN BAILEY

194.    In response to ¶ 194 of Plaintiffs' [1] Complaint, Rankin County and Sheriff Bailey re-allege and restate herein the admissions and/or denials herein.

195.    The allegations in ¶ 195 of Plaintiffs' [1] Complaint are denied. These Defendants specifically allege in response to ¶ 195 of Plaintiffs' [1] Complaint that all former

deputies at issue were trained in accordance with the standards required by the Mississippi Board on Law Enforcement Officer Standards and Training. **Exhibit 1**.

196.    The allegations in ¶ 196 of Plaintiffs' [1] Complaint are denied.

197.    The allegations in ¶ 197 of Plaintiffs' [1] Complaint are denied.

198.    The allegations in ¶ 198 of Plaintiffs' [1] Complaint are denied.

Ratification

199.    The allegations in ¶ 199 of Plaintiffs' [1] Complaint are denied.

200.    The allegations in ¶ 200 of Plaintiffs' [1] Complaint are denied.

201.    The allegations in ¶ 201 of Plaintiffs' [1] Complaint are denied.

202.    The allegations in ¶ 202 of Plaintiffs' [1] Complaint are denied.

203.    Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 203 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in nature, or of any kind or quantum whatsoever.

**COUNT XI (Misnumbered X)**
**42 U.S.C § 1983 – MUNICIPAL LIABILITY FOR**
**UNCONSTITUIONAL CUSTOM, PRACTICE, OR POLICY**
**RANKIN COUNTY**

204.    In response to ¶ 204 of Plaintiffs' [1] Complaint, Rankin County and Sheriff Bailey re-allege and restate herein the admissions and/or denials herein.

205.    The allegations in ¶ 205 of Plaintiffs' [1] Complaint are denied. These Defendants specifically allege in response to ¶ 205 of Plaintiffs' [1] Complaint that the

policies and procedures of the Rankin County Sheriff's Department at issue attached hereto as **Exhibit 2** are all facially constitutional.

206.    The allegations in ¶ 206 of Plaintiffs' [1] Complaint are denied.

207.    The allegations in ¶ 207 of Plaintiffs' [1] Complaint are denied.

208.    Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 208 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in nature, or of any kind or quantum whatsoever.

**COUNT XII (Misnumbered XI)**
**<u>FALSE IMPRISONMENT</u>**
**ELWARD, MCALPIN, DEDMON, and DEPUTIES JOHN DOES 1-3**

209.    In response to ¶ 209 of Plaintiffs' [1] Complaint, Rankin County and Sheriff Bailey re-allege and restate herein the admissions and/or denials herein.

210.    In response to ¶ 210 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 210 of Plaintiffs' [1] Complaint are denied.

211.    In response to ¶ 211 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 211 of Plaintiffs' [1] Complaint are denied.

212.    In response to ¶ 212 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 212 of Plaintiffs' [1] Complaint are denied.

213.    The allegations in ¶ 213 of Plaintiffs' [1] Complaint are denied.

214.    The allegations in ¶ 214 of Plaintiffs' [1] Complaint are denied.

215.    Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 215 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in nature, or of any kind or quantum whatsoever.

**COUNT XIII (Misnumbered XII)**
**<u>ASSAULT AND BATTERY</u>**
**ELWARD, MCALPIN, DEDMON, and DEPUTIES JOHN DOES 1-3**

216.    In response to ¶ 216 of Plaintiffs' [1] Complaint, Rankin County and Sheriff Bailey re-allege and restate herein the admissions and/or denials herein.

217.    In response to ¶ 217 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 217 of Plaintiffs' [1] Complaint are denied.

218.    In response to ¶ 218 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the

incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 218 of Plaintiffs' [1] Complaint are denied.

219.    In response to ¶ 219 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 219 of Plaintiffs' [1] Complaint are denied.

220.    Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 220 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in nature, or of any kind or quantum whatsoever.

### COUNT XIV (Misnumbered XIII)
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### ELWARD, MCALPIN, DEDMON, and DEPUTIES JOHN DOES 1-3

221.    In response to ¶ 221 of Plaintiffs' [1] Complaint, Rankin County and Sheriff Bailey re-allege and restate herein the admissions and/or denials herein.

222.    In response to ¶ 222 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 222 of Plaintiffs' [1] Complaint are denied.

223.    In response to ¶ 223 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the

incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 223 of Plaintiffs' [1] Complaint are denied.

224.    In response to ¶ 224 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 224 of Plaintiffs' [1] Complaint are denied.

225.    In response to ¶ 225 of Plaintiffs' [1] Complaint, these Defendants admit that the former deputies have been convicted of various criminal offenses concerning the incident at issue. Except where otherwise specifically admitted herein, the allegations in ¶ 225 of Plaintiffs' [1] Complaint are denied.

226.    The allegations in ¶ 226 of Plaintiffs' [1] Complaint are denied.

227.    Rankin County and Sheriff Bailey deny any and all allegations against them in ¶ 227 of Plaintiffs' [1] Complaint. These Defendants specifically deny that Plaintiffs are entitled to judgment against them, or that they are liable or indebted to Plaintiffs in the amount sued for or in any amount whatsoever or for damages of any type, specifically including punitive, compensatory, incidental and consequential damages and/or actual in nature, or of any kind or quantum whatsoever.

## JURY TRIAL DEMANDED

228.    As there are no allegations against these Defendants in ¶ 228 of Plaintiffs' [1] Complaint, they are not required to admit or deny same. To the extent there are any allegations against these Defendants in ¶ 228 of Plaintiffs' [1] Complaint, same are denied. These Defendants specifically deny that Plaintiffs are entitled to a jury trial on any MTCA claims.

**AND NOW,** having fully addressed the numbered paragraphs of Plaintiffs' [1] Complaint, and having denied any and all liability herein, Defendants Rankin County and Sheriff Bailey set forth the following Special Affirmative Matters.

### FIRST AFFIRMATIVE DEFENSE

Individual Defendant Sheriff Bryan Bailey is entitled to qualified immunity, and Rankin County and Sheriff Bailey are entitled to sovereign immunity, from suit and/or liability herein. These Defendants are entitled to and hereby assert all rights, privileges, and immunities otherwise available to governmental or state actors.

### SECOND AFFIRMATIVE DEFENSE

Rankin County is immune from punitive damages liability.

### THIRD AFFIRMATIVE DEFENSE

To the extent Plaintiffs' [1] Complaint purports to state a claim actionable under the procedural vehicle of 42 U.S.C. § 1983 or pursuant to the MTCA or any state law claims, it fails to state a claim upon which relief can be granted against the Ranking County and Sheriff Bailey and should be dismissed with prejudice.

### FOURTH AFFIRMATIVE DEFENSE

These Defendants acted in good faith reliance upon then existent law at all times complained of in Plaintiffs' [1] Complaint, and are therefore entitled to immunity or a special good faith defense.

### FIFTH AFFIRMATIVE DEFENSE

These Defendants possess immunity to Plaintiffs and specifically assert all rights, defenses, privileges, and immunities available unto them under applicable state and federal law. These Defendants further invoke and assert all rights, privileges, and immunities

available unto them as set forth in the United States Constitution and/or Mississippi Constitution and supporting / interpretive federal or state common law.

## SIXTH AFFIRMATIVE DEFENSE

To the extent, if any, Plaintiffs' [1] Complaint purports to state a cause of action against these Defendants based upon any state law theory, they Defendants possess sovereign immunity pursuant to and as set forth in MISS. CODE ANN. § 11-46-1 *et seq*. by virtue of the performance of an inherently governmental and public function for which immunity has been recognized, historically, at common law.

## SEVENTH AFFIRMATIVE DEFENSE

These Defendants complied with all applicable standards of care.

## EIGHTH AFFIRMATIVE DEFENSE

At all times complained of, Rankin County and Sheriff Bailey acted in good faith, without malice, without reckless disregard, without deliberate indifference, without retaliatory motive, without injurious intent, without evil motive, and in compliance with the applicable legal standards, and are guilty of no wrongful or tortious conduct.

## NINTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs' [1] Complaint, with amendments, if any, seeks any award or assessment of punitive damages against these Defendants, such award would be contrary to law, and would violate the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Further, and more specifically, awarding and/or assessment of punitive damages would violate Article 3, § 28 of the Constitution of the State of Mississippi, as well as the Eighth Amendment to the Constitution of the United States, both of which prohibit the imposition of excessive fines.

Further, awarding and/or assessment of punitive damages would violate the Fifth and Fourteenth Amendments to the United States Constitution and/or Article 3, § 14 of the Mississippi Constitution, all of which guarantee unto the citizenry due process of law.

Additionally, any claim for punitive damages of, from, or against Rankin County is barred by MISS. CODE ANN. § 11-46-15, and/or federal common law.

Also, standards, procedures, and criteria utilized in the judicial decisional process with regard to the awarding and/or assessment of punitive damages are impermissibly vague, arbitrary, and inconsistent, and are therefore, void and otherwise contrary to the principles established by the United States Constitution and Mississippi Constitution.

## TENTH AFFIRMATIVE DEFENSE

Sheriff Bailey would show that the factual allegations of Plaintiffs' [1] Complaint and the conduct complained of against him do not violate any clearly established statutory or constitutional rights of Plaintiffs, determined by the standard of objective reasonableness measured by reference to clearly established law. Further, Rankin County and/or Sheriff Bailey are not guilty of any deliberate abuse of inherently governmental power, but rather, had probable cause and lawful penological justification for all actions undertaken by them.

## ELEVENTH AFFIRMATIVE DEFENSE

No action or inaction on the part of Rankin County and/or Sheriff Bailey proximately caused any harm, loss, or deprivation to Plaintiffs. At all times complained of, these Defendants acted both reasonably and prudently and in the exercise of legitimate and lawful justification. Further, these Defendants' conduct, performed in good faith, did not violate clearly established rights of which a reasonable person would have known so as to be cognizable under 42 U.S.C. § 1983.

## TWELFTH AFFIRMATIVE DEFENSE

Alternatively, any damage, loss, or deprivation to Plaintiffs was not proximately caused by any official policy, practice, or custom of Rankin County, Mississippi. Plaintiffs' alleged losses, damages, and/or deprivations were not the proximate result of the execution of any official governmental policy, custom or practice attributable to Rankin County and/or Sheriff Bailey.

## THIRTEENTH AFFIRMATIVE DEFENSE

These Defendants fulfilled any and all legal duties owed by them, if any, to Plaintiffs.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have no right to a jury trial on any state law claims against Rankin County.

## FIFTEENTH AFFIRMATIVE DEFENSE

These Defendants invoke and assert all protections, defenses, limitations, and caps set forth in the MTCA and the Mississippi Tort Reform Act, as codified in the Mississippi Code.

## SIXTEENTH AFFIRMATIVE DEFENSE

These Defendants cannot be held liable pursuant to § 1983 under principles of agency or *respondeat superior* for the actions or omissions of any other party or non-party herein.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' alleged damages, losses, and/or injuries are the proximate result of their own actions and/or omissions, or those of other persons for whom Rankin County and/or Sheriff Bailey are neither liable nor responsible. Plaintiffs' recovery, if any, should be barred or alternatively, reduced under principles of comparative fault. Further, these Defendants affirmatively assert and invoke all defenses and rights available to them as set forth in Miss. Code Ann. § 85-5-7 and § 11-1-65.

44

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' [1] Complaint fails to specifically and/or appropriately plead that they are entitled to relief against Rankin County and/or Sheriff Bailey pursuant to FED. R. CIV. P. 8, and accordingly, should be dismissed.

## NINETEENTH AFFIRMATIVE DEFENSE

These Defendants reserve the right to plead and hereby specifically assert, to the extent applicable and justified pursuant to the facts of this case, the affirmative defenses of contributory negligence, discharge in bankruptcy, estoppel, release, res judicata, statute of limitations and waiver.

**WHEREFORE, PREMISES CONSIDERED,** Defendants Rankin County, Mississippi and Sheriff Bryan Bailey, in his official and individual capacities, deny that Plaintiffs are entitled to any relief whatsoever, and respectfully request Plaintiffs' [1] Complaint and this civil action be dismissed with prejudice, together with such other relief as this Court deems proper.

**RESPECTFULLY SUBMITTED,** this 6th day of October, 2023.

> **RANKIN COUNTY, MISSISSIPPI & SHERIFF BRYAN BAILEY, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES – Defendants**
>
> **BY:**    _/s/ Jason E. Dare_
> **JASON E. DARE**

**OF COUNSEL:**

Jason E. Dare (MSB No. 100973)
jdare@bislawyers.com
BIGGS, INGRAM & SOLOP, PLLC
Post Office Box 14028
Jackson, Mississippi  39236-4028
Telephone:    (601) 987-5307
Facsimile:    (601) 987-5307

DPS 101509

# STATE OF MISSISSIPPI

Board on Law Enforcement Officer Standards and Training

Hereby awards this

*Professional Certificate*

TO

**CHRISTIAN L. DEDMON**

**THIS 1ST DAY OF DECEMBER, 2016**

As being qualified to be a Mississippi Law Enforcement Officer under Provisions of Chapter 474, General Laws of Mississippi, 1981.

*Matt Barnett*
Chairman
Board on Law Enforcement
Standards and Training

*Robert Davis*
Director
Board on Law Enforcement
Standards and Training

Certificate No. 25359

EXHIBIT 1

# STATE OF MISSISSIPPI

**Board on Law Enforcement Officer Standards and Training**

Hereby awards this

*Professional Certificate*

TO

**HUNTER T. ELWARD**

**THIS 6TH DAY OF APRIL, 2017**

As being qualified to be a Mississippi Law Enforcement Officer under
Provisions of Chapter 474, General Laws of Mississippi, 1981.

*Matt Barnett*
Chairman
Board on Law Enforcement
Standards and Training

Director
Board on Law Enforcement
Standards and Training

Certificate No. 25549



DPS 101509

# STATE OF MISSISSIPPI

**Board of Law Enforcement Officer Standards and Training**

**Hereby awards this**

*Professional Certificate*

TO

**BRETT M. McALPIN**

**This 8TH day of JANUARY , 19 98**

As being qualified to be a Mississippi Law Enforcement Officer under Provisions of Chapter 474, General Laws of Mississippi, 1981.

*James B. Walker*
Director
Board on Law Enforcement
Standards and Training

*Roy Berry*
Chairman
Board on Law Enforcement
Standards and Training

Certificate No. **11294**

## STATE OF MISSISSIPPI



Board on Law Enforcement Officer Standards and Training

Hereby awards this

*Instructor Certificate*

TO

*Brett McAlpin*

*Rankin County Law Enforcement Officers' Training Institute*

This ___1st___ day of ___April___, ___2018___

As being qualified to be a Mississippi Law Enforcement Officer Instructor under Provisions of Chapter 474, General Laws of Mississippi, 1981.

_Robert R. Davis_
Director, Office of
Board on Law Enforcement
Standards and Training

_Michael L. Nash_
Training Director
Board on Law Enforcement
Standards and Training

Certificate No. ___1776___

Expires ___01 Apr. 2021___

011609

# STATE OF MISSISSIPPI

**Board on Law Enforcement Officer Standards and Training**

**Hereby awards this**

*Professional Certificate*

TO

**JEFFREY ARWOOD MIDDLETON**

**This 7th day of OCTOBER , 20 10**

**As being qualified to be a Mississippi Law Enforcement Officer under Provisions of Chapter 474, General Laws of Mississippi. 1981.**

_Director_
Board on Law Enforcement
Standards and Training

_Chairman_
Board on Law Enforcement
Standards and Training

Certificate No. **15970**

011709

DPS 101509

# STATE OF MISSISSIPPI

Board on Law Enforcement Officer Standards and Training

Hereby awards this

## Professional Certificate

TO

### DANIEL R. OPDYKE

THIS 7TH DAY OF NOVEMBER, 2019

As being qualified to be a Mississippi Law Enforcement Officer under Provisions of Chapter 474, General Laws of Mississippi, 1981.

_____
Chairman
Board on Law Enforcement
Standards and Training

_____
Director
Board on Law Enforcement
Standards and Training

Certificate No. 26973

**Rankin County Sheriff's Department**
**Law Enforcement**
**Policies and Procedures**

| **Subject:** Orders & Instructions | **Policy Number:** 1.4 |
|---|---|
| **Issue Date:** June, 2003 | **Revision Date: January 2005** |
| **Approval Authority: Bryan Bailey, Sheriff** ||

## <u>ORDERS AND INSTRUCTIONS</u>

This law enforcement department will issue orders in several forms. As a sworn officer or employee of this organization, you are responsible for knowing, understanding, and complying with all lawful orders. Immediate and consistent compliance with orders is essential to accomplishing our mission and protecting human life. Orders will be given in the following forms:

### 1. General Orders

General orders are sometimes referred to as the *Ten Commandments* of a law enforcement agency. There may not be exactly ten, and these rules are not religious in nature, but adherence to them is vital to successfully accomplishing our objectives. *General Orders* are published in writing. You are expected to know these rules and follow them both in letter and spirit. No deviations should occur without the expressed personal authority of the Sheriff. General Orders will be provided and discussed in your training and widely disseminated. You should immediately ask your supervisor if you have any questions about compliance. You also have the duty to immediately report General Order violations.

### 2. Special Orders

Special orders are always written. They are authorized and signed by the Sheriff or the Under Sheriff. Special orders provide short-term instructions in matters of critical concern to the department. Special Orders are provided and discussed in training, announced at roll call, and published as the need arises. It is your responsibility before starting your tour of duty each day to know what Special Orders are in effect, and to comply with their requirements. Any questions about compliance or known violations of a Special Order should be referred to your supervisor as soon as practical.

EXHIBIT 2

### 3. Policies & Procedures

The senior law enforcement official of a law enforcement organization is charged with the responsibility of setting policy and determining the procedures that will be followed to accomplish the mission of the department and maintain effective control. Policies and procedures often vary from organization to organization, depending on the management style of the policy maker, the needs and desires of the community, and available resources.

The agency provides this manual as a detailed guide to performance expectations. Each policy is published separately, and contains a statement of the policy and detailed procedures regarding how to carry it out. *Policies* are *orders*, and *procedures are the instructions for carrying out the orders.*

Not every situation is foreseeable. It is important for sworn officers and other employees to know and understand the policies and apply them in particular situations. When faced with a dilemma, ask and answer . . . *what would the Sheriff want* ***me to do in this case?*** **Confidence as a law enforcement officer is built on experience, training, careful review, and practiced compliance with the policies and procedures, and other requirements in this manual.**

### 4. Direct or Verbal Orders

Direct orders are most often issued through the spoken word. These orders may be given at roll call, but most often are issued verbally during the course of the shift. Personnel are to respond to verbal orders given by supervisors, the Sheriff, and the Under Sheriff. In those cases where someone who is not your supervisor, the Sheriff, or the Under Sheriff gives you a direct or verbal order or command, it is the responsibility of the officer receiving the order or instruction to verify the order through their post orders or supervisor **before complying with the order or instruction**. For example, it is inappropriate for a law enforcement officer of another department to issue orders to an officer of this organization without prior written approval from the Sheriff or the Undersheriff. This includes federal and state officers or agents.

Compliance with direct or verbal orders is only required or appropriate when the order given is *lawful.* To be a lawful order, the instruction must be in harmony or compliance with the *law, special orders, general orders* and *policies* established by the Sheriff. For example, management and supervisory personnel are not authorized to order officers to physically abuse suspects or employ excessive or unreasonable force.

**Rankin County Sheriff's Department**

**<u>GENERAL ORDERS</u>**

I.      Perform all duties professionally, while keeping on the alert for threats to human life and general community safety.

II.     Do not abandon, or leave assigned areas until properly relieved.

III.    Obey all lawful orders of supervisors and command staff.

IV.    Report all violations of orders and established policies of this department.

V.     Protect all members of society, especially those that are weak, physically or mentally impaired, or accused of a crime.

VI.    Do not allow, encourage, or ignore officers that abuse, threaten, or terrorize any person.

VII.   Do not violate the constitutional civil rights of any citizen, resident, or suspect, or tolerate others doing so.

VIII.  Immediately upon determining an individual is a suspect, and before any interrogation or interview, advise the individual of their constitutional civil rights, to include:

    a.  The right to remain silent;

    b.  Understanding that anything said by the suspect may be used against them in a court of law,

    c.  The right to an attorney; &

    d.  The right to have an attorney furnished at government expense, if the individual cannot afford an attorney.

IX.     Immediately stop all interviews and interrogations, and make provisions to provide a suspect their constitutional rights, upon request.

X.      Do not have any personal relationships with suspects, accused, or persons placed in your charge beyond that which is necessary and appropriate in carrying out official duties.

XI.     Do not accept money or any other gratuity for performing police or police-related duties.

XII.    Be faithful to the trust and responsibility the public has placed in this profession and you.

XIII.   Do not lie, cheat, steal, or tolerate anyone who does.

**Rankin County Sheriff's Department**
**Law Enforcement**
**Policies and Procedures**

| **Subject:** Cannons of Police Ethics | **Policy Number:** 1.5 |
|---|---|
| **Issue Date:**  June, 2003 | **Revision Date:**  January 2005 |
| **Approval Authority: Bryan Bailey, Sheriff** ||

## CANONS OF POLICE ETHICS

All sworn deputies in the Rankin County Sheriff's Department or those members vested with law enforcement authority as a result of their employment with Rankin County Sheriff's Department will, at all times, abide by the following Canons of Police Ethics.

*Article. 1.*
*Primary Responsibility of Job*
The primary responsibility of the Sheriff's Department, and of the individual deputy, is the protection of the people of the United States through the upholding of their laws; chief among these is the Constitution of the United States and its amendments.  The deputy always represents the whole of the community and it's legally expressed will and is never the arm of any political party or clique.

*Article 2.*
*Limitations of Authority*
The first duty of a deputy, as upholder of the law, is to know its bounds upon him in enforcing it.  Because he represents the legal will of the community, be it local, state, or federal, he must be aware of the limitations and proscriptions which the people, through law, have placed upon him.  He must recognize the genius of the American system of government, which gives to no man, groups of men, or institution, absolute power, and he must ensure that he, as a prime defender of that system, does not pervert its character.

*Article 3.*
***Duty to be Familiar with the Law and with Responsibilities of Self and other Public Officials***
The deputy shall apply himself to the study of the principles of the laws, which he is sworn to uphold.  He will make certain of his responsibilities in the particulars of their enforcement, seeking aid from his superiors in matters of technicality or principle when these are not clear to him; he will make special effort to fully understand his relationship to other public officials, including other law enforcement agencies, particularly on matters of jurisdiction, both geographically and substantively.

*Article 4.*
*Utilization of Proper Means to Gain Proper Ends*
The deputy shall be mindful of his responsibility to pay strict heed to the selection of means in discharging the duties of his office.  Violations of law or disregard for public safety and property on the part of a deputy are always wrong; they are self-defeating in that they instill in the public mind a like disposition.  The employment of illegal means, no matter how worthy the end, is

certain to encourage disrespect for the law and its deputies. If the law is to be honored, it must first be honored by those who enforce it.

### Article 5.
### Cooperation with Public Officials in the Discharge of Their Authorized Duties
The deputy shall cooperate fully with other public officials in the discharge of authorized duties, regardless of party affiliation or personal prejudice. He shall be meticulous, however, in assuring himself of the propriety, under the law, of such actions and shall guard against the use of his office or person, whether knowingly or unknowingly, in any improper or illegal action. In any situation open to question, he shall seek authority from his superior officer, giving him a full report of the proposed service or action.

### Article 6.
### Private Conduct
The deputy shall be mindful of his special identification by the public as an upholder of the law. Laxity of conduct or manner in private life, expressing either disrespect for the law or seeking to gain special privilege, cannot but reflect upon the deputy and the Sheriff's Department. The community and the service require that the deputy lead the life of a decent and honorable man. Following the career of a deputy gives no man special perquisites. It does give the satisfaction and pride of following and furthering an unbroken tradition of safeguarding the American republic. The deputy who reflects upon this tradition will not degrade it. Rather, he will so conduct his private life that the public will regard him as an example of stability, fidelity and morality.

### Article 7.
### Conduct toward the Public
The deputy, mindful of this responsibility to the whole community, shall deal in a manner calculated to instill respect for its laws and its police service. The deputy shall conduct his official life in a manner such as will inspire confidence and trust. Thus, he will be neither overbearing nor subservient, as no individual citizen has an obligation to stand in awe of him nor a right to command him. The deputy will give service where he can, and require compliance with the law. He will do neither from personal preference or prejudice but rather as a duly appointed officer of the law discharging his sworn obligation.

### Article 8.
### Conduct in Arresting and Dealing with Law Violators
The deputy shall use his powers of arrest strictly in accordance with the law and with due regard to the right of the citizen concerned. His office gives him no right to prosecute the violator nor to mete out punishment for the offense. He shall, at all times, have a clear appreciation of his responsibilities and limitations regarding detention of the violator; he shall conduct himself in such a manner as will minimize the possibility of having to use force. To this end he shall cultivate a dedication to the service of the people and the equitable upholding of their laws whether in the handling of law violators or in dealing with the law-abiding.

### Article 9.
### Gifts and Favors
The deputy, representing government, bears the heavy responsibility of maintaining, in his own conduct, the honor and integrity of all government institutions. He shall, therefore, guard against

placing himself in a position in which any person can expect special consideration or in which the public can reasonably assume that special consideration is being given. Thus, he should be firm in refusing gifts, favors, or gratuities, large or small, which can, in the public mind, be interpreted as capable of influencing his judgment in the discharge of his duties.

*Article 10.*
*Impartial Conduct*
The deputy shall be concerned equally in the prosecution of the wrongdoer and the defense of the innocent. He shall ascertain what constitutes evidence and shall present such evidence impartially and without malice. In so doing, he will ignore social, political, and all other distinctions among the person involved, strengthening the tradition of the reliability and integrity of a deputy's word.

The deputy shall take special pains to increase his perception and skill of observation, mindful that in many situations his is the sole impartial testimony to the facts of the case.

*Article 11.*
*Attitude Toward Profession*
The deputy shall regard the discharge of his duties as a public trust and recognize his responsibility as a public servant. By diligent study and sincere attention to self-improvement, he shall strive to make the best possible application of science to the solution of crime and, in the field of human relationships, strive for effective leadership and public influence in matters affecting public safety. He shall appreciate the importance and responsibility of his office, and hold police work to be an honorable profession rendering valuable service to his community and his country.

***Composed in 1957 by a Committee of the International Association of Chiefs of Police, Inc., revised by the Rankin County Sheriff's Department in 2003.***

**Rankin County Sheriff's Department**
**Law Enforcement**
**Policies and Procedures**

| Subject: Training and Proficiency Testing | Policy Number: 1.9a |
|---|---|
| **Issue Date:** June, 2003 | **Revision Date:** March 2020 |
| **Approval Authority: Bryan Bailey**, Sheriff | |

**POLICY:**

Officers of this Agency will receive meaningful training that meets or exceeds minimum training requirements to ensure that they and other employees maintain the skills necessary to efficiently and effectively carry out their duty assignments.

**DISCUSSION:**

Training is one of the most important activities in any law enforcement agency. Training serves three broad purposes. First, trained officers are generally better prepared to act decisively in an ever-widening range of situations. Second, effective training results in greater productivity and effectiveness. Third, training fosters cooperation and unity of purpose.

**PROCEDURES:**

**Goals:**
The goals of the Rankin County Sheriff's Department training program include:

1. At a minimum, meeting mandatory and in-service training requirements;
2. When possible, exceeding mandatory and in-service training requirements;
3. Maintaining better educated, more professional personnel;
4. Each officer receiving in-service training each calendar year;
5. Maintaining officer *demonstrated proficiency* levels regarding key enforcement tools when issued, such as:
    a. Firearms
    b. Chemical weapons
    c. Handcuffs and other restraint devices
    d. Batons
    e. Special weapons and tactics
    f. Emergency vehicles
6. Efficiently and effectively accomplishing departmental objectives;
7. Improving law enforcement and community relations;
8. Developing career opportunities within the agency;
9. Training in specialized areas of law enforcement;
10. Uniformity of service, response capabilities, and understanding for officers and employees of the department; and
11. Developing officer skills in working with the law-abiding citizens of the community.

Law Enforcement Policies and Procedures, 1.9a Training and Proficiency Testing

**Proficiency Ratings:**

No officer or employee will carry or use law enforcement related equipment/items without having completed an initial course in its application/use and periodically *demonstrating proficiency* in its application.

The Training Director or his/her designee will set the dates of proficiency training and evaluations, testing requirements, and *pass or fail* standards except those minimum requirements set forth by the Mississippi Officer of Standards and Training. Evaluation will be on a pass or fail basis and this data will be recorded in the officers training file.

Refresher training will generally be provided just prior to evaluation. Where and to the extent possible, officers will be evaluated by realistic, practical evaluation as apposed to written examination.

**Rankin County Sheriff's Department**
**Law Enforcement**
**Policies and Procedures**

| Subject:  Firearms Training and | Policy Number: 1.9b |
|---|---|
|          Proficiency Evaluation | |
| Issue Date:  June, 2003 | Revision Date:  January 2005 |
| Approval Authority:  Bryan Bailey, Sheriff | |

## POLICY:

Without exception, all officers or armed employees (regular, part-time, reserve, etc.) will at least semi-annually demonstrate proficiency with the pistols they carry or have occasion to carry on duty.  All officers or armed employees will at least annually demonstrate proficiency with all long guns (shotguns and/or rifles) and any secondary firearms used as off-duty or back-up weapons.  No officer may carry a firearm that the officer has not demonstrated proficiency as set forth by police or by Mississippi Office of Standards and Training with within the last twelve (12) months.

## PROCEDURES:

Firearms & Range Officer Qualifications:

Firearms instructors of the department must meet the following qualifications:
1. Complete an approved law enforcement firearms instructor course conducted by certified instructors of a State, the National Rifle Association or the U.S. Military.
2. Demonstrate 90% proficiency with each category of firearm carried by officers and employees of the department.
3. Be proficient in teaching firearms safety, care and cleaning, safe storage, tactical firearms use, and weapons retention.

## GENERAL GUIDELINES:

1. Initial qualification, semi-annual (or quarterly) demonstrations of proficiency and live fire training will be conducted at specified times at an approved firing range.
2. Officers will wear the rig and holsters they normally wear on duty.  For uniformed officers this includes all equipment normally worn or carried on the person.
3. Detectives and those working primarily in civilian attire will wear and use the holster and utility equipment used daily.

**Rankin County Sheriff's Department**
**Law Enforcement**
**Policies and Procedures**

| | |
|---|---|
| Subject: Rules of Conduct | **Policy Number:** 1.13 |
| **Issue Date:** June, 2003 | **Revision Date:** January, 2005 |
| **Approval Authority:** Bryan Bailey, Sheriff | |

**POLICY:**

Rankin County Sheriff's Department deputies will conduct themselves professionally and responsibly at all times in order to uphold the trust and confidence placed in them by the community.

**DISCUSSION:**

A key ingredient of this service is maintaining the trust and confidence of the citizens that we serve. We recognize that deputies and employees of our department are *high profile* members of our community, and as such are subject to constant scrutiny. As a result, deputies and employees must always strive to set an appropriate example. This often means using restraint, avoiding conflict, and working well with the public.

**PROCEDURES:**

**General Guidelines:**
Deputies are expected to follow department rules of personal conduct in both the spirit and content, and encourage compliance by fellow deputies and employees. Command and supervisory level deputies should be role models and are expected to demonstrate leadership and set exemplary standards.

**Section One - Obedience to Orders, Rules And Laws:**

1.1    Obedience to Rules of Conduct
All sworn and civilian employees will be governed by the following general rules of conduct. Violation of any of these rules will be considered sufficient cause for disciplinary action up to and including dismissal.

1.2    Obedience to Laws
Deputies and other employees will abide by the laws of the United States, the state of Mississippi, and the ordinances of Rankin County.

1.3    Adherence to Departmental Rules
Deputies and other employees will abide by the personnel policy and the general, special, and tactical orders, rules of conduct, and other properly issued internal directives of the department.

1.4     <u>Insubordination</u>
Deputies and employees will promptly obey all lawful orders and directions given by supervisors and radio dispatchers. The failure or deliberate refusal of deputies and employees to obey such orders will be deemed insubordination and is prohibited. Flouting the authority of a superior by displaying obvious disrespect or by disputing his orders will likewise be deemed insubordination.

1.5     <u>Issuance of Unlawful Orders</u>
No supervisory officer or employee will knowingly or willfully issue an order that violates a federal or state law, a Rankin County ordinance, or a departmental rule or policy.

1.6     <u>Obedience to Unjust or Improper Orders</u>
If a deputy or employee receives an order he believes is unjust or contrary to a departmental order or rule, he must first obey the order to the best of his ability and then may appeal the order to the Sheriff.

1.7     <u>Obedience to Unlawful Orders</u>
No officer or employee is required to obey an order that is contrary to the laws of the United States, the state of Mississippi, the ordinances of Rankin County, or policies established by this department. If a deputy or employee receives an unlawful order, he will report in writing the full facts of the incident and his action to the Sheriff thru the chain of command.

1.8     <u>Conflict of Orders</u>
If a deputy or employee receives an order that conflicts with one previously given him by a superior officer or employee, the officer or employee receiving the order will respectfully point this out to the superior officer or employee who gave the second order. If the superior officer or employee giving the second order does not change the order in a way that eliminates the conflict, the second order will stand and will be the responsibility of the second superior officer or employee. If the second superior officer or employee so directs, the second order will be obeyed first. Orders will only be countermanded when necessary for the good of the department, and accomplishment of the mission.

1.9     <u>Duty to Read, Understand, and Comply With Orders</u>
Failure to read and/or comply with laws, rules and regulations, general and special orders, policies and procedures of the department, or written or verbal orders of a supervisor is prohibited. It *is neglect of duty* to fail to inquire of a supervisor the meaning or application of any directive or order that is not clearly understood.

1.10     <u>Issuance of Orders</u>
Orders from supervisors to subordinates will be in professional, clear, understandable English; civil in tone, and manner; and, issued in pursuit of departmental business.

1.11     <u>Conduct Unbecoming</u>
Conduct that adversely affects efficiency, erodes public respect, or reduces confidence in government service is unbecoming and is prohibited. Examples of such conduct includes, but is not limited to:

a.  Fraud in securing employment;
b.  Conviction of any felony or of a misdemeanor involving moral turpitude, or the entry of a plea *of nolo contendere* to either;
c.  Misuse of government funds or property;
d.  Falsification or misuse of government records, including application forms, time and financial records, incident reports, case files, or personnel;
e.  Reporting to work or working under the influence of alcohol or substances that significantly impair job performance, or the use of such substances during working hours; except prescribed medication that does not adversely affect the ability to perform assigned work tasks;
f.  Instigation of, participation in, or leadership of a *strike, sit-down, stay-in, sympathy strike, walk-out, slow-down, sick-out*, or any other interference with normal, efficient workflow;
g.  Concealment or failure to report any employment, ownership interest, or personal activity in conflict with the legitimate interests of Rankin County;
h.  Engaging in infamous, notorious, or disgraceful conduct that adversely affects Rankin County legitimate interests;
i.  Insubordinate, rebellious, disruptive, harassment, or disrespectful behavior toward other employees or government officials; or
j.  Fighting.

**Section Two - Attention to Duty:**

2.1  Performance of Duty
Deputies and employees will be attentive to their duties at all times, and will perform all duties assigned to them even if such duties are not specifically assigned to them in any departmental rules or procedures manual.

2.2  Duty of Supervisors
Supervisors will enforce the rules, regulations and policies of the Rankin County Sheriff's Department. They will not permit or otherwise fail to prevent, violations of the law, departmental rules, policies or procedures. They will report violations of departmental rules, policies, or procedures to their immediate superiors without delay. When possible, they will actively prevent such violations or interrupt them as necessary to ensure efficient, orderly operations.

2.3  Truthfulness
Deputies and employees will not knowingly give any false or misleading information concerning the duties, responsibilities or actions of the department or any member thereof, nor withhold any information that is their duty to report, nor falsify any department documents.

2.4  Conduct and Behavior
Deputies and employees whether on-duty or off-duty will follow the ordinary and reasonable rules of good conduct and behavior and will not commit any act in an official or private

capacity tending to bring reproach, discredit, or embarrassment to their profession, the department. Deputies and employees will follow established procedures in carrying out their duties as law enforcement deputies and employees of the department.

2.5     Responsibility to Serve the Public
Deputies and employees will consider it their duty to be of service to the general public and to render that service in a kind, considerate, and patient manner. Deputies and employees will promptly serve the public by providing direction, counsel and other assistance that does not interfere with the discharge of more critical police duties.

2.6     Respecting the Rights of Others
Deputies and employees will respect the rights of others and will not engage in discrimination, oppression or favoritism. Deputies and employees will maintain a strictly impartial attitude toward complainants and violators. Use of profane, demeaning, or insulting language will not be tolerated, nor will disrespect for the political or religious views of others be accepted.

2.7     Deputies Always Subject to Call of Duty
Deputies will respond to lawful orders of supervisors and to the call of citizens in need of police assistance. Off-duty deputies are expected to take prompt and proper action when life is endangered. Deputies and Employees are subject to call twenty-four (24) hours a day and may be recalled from vacation leave or off day whenever necessity demands.

2.8     Reporting for Duty
Deputies and employees will promptly report for duty properly prepared at the time and place required by assignments, subpoenas or orders. Deputies and employees will remain at their posts or place of assignment until properly relieved by another officer or employee or until officially dismissed by a supervisor. It is the relieving deputies and employees' responsibility to locate and meet with the officer or employee he is relieving. The officer or employee who is being relieved has the responsibility to pass onto his relief any and all pertinent information. The relieving officer or employee will assist the officer or employee he is relieving in any way possible so as to expedite the relief and complete the officer or employee's tour of duty in a timely way.

2.9     Availability While on Duty
Deputies and employees while on duty will not conceal themselves or maintain a hidden or low profile except for some assigned police purpose. Deputies and employees will keep themselves immediately and readily available at all times while on duty.

2.10    Prompt Response to All Calls
Employees will respond to all dispatched assignments without argument and unnecessary delay. No officer will fail to aid, assist, or protect a fellow officer, employee, or citizen to the fullest extent of his or her professional capabilities. Calls will be answered in compliance with policy and traffic laws.

2.11    Duty to Report All Crimes and Incidents
Deputies and other employees will promptly report all serious crimes, emergencies, incidents, dangers, hazardous situations and relevant information that come to their attention. Deputies and employees will not conceal, ignore or distort the facts of such crimes, emergencies, incidents and information.

2.12    Responsibility to Know Area of Jurisdiction
Deputies and other employees will know the boundaries of the Brandon/Rankin County and will be familiar with the names of streets and highways within those boundaries. Deputies and employees will also be familiar with the names and locations of businesses, public buildings, and as many residents as possible.

2.13    Sleeping on Duty
Deputies and employees must be alert throughout their tour of duty. Sleeping while on duty is strictly forbidden.

2.14    Assisting Criminals
Deputies and employees will not communicate in any manner, directly or indirectly, any information that may delay an arrest or enable persons suspected of criminal acts to escape arrest or punishment. Nor will deputies or employees dispose of property or goods seized or taken from a suspect, or destroy evidence of unlawful activity.

2.15    Reading on Duty
Deputies and employees will not read newspapers, books, or magazines while on duty and in the public view unless authorized by a supervisor.

2.16    Studying on Duty
Deputies and employees will not engage in any studying activity during their regularly assigned working hours that are not directly related to their current job assignment.

2.17    Maintaining Communications
Deputies will be directly available by normal means of communication while they are on duty or officially on-call, and will promptly respond when called. On-duty deputies will maintain radio communications with the Rankin County Sheriff's Department dispatcher while he/she is on-duty and radio equipped.

2.18    Keeping Notes on Police Activities
Deputies and employees will maintain written notes on police matters such as calls, arrests and other activities to the extent that they may later complete official reports and accurately testify in official proceedings.

2.19    Completing Official Reports
Unless otherwise directed, deputies and employees will promptly submit all reports completed prior to going off duty. All reports, forms, memoranda, citations, or other papers utilized in this department will be completed in black ink, computer printed, or typed. Special projects may require deviation from this requirement.

2.20    Reporting Accidents and Injuries
Deputies and employees will immediately report the following accidents and injuries:
    a.  On-duty traffic accidents in which they are involved
    b.  Personal injuries received in the line of duty
    c.  Personal injuries not received in the line of duty but which are likely to interfere with performance of police duties
    d.  Property damage or injuries to other persons that resulted from the performance of his police duties.
    e.  Discharge of weapon except when engaged in department training exercise, firearms qualifications or sporting event.

2.21    Reporting Address and Telephone Number
Deputies and employees will have a working telephone at their residence and will register their correct residence address and telephone number with the Sheriff's Department. Any change in address must be reported immediately.

2.22    Testifying in Departmental Investigations
Deputies will make statements or furnish materials relevant to a departmental investigation as required.

2.23    Overtime
Authorized supervisors must approve overtime requests prior to the actual time work begins.

2.24    Duty to be Prompt and Punctual
Employees will be prompt and punctual when reporting to their official duties or assignments.

2.25    Remaining at Duty Station
Employees and deputies will remain at their duty assignment unless and until they are properly relieved. Absence from assigned workstation or duty without permission is prohibited.

2.26    Excessive Absenteeism
Habitual or patterned use of sick leave or leave without pay, not supported by competent medical evidence or other proof of necessity is prohibited.

2.27    Prohibited Association / Frequenting
Associating with people, organizations, or places known to be involved in criminal activity is prohibited unless necessary for law enforcement business.

2.28    Subversive Organizations
Deputies and employees will not knowingly be members of, or affiliated with, any subversive organization whose avowed purpose advocates the overthrow or disruption of the lawful function of any federal, state, county, or municipal government.

2.29    Duty With Regard to Civil Proceedings
No employee will initiate any civil proceedings arising out of a law enforcement activity without first notifying the Sheriff. Private civil actions that have no connection with a member's department position or official action are not within the scope of this rule.

2.30    Supplies or Services
Deputies and other employees will not use agency supplies or resources for personal use. The use of the time, facilities, equipment or supplies of the department for private gain or advantage is prohibited.

2.31    Bulletin Boards
Employees are responsible for reading notices posted on official bulletin boards.

2.32    Refrained From Conducting Personal Business While On-Duty
Employees will not conduct personal business while on-duty without prior approval from their supervisor.

2.33    Use of Tobacco Products
Use of tobacco products while in any Rankin County building, or at any time while in personal contact with the public is prohibited. This policy does not apply to designated smoking areas at government or other public buildings such as restaurants.

2.34    Confidentiality / Protection From Retaliation
The identity of persons reporting harassment will be protected to the extent allowed by law. Any employee reporting harassment or unwanted conduct will not be retaliated against. Any employee who engages in such retaliation will be discharged.

**Section Three - Cooperation with Fellow Employees and Agencies:**

3.1    Respect for Fellow Deputies and Employees
Employees will treat other employees with respect, as they would prefer to be treated. They will be courteous, civil, and respectful of their superiors and their associates.

Command and supervisory personnel will support subordinates in their actions and orders when they can do so reasonably. They will avoid censuring subordinates in the presence of others and will not injure or discredit those under their authority by intentional or abusive conduct. This does not prohibit informal oral reprimands or constructive criticisms directed to a subordinate. Any acts of counseling, disciplining, complaining or criticizing must be done positively and constructively in an appropriate setting.

3.2    Supporting Fellow Employees
Employees will cooperate, support, and assist each other at every opportunity. Employees will not maliciously criticize the work or the manner of performance of another. It is the duty of every officer and employee to refrain from originating or circulating any malicious gossip to the intended detriment of the department or any member thereof.

3.3     <u>Case or Operations Interference</u>
Deputies and employees will not interfere with cases assigned to others without receiving clearance from the officer to which the case is assigned or as directed by a supervisor. Should interference occur, the assigned officer will submit a written report to his immediate supervisor.

3.4     <u>Cooperation with Other Agencies</u>
Deputies and employees of Rankin County Sheriff's Department will cooperate with all governmental agencies by providing whatever aid or information such agencies are legally entitled to receive. Any doubts will be passed to a supervisor for approval, before cooperation is rendered.

3.5     <u>Disclosing Information Relating to Police Activities</u>
Discussion of operations and official business of the department is prohibited outside of those authorized individuals that have a *need to know*.

3.6     <u>Misconduct Known to Personnel</u>
Failure to report an employee's violation of a law, rule or regulation, policy or procedure, or a general or special order is prohibited.

**Section Four - Restrictions on Behavior:**

4.1     <u>Interfering with Private Business</u>
Employees of the Rankin County Sheriff's Department will not interfere with the lawful business of any person.

4.2     <u>Use of Intimidation</u>
Deputies and employees will not use their official positions to intimidate persons engaged in a civil controversy.

4.3     <u>Soliciting and Accepting Gifts and Gratuities</u>
Unless approved in writing by the Sheriff, deputies and employees of the department may not solicit or accept any *reward, gratuity, gift or compensation* for services performed as a result of their relationship with the department. This *restriction applies regardless of whether the service was performed on-duty or* off-duty.

4.4     <u>Soliciting and Accepting Gifts from Suspects and Prisoners</u>
Deputies and employees are strictly prohibited from soliciting or accepting any *gift, gratuity, loan, fee* or other item of value, or from *lending* or *borrowing*, or from *buying* or *selling* anything of value from or to any suspect, prisoner, defendant or other person involved in any case, or other persons of ill repute, or professional bondsmen, or other persons whose vocations may profit from information obtained from the police.

4.5     <u>Reporting Bribe Offers</u>
If a deputy or employee receives a bribe offer, he will immediately make a written report to the Sheriff and submit it to his immediate supervisor.

4.5    <u>Accepting Gifts from Subordinates</u>
Without approval from the Sheriff, employees will not receive or accept any gift or gratuity from subordinates.

4.6    <u>Giving Testimonials and Seeking Publicity</u>
As it may pertain to their employment with the department, deputies and employees will not give testimonials or permit their names or photographs to be used for commercial advertising purposes.  Deputies and employees will not seek personal publicity either directly or indirectly in the course of their employment.

4.7    <u>Soliciting Business</u>
Deputies and employees will not solicit subscriptions, sell books, papers, tickets, merchandise or other items of value nor collect or receive money or items of value for any purpose while on duty unless specifically authorized in writing by the Sheriff.

4.8    <u>Intoxication</u>
Deputies and employees will not be under the influence of any intoxicating beverage or substance during their tour of duty or immediately prior to their tour of duty.  Nor will deputies and employees be intoxicated off duty while in the public view. Deputies and other employees will not use any intoxicating substance while off duty to such an extent that they become unfit to report for duty.

4.9    <u>Drinking While in Uniform or OnBDuty</u>
Deputies or other employees will not consume alcoholic beverages while in uniform, on duty, on government property, or in an official vehicle of this department.  Deputies and other employees will not drive or operate motor vehicles within eight hours after consuming alcoholic beverage(s).

4.10    <u>Liquor on Official Premises</u>
Deputies and employees will not bring containers of intoxicating beverages into a building or vehicle except as *properly sealed and marked* evidence in a criminal or juvenile case.

4.11    <u>Entering Bars, Taverns and Liquor Stores</u>
Other than for the purpose of performing their official duties, deputies and employees on duty or in uniform will not enter or visit any bar, lounge, parlor, club, store or any other establishment whose primary purpose is the sale and on-premise consumption of alcoholic beverages.  Deputies and employees on duty or in uniform will not purchase alcoholic beverages.

4.12    <u>Playing Games on Duty</u>
Deputies and employees on duty or in uniform will not engage in any game of cards, billiards, pool, chess, dominoes, electronic, or other games.

4.13    <u>Political Activity</u>
Deputies and employees are will not participate (e.g., make political speeches, pass out campaign or other political literature, write letters, sign petitions, actively and openly solicit

votes) in political campaigns while on duty or in uniform.

4.14   <u>Seeking Personal Preferment</u>
Deputies and employees will not solicit petitions, influence or seek the intervention of any person outside the department for purposes of personal preferment, advantage, transfer, advancement, promotion or change of duty for themselves or any other person.

## Section Five - Identification and Recognition:

5.1   <u>Giving Name and Badge Number</u>
Deputies and employees will give their names, badge number, and other pertinent information to any person requesting such facts unless doing so would jeopardize a successful completion of a police assignment.

5.2   <u>Carrying Official Identification</u>
Deputies will have official police identification available at all times unless involved in sanctioned covert activities, or engaged in athletic or activities.

5.3   <u>Personal Cards</u>
Business cards showing connection to the agency must be approved by the Agency

5.4   <u>Exchange, Alteration or Transfer of Badge, Patch or Logo</u>
The official badge, patch, or logo of the agency will not be altered, transferred, or exchanged except as authorized by Sheriff.

## Section Six - Maintenance of Property:

6.1   <u>Use of Rankin County Property or Service</u>
Deputies and employees will not use or provide any Rankin County equipment or service other than for official Rankin County business unless specifically authorized by the Sheriff.

6.2   <u>Responsibility for Rankin County Property</u>
Each officer or other employee is responsible for keeping all agency equipment clean, in good working order, and protect it from loss, damage, or destruction. Employees deemed responsible for the loss or damage of issued items may, in addition to any disciplinary action given, be required to compensate the department for the loss or damage.

6.3   <u>Reporting Needed Repairs</u>
Deputies and employees will promptly report the need for repair of Rankin County-owned property to their supervisor.

6.4   <u>Responsibility for Private Property</u>
Deputies and employees are responsible for protecting private property or equipment that has come into their possession by reason of their office against loss, damage, or destruction.

6.5    <u>Care of Quarters</u>
Deputies and employees will keep their offices, vehicles, lockers, and desks neat, clean and orderly.

6.6    <u>Property and Evidence</u>
Deputies and employees will tag and place all evidence in the custody of the evidence officer as soon as possible. Deputies and employees will not convert to their own use, manufacture, conceal, falsify, destroy, remove, tamper with, or withhold any property or evidence held in connection with an investigation or other official action except in accordance with established procedures.

6.7    <u>Alteration or Modification of Police Equipment</u>
Deputies and employees will not use any equipment that does not conform to policy or specifications. All equipment will becarried and utilized only as issued and authorized, and no changes, alterations, modifications or substitutions will be made to such equipment unless approved by the Sheriff.

6.8    <u>Parking in Unauthorized or Reserved Parking Spaces</u>
Parking in designated *handicap permit* spaces, *reserved or restricted* space, or *marked fire lanes*, unless responding to an actual emergency, is prohibited.

**SECTION SEVEN: Relationships with Courts and Attorneys**

7.1    <u>Attendance in Court</u>
Deputies and other employees will arrive on time for all required court appearances and will be prepared to testify.

7.2    <u>Recommending Attorneys or Bondsmen</u>
Deputies and other employees will not suggest, recommend, advise or counsel the retention of a specific attorney or bondsman to any person coming to their attention as a result of police business.

7.3    <u>Testifying for a Defendant</u>
Any officer or employee subpoenaed or requested to testify for a criminal defendant or against Rankin County or against the interest of the department in any hearing or trial will immediately notify the Sheriff, through the chain of command. Likewise, employees or deputies subpoenaed to judicial hearings will honor said subpoena and notify their immediate supervisor in a timely manner.

7.4    <u>Interviews with Attorneys</u>
Interviews between a deputy or employee and a complainant's [criminal] or Plaintiff's [civil] attorney about a case arising from the deputy's employment by the department will be done only in the presence of or with the knowledge and consent of the Sheriff or his designee only.

7.5    <u>Assisting in Civil Cases</u>
Deputies and other employees will not serve civil-process papers nor render assistance in civil cases except as required by law and approved by the Sheriff.  Deputies and other employees will not volunteer to testify in any civil action arising from Agency duties.

7.7    <u>Notice of Lawsuits Against Deputies and Employees</u>
Deputies and other employees who have had a suit filed against them because of an act performed in the line of duty will immediately notify the Sheriff in writing and furnish a copy of the complaint as well as a full and accurate account of the circumstances in question.

7.8    <u>Notice of Investigation, Arrest, or Citation</u>
Deputies and employees who become the subject of citations or arrest actions will immediately notify the Sheriff in writing.  Any officer or other employee who has reason to know they are the subject of a criminal or civil action will immediately notify their supervisor, who will in turn notify the Sheriff.

**Rankin County Sheriff's Department**
**Law Enforcement**
**Policies and Procedures**

| | |
|---|---|
| **Subject:** Corruption Prevention | **Policy Number:** 2. 5 |
| **Issue Date: June 2003** | **Revision Date: January 2005** |
| **Approval Authority: Bryan Bailey, Sheriff** | |

**POLICY:**

The Rankin County Sheriff's Department has established procedures to prevent corruption, to investigate complaints or allegations of corruption, and administer administrative punishment or pursue criminal prosecution where corrupt acts are suspected of being a criminal offense.

**DEFINITIONS:**
*Corruption:* Acts involving the misuse of authority by police officers in a manner designed to produce personal gain for the officer or others.

*Supervisor:*   Employees having day-to-day responsibility for management and oversight of subordinates and/or are responsible for commanding a work element.

**PROCEDURES:**

**Establishment and Maintenance of Professional Standards:**
*Philosophy, Goals, and Values*: The Rankin County Sheriff's Department periodically reviews, and update our statement of goals, values, and general philosophic approach to policing. These statements appear in the policy manual and are constantly reinforced.  Supervisors and trainers review these statements with subordinates.

*Code of Ethics*:  We periodically review, and update if necessary, our *code of ethics*.  Each employee is provided with a personal copy of the *code of ethics*, which is contained in this manual.

*Rules of Conduct*: The Rules of Conduct are included in the policy manual.  All employees are required to read, understand and follow these rules.

Employees are instructed to seek answers from their supervisors regarding any question regarding *corruption, ethics, procedural*, or *personal conduct.*

**Proactive Prevention Measures:**
Each Department supervisor is responsible for managing corruption responsibilities that include:

1. Reviewing citizen and internal complaints for indicators of misuse of police powers for personal gain.
2. Reviewing the findings of internal affairs investigations for patterns that are indicative of corrupt police behavior.

3. Reviewing duty assignments to ensure that periodic rotations are occurring according to agency policy.
4. Investigating citizen complaints in which corruption is suspected.
5. Where consistent with applicable laws, reviewing overtime pay assignments, employee income and, in special cases, employee federal income tax returns to investigate suspected or reported instances of corruption or determine if patterns emerge indicative of corrupt activities.
6. Reviewing the findings of inspection reports to identify indicators of corruption.
7. Providing effective means for citizens and department employees to report behavior indicative of corruption.
8. Providing reports to the Sheriff or his designee and when so directed to provide to the community information with regard to the number of corruption cases investigated and the number sustained.
9. Providing public education necessary to promote citizen awareness of corruption and to assist the agency in maintaining the integrity of law enforcement service.

**Responsibilities of Supervisors:**

1. Supervisors play a key role in preventing corruption and to the degree reasonable and appropriate will be held accountable for corruption that occurs under their assigned area of supervision or command.
2. Supervisors must report suspicious employee behavior that may indicate corruption, whether on and off duty activities.
3. The associated performance of supervisors and higher-level supervisors will be reviewed when subordinates are charged with corruption violations.
4. Internal affairs investigators will ensure that reasonable portions of inspections are directed toward discovering corruption violations.
5. Internal affairs investigators are required to immediately notify the Sheriff when serious corruption is suspected.

**Responsibilities of Higher Level Supervisors:**
Command level officers will:

1. Set the example for subordinates by word and deed. Corruption violations on the part of managers will be vigorously prosecuted.
2. Monitoring the activities of their subordinate supervisors with special regard to supervisors' concern for responsibility and integrity within respective units.
3. Conduct the recruitment, selection, and training processes with an acute awareness that integrity in the workplace correlates with the quality of the employees.
4. Establish training in corruption prevention, ethics, integrity, and professional standards for all levels of the department.
5. Establish a process to recognize employees who exemplify the high ideals and integrity of police service and the professionalism of the agency.

**Responsibilities of All Employees:**
The code of ethics is a working and applicable document. Employees are responsible for providing timely information to their supervisors or command-level officers when they suspect or know of corrupt practices.

**Specific and Critical Policies and Procedures - Narcotics Enforcement:**

1. Two or more officers should be present during any arrest resulting from a planned drug operation.
2. All confidential informants and drug buys will conform to control, bookkeeping, and accountability procedures detailed in this agency's policies and procedures.
3. All evidence will be processed strictly according to the policies and procedures governing the property and evidence functions.

**Response to Corruption Allegations:**
Whenever there is a suspicion that a complaint or an internal investigation will result in a charge of corruption, the following procedures will be followed:

1. The Sheriff notified immediately and will be responsible for notifying appropriate county officials.
2. Information will be released to the public as determined by the Sheriff. If a Complaint is prosecuted criminally, the Sheriff will authorize release of information appropriate to the public.

This agency will cooperate fully with any criminal investigation to the extent permitted by law. An after-action review will be conducted to determine the cause(s) of corruption and to recommend any system changes or modifications designed to prevent recurrence.

**Rankin County Sheriff's Department**
**Law Enforcement Policies and Procedures**

| | |
|---|---|
| **Subject:** Search Warrants | **Policy Number:** 3.05 |
| **Issue Date:** June, 2003 | **Revision Date:** May, 2012 |
| **Approval Authority:** Bryan Bailey, Sheriff | |

## POLICY:

It is the policy of the Rankin County Sheriff's Department to:

1. Have sound knowledge of the legal requirements associated with obtaining a search warrant in order to prevent suppression of evidence;

2. Provide techniques to accomplish a thorough and legal search;

3. Observe the constitutional rights of the person(s) the warrant is being served upon;

4. Minimize the level of intrusion experienced by those who are having their premises searched;

5. Respect reasonable expectations of privacy;

6. Provide for the highest degree of safety for all persons concerned; and

7. Establish a record of the entire process.

## DEFINITIONS:

*Search Warrant:* A written order, in the name of the People, signed by a Judge, directing a law enforcement officer to search for specified personal property or person if a valid arrest warrant is pending with instructions to bring it before the Judge.

## PROCEDURES:

**Warrant-less Searches:**

The Fourth Amendment to the U.S. Constitution prohibits unreasonable searches. Officers conducting searches without warrants must prove that searches are reasonable. Therefore, officers should consider obtaining search warrants whenever time and circumstances permit. Search warrants are not required if officers are:

1. Securing weapons or evidence of a crime incident to an arrest;

2. Assisting individuals under life-threatening situations;

3. Protecting the public from harm;

4. Searching for additional victims at crime scenes;

5. Protecting vital evidence;

6. Pursuing a perpetrator;

7. Searching vehicles based on probable cause that the suspects may contain contraband; and

8. Searching individuals under their voluntary, verbal or written consent.

9. Other situations as authorized by state or federal statutes and/or case law.

**Legal Basis for Seeking a Search Warrant:**

The following guidelines will be followed by all officials of the Rankin County Sheriff's Department when obtaining search warrants:

1. Officers must be able to articulate probable cause to believe that specific evidence, contraband, or fruits of a crime may be found at a particular location.

2. Any facts that establish probable cause must be clear and specific.  The officer will base all facts on:

    a. Personal observation or knowledge; or

    b. Information from a reliable source.

3. When informants are used, particularly confidential informants, specific information should be provided on their reliability.

**Affidavit Preparation:**

An affidavit supporting the warrant will be prepared on the appropriate agency form before executing a warrant. Affidavits are vital to the search warrant validity. Affidavits should clearly and completely convey the following information:

1. An offense description with reference to the criminal code section, where possible.

2. An accurate street address of the location to be searched;

3. If conducting a complete search of a home and its surroundings, the affidavit should specify a "premises" search and its "curtilage" and should identify any outbuildings such as garages, tool sheds or barns, where appropriate;

4.  Any motor vehicles known to be on the premises that may be searched should be specified;

5.  Anyone who is searched, besides being frisked for weapons, should be noted by name in the affidavit.

6.  The specific items to be searched for will be detailed in the affidavit, including any alterations made to those items;

**Time Limitations & Execution of a Search Warrant:**

It is the policy of Rankin County Sheriff's Department to execute search warrants as soon as possible following the conditions of warrant. Circumstances may warrant execution that include, but are not limited to:

1.  The seizable items have not arrived at the search site;

2.  The probability that substantial resistance will be encountered; and

3.  A particular person(s) is absent from the search site and it is determined that the search would best be conducted if that person were present.

**Preparation & Execution of a Search Warrant:**

Prior to entering the premises, the supervisory officer will:

Ensure that the warrant is valid;

Confirm that the property about to be searched is the property listed on the warrant;

Conduct a pre-entry briefing of the execution process with all search team personnel to include:

a.  Review of the order of operations and procedures;

b.  A simulation of conditions of the search using the appropriate maps, charts and diagrams; and

c.  Tactics and equipment to be used in the event of forced entry.

Review the most current intelligence available to determine whether circumstances have changed that may make executing the search warrant at that time undesirable;

Include at least one uniformed officer in the execution of the search warrant;

Ensure that all non-uniformed officers can be clearly identified as law enforcement officers by distinctive armbands, jackets or other indicators of office;

**Entry Procedures & Execution of a Search Warrant:**

All officers should follow these guidelines:

1. Entry into a property for the purpose of serving a search warrant may occur at any time of the day or night if the affidavit provides good cause and permission is granted in the warrant.

2. Approach the scene without sirens.

3. Make contact with the surveillance team to ensure that the time is appropriate to serve the search warrant.

4. The supervisory officer will notify persons inside the search site, in a voice loud enough to be heard inside the premises, that he/she is a police officer and has a warrant to search the premises, and that he/she demands entry to the premises at once.

5. Search team personnel will be positioned so that all exits from the property are covered;

6. Once inside the property, the supervisory officer will ensure that a member of the search team conducts a security sweep of the search site.

7. After the search site has been secured, officers will develop a prioritized strategy that details the likely whereabouts of the items to be seized and an order of operation for conducting the search.

8. An officer will be designated to collect, preserve and document all items seized from the property.

9. Any real property that is damaged during an entry:

   a. Will be secured or guarded until the property is secured, if the property is left vacant; and

   b. Be detailed in a special report prepared on the actions that caused the damage and the nature and extent of the damage.

**Record of the Search Warrant:**

Officers will record and provide a list of any property taken during a search, return the warrant along with the list of property seized and deliver the property inventory to the appropriate judicial authority within specified time limits.

**Rankin County Sheriff's Department**
**Law Enforcement Policies and Procedures**

| | |
|---|---|
| **Subject:** Interviews and Searches | **Policy Number:** 3.07 |
| **Issue Date:** June, 2003 | **Revision Date:** January, 2005 |
| **Approval Authority:** Bryan Bailey, Sheriff | |

**POLICY:**

Officers will perform field interviews and searches in a professional and courteous manner, without compromising their own safety or the safety of others, and without undue embarrassment or harassment to the public.

**DISCUSSION:**

Field interviews are an important technique for officers to use in preventing and investigating criminal activity. It may be necessary for officers to search those being questioned in order to protect their own safety.

Field interviews and searches can be perceived by some as unnecessary or discriminatory police harassment even when conducted with respect and in strict compliance with our established policies and procedures and the law. In order to maintain the effectiveness and legitimacy of this practice and to protect the safety of officers who must approach and deal with suspicious individuals, officers will conduct field interviews and searches in conformance with procedures set forth in this policy and procedure manual.

**DEFINITIONS:**

*Reasonable Suspicion:* An officer is lead to suspect that criminal activity has been, is being, or is about to be committed given the facts and circumstances of the situation.

*Field Interview:* The brief detainment of an individual, whether on foot or in a vehicle, based on reasonable suspicion, for the purposes of determining the individual's identity and resolving the officer's suspicions concerning criminal activity.

*Pat-Down Search:* A "frisk" or external feeling of the outer garments of an individual for weapons, contraband, or concealed evidence.

*Rub Search:* Rubbing of the individual's body including the genitals, buttocks, and breasts, for weapons, contraband, or concealed evidence.

*Strip Search:* A visual inspection of an unclothed individual for weapons, contraband, or concealed evidence.

*Body Cavity Search:* A strip search that involves probing the mouth, anus, and genitals of the individual for weapons, contraband, or concealed evidence.

**PROCEDURES:**

**Justification for Conducting a Field Interview:**

Officers may stop individuals for the purpose of conducting a field interview only when *reasonable suspicion* is present. In establishing reasonable suspicion an officer must be able to describe specific facts that, when taken together with common sense, reasonably justify the stop. Such facts include, but are not limited to the following:

1. Appearance or behaviors which suggest that the person is part of a criminal activity or enterprise, or is engaged in a criminal act.

2. Hour of day or night is inappropriate for the suspect's presence in the area.

3. Suspect's presence or activity in a neighborhood or location is inappropriate.

4. Suspect is carrying a suspicious object.

5. Suspect's clothing bulges in a manner that suggests he or she is carrying a weapon.

6. Suspect is located in proximate time and place to an alleged crime.

7. Officer has knowledge of the suspect's prior criminal record or involvement in criminal activity.

8. Suspect flees at the sight of a police officer under conditions that suggest a specific criminal activity.

**Procedures for Initiating a Field Interview:**

Officers may stop and interview individuals after observing suspicious behaviors or circumstances following these guidelines:

1. When approaching individuals, officers should clearly identify themselves as law enforcement officers and display department identification.

2. Officers must watch the stopped individuals carefully for movement to retrieve weapons, conceal or discard contraband, or any other questionable actions.

3. Before approaching a group of individuals, the officer should determine whether the circumstances warrant a request for *backup assistance* and whether contact with the observed group can and should be delayed until assistance arrives.

4. Officers will confine their questions to those concerning individual identity, place of residence, and other inquiries necessary to resolve the officer's suspicions. In no instance will officers detain individual(s) longer than reasonably necessary to resolve outstanding issues.

5. Officers are not required to give Constitutional rights and warnings (*Miranda* and/or *juvenile)* in order to conduct field interviews, unless the person is considered a *suspect*, and the individual *is not free to leave the presence of the officer*. If and when the individual becomes a suspect and the officer decides that the individual may not leave, the officer will read all required warnings to the suspect(s), and provide those rights unless specifically waived by the suspect(s).

6. Stopped individuals are not required to answer any questions posed during field interviews. Failure to respond to an officer's inquiries is not sufficient grounds to make an arrest, or stop the individual(s) from leaving.   Likewise, individuals are not required to stay in the presence of an officer unless they are suspects, and you advise them that they are not free to go. Such refusal may be sufficient justification for additional observation and investigation.

**Justification for Conducting Pat-Down Searches:**

Officer may perform a *pat-down search* of the outer garments of a stopped individual for weapons if and when:

1. Individual has been legitimately stopped with *reasonable suspicion*; &

2. Officer has *reason to believe* that the individual possesses weapons and poses a threat to the officer's or another nearby person's safety. Not every field interview poses sufficient justification for conducting a pat-down search, but any of the following factors may justify a search to include:

   a. The type of crime suspected, particularly in crimes of violence where the use or threat of deadly weapons is involved;

   b. A single officer handling more than one suspect;

   c. Hour of the day and the location or neighborhood where the stop takes place;

   d. Prior knowledge of the suspect's use of force and/or propensity to carry deadly weapons;

   e. Appearance and demeanor of the suspects;

   f. Visual indications that suggest the suspect is carrying a firearm or other deadly weapon;

g.  The age and gender of the suspect.

Whenever possible, pat-down searches should be performed by officers of the same sex as the suspect.

**Procedures for Performing a Pat-Down Search:**

Pat-down searches should be performed with caution, restraint, and sensitivity. These searches may only be performed to protect the safety of officers and others and may never be used as a pretext for intimidating individuals or groups of individuals, to obtain evidence, or for any other purpose. Pat-down searches should be conducted in the following manner.

1.  Pat-down searches should be conducted by at least two officers; one who performs the search while the other provides protective cover.

2.  Pat-down searches will be performed with:

    a.  Suspect's hands high on the wall or on the patrol vehicle, with extended fingers.

    b.  Feet positioned in a wide stance, approximately three [3] feet apart, to inhibit escape.

    c.  Back arched and in a straight line with the legs.

    d.  The officer's left leg wedged behind the suspect to subdue any attempted escape.

    e.  One hand placed in the middle of the back.

3.  Officers are permitted only to feel the outer clothing of the suspect. Officers may not place their hands in pockets unless they feel an object that could reasonably be a weapon.

4.  If the suspect is carrying an object such as a handbag, suitcase, briefcase, sack, or other item that may conceal a weapon, the officer should not open the item but instead place it out of the suspect's reach.

5.  If the external feeling of the suspect's clothing fails to disclose evidence of a weapon, no further search may be made. If evidence of a weapon is present, an officer may retrieve that item only. If the item is a weapon, the possession of which is a crime, the officer may make an arrest of the suspect and complete a full-custody search of the suspect.

**Rub Searches:**

If reasonably necessary, a more intrusive frisk may be performed on the individual. In such cases the body is *rubbed* systematically through the clothing in search of weapons, contraband, or concealed evidence. An officer of the same sex as the individual being searched will perform rub searches, if available. In an instance where a rub search is conducted on a suspect of the opposite sex, officers will use the <u>back of the hand</u> to do the rubbing.

**Strip Searches:**

Strip searches of detainees will only be conducted in the rarest of circumstances when the life of the officer or others may be at serious risk, and only with the explicit approval of a supervisory officer. These searches will be conducted:

1. By specially trained and designated personnel;

2. In conformance with approved hygienic procedures and professional practices;

3. In a room specifically authorized for this purpose;

4. By the least number of personnel necessary to maintain privacy and only by those of the same sex as the suspect.

**Body Cavity Searches:**

Search of an individual's blood stream, body cavities, and subcutaneous tissues are only to be conducted by a physician, licensed nurse, or medical staff specifically trained for this task. Any such search, conducted incidental to arrest, may be made without a search warrant only:

1. If there is a strong probability that items will be seized, which relate to the offense for which the individual was arrested;

2. If delay in securing a *search warrant* would <u>probably</u> result in the disappearance or destruction of the objects of the search; &

3. If it appears that the search is reasonable under the circumstances of the case, including the seriousness of the offense, and the nature of the invasion of the individual's person.

**Procedures for Performing a Body Cavity Search:**

Should any search lead an officer to believe that the suspect is concealing a weapon, evidence, or contraband within a body cavity, the following procedures will be followed:

1. Officer will consult with his immediate supervisor to determine whether *probable cause* exists to seek a search warrant for a body cavity search. The decision to seek a search warrant is reasonable only *where the suspected offense is of a serious nature and/or poses a threat to the safety of the officer or others*, and/or *the security of the department's detention operations may be compromised*. If *probable cause* exists for a body cavity search, an affidavit for search warrant will be prepared that clearly defines the nature of the alleged offense and the basis for probable cause.

2. A body cavity search will be performed only by an authorized physician, licensed nurse or medical personnel specifically trained to perform these tasks.

3. For safety and security reasons, the search will be conducted in a room designated for this purpose at the department's detention facility, or at a medical clinic or hospital.

4. Body cavity searches will be performed with due recognition of privacy and hygienic concerns.

5. The authorized individual conducting the search will complete a report, and witnesses will cosign the document.

### Rankin County Sheriff's Department
### Use of Force Policies and Procedures
### Rankin County, Mississippi

| | |
|---|---|
| **Subject:**  Use of Force: <br> Deadly and Less Lethal Force | **Policy Number:** 4.1 |
| **Adoption Date:** February, 2005 | **Revision Date:** January, 2021 |
| **Approval Authority:  Bryan Bailey, Sheriff** | |

## POLICY:

Human life is sacred. Protecting human life is the most important mission of this agency. Apprehending criminals is less important than protecting innocent human life, including the Officer's own life.

Officers will maintain a constant readiness and ability to act in instances where, in *their perception*, the use of force or deadly force may be appropriate.  By maintaining readiness and capacity, Officers reduce the likelihood of opposition and of the actual need for a forceful response of any kind.  While *Officer discretion* is critical, the need for accountability and control of law enforcement activities is necessary to prevent potential abuses of authority.  Officers will only use the amount of force reasonably necessary to protect life and enforce the law under guidelines established in this policy manual.

## DEFINITIONS:

*Authorized weapon*: A weapon approved by the department for sanctioned use by its Officers.  No weapon will be authorized for carry or use by an Officer unless the agency expressly approves it and the Officer has demonstrated proficiency with the weapon type in accordance with agency guidelines.

*Baton or expandable baton*:  An impact weapon capable of inflicting bodily injury by striking with a portion of the weapon.  Only batons authorized by the department are authorized for carry and use.

*Chemical weapon*: A weapon capable of temporarily incapacitating a person through the controlled release of some chemical irritant or agent.

Policies and Procedures, Use of force & Deadly Force 4.1

*Certification with weapon:* The Officer has demonstrated proficiency with a particular weapon and been tested in it's safe care and use. The Officer is thereby authorized to carry and use this weapon in the performance of his official duties regardless of whether the Officer is on-duty or off-duty. Without such certification, the Officer will not carry or use this or a similar weapon.

*Deadly force*: An action, with or without the use of a weapon, intended to cause death or serious bodily injury; or, the use of any object in a manner intended to cause death or serious bodily injury to include choking.

*Electronic weapon:* A weapon using small bursts of electrical energy to temporarily incapacitate a person.

*Firearm*: Any device designated, made, or adapted to expel a projectile through a barrel by using energy generated by rapidly expanding gases, or any device readily convertible to that use; including all handguns, rifles, and shotguns.

*Force, non-deadly force, or less-lethal force:* Actions not calculated under the circumstances to cause death or serious bodily injury.

*Physical strength and skill:* Any physical actions by one or more Officers (e.g., holding, restraining, pushing, and pulling) which may include special skills (e.g., boxing, karate, and judo) but do not include the use of *deadly force* or any authorized/other weapon.

*Probable cause:* The total set of apparent facts and circumstances in which a reasonable person may believe that a crime has been committed and the person proposed to be detained had something to do with the commission of that crime.

*Serious bodily injury:* Harm that creates substantial risk of death, serious permanent disfigurement, or loss or impairment of any body function or organ.

**PROCEDURES:**

Levels of Use of Force:

Use of force or deadly force is controlled by the basic elements of a *reasonable Officer's perception* and a *reasonable Officer's response*. Officers will use only the level of force that is reasonably necessary to stop the perceived threat.

> **Compliant***:* The appropriate level of response is *cooperative controls,* including *Officer presence, hand signals, verbal commands and instructions,* light touching or *patting,* etc. In other words cooperation at this level is a *two way street.*

Policies and Procedures, Use of force & Deadly Force 4.1

*Passively Resistant: The* appropriate level of response is *contact controls,* including *strong or forceful soft hand, hand and arm holds, pressured physical movement of the suspect, removal,* etc.

*Actively resistant: The* appropriate response is *compliance techniques.* This is the threshold for any reasonable Officer to consider this suspect to be a potential threat to himself, the Officer or other citizens. Compliance techniques may include *all reasonable* means to cause the *suspect to comply as soon as reasonably possible.* These techniques may include *use of chemical weapons, electronic weapons, use of restraints, forced movement, forcing a suspect's limbs behind his back, forcing a suspect down on the floor or against a wall, or using other forms of rough physical force,* etc. Once suspects are perceived as actively *resistant*, Officers should not relax care until the subject is fully secured.

**Assaultive** **and a threat to bodily harm:** The appropriate level of response is immediate *defensive tactics.* The original assaultive behavior may have been directed at a fellow suspect, apparent victim or the Officer. *Defensive tactics* may include *impact weapons, hard fist, or any other reasonable means available* and at hand to stop the aggression, defend against the attack, and bring the suspect into compliance. It is contemplated and understood that reasonable Officers, while employing defensive tactics, may cause injury, serious injury, and in some isolated instances, death without intending such consequences.

**Assaultive B serious bodily harm or death:** The appropriate level of response is *deadly force.* Deadly force includes firearms, knives, or any other means immediately available that a reasonable Officer, in the same circumstance, would consider as potentially causing death or serious bodily injury.

It is important to remember that almost all incidents faced by police are not scripted, easy to understand, or predictable as to outcome. Officers will use their best effort to determine the threat and apply the corresponding response. Time permitting, Officers must use care in evaluating a suspect's actions and perceived threat. If there is reasonable doubt and time permits, seek assistance before acting. Justification for the use of force and deadly force must be limited to what is *known or reasonably perceived* by the Officer at the time of the incident. Facts unknown at the time force is used should not be considered later to determine whether the force was justified.

Officers will not intentionally use more force than is necessary and reasonable under the circumstances. Officers will never use force in response to mere verbal provocative or abusive language directed at the Officer. Officers must never use deadly force except to protect their life or the life of other human beings.

**Application of Use of Force and Deadly Force:**
Application of *deadly force* and *force* are authorized by an Officer only to achieve the following

Policies and Procedures, Use of force & Deadly Force 4.1

lawful objectives:

1. To defend himself or others against serious threats of serious bodily injury or death.
2. To stop dangerous felony flight where there is serious imminent risk to the public of death or serious bodily injury.
3. To prevent roaming at large by obviously mad or vicious animals.

Application of *force* but not *deadly force* is authorized by an Officer only to achieve the following lawful objectives:

1. To preserve the peace.
2. To defend themselves or others against unlawful violence.
3. To prevent the commission of self-inflicted injury or suicide by any person.
4. To make lawful arrests or searches; to overcome resistance to such arrests or searches; and to prevent escape from custody.
5. To prevent or interrupt an intrusion on or interference with the lawful possession of property.
6. To prevent roaming at large by obviously mad or vicious animals.

Before using any force against a suspect, **time permitting**, Officers will:

1. Have *probable cause* to arrest that suspect;
2. State his intentions to arrest and identify himself as a Officer; and
3. State the reason for the arrest.

The amount and degree of force Officers may use to achieve an objective takes into consideration the following possible issues, if time and circumstances allow:

1. Nature and seriousness of the original offense committed by the suspect.
2. Nature and seriousness of the risk of injury to the Officer or others.
3. Age, physical condition, and behavior of the suspect.
4. Relevant actions by any third parties.
5. Physical conditions (e.g., visibility) at the scene.
6. Feasibility and availability of alternative actions.
7. Opportunity and actual ability of the suspect to injure the Officer, himself, or others.

Before Officers use force (but not deadly force) for the purpose of protecting a person from self-inflicted bodily injury [suicide attempt] or from uncontrollable circumstances, the Officer will consider other available alternatives to protect that person from harm.

Officers may use unauthorized objects as weapons or use weapons in unauthorized manners if emergency circumstances make it necessary to protect human life and prevent serious injury.

Officers may draw and ready any authorized weapons for use only when they reasonably anticipate

Policies and Procedures, Use of force & Deadly Force 4.1

that they may have to use such weapon(s).  This does not require Officers to use the weapons.

Choke holds are strictly forbidden except only in deadly force situations.  Choke holds are defined as but not limited to any method by which a person applies sufficient pressure to a person to make breaking difficult or impossible and includes any pressure on the neck, throat or windpipe that may prevent or hinder breaking or reduce the intake of ar.  Choke holds also include applying pressure to a person's neck to stop the flow of blood to the brain.

Following the application of force, appropriate medical aid will be rendered to the subject.


**Use of Non-Deadly (Less-than-Lethal) Force:**

Officers will use physical strength and skill, restraint devices and techniques, chemical weapons, electronic weapons or impact weapons to apply non-deadly force only.

Officers have no obligation to *retreat* or *back down* before resorting to approved use of force, including deadly force. Officers may consider retreat or withdrawal where delay could make a more peaceable arrest or stop likely if such tactics would not increase risk to the Officer or others.   In some cases, an increased show of force may reduce the amount of force necessary to accomplish the Officer's objective.

Officers will not attempt to affect arrests alone if there is substantial risk to himself from the arrestee or another party unless there are no available reasonable alternatives.

Officers will use handcuffs or other restraining devices on all arrestees unless it is obviously unnecessary or impractical (e.g. the elderly, young juveniles, amputees, crippled, injured, or other applicable subjects).  Officers will take reasonable precautions to protect arrestees from injury caused by handcuffs or other restraining devices.  Recognizing that there may be extreme exceptions to the use of approved restraint devices, generally only restraining devices and techniques approved by the department may be used.

Officers may use chemical weapons and electronic weapons for self-protection or to subdue persons unlawfully resisting arrest.  Any person on which a chemical weapon has been used will be treated or decontaminated for exposure to the chemical agent as soon as practical and thereafter monitored for possible latent effects.  Any person on which an electronic weapon has been used will receive medical treatment if warranted as soon as practical.

Officers may use impact weapons to protect him or another from assault or to arrest a person who unlawfully and violently resists arrest if lesser methods have failed or if circumstances warrant the immediate use of the impact weapon.  However, Officers should:

1. Avoid baton blows that are capable of inflicting serious bodily injury;

Policies and Procedures, Use of force & Deadly Force 4.1

2.  Deliver only short snappy body blows to vulnerable areas in order to temporarily incapacitate subjects.


**Use of Deadly Force:**

Deadly force may not be used under the following circumstances:

1.  As a warning or threat (i.e. warning shots).
2.  With the intent to maim or cripple a person.
3.  On a person who has not caused or threatened to cause serious bodily injury or death to another person, including the Officer.
4.  On a person who simply flees or evades arrest.
5.  Merely to prevent the destruction or theft of property.
6.  When the Officer has some doubt as to the justification for using deadly force.


**Reporting the Use of Force:**

Officers who discharge firearms or who use chemical weapons, electronic weapons, impact weapons, special weapons, or who cause bodily injury or death to other persons by use of force or deadly force will notify their direct supervisor immediately.

In incidents where Officers cause serious bodily injury or death through the application of deadly force, they will: first call for medical assistance; then secure the scene as well as possible; then notify their direct supervisor.

Upon arrival, the supervisor will take charge of the scene along with any investigation concerning the incident and report the incident to the agency's Chief Officer or his/her designee; who may then request an outside agency to conduct the investigation. In incidents involving the use of force, all Officers will assist in every way possible with the investigation whether conducted by this or an outside agency.

The agency's Chief Officer or his/her designee will review any report generated by this policy in an effort to:

1.  Protect the integrity of the facts and the evidence;
2.  Ensure that the Officer's use of force complied with all appropriate state and federal laws and department policy;
3.  Determine if the Officer's use of force indicates a need for special counseling, training, or disciplinary action; and
4.  Determine whether the situation requires further action.

Policies and Procedures, Use of force & Deadly Force 4.1

**Reporting Requirements:**

The agency's Chief Officer or his designee will be notified immediately when any type of force is used and there is resulting *serious physical injuries or death.*

A *Use of Force Report* shall be completed and submitted, prior to the end of the shift (except for deadly force situations), by any Officer(s) who:
1. Discharges a firearm or electronic weapon for other than training.
2. Takes an action that results in or is alleged to have resulted in bodily injury or death to another person;
3. Applies force through the use of lethal or less-than-lethal weapons; or
4. Applies weaponless physical force at a level as defined by the agency.
5. Charges an arrestee(s) with Resisting Arrest or any crime where physical force, beyond simply handcuffing, was required to effect the arrest.

Each Officer who witnessed the incident or responded to the scene will also complete a written report prior to the end of the shift. These witness reports will be submitted to the agency's Chief Officer or his designee for review.

**Deadly Force Incident Procedures:**

The Officer(s) who actually used or employed the deadly force will be removed from line duty assignment pending administrative review. The Officer's weapon(s) will be collected and tagged as evidence. A substitute weapon will be issued the Officer(s) at the discretion of the agency's Chief Officer. The agency's Chief Officer or next senior supervisor at the scene will instruct the Officer(s) who used deadly force to:

1. Refrain from making any statements to the news media, other Officers or supervisors;
2. Refrain from discussing the matter between Officers or witnesses [if more than one Officer];
3. Return to or be transported directly to the station; and
4. Refrain from completing any reports or statements for at least twelve [12] hours (including a Use of Force Report).

When the Officer arrives at the station investigators will debrief the Officer(s) and advise the agency's Chief Officer or his designee of their preliminary findings. The Officer(s) will be placed on administrative leave. Thereafter, the Officer(s) will be transported home. The next day, at the station, the Officer(s) involved in the deadly force incident will complete his/her Use of Force Report and make all required statements. The Officer(s) will provide all required information as if a witness to the incident, providing his/her first-hand *perception of events* at the time and the *corresponding force options used.*

Policies and Procedures, Use of force & Deadly Force 4.1

All Use of Force Reports completed by the Officer(s) using force, other Officers or witnesses will include the following:

1. A description of the events leading to the use of force or deadly force;
2. The original offense or *probable cause* for the stop or action;
3. An accurate description of the incident and reasons for employing force;
4. A description of the weapon or device used and the manner in which it was used;
5. A description of the injuries suffered, and the treatment given or received;
6. A list of all participants and witnesses to the incident; and
7. A copy of all incident reports compiled as a result of the incident.

**Weapons Control & Issue:**

Officers will register all firearms carried on-duty or off-duty with the department, and will only carry or use authorized duty weapons, firearms and ammunition under these standards:

1. Firearm is registered with the department.
2. Specific firearm and ammunition *type* and *caliber* are approved for use by the agency's Chief Officer or his designee.
3. Firearms have been inspected and deemed safe by the department's firearms instructor(s).
4. The Officer has demonstrated proficiency and been certified in the last six [6] months in the use of all weapons and ammunition he/she carries both on-duty and off-duty.
5. Officer qualifies with the same weapon and type of ammunition [caliber, bullet weight, bullet design, and powder load] actually carried on duty.
6. If a different firearm is carried off-duty, the conditions of 1-5 above apply to the officer's off-duty weapon(s).

Officers may not modify or alter an authorized weapon in any material way without departmental approval.

**Firearms & Weapons Certification:**

The Firearms & Weapons Instructor(s) will qualify all Officers in the use of their primary and secondary firearms as well as any off-duty firearms and other weapons carried in the performance of their official duties. Certification for all weapons [*firearms, chemical agents, special munitions delivery systems*, etc.] authorized and carried by department Officers will be conducted on a regular basis. For further detail on weapons qualifications refer to the department's firearms training and qualification policy.

Under no circumstance will Officers who are not certified with their respective weapons be allowed to carry those particular weapons.

Policies and Procedures, Use of force & Deadly Force 4.1

**Allegations Against Staff:**

The agency's Chief Officer or his designee will investigate all allegations of improper use of force & deadly force by Officers and employees of this department.  In cases where possible criminal acts are involved, the appropriate law enforcement agency or prosecutor's office will be notified.

**Policy Adoption:**

It is hereby agreed that this document is not to be construed as an interlocal agreement, but merely an agreement between the below listed agency heads to present said document to their respective boards for consideration.  Each individual agency/board is free to adopt and/or amend this policy as their individual needs direct.

Policies and Procedures, Use of force & Deadly Force 4.1

**Use of Force Chart**



**Rankin County Sheriff's Department**
**Law Enforcement**
**Policies and Procedures**

| **Subject:** Electronic Weapons - Taser X26 | **Policy Number:** 4.5 |
|---|---|
| **Issue Date:** August, 2004 | **Revision Date: November, 2018** |
| **Approval Authority: Bryan Bailey**, Sheriff | |

**POLICY:**

Deputies of this department are authorized to use the Taser X26 Electronic Weapon as a non-deadly force option, when trained in its use.

**PROCEDURES:**

The Rankin County Sheriff's Department deputies will be authorized to carry the Taser X26 after they complete a training course approved by the Sheriff. The Taser X26, when used in compliance with the Rankin County Sheriff's Department policy, is considered non-deadly force.  Application of the Taser X26 is authorized to effect lawful arrest, prevent escape from custody, defend one's self, defend others from the imminent use of physical force and to restore institutional integrity in a detention facility.

The Taser X26 is a force option for deputies and employees of the department; however it is not intended to be an alternative to the use of *deadly force* when deadly force is imminently necessary to save human life and is clearly authorized.

The following guidelines apply to the carrying and use of the Taser X26.

**Training Requirements:**
The following training requirements apply to all uniformed deputies and civilian-clothed deputies authorized to carry the Taser X26 while on duty:

1. The Taser X26 is only authorized for carrying and use by deputies of this department who have successfully completed a basic course of instruction on such. The course will be approved by the department and consist of limits on use and application, liability, use of force, and student demonstration of proficiency.

**Using the Taser X26:**

1. Uniformed deputies will wear the Taser X26 externally in a holster and in a manner as instructed during the training/certification course. A Taser X26 device will not be pocketed or otherwise concealed by uniformed deputies since one purpose of the Taser X26 is to create a *visible deterrent* to potential offenders. This provision does not apply to employees or deputies assigned to *civilian clothes* or *under cover duties*.

2. The Taser X26 is not a substitute for using a deadly weapon when needed.

3. When reasonable efforts have failed to calm a person who is acting violently and/or is presenting a danger to himself or others, the *minimum* charge(s) necessary to subdue the person may be applied to the person.

4. The Taser X26 will only be used to terminate violent behavior or a threat of violent behavior that could result in physical injury or death to the officer, other persons or the violent individual.

5. The Taser X26 will normally be discharged from a distance as recommended by the manufacturer of the device.

6. Deputies should point the device at the violent or threatening person's body in accordance with the manufacturer's recommendations.

7. Discharging of the device will cease at the termination of the violent or threatening behavior.

8. Persons exposed to a Taser X26 charge will be handcuffed afterwards when they have:
   a. Attempted or actually used deadly force against deputies or others;
   b. Actively resisted voluntary detention;
   c. Actively been belligerent or combative; or
   d. Exhibited threatening or violent behavior.

9. If a person exposed to a Taser X26 charge requests medical attention the          appropriate attention will be provided as soon as reasonably possible.

10. The Taser X26 should never be discharged except when engaged in training or in   an actual use of force situation. Discharges are recorded within the device and a    discharge history report will be downloaded from each device on a periodic basis and after each deployment on an individual.

**No Use with OC Spray:**

The Taser X26 should not be used on persons who have been sprayed with OC Spray without taking precautionary measures if possible. Some OC Spray is flammable and the electrical charge emitted by the Taser X26 could possible ignite it, thereby putting the offender and/or officer at risk.

**Reporting Procedures:**

Deputies utilizing the Taser X26 device will prepare a Use of Force Report describing the use of the Taser. This report will be completed and submitted to the supervisor prior to the end of the shift. The Taser X26 discharge history report, downloaded from the device after deployment, will then be attached to the Use of Force Report.

**Rankin County Sheriff's Department**
**Law Enforcement**
**Policies and Procedures**

| Subject: Body Worn Cameras | Policy Number: 7.1 |
|---|---|
| **Issue Date: November 2020** | **Revision Date:** |
| **Approval Authority: Bryan Bailey, Sheriff** ||

**POLICY:**

It is the policy of the Rankin County Sheriff's Department that the deputies shall activate the body worn cameras (BWC) when in contact with the public or when such use is appropriate to the proper performance of his or her official duties, subject to the procedures set forth in this policy. All such recordings must be consistent with this policy and with applicable laws.

**PURPOSE:**

The purpose of this policy is to provide deputies with instructions on when and how to use BWCs so that deputies may reliably record their contacts with the public.

**DISCUSSION:**

This agency has adopted the use of BWCs to accomplish several objectives. The primary objectives are as follows:
1. BWCs allow for accurate documentation of law enforcement contacts, arrests and critical incidents. They also serve to enhance the accuracy of officer reports and testimony in court.
2. Audio and video recordings also enhance this agency's ability to review probable cause for arrest, officer and subject interaction and evidence for investigative and prosecutorial purposes and to provide additional information for officer evaluation and training.
3. The BWC may also be useful in documenting crime and accident scenes or other events that include the confiscation and documentation of evidence or contraband.

**PROCEDURES:**

**When and How to Use the BWC**
1. Officers shall activate the BWC to record contact with citizens in the performance of official duties subject to the following provisions:
   a. Situations requiring officers to activate the BWC include but are not limited to traffic stops, officer initiated stops of members of the public, arrests, searches, interviews and interrogations, and warrants service, pursuits and any other contact with a member of the public an officer reasonably believes may become adversarial.
   b. Officers are not required to activate the BWC during non-law enforcement interactions such as a person asking for direction
   c. Officers are required to obtain consent prior to recording interviews with crime victims in order to balance privacy concerns with the need to accurately document events.
   d. Officers have the discretion to keep their cameras turned off during conversations with crime witnesses and members of the community who wish to report or discuss

criminal activity in their neighborhood.
   e. If any non-recorded conversation with a member of the public becomes adversarial, the BWC must be activated.

2. Whenever possible, officers should inform individuals that they are being recorded. In locations where individuals have a reasonable expectation of privacy, such as a residence, they may decline to be recorded unless the recording is being made pursuant to an arrest or search of the residence of the individuals. The BWC shall remain activated until the event is completed in order to ensure the integrity of the recording unless the contact moves into an area restricted by this policy.
3. If an officer fails to activate the BWC in situations where recording is required by department policy, fails to record the entire contact, or interrupts the recording, the officer shall document why a recording was not made, was interrupted, or was terminated.
4. Civilians shall not be allowed to review the recordings at the scene.

## Procedures for BWC Use

1. BWC equipment is issued primarily to uniformed personnel. However, other personnel may be issued BWCs depending on assignment or as authorized by the Sheriff or his designee. Officers who are assigned BWC equipment must use the equipment unless otherwise authorized by supervisory personnel.
2. Personnel shall only use BWCs issued by this department and the use of other recording devices is prohibited. The BWC equipment and all data, images, video, and metadata captured, recorded, or otherwise produced by the equipment is the sole property of the Rankin County Sheriff's Department.
3. Personnel who are assigned BWC equipment must complete an approved training program to ensure proper use and operation. Additional training may be required at periodic intervals to ensure the continued effective use and operation of the equipment, proper performance, and to incorporate changes, updates, or other revisions in policy and equipment.
4. BWC equipment is the responsibility of individual officers and will be used with reasonable care to ensure proper functioning. Equipment malfunctions shall be brought to the attention of the officer's supervisor as soon as possible so that a replacement unit may be issued.
5. Officers shall inspect and test the BWC prior to each shift in order to verify proper functioning and shall notify their supervisor of any problems.
6. Officers shall not edit, alter, erase, duplicate, copy, share, or otherwise distribute BWC recordings in any manner without prior written authorization and approval of the Sheriff or his designee.
7. Officers are encouraged to inform their supervisor of any recordings that may be of value for training purposes.
8. If an officer is suspected of wrongdoing or excessive use of force, the department reserves the right to limit or restrict an officer from viewing the video file.
9. Requests for deletion of portions of the recordings (e.g., in the event of a personal recording) must be submitted in writing and approved by the Sheriff or his designee in accordance with state record retention laws. All requests and final decisions shall be kept on file.
10. Officers shall note in incident, arrest, and related reports when recordings were made during the incident in question. However, BWC recordings are not a replacement for written reports.

## Restrictions on Using the BWC

BWCs shall be used only in conjunction with official law enforcement duties. The BWC shall not generally be used to record:

1. Communications with other law enforcement personnel unless required by a court order or authorized as part of an internal or criminal investigation;
2. Encounters with undercover officers or confidential informants;

3. When on break or otherwise engaged in personal activities; or
4. In any location where individuals have a reasonable expectation of privacy, such as a restroom or locker room.

**Storage**

1. All files shall be securely downloaded periodically and no later than the end of each shift. Each file shall contain information related to the date, BWC identifier, and assigned officer.
2. All images and sounds recorded by the BWC are the exclusive property of the Rankin County Sheriff's Department. Accessing, copying, or releasing files for non-law enforcement purposes is strictly prohibited.
3. All access to BWC data (images, sounds, and metadata) must be specifically authorized by the Sheriff or his designee, and all access is to be audited to ensure that only authorized users are accessing the data for legitimate and authorized purposes.
4. Files should be securely stored in accordance with state records retention laws and no longer than useful for purposes of training or for use in an investigation or prosecution. In capital punishment prosecutions, recordings shall be kept until the offender is no longer under control of a criminal justice agency.

**Supervisory Responsibilities**

1. Supervisory personnel shall ensure that officers equipped with BWC devices utilize them in accordance with policy and procedures defined herein.
2. At least on a monthly basis, supervisors will randomly review BWC recordings to ensure that the equipment is operating properly and that officers are using the devices appropriately and in accordance with policy and to identify any areas in which additional training or guidance is required.

**Disciplinary Action**

Any violation of this BWC policy is grounds for disciplinary action, including but not limited warning, suspension, demotion, transfer or probation. The Sheriff or his designee may also Impose other remedial actions in appropriate circumstances to include counseling, additional Training and placing of conditions on continued employment.