IN THE CIRCUIT COURT OF RANKIN COUNTY, MISSISSIPPI

MONICA LEE, *et al*                                                   PLAINTIFFS

VERSUS                                                          CAUSE NO. 2022-073

RANKIN COUNTY, MISSISSIPPI, *ET AL*                      DEFENDANTS

### AFFIDAVIT OF MONICA LEE

STATE OF MISSISSIPPI

COUNTY OF RANKIN

My name is Monica Lee. I am above the age of Twenty-one (21) years, and I have personal knowledge of the facts set out herein.

When I first encountered Deputy Elward and Deputy Stickman, Elward saw Damien walk out of my house. Deputy Elward then exited his vehicle and approached my son, Damien. I never identified Damien to Deputy Elward.

After Damien and Elward had a brief verbal conversation, Damien ran to the back door of our home. At that point, officer Elward tazed Damien in the back for the first time.

Damien fell down on the steps. He pulled the tazer prongs out of his body and ran into the house.

Deputy Elward chased Damien into the house and through the living room. Elward never told Damien to put his hands behind his back while running through the kitchen to the living room. Deputy Elward then tazed Damien a second time. Damien pulled those tazer prongs out also and ran into my mother's bedroom. Damien did not try to exit out of the door because there was no exit from my mother's bedroom without going back through the doorway that he came in.

EXHIBIT 4

Damien never slammed or knocked the tazer from Deputy Elward's hand. Damien was lying on his stomach at that point, and deputy Elward was on his back inside my mother's bedroom.

At no point did I attempt to hold Damien or assist Deputy Elward in arresting him. I, along with my father and mother were in the room, but we did not attempt to interfere with Deputy Elward. At this time, Deputy Elward was kneeling on Damien's back.

Deputy Elward was able to get one handcuff on Damien. At that time, Deputy Stickman ran in and kneeled across the back of Damien's neck choking him. It was clear to me Damien was being choked by Stickman. Indeed, Damien told the deputies that he could not breathe, but they did not shift positions. Damien never moved again.

When the deputies tried to take Damien to the Sheriff's vehicle, they tried to lift Damien, but his body fell, the deputies then left him laying face down on the ground for between ten to twenty minutes. Both deputies allowed Damien to remain lying face down in the mud for all that time. Damien never moved.

Neither of the deputies checked his physical condition while he was face down in the mud. Damien never moved.

When the deputies went to put Damien in the vehicle, one of his legs was still outside the vehicle. Neither of them went to the other side of the truck to pull him inside the truck. They both returned inside my house to retrieve one of the tasers. Damien was slumped over inside the Sheriff's vehicle for the entire time that they remained inside my house. Damien never moved.

I did not seek any information from either deputy about any process to have Damien involuntarily committed.

**FURTHER AFFIANT SAYETH NOT.**

RESPECTFULLY SUBMITTED, THIS THE 13th DAY OF APRIL, 2023.

_____
MONICA LEE

## ACKNOWLEDGMENT

Personally appeared before me, the undersigned Authority, the within named Monica Lee, who being duly sworn did state that the contents asserted in the foregoing document are true and correct to the best of her knowledge.

_____
NOTARY PUBLIC



[Notary Seal: STATE OF MISSISSIPPI, NOTARY PUBLIC, ID # 127802, LISA L. WALKER, Commission Expires May 14, 2023, HINDS COUNTY]

IN THE CIRCUIT COURT OF RANKIN COUNTY, MISSISSIPPI

MONICA LEE, et al.     PLAINTIFFS

v.     CAUSE NO. 2022-73

RANKIN COUNTY, MISSISSIPPI; et al.     DEFENDANTS

### AFFIDAVIT OF HUNTER ELWARD

STATE OF MISSISSIPPI
COUNTY OF RANKIN

NOW COMES Hunter Elward, Affiant, and first being duly sworn does hereby state upon first-hand personal knowledge and under oath, as follows:

1. I, Hunter Elward, have personal, first-hand knowledge of the facts set forth in this affidavit. I am under no physical or mental disability and am competent to make this affidavit.

2. I was a deputy with the Rankin County Sheriff's Department on July 26, 2021 and was present during the incident detailed in my report attached hereto as **Exhibit A**. The facts contained in my report as are true, accurate, and correct.

3. During my investigation of the alleged breaking and entering of 132 Foote Drive, and in addition to the information contained in my report, I was advised that the suspect may have taken a shotgun from the residence. I notified dispatch of this information at or around 20:31:02 military time.

4. I tried to arrest the suspect at 147 Foote Drive by repeatedly instructing him to turn around and put his hands behind his back. This occurred at or around 20:42:28 military time according to the time stamp associated with my audio call. Instead of complying, the suspect "swung at me and swatted at [the] taser" I was holding.

5. I deployed my Taser only after the attempted assault on my person and to prevent the suspect from obtaining a weapon in the residence to use against me or other individuals.

Exhibit 2

6.  According to the time stamps on audio calls, the suspect was in handcuffs by around 20:45:11 military time.

7.  The suspect continued to struggle through the time Deputy Stickman and I got him into the back of my vehicle, and did not appear to be experiencing any medical emergency. He was seated in the back of my vehicle when I went to retrieve my belongings from the residence.

8.  Medical assistance was immediately requested once I returned and could not feel the suspect's pulse.

FURTHER, Affiant sayeth naught.

_____
HUNTER ELWARD

SWORN TO AND SUBSCRIBED BEFORE ME, this 23 day of January, 2023.

_____
NOTARY PUBLIC

My Commission Expires:
March 20, 2026

2

# RANKIN COUNTY SHERIFF'S OFFICE

PRINT DATE: 07/28/2021    **NUMBER: 2021071701**    Page 4

Agency: RCSO    Author: ELWARD, HUNTER THOMAS
Incident No: 2021071701    Title: BREAKING AND ENTERING    Report Type: I
Date Entered: 7/28/2021

July 26th, 2021
Deputy Hunter Elward

On the above date I was dispatched to 132 Foote Drive for a reported vandalism. Upon my arrival on scene I spoke with the homeowner Jonathan Foote who stated when he arrived home from work his step-son was outside feeding the chickens. He then went inside the house where he saw a black male standing in his house busting holes in the wall with a pipe and tearing at it with his hands. Mr. Foote stated he was acting extremely "out of it" and asked him why he was in his house and the suspect stated "I'm talking to your son." In return Mr. Foote stated "my son is outside, what the fuck are you doing in my house". At this point Mr. Foote stated to me that the suspect ran outside and got in the car with his mother, Monica. Mr. Foote knew who the suspect was by the name of "Toot", and he didn't know his real name but that he lived in the last house on the left at the end of the street. I then asked him what "Toot" was wearing and he stated he was wearing blue shorts, a white shirt, and tennis shoes. I told Mr. Foote I was going to go to the house to try and make contact with the suspect, and as I walked out the door the suspects mother stopped in front of the house I asked her where "Toot" was and she stated he's at her house. She then asked if he was in trouble and if the house he had been in was messed up. I told her yes the house was damaged and he was going to have to come with me, and that I need to speak with him. She stated I could follow her to the house to make contact with him. Upon our arrival at 147 Foote Drive I asked Monica what "Toot" real name was and she stated Damien Cameron. I relayed that information to dispatch, and myself and Monica went through the house to make contact with Damien. He was not inside the residence and she stated he must have ran into the woods to hide. I then told Monica to wait outside and I was going to go to my unit to make a phone call to R-11 Dimartino who was the investigator on call. He advised me since we had a positive ID on the suspect to just take pictures of the damages to Mr. Foote's house and continue from there. As I was still on the phone with R-11 the suspect came out of the wooded area to the left of the house at 147 Foote Drive. The subject fit the description given to me, his mother confirmed his identity by pointing at him and yelling that's him, that's Toot. When I exited my unit and I yelled his name he took off running behind the house. I gave chase and was able to get out in front of him on the other side of the house. I drew my taser from its holster and told him to put his hand behind his back and the suspect kept telling me his name was Cornelius. The mother to the suspect was standing behind me and at that point yelled to me "that isn't Cornelius, that's Damien. I told the suspect to place his hands behind his back repeatedly and started walking towards him. While I was walking towards him he kept back peddling towards the house saying he needed to get his ID, and I told him do not go into that house or I am going to tase you. I got within arms reach of him and he swung at me and swatted at my taser with his hand and turned and took off running to the house. I deployed my taser striking the suspect in the center of his back, and he fell onto the back steps of the house. I then got on top of him to attempt to place him in custody and, with unusual strength, he picked me up and went into the house with me still on him. As he was going through the house I kept yelling for him to just put his hands behind his back which he refused. We made our way through the kitchen and into the living room where I was able to get his feet out from under him and take him to the ground. At this point he began trying to strike me with his fists but I was able to hold his hands away from me. The barbs

Exhibit A

RC 012

# RANKIN COUNTY SHERIFF'S OFFICE

PRINT DATE: 07/28/2021     NUMBER: 2021071701     Page 5

to the taser were still in his back so I initiated my taser again with little or no effect. He was able to get me off of him again and made his way to the front left bedroom of the house. When he entered the bedroom he turned around and started pulling at the taser leads and then attempted to run past me to get back out the door. I grabbed ahold of him and managed to bring him to the floor. I gave another command to put his hands behind his back and he then continued to try and punch me, and at that pointed I used a closed fist to get compliance, and in the movement I struck him at or near the left eye twice. After that I leaned away from him and reloaded another cartridge into my taser but before I could deploy it he slammed my hand and the taser into the floor causing it to discharge into the floor of the room. The mother of the suspect came, to assist me, and tried to hold his legs down to keep him from kicking his way out from under me, and she kept yelling at him to stop fighting repeatedly. I struck the suspect at or near the face again with a closed fist and he rolled over onto his belly but put his hands under him to where I couldn't get his hands free. At this point Deputy Stickman arrived and with his assistance we were able to get him in handcuffs. He then resisted the whole time we were walking him through the house to the point that we all almost fell off the front porch. We made it to my patrol unit and tried to get him in the back seat but he would go back and forth from resisting and kicking, to dropping himself to the ground and we tried 6 or 7 times to pick him up into the back seat but from the rain and the mud, and his strong resistance, he would wiggle his way back to the ground. At this point he just sat there for about minute so myself and Deputy Stickman might recover as well. The mother Monica was standing next to him trying to get him to comply and to quit acting the way he was. After that brief moment I picked the suspect up around the waist and placed most of his body inside the back of my unit, and Deputy Stickman went to the other side and pulled him the rest of the way. At this time his feet were still pushing outside and when I would attempt to shut the door he would kick the door and straighten his legs out to where I couldn't shut the door. I kept giving verbal orders to bend his legs and to quit doing it but he wouldn't cooperate. After several attempts and him kicking at me near my stomach I asked Deputy Stickman for his taser because mine was still inside from the struggle in the house. I then used Deputy Stickmans taser to drive stun the suspect in the back of the thigh and he pulled his legs in allowing me to shut the door. Once Damien was secured inside the vehicle myself and Deputy Stickman went to his unit to clean up with hand sanitizer and then went back inside the house with the mother to recover my taser and belongings. I retrieved the suspects ID and spoke with the mother for a brief moment. She asked me what she could do to help him and she was tired of dealing with his behavior and didn't know what she could do to get him some help with his history of violent behavior and he was diagnosed with Schizophrenia. I advised the mother she needed to go to chancery court to get him committed for an evaluation. I then told her we were leaving and I didn't need anything else from her. Myself and Deputy Stickman then went back to our units to head back to the complainants house to process that scene and gather any other information from him. I walked to the rear door of my unit where Damien was and opened it to check on him and he was slumped over the seat. He wouldn't verbally respond, so I checked for a pulse at the neck and couldn't feel one. I then pulled Damien out of the back seat and on to the ground and started performing chest compression's on him immediately. Deputy Stickman saw me doing this and ran to assist me and immediately called via radio for medical assistance. Myself and Deputy Stickman alternated performing CPR on him until Fire personnel got on scene and took over. Once Pafford arrived they transported the suspect to Simpson General Hospital.

RC 013

# RANKIN COUNTY SHERIFF'S OFFICE

PRINT DATE: 07/28/2021     **NUMBER: 2021071701**     Page 6

End of Report
Deputy Elward R-52

RC 014