IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MICHAEL COREY JENKINS, et al.**                                                **PLAINTIFFS**

**v.**                                                **CAUSE NO. 3:23cv374-DPJ-FKB**

**RANKIN COUNTY, MISSISSIPPI, et al.**                                                **DEFENDANTS**

---

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PREMISED, IN PART, ON QUALIFIED IMMUNITY**

---

**NOW COME** Defendants, Rankin County, Mississippi and Sheriff Bryan Bailey, in his individual and official capacities, by and through counsel, and in support of their Motion for Judgment on the Pleadings brought pursuant to FED. R. CIV. P. 12(c), state as follows:

I.     **INTRODUCTION & PROCEDURAL HISTORY**

Plaintiffs Michael Corey Jenkins ("Jenkins") and Eddie Terrell Parker ("Parker") filed their [1] Complaint on June 12, 2023, which contains federal and state law claims against Defendants Rankin County, Sheriff Bailey, Hunter Elward ("Elward"), Brett McAlpin ("McAlpin"), Christian Dedmon ("Dedmon"), and John Doe Deputies 1-3 relating to an incident occurring on or around January 24, 2023 in Braxton, Mississippi. Elward, McAlpin, Dedmon, Jeffrey Middleton ("Middleton"), and Daniel Opdyke ("Opdyke") are former deputies with the Rankin County Sheriff's Department and have been convicted of various crimes related to this incident, including aggravated assault, burglary / home invasion, hindering prosecution in the first degree, and conspiracy to commit hindering prosecution in the first degree. *Judgments of Conviction* (**Exhibit 3**).[1]

---

[1] *See Stringer v. Davis Mt. Prop. Owners Ass'n*, 81 F. App'x 502, 503 (5th Cir. 2003) (Conversion from Rule 12(c) to Rule 56 standard is unnecessary when considering "matters of public record").

Plaintiffs allege federal claims against Rankin County under 42 U.S.C. § 1983 under theories of failure to train, failure to supervise, and ratification. *Complaint* (**Exhibit 1**), ¶¶ 194-208. They also allege a state law claim against these Defendants under the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1 *et seq.* ("MTCA") based upon "Defendants ELWARD MC'ALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3, upon unlawful entry into the premises, immediately handcuffed JENKINS and PARKER FOR nearly two hours, committing false imprisonment upon Plaintiff." *Id.* at ¶ 211, *see also Id.* at 209-10, 212-15.

These Defendants now move for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) and seek dismissal of all federal claims against them on the basis that Sheriff Bailey is entitled to qualified immunity and Plaintiffs fail to allege a *Monell*[2] claim against Rankin County upon which relief can be granted. Further, these Defendants seek dismissal of Plaintiffs' state law claims pursuant to the protections, limitations, and immunities afforded them under the MTCA.

II.    **STATEMENT OF FACTS**

Jenkins and Parker allege that on or around January 24, 2023, former deputies with the Rankin County Sheriff's Department "illegally raided" their residence and "torture[d]" them over a period of two hours. *Complaint*, ¶¶ 18, 30. Jenkins further alleges that Elward filed "a false and fictitious affidavit of criminal charges against" him the following day. *Id.* at ¶ 69. The Mississippi Bureau of Investigation ("MBI") began an investigation into the incident the same day and Plaintiffs provided witness statements to MBI. *Id.* at ¶¶ 38, 62. As a result of all investigative efforts by the Federal Bureau of Investigation ("FBI") and MBI,

---

[2] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

criminal charges were brought against the former deputies, *see Id.* at ¶¶ 38, 62, and the former deputies have been convicted on various criminal charges related to the incident. **Exhibit 3**.

Sheriff Bailey is not alleged to have personally participated in any of the criminal acts committed by the former deputies, nor is he alleged to have had actual knowledge that any criminal act was being committed. Instead, Plaintiffs allege theories of liability for failure to train, failure to supervise, and/or ratification against both Sheriff Bailey and Rankin County. For the following reasons, the federal claims against Sheriff Bailey should be dismissed based on qualified immunity and the state law claim against him should be dismissed because he is immune from individual liability under the MTCA. Moreover, there are no facts to support a *Monell* claim against Rankin County and it cannot be liable under the MTCA for the criminal acts of the former deputies committed outside the course and scope of their employment.

III.   **LEGAL PRECEDENT & ANALYSIS**

A.   <u>**Standard of Review**</u>

The standard under Rule 12(c) and Rule 12(b)(6) are "the same". *Vardeman v. City of Houston*, 55 F.4th 1045, 1049 (5th Cir. 2022). Where a complaint fails to contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" dismissal under Rule 12(c) is warranted. *Id.*, at 1050 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Accordingly, the Court cannot accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678-79, 129 S. Ct. at 1949-50.

B.      **Sheriff Bailey is entitled to qualified immunity**.

Plaintiffs do not allege that Sheriff Bailey personally participated in the events at issue, but instead attempt to hold him liable under § 1983 on theories of failure to train, failure to supervise, and/or ratification. The Court's analysis of qualified immunity at this initial Rule 12(c) stage requires analysis of the pleadings, in which "Plaintiffs must plead facts showing: (1) that [Sheriff Bailey] violated their constitutional right; and (2) that the right at issue was clearly established at the time of the violation." *Tuttle v. Todd*, Nos. 22-20233, 22-20319, 2023 U.S. App. LEXIS 19831, at *5-6 (5th Cir. Aug. 1, 2023) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Henderson v. Harris County*, 51 F.4th 125, 132 (5th Cir. 2022)). None of the allegations in Plaintiffs' Complaint are sufficient to overcome qualified immunity at this stage.

Failure to Train / Failure to Supervise

Under these theories of liability, Sheriff Bailey can only be liable for the actions or inactions of his subordinates where "(1) [he] either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference." *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017) (citations omitted). A plaintiff's failure to adequately plead any of these elements warrants dismissal premised on qualified immunity. *Id.*

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Davidson*, 848 F.3d at 397 (citations omitted). It may be demonstrated by either pleading that Sheriff Bailey "had notice of a pattern of similar violations," or alternatively, it may be "based on a single

incident if the constitutional violation was the highly predictable consequence of a particular failure to train." *Id.* (citations and internal quotations omitted).

Plaintiffs do not allege a complete lack of training or supervision against Sheriff Bailey, but instead allege a failure "to ***properly*** train, supervise, control, direct, monitor, and discipline its (sic) officers in their duties and responsibilities." *Complaint*, ¶ 195 (emphasis added). To be clear, the Rankin County Sheriff's Department was issued certificates by the Mississippi Board on Law Enforcement Officer Standards and Training for each of the former deputies at issue, meaning that the former deputies received state required training and were qualified to serve as law enforcement officials. *Answer*, Exhibit 1.[3]"

Plaintiffs generally allege that "[c]itizen complaints, lawsuits, public news, and public records verify that SHERIFF BAILEY is specifically aware that its (sic) deputies have committed and are likely to commit constitutional violations of the type that Plaintiff suffered described herein in this lawsuit." *Complaint*, ¶ 196. But these threadbare allegations are insufficient at the pleading stage pursuant to *Iqbal / Twombly*. Plaintiffs also allege three earlier incidents – *i.e.*, a June 7, 2010 incident involving McAlpin,[4] a February 18, 2019 incident involving Elward,[5] and a July 26, 2021 incident involving Elward,[6] *see Complaint*, ¶¶ 71-87 – in an attempt to plead a pattern of unconstitutional conduct at the Rankin County Sheriff's Department. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 852 (5th Cir. 2009). "A

---

[3] *See Walters v. Bd. on Law Enf't Officer Standards & Training*, No. 2022-SA-00378-COA, 2023 Miss. App. LEXIS 279, at *1 (Miss. App. Aug. 1, 2023) (cited for explanation of certificate process).

[4] *See Gerhart v. Barnes*, 724 F. App'x 316 (5th Cir. 2018).

[5] *See Barrett v. City of Pelahatchie*, No. 3:21cv124-HTW-LGI, 2023 U.S. Dist. LEXIS 45108 (S.D. Miss. Mar. 17, 2023).

[6] The affidavits of Elward and Monica Lee referenced at ¶ 81 of Plaintiffs' Complaint are attached in composite as **Exhibit 4**, and were filed in the civil action before the Rankin County Circuit Court, styled *Lee v. Rankin County* and bearing cause number 22-73-JM.

pattern requires similarity, specificity, and sufficiently numerous prior incidents." *Davidson*, 848 F.3d at 396. And three prior incidents in which excessive force[7] was allegedly used over a 13-year period are insufficient to show a pattern. *Id.* (Holding that three incidents over a three-and-a-half-year period are insufficient to show a pattern).

The incident alleged in *Gerhart* occurred on or around June 7, 2010, and it was alleged that while assisting the Pearl Police Department with a buy-bust operation, McAlpin entered the wrong house under the mistaken belief that a confidential informant was in trouble inside. *Gerhart v. Barnes*, 724 F. at 318-20; *see also Gerhart v. McLendon*, 714 F. App'x 327 (5th Cir. 2017). Thereafter:

> When [Brad McLendon's][8] vehicle came to a stop on the Gerharts' yard, Brett [Gerhart] ran into the residence through a side door and locked the door behind him. He went through the residence, shouting, "They have guns!" McAlpin kicked in the side door and started to chase Brett. Brett testified that he then ran through the front door to prevent intruders from coming into the house. According to Brett, McAlpin caught him at the front door, threw him to the ground, and began kicking him in the side and back of the head. McAlpin acknowledges that he pointed his gun at Brett's head but denies kicking him. McAlpin then brought Brett into the living room.

*Gerhart v. Barnes*, 724 F. App'x at 320.

The incident alleged in *Barrett v. City of Pelahatchie* occurred on or around February 18, 2019, and involved the use of deadly force against a barricaded, active shooter who shot several times at deputies and, according to the allegations in the plaintiffs' complaint, presented at the front door of the residence with "a pistol in one of his hands." *Barrett*, 2023

---

[7] It is unclear whether Plaintiffs allege an equal protection claim against Sheriff Bailey. Even if such claim is made against this Defendant, he is entitled to qualified immunity since the only prior allegation of "[u]sing racial slurs in the commission of the use of force" is from the *Gerhart* claim, *see* n.4 *supra*; *Complaint*, ¶ 75, and the individual at issue in that claim was a white male. *See Gerhart v. Rankin County*, No. 3:11cv586-HTW-LRA, at [Dkt. 26-5] (S.D. Miss. Feb. 6, 2012) (**Exhibit 5**).

[8] McClendon was "an agent of the Mississippi Bureau of Narcotics" at the time of the incident. *Gerhart v. McLendon*, 714 F. App'x at 329."

U.S. Dist. LEXIS 45108, at *6-*8. Elward admittedly discharged his service weapon at Woods and was struck by Woods' weapon. *Id*. at *16-*17.

Finally, the incident alleged in the affidavit of Monica Lee occurred on or around June 26, 2021, but the Lee Affidavit was not filed until April 14, 2023, thus could not have provided Sheriff Bailey with knowledge of the contents therein prior to the January 24, 2023 incident at issue in this litigation.

The three incidents alleged in Plaintiffs' [1] Complaint occurred over a 13 year period of time and are not sufficiently similar to the incident at issue, such that Sheriff Bailey would have notice of a need for further training and/or supervision. Accordingly, Sheriff Bailey is entitled to qualified immunity on Plaintiffs' failure to train and/or failure to supervise claims against him.

<u>Ratification</u>

Ratification is a theory of municipal liability where "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Young v. Bd. of Supervisors*, 927 F.3d 898, 903 (5th Cir. 2019) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). It has a narrow scope since "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Carr v. City of Spring Valley Vill.*, No. 19-20373, 2022 U.S. App. LEXIS 13307, at *17-18 (5th Cir. May 17, 2022) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009)). Instead, municipal liability exists under a ratification theory only where a "policymaker ratified what it knew at the time to be unconstitutional conduct." *Id.* (citing *Praprotnik*, 485 U.S. at 127-30; *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (1992) ("finding that allegations that a municipality declined

to punish an officer's conduct do not establish unconstitutional ratification"); *Berry v. McLemore*, 670 F.2d 30 (5th Cir. 1982) (same); *Piotrowski v. City of Houston*, 237 F.3d 567, 581-582 (5th Cir. 2001) ("Plaintiff's disagreement with a municipality's conclusions regarding alleged misconduct does not support a ratification claim.").

Plaintiffs concede that Sheriff Bailey pledged after this January 24, 2023 incident "to hold his officers accountable if there was wrongdoing by his deputies found in this ordeal." *Complaint*, ¶ 200. The January 24, 2023 incident was investigated by MBI, *see Complaint*, ¶¶ 38 & 62, and the former deputies involved were charged and convicted with various crimes related to their involvement. *See* Exhibit 3. These charges included hindering prosecution in the first degree and conspiracy to commit hindering prosecution in the first degree, thus showing an effort to conceal the truth from Sheriff Bailey and/or investigating agents.

There are no allegations that Sheriff Bailey supported, condoned, and/or approved the former deputies' actions at a time when he knew the unconstitutional nature of same. Accordingly, there are no facts to support a ratification theory of liability. Moreover, as recently as April 14, 2023, the Fifth Circuit held that it "lack[s] caselaw on how a municipality might 'ratify' the use of excessive force," *Allen v. Hays*, 65 F.4th 736, 750 (5th Cir. 2023), meaning that the there is no caselaw stated to a "sufficiently high level of specificity to put [Sheriff Bailey] on notice that his conduct is definitively unlawful." *Buehler v. Dear*, 27 F.4th 969, 981 (5th Cir. 2022) (citations and internal quotations omitted). Even if Sheriff Bailey's statement that the former deputies would be held accountable could support a ratification theory of liability, there is no case law to put Sheriff Bailey on notice that such a statement would create individual liability and/or violated Plaintiffs' constitutional rights.

For all of the foregoing reasons, Sheriff Bailey is entitled to qualified immunity on Plaintiffs' ratification claim against him.

C.     **Plaintiffs' official capacity claims should be dismissed as redundant of their claims against Rankin County.**

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). District courts in the Fifth Circuit have consistently held that official capacity claims are redundant of a plaintiff's claims against a county and should, therefore, be dismissed. *Wilborn v. Holmes County*, No. 3:22cv187-DPJ-FKB, 2023 U.S. Dist. LEXIS 34717, at *7 (S.D. Miss. Mar. 2, 2023) (quoting *Brown v. City of Houston*, No. H-17-1749, 2019 U.S. Dist. LEXIS 218870, 2019 WL 7037391, at *3-4 (S.D. Tex. Dec. 20, 2019) (Rosenthal, C.J.) (collecting cases); *see also Blackmon v. Adams County*, No. 5:21cv62-KS-RHW, 2022 WL 1434652, at *6 (S.D. Miss. May 5, 2022). For this reason, any and all official capacity claims, including those against Sheriff Bailey, should be dismissed."

D.     **There are no facially plausible *Monell* claims against Rankin County.**

For Rankin County to be liable under § 1983, Plaintiffs must plead and prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (citation omitted). The third element requires a showing "either that 'the policy itself was unconstitutional' or that '[the policy] was adopted with deliberate indifference to the known or obvious fact' that a specific constitutional violation would follow." *Edwards v. City of Balch Springs*, 70 F.4th 302, 307 (5th Cir. 2023) (citation omitted). With claims involving a failure to train and/or failure to supervise, a plaintiff "must show that the failure

'constituted deliberate indifference to the plaintiff's constitutional rights.'" *Id.* at 308 (citation omitted).

"[R]ecovery from a municipality is limited to acts that are, properly speaking, acts of the municipality - that is, acts which the municipality has *officially sanctioned or ordered*." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (emphasis in original). Under the *Monell* framework, "isolated unconstitutional actions by municipal employees will almost never trigger liability", which is why courts have consistently and "roundly rejected municipal liability based on a theory of respondeat superior." *Harris v. Jackson County*, 684 F. App'x 459, 463 (5th Cir. 2017) (citations omitted). Instead, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Id.*; *see also Jackson v. City of Hearne*, 959 F.3d 194, 204 (5th Cir. 2020).

The applicable policies and procedures of the Rankin County Sheriff's Department are attached to Rankin County's Answer as Exhibit 2 and may be considered without converting this Rule 12(c) motion to a Rule 56 motion.[9] These policies and procedures – which cover such topics as general orders, police ethics, rules of conduct, corruption prevention, training and proficiency testing, searches and interviews, and use of force – are all facially constitutional. *See Edwards*, 70 F.4th at 308-11.

Without facts to support a facially unconstitutional policy, liability against Rankin County must be predicted on facts demonstrating that "(1) [it] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or

---

[9] *Great Lakes Ins. v. Gray Grp. Invs., LLC*, 550 F. Supp. 3d 364, 370 (E.D. La. 2021) (citations omitted) (Holding that when ruling on a Rule 12(c) motion, the court may properly consider the pleadings and exhibits attached thereto, as well as documents attached to the motion "if the documents are 'referred to in the complaint and are central to the plaintiff's claim.'")

train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise

constituted deliberate indifference to the plaintiff's constitutional rights." *Edwards*, 70 F.4th

at 312. Pleading deliberate indifference for *Monell* liability is difficult, with the Fifth Circuit

describing the standard as follows:

> "To show deliberate indifference, a plaintiff normally must allege a pattern of
> similar constitutional violations by untrained employees." [citation omitted]
> "A pattern requires *similarity and specificity*; prior indications cannot simply
> be for any and all 'bad' or unwise acts, but rather must point to the specific
> violation in question." [citation omitted] Because deliberate indifference
> typically requires a pattern, "we have stressed that a single incident is usually
> insufficient to demonstrate deliberate indifference." [citation omitted] The
> "'single incident exception' is extremely narrow," [citation omitted] and as an
> exception to the pattern requirement, it "is generally reserved for those cases
> in which the government actor was provided no training whatsoever."

*Edwards*, 70 F.4th at 312-13 (emphasis in original).

A failure to train or supervise theory "is a 'notoriously difficult theory on which to

base a *Monell* claim[.]'" *Deleon v. Nueces County*, No. 23-40004, 2023 U.S. App. LEXIS 17523,

at *4 (5th Cir. July 11, 2023) (quoting *Allen v. Hays*, 63 F.4th 307, *withdrawn and superseded*

*on denial of panel reh'g*, 65 F.4th 736, 749 (5th Cir. 2023). Plaintiffs "must demonstrate that

'in light of the duties assigned to specific officers…, the need for more or different training

[or supervision] is so obvious, and the inadequacy so likely to result in the violation of

constitutional rights, that the policymakers can reasonably be said to have been deliberately

indifferent to the need.'" *Id.*

There is no allegation that the former deputies received no training, thus Plaintiffs do

not allege a single-incident theory of *Monell* liability. *See Sauceda v. City of San Benito*, 78

F.4th 174 (5th Cir. 2023) ("[T]he 'single-incident method of proving deliberate indifference'

is 'generally reserved' for cases in which 'no training whatsoever' occurred."). Instead,

Plaintiffs generally allege that Rankin County "had either actual or constructive knowledge

of the deficient policies, practices, and customs alleged in the paragraphs above." There are no allegations as to what policies were maintained by Rankin County and/or how Rankin County acted with deliberate indifference. Similar to the ratification arguments on behalf of Sheriff Bailey *supra*, there are no allegations as to how Rankin County ratified the unconstitutional acts of the former deputies on January 24, 2023 after knowledge of same.

For these reasons, any and all § 1983 claims against Rankin County should be dismissed.

E.    **Plaintiffs' state law claim against Rankin County and/or Sheriff Bailey should be dismissed**.

"[T]he MTCA is the exclusive remedy for suing the state government and its political subdivisions. *Burnett v. Hinds County*, 313 So. 3d 471, 477 (Miss. 2020). The MTCA waiver of immunity "is not without exception and is qualified by Section 11-46-5(2)", which provides that:

> For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.

*Univ. of Miss. Med. Ctr. v. Oliver*, 235 So. 3d 75, 81 (¶ 24) (Miss. 2017) (quoting MISS. CODE ANN. § 11-46-5(2)). Pursuant to § 11-46-5(2), Rankin County "cannot be liable, and sovereign immunity [is not] waived for the alleged malicious [or any criminal] conduct of its officers." *Oliver*, 235 So. 3d at 83 (¶ 32). Further, Sheriff Bailey is immune from individual liability where he acted within the course and scope of his employment. *See* MISS. CODE ANN. § 11-46-7(2) ("[N]o employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."); *Conrod v. Holder*, 825 So. 2d 16, 19 (¶¶ 9-10) (Miss. 2002).

The state law claim alleged against Rankin County and/or Sheriff Bailey incorporates paragraphs 1-87 of the [1] Complaint, in which it is alleged that the former deputies "illegally raided" Plaintiffs' residence and "torture[d]" them over a two-hour period. *Complaint*, ¶¶ 18, 30. The acts complained of by Plaintiffs are criminal offenses other than traffic violations, as evidenced by Exhibit 3,[10] and were committed outside the course and scope of the former deputies' employment with Rankin County. For these reasons, Plaintiffs' MTCA claim is alleged to have been committed by individuals acting outside the course and scope of their employment – thus, outside the MTCA – and only the former deputies can be liable for such acts. Sheriff Bailey, on the other hand, is immune from individual liability for these acts under the MTCA, and the state law claim against Rankin County and/or Sheriff Bailey should be dismissed.

In the alternative, if this Court hold that this claim falls within the MTCA, then Rankin County is entitled to the protections, limitations, and immunities of the MTCA, including but not limited to Miss. Code Ann. § 11-46-13(1), § 11-46-15(1)(c), and § 11-46-15(2). Accordingly, the claim must proceed as a bench trial, with damages being capped at $500,000, and Plaintiffs' claims for "interests and costs" should be dismissed.

IV.   **CONCLUSION**

Sheriff Bailey is entitled to qualified immunity from Plaintiffs' § 1983 claims and is immune from individual liability for Plaintiffs' MTCA claim. Plaintiffs failed to plead a *Monell* claim against Rankin County and it cannot be liable for the criminal acts of the former deputies under the MTCA. For all of the reasons herein, Defendants Rankin County and

---

[10] *See* Dedmon Count I, Burglary / Home Invasion; Elward Count II, Burglary / Home Invasion.

Sheriff Bryan Bailey, in his individual and official capacities, respectfully request that they be granted judgment on the pleadings pursuant to Rule 12(c) on any and all federal and/or state law claims against them.

**RESPECTFULLY SUBMITTED,** this 6th day of October, 2023.

**RANKIN COUNTY, MISSISSIPPI & SHERIFF BRYAN BAILEY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES - DEFENDANTS**

BY:    _/s/ Jason E. Dare_____
          **JASON E. DARE**

**OF COUNSEL:**

Jason E. Dare (MSB No. 100973)
jdare@bislawyers.com
BIGGS, INGRAM & SOLOP, PLLC
Post Office Box 14028
Jackson, Mississippi  39236-4028
Telephone:    (601) 987-5307
Facsimile:     (601) 987-5307