IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MICHAEL COREY JENKINS,** *et al.* **PLAINTIFFS**

v. Civil Action No. 3:23-cv-374-DPJ-FKB

**RANKIN COUNTY, MISSISSIPPI,** *et al.,* **DEFENDANTS**

:

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE MOTION OF DEFENDANTS RANKIN COUNTY AND SHERIFF BRYAN BAILEY FOR JUDGMENT ON THE PLEADINGS

Come now the plaintiffs, by and through counsel, and hereby submit their opposition to the Motion for Judgment on the pleadings filed by defendants Rankin County and Sheriff Bryan Bailey. As more fully discussed below, the motion of these defendants is without legal basis under the Federal Rules or applicable law.

### BACKGROUND

The plaintiffs in this case were the victims of planned torture by five (5) Rankin County Sheriff's Deputies and one (1) Richland Police Officer. These law enforcement officers subjected the plaintiffs to all kinds of debasement including threats, sexual assaults with a dildo, and racial mockery. In addition, they subjected them to beatings, multiple tasings, water boarding and culminated the ordeal by shooting plaintiff Jenkins in the mouth. As a result of these atrocities, the responsible law enforcement officers were criminally indicted and pled guilty to multiple felonies.

The victims of those atrocities filed the instant lawsuit naming Rankin County, Sheriff Bailey, former Deputies Hunter Elward, Brett McAlpin, and Christian Dedmon, along with several John Does as defendants in this case.[1]  Plaintiffs' complaint was filed on June 2, 2023.

---

[1] Since filing their lawsuit, plaintiffs' have identified the three John Does referenced in their

It was served on defendants Rankin County and Sheriff Bailey on September 8, 2023. Prior to service of the complaint, at the behest of Defendants Rankin County and Sheriff Bailey, a settlement conference was scheduled for October 5, 2023. This was done on August 3, 2023. The settlement conference took place on the scheduled date and was unsuccessful. On October 6, 2023, defendants Rankin County and Sheriff Bailey filed an answer to plaintiffs' complaint and the instant motion. The other named defendants have not yet filed answers.

## ARGUMENT

### I. Standard of Review

F. R.C.P. 12(c) provides in relevant part as follows:

> After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.

A Rule 12(c) motion is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. The essential issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. The complaint should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain.

A district court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. In analyzing the complaint, the court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. The issue is not whether the plaintiffs will ultimately prevail, but whether they are

---

original complaint plus one (1) other potential defendant and intends to file an appropriately amended complaint.

entitled to offer evidence to support their claims. Thus, the court should not dismiss plaintiffs' claims unless they would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-13 (5th Cir. 2002) (internal quotations and citations omitted).

Federal courts follow a strict standard in ruling on motions for judgment on the pleadings.5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed. 2004). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).
*See Great Plains, supra* at n8. In deciding a Rule 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205B06 (5th Cir. 2007).

To state a claim upon which relief can be granted, plaintiffs need only plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Importantly, "to survive a motion to dismiss" under Twombly and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that plaintiffs contend entitle them to relief. *Johnson v. City of Shelby, Miss*., 574 U.S. 10, 12, (2014) *(per curiam)* (citing Fed. R. Civ. P.

8(a)(2)-(3), (d)(1), (e)); accord *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief — including factual allegations that, when assumed to be true, raise a right to relief above the speculative level.") **[A] plaintiff is not required to anticipate or overcome affirmative defenses**. *Nobre v. Louisiana Dep't of Pub. Safety*, 935 F.3d 437, 442 (5th Cir. 2019).

When viewed through the appropriate lens, the motion filed by defendants Rankin County and Sheriff Bailey is toothless.

### II. Plaintiffs Have More Than Set Forth Plausible Claims Against Defendants Rankin County And Sheriff Bailey

A municipality is liable under 42 U.S.C. § 1983 for acts that are directly attributable to it through some official action or imprimatur. Therefore, to state a claim for municipal liability a plaintiff must allege, facts identifying the following essential elements: (1) an official policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy at issue." *Lincoln v. Clark*, No. CV H-22-1979, 2023 U.S. Dist. LEXIS 18728, 2023 WL 1767014, at *3 (S.D. Tex. Feb. 3, 2023) (citing *Piotrowski v. City of Houston.*, 237 F.3d 567, 578 (5th Cir. 2001) (cleaned up).

For a failure-to-train-or-supervise claim, a plaintiff must allege that "1) the [city] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001)).

a. **Plaintiffs' Complaint**

In this case, plaintiffs' complaint sets forth the following pertinent allegations:

16. The Rankin County Deputies would intentionally de-activate their body camera equipment prior to this ordeal, and upon its conclusion, the six Rankin County Deputies involved would steal from the property in question video computer equipment that recorded a critical portion of this ordeal. Rankin County has possession of such stolen equipment.

24. Throughout the nearly two-hour ordeal, the six deputies would punch and beat two handcuffed men at will, hurting and humiliating both Jenkins and Parker. Deputies also repeatedly and gratuitously kicked the men as if they were animals while they lay subdued and handcuffed.

25. At all times relevant, these acts occurred under the supervision of SHERIFF BRYAN BAILEY, Sheriff of RANKIN COUNTY.

27. Throughout the course of this nearly two-hour use of force event, deputies from Defendant RANKIN COUNTY, deputies under the supervision of SHERIFF BRYAN BAILEY, would engage in a sadistic contest with each other as to which Taser would be most effective when fired against these two victims. Deputies are believed to have fired their Tasers 20-30 times on both victims. No cause existed for using this unconstitutional force against the victims by the deputies.

29. At all times relevant, Defendant's acts of tasing JENKINS and PARKER, while handcuffed, occurred under the supervision of SHERIFF BRYAN BAILEY and RANKIN CO. During these acts, deputies used vicious racial slurs such as "nigger" and "monkey" against JENKINS and PARKER.

34. Rankin deputies waterboarded JENKINS and PARKER by continuously pouring the liquids on their faces while both men were handcuffed men and forced on their backs.

35. At all times relevant, these acts of torture and humiliation occurred while deputies were under the supervision of SHERIFF BRYAN BAILEY, RANKIN COUNTY. During these acts, deputies used vicious racial slurs such as "nigger" and "monkey" against JENKINS and PARKER.

36. RANKIN COUNTY deputies ELWARD, MCALPIN, DEDMON, and DEPUTIES JOHN DOE'S 1-3, or a combination thereof, attempted to use a dildo or sexual device against Mr.

Jenkins and Mr. Parker in the
course of this torture session
on January 24, 2023.

> 49. At all times relevant, these acts of sexual assault occurred while deputies were under the supervision of SHERIFF BRYAN BAILEY and RANKIN COUNTY. During these acts, deputies used vicious racial slurs such as "nigger" and "monkey" against JENKINS and PARKER.
>
> 52. At all times relevant, these acts of assaults, pointing guns at their head and threatening to kill JENKINS and PARKER, occurred while deputies were under the supervision of SHERIFF BRYAN BAILEY and RANKIN COUNTY. During these acts, deputies used vicious racial slurs such as "nigger" and "monkey" against JENKINS and PARKER.

In addition to the above referenced paragraphs of plaintiffs' complaint which, clearly and in great detail, illuminates the basis of their claim for municipal liability based upon failure to supervise and/or train the defendant officers, the plaintiffs specifically expand on that theory of liability under a heading stating.

**Supervisory Liability by BAILEY and MONELL violations by RANKIN COUNTY**

Complaint pg. 13 (Doc 1). Under that heading, the plaintiffs plainly articulate why defendant Bailey is not entitled to qualified immunity and defendant Rankin County is subject to municipal liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-691 (1978). This position is highlighted by the following paragraphs of the complaint:

> 82. SHERIFF BAILEY failed to reprimand HUNTER ELWARD for failing to activate his body camera; failed to train ELWARD in the use of body cameras, and thereby BAILEY created a custom that Rankin Deputies were permitted to turn off body-worn cameras to cover up their misdeeds.
>
> 83. BAILEY'S failure to supervise and reprimand his v Rankin County Deputies in the Lee case and other cases cited herein amounted to ratification of their action. Such deliberate indifference to how customs created under his command were the proximate cause of JENKINS and PARKER'S constitutional rights being violated on January 24, 2023.
>
> 84. In the instant raid against JENKINS and PARKER, Defendant deputies

intentionally turned off their body cameras to escape video recording of the incident. Body camera logs reveal that Rankin Deputy Napoleon Valino last activated his camera at 9:41 p.m., two hours before another deputy shot Michael Corey Jenkins in the mouth. The next recording took place at 1:25 a.m., with Deputy Hunter Lewis activating his camera for nearly 20 minutes.

85. Despite actual and constructive notice of the above facts, Defendant RANKIN COUNTY failed to create new policies to correct such deficiencies; failed to create a police review board; failed to make the use of body-worn cameras and failed to take any meaningful action to stop the abuse of citizens taking place by the Sheriff's Department under RANKIN COUNTY's authority.

86. RANKIN COUNTY, under its budgetary authority, continued to finance SHERIFF BAILEY without implementing any policy reforms or controls. All the failures of Defendant RANKIN COUNTY created an environment where both SHERIFF BAILEY and ELWARD, MC'ALPIN, DEADMAN, and JOHN DOE'S 1-3 operated with impunity, which is the proximate cause of the atrocities committed upon JENKINS and PARKER in this case.

The 5th Circuit has made it clear that.

> In order to overcome a defendant's qualified immunity defense at the motion to dismiss stage, a plaintiff must plausibly allege facts showing that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established at the time of the challenged conduct. . . This is a low bar, given that granting qualified immunity at the motion to dismiss stage is usually disfavored. Instead, even though we retain jurisdiction over this type of appeal, this Court generally denies qualified immunity at the motion to dismiss stage in order for the case to proceed to discovery, so long as the plaintiff states a plausible claim for relief. [citations and internal quotations omitted].

*Marvaso v. Sanchez*, 971 F.3d 599,605-06(5th Cir. 2020). Plaintiffs' complaint far exceeds this standard. For instance, ¶¶71-86 of plaintiffs' complaint paints a picture of a law enforcement department that is basically lawless and is headed by an individual that not only condones the lawlessness of the Sheriff's Deputies in that department he actually participates in the lawless conduct, on occasion, at their side. There is no dispute that the actions of the defendant deputies in this case violated the clearly established rights of the plaintiff inasmuch as they admitted that they did when they pled guilty to felony charges arising from their actions. Plaintiffs' complaint,

the allegations of which the court must accept as true and view them the light most favorable to the plaintiffs, *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011) [The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiffs clearly established constitutional right], is not subject to dismissal at this point because, at a minimum plausible claim have been alleged:

> No heightened pleading requirement applies to our review of a motion to dismiss based on qualified immunity. [citations omitted].

*Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

### b. The Defendants' Contentions

Despite the fact that it is now somewhat axiomatic that the Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2), and do not countenance dismissal of a complaint for an imperfect statement of the legal theory supporting the claim asserted *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), the defendants pursue dismissal of plaintiffs' complaint for failure to state a plausible claim for relief in any of its 217 numbered paragraphs.

### 1. No Undisputed Facts Support Qualified Immunity For Sheriff Bailey

Defendants begin their attack on plaintiffs' complaint by positing that Sheriff Bailey is entitled to qualified immunity. Notably, the defendants do not identify any undisputed material facts that would entitle Sheriff Bailey to qualified immunity instead, they assert that "None of the allegations in Plaintiffs' Complaint are sufficient to overcome qualified immunity at this stage." Doc. 13 at 4. In support of its position in this regard, the defendants identify *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017), for the proposition that (1) [he] either failed to

supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference. Doc. 13 at 4. This language from *Davidson*, however, is taken completely out of context rather disingenuously by the defendants. What the *Davidson* Court actually stated is the following:

> **In order to survive summary judgment against a § 1983 claim for supervisory liability**, a plaintiff is required to create a dispute of fact that (1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference. [emphasis added].

*Davidson, supra.*, 397.

Notwithstanding the existence of the highlighted language, the defendants submit to the Court that "A plaintiff's failure to adequately plead any of these elements warrants dismissal premised on qualified immunity. Id." Doc. 13 at 4. That simply is not what the *Davidson* Court said, nor is it the law. The Supreme Court has explained the law thusly:

> Our decisions in *Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U. S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) . . . concern the factual allegations a complaint must contain to survive a motion to dismiss. A plaintiff, they instruct, must plead facts sufficient to show that her claim has substantive plausibility. Petitioners' complaint was not deficient in that regard. Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim. See Fed. Rules Civ. Proc. 8(a)(2) and (3), (d)(1), (e).

*Johnson, supra.,* at12. This Court, in *Davis v. Hinds Cty.*, 2017 U.S. Dist. LEXIS 78022, *12-13 [Civil Action No. 3:16cv674-DPJ-FKB], put it this way:

> It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ.

P. 8(a)(2)). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, LLC, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

It is abundantly clear that the plaintiffs' detailed, 217 paragraph complaint alleges conduct by Sheriff's Deputies that is unconstitutional, which is acknowledged by guilty pleas, and that Sheriff Bailey was aware of such conduct on the part of his deputies prior to plaintiffs' torturing ordeal:

> Defendant SHERIFF BAILEY had actual and/or constructive knowledge before this ordeal that its officer /employees were imprisoning persons without probable cause, seizing citizens without justification and using excessive force, and using torture tactics while violating the U.S. Constitution.

Complaint ¶198, and that discovery in this case is far more likely than not to uncover the full extent, and duration of the unlawful actions and the full extent of Sheriff Bailey's complicity therein. For this reason alone, defendants' motion should be denied.

Yet, other reasons exist as well. The defendants themselves provide another. On page 4 of the instant motion, the defendants assert that deliberate indifference may be demonstrated "by either pleading that Sheriff Bailey 'had notice of similar violations,' or alternatively it may be 'based on a single incident if the constitutional violation was highly predictable consequence of a particular failure to train.'" ¶198 of plaintiffs' complaint does exactly what the defendants say plaintiffs are required to do.

In yet another admission, on page 5 of the instant motion, the defendants' state that "Plaintiffs do not allege a complete lack of training or supervision against Sheriff Bailey, but instead allege a failure 'to **properly** train, supervise, control, direct, monitor, and discipline its (sic) officers in their duties and responsibilities.' Complaint, ¶195." Apparently, defendants are of the opinion that since plaintiffs alleged that the deputies were not properly trained as opposed

to not being trained at all, their complaint should be dismissed. However, plaintiffs are only required to plead a plausible claim for relief, and as noted earlier, **[A] plaintiff is not required to anticipate or overcome affirmative defenses**. *Nobre, supra,* 442.

In sum, the defendants do not contend that if the allegations of plaintiffs' complaint were accepted as true, and all reasonable inferences therefrom were viewed in their favor, no plausible claims for relief have been set forth, they argue to the Court that plaintiffs' have not set forth sufficient information to prove their claims in light of the fact that they have opposing evidence such as the Training Certificates of the defendant officers from the Mississippi Board on Law Enforcement Officer Standards and Training. Doc. 13 at 5.

Succinctly stated, ¶195 of plaintiffs' complaint, which states:

> Defendant SHERIFF BRYAN BAILEY acted negligently, carelessly, recklessly, and with deliberate indifference to the safety and constitutional rights of the Plaintiffs and the citizens of the State of Mississippi by failing to properly train, supervise, control, direct, monitor, and discipline its officers in their duties and responsibilities.

puts to rest any claim that plaintiffs' have not pled a plausible claim for relief regarding Sheriff Bailey and Rankin County.

In similar fashion, the defendants' urge the Court to dismiss plaintiffs' complaint because they only discussed three (3) incidents of excessive force preceding the torture ordeal inflicted upon the plaintiffs, and they have case law, *Davidson, supra.*, holding that three (3) prior incidents over a three-and-a-half-year period are insufficient to show a pattern of conduct. Once again, defendants are trying to have the Court view this matter through the wrong lens. As noted earlier, *Davidson* was decided at the summary judgment stage not at the initial stage of litigation prior to any discovery being undertaken. A different standard applies which plaintiffs' complaint fully satisfies.

> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

With respect to the plaintiffs' claim regarding ratification, which is plainly set forth in ¶¶ 199-202 of their complaint, the defendants once more do not contend that if the allegations of the complaint are accepted as true, no plausible claim for relief exists, they instead dispute the accuracy of plaintiffs' allegations and attempt to explain the inaction of Sheriff Bailey until June 2023 when he fired the defendant officers shortly after this lawsuit was filed. The day after plaintiff Jenkins was shot in the mouth, it can be reasonably inferred that Sheriff Bailey knew that the shooting was improper; knew that officers who were in a home for more than two (2) hours without a warrant was improper; knew that the use of tasers by these officers 20-30 times as alleged in ¶27 of plaintiffs' complaint was improper; and knew that the defendant deputies were not in communication with his office for more than two (2) hours which was also improper.

Based on these facts, which can easily be inferred from the allegations of plaintiffs' complaint, Sheriff Bailey knew or should have known that his deputies had violated the constitutional rights of the plaintiffs. And undoubtedly there is more, which will most assuredly come to light when plaintiffs are allowed to conduct discovery in this matter.

The allegations set forth in plaintiffs' complaint fully support their ratification theory. Sheriff Bailey had no intention of disciplining the defendant deputies and did not do so until this lawsuit was filed and the criminal charges which led to guilty pleas by all of the defendant deputies were imminent. The fact that the defendants dispute the plaintiffs' theory does not mean that the plaintiffs have failed to allege a plausible claim for which relief is attainable, it simply means that there is a factual dispute in that regard.

## 2. Plaintiffs' Monell Claim Against Rankin County Is Unassailable

Contrary to the contention of the defendants, not only is plaintiff's Monell claim against Rankin County facially plausible, but it is also unassailable. Plaintiffs Monell claim is set forth in ¶¶204-207 of plaintiffs' complaint:

204. Plaintiffs hereby incorporate paragraphs 1-87 as if fully set forth herein.

205. Based upon the principles set forth in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), on and for some time prior to January 24, 2023, and continuing to the present date, defendant RANKIN CO., acting with reckless and deliberate indifference to the rights and liberties of the public in general, and of PLAINTIFF's JENKINS and PARKER, and of persons in their class, situation, and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

- The use of excessive force on African American citizens

- The use of excessive force on the citizenry at large

- 4th Amendment violations, unlawful searches, and seizures

- 14th Amendment equal protection violations

- Using torture tactics in the course of interrogation.

- Failing to ensure officers were adequately trained and supervised

206. By reason of the aforementioned policies and practices by RANKIN CO., Plaintiffs were subjected to constitutional violations, beatings, torture, humiliation, excessive force, other torts, attempts to kill JENKINS, and other crimes described herein.

207. Defendant RANKIN CO., together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated, and through actions and inactions, thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies concerning the constitutional rights of JENKINS, PARKER, Plaintiff, and other individuals similarly situated.

In an attempt to support their specious position, defendants inform the Court that "The applicable

policies and procedures of the Rankin County Sheriff's Department are attached to Rankin County's Answer as Exhibit 2." Doc. 13 at 10. The defendants, having clearly introduced matters that are not referred to in plaintiffs' complaint thereby converting this motion to a Rule 56 motion for summary judgment, seek to avoid that result by citing to *Great Lakes Ins. v. Gary Trp. Invs., LLC*, 550 F. Supp, 3d 364, 370 (E.D. La. 2021). Which directly refutes defendants' assertion:

> The Court may also consider documents attached to a 12(c) motion without converting the motion into one for summary judgment, **if the documents are referred to in the complaint and are central to the plaintiff's claim**. [emphasis added] [citations and internal quotations are omitted].

*Id*. at 370. At no place are these documents referred to in plaintiffs' complaint nor are they central to any claim in plaintiffs' complaint. They were brought to the Court's attention solely to support the defendants' position. As such, Rule 12(d) mandates that the Court treat defendants' motion as one for summary judgment:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Even if this matter had not been converted to a motion for summary judgment, no basis exist to dismiss plaintiffs' complaint in any respect. This point is highlighted by the defendants' repeated attempt to obscure the facts. Defendants proclaim, "Similar to the ratification arguments on behalf of Sheriff Bailey supra, there are no allegations as to how Rankin County ratified the unconstitutional acts of the former deputies on January 24, 2023, after knowledge of same." Doc. 13 at 12. This statement is demonstrably unfounded. Plaintiffs' complaint ¶¶205 &207 address the exact issue that defendants' claim does not exist. Moreover, plaintiffs' complaint ¶16 not only confirms Rankin County's ratification:

> 16. The Rankin County Deputies would intentionally de-activate their body camera equipment prior to this ordeal, and upon its conclusion, the six Rankin County Deputies involved would steal from the property in question video computer equipment that recorded a critical portion of this ordeal. Rankin County has possession of such stolen equipment.

it points out in a specific allegation, Rankin County's complicity in the criminal conduct of its deputies. When this situation is given thought, it becomes clear that defendants' representations in this regard are quite disingenuous given the specificity of the allegations contained in plaintiffs' complaint.

In an attempt to support their untenable positions regarding plaintiffs' Monell claims against Rankin County, the defendants presented documents outside the pleadings which automatically converted their motion to a summary judgment motion unless the Court decides to ignore the documents. Fed. R. Civ. P. 12(d). On the other hand, the motion of the defendants is entirely meritless insofar as it seeks to dismiss plaintiffs' complaint for failure to set forth a Monell claim against Rankin County.[2]

### **Plaintiffs Have Stated a Claim against both Sheriff Bailey and Rankin County under the MCTA.**

The Defendants cite <u>Univ. of Miss. Med. Ctr. v. Oliver</u>, 235 So. 3d 75, 81 (¶ 24) (Miss. 2017) (quoting MISS. CODE ANN. §11-46-5(2)) for the contention that Rankin County "cannot be liable, and sovereign immunity [is not] waived for the alleged malicious [or any criminal] conduct of its officers." <u>Oliver,</u> 235 So. 3d at 83 (¶ 32). Defendants further contend that "Sheriff Bailey is immune from individual liability where he acted within the course and scope of his

---

[2] Plaintiffs agree that their claims against Sheriff Bailey in his official capacity with respect to §1983 are governed by *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), and therefore, should be dismissed. In all other respects, there is no basis for dismissal of any aspect of plaintiffs' complaint.

employment." Citing MISS. CODE ANN. §11-46-7(2) ("[N]o employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."); Conrod v. Holder, 825 So. 2d 16, 19 (¶¶ 9-10) (Miss. 2002).

A couple of points need to be made. First, the MCTA claims against Sheriff Bailey and Rankin County are for the Sheriff's deliberate indifference as well as the Sheriff's and the County's Reckless disregard for the rights of the plaintiffs and the citizens in general. See Complaint paragraphs 72-87. Those allegations are separate and apart for any allegations against the defendant deputies. However, in an attempt to bolster their argument, the defendants argue that the allegations of the Sheriff are inclusive of the claims against the deputies. That is not true. A plain reading of the Complaint shows that there are claims against the deputies for which they alone are liable, and also claims against Rankin County and the Sheriff regarding those entities acts and failure to act, which thereby created the conditions for the acts of the defendant deputies against the plaintiffs to occur.

However, it should be noted that under the Mississippi Tort Claims Act, a governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim that arises out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury. Miss. Code. Ann. § 11-46-9(1)(c) (Rev. 2019). See City of Jackson v. Johnson, 343 So.3d 356, 362 (Miss.2022).

Thus, a city can only be liable for its officers' conduct if those officers acted with reckless disregard of an individual's safety and well-being. Reckless disregard is synonymous with willfulness and wantonness and includes an element of intent to harm.

Cunningham v. City of West Point, 380 F. App'x 419, 420 (5th Cir.2010).

Plaintiff's Complaint alleges a reckless disregard standard for all deputy defendants *and* for their supervisor Bryan Bailey. Under the Jackson case, Jackson Mississippi Code Annotated § 19-25-19 states that the **sheriff** is liable for all tortious acts of his deputies. Jackson v. Payne, 922 So. 2d 48, 51 (Miss. App. 2006). In the context of the Miss. Code Ann. § 11-46-9, reckless must connote "wanton or willful," because immunity does not lie for ordinary negligence. "Wanton" and "reckless disregard" are just a step below specific intent. "Reckless disregard" embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act City of Jackson v. Lipsey, 834 So. 2d 687, 689 (Miss. 2003).

The relevant allegations of the defendants in this case are depicted in the table below:

Defendant claims, pursuant to § 11-46-5(2), Rankin County "cannot be liable, and sovereign immunity [is not] waived for the alleged malicious [or any criminal] conduct of its officers." Oliver, 235 So. 3d at 83 (¶ 32). However this broad-based claim that every act done by the defendant deputies is "criminal" is not a fact at all. A number of their defendant's tortious act committed upon plaintiff, they were not charged in criminal court and therefore these acts cannot be classified as "criminal acts'.

In addition, defendants' motion for judgment on the pleadings is limited to plaintiff's filed pleadings, which are the Complaint and the accompanying exhibits. Nowhere in the Plaintiff's pleadings or the record is there introduction of the defendant deputies' plea agreements, or any criminal information pertaining to the defendants. Therefore, none of the defendant's arguments pertaining to criminal conduct of the deputies under Bryan Bayley's supervision can be considered at this time because none of this information is contained in the

plaintiff's pleadings before this court.  Defendants Exhibit #3, which contains the criminal pleas of defendants on state charges, only pertain to a fraction of the tortious conduct plaintiffs allege against defendants.

## **CONCLUSION**

Wherefore, for the reasons stated herein and in the record of this proceeding, the plaintiffs urge the Court to summarily deny defendants' motion, or alternatively, to convert the motion to a Rule 56 motion and hold it in abeyance until discovery is completed.  Matters of police brutality and supervisory responsibility are extremely important in today's justice system and society.  We urge the court to deny summary judgment in this case so that this most important case can be decided on the merits.

Respectfully submitted,

 */s/*  MALIK SHABAZZ  ESQ /S/
**MALIK SHABAZZ, Esq.**
**ATTORNEY FOR PLAINTIFF**
The Law Office of Malik Shabazz, Esq.
D.C. Bar #
458434 6305
Ivy Lane,
Suite 608
Greenbelt, MD 20770
Email:Attorney.shabazz@yahoo.com Tel: (301) 513-5445
Fax: (301) 513-5447


/s/ TRENT L. WALKER_____
 **BY: TRENT L. WALKER, MSB#10475**
**ATTORNEY FOR PLAINTIFF**

OF COUNSEL:
TRENT WALKER, COUNSELOR AT LAW, PLLC
5255 KEELE STREET, SUITE A
JACKSON, MISSISSIPPI 39206

601-321-9540 PHONE
601-398-3918 FACSIMILE
Trent@Trentwalkerlaw.com EMAIL

**CERTIFICATE OF SERVICE**

Attorneys for the Plaintiff do hereby certify that I have served a copy of the foregoing document via the MEC filing system on all counsel of record.

                    ___/s/ TRENT L. WALKER_____
                    **BY: TRENT L. WALKER**
                        **ATTORNEY FOR PLAINTIFF**