```
                                                                    1

 1   IN THE CIRCUIT COURT OF RANKIN COUNTY, MISSISSIPPI

 2

 3    MONICA LEE, ET AL.                           PLAINTIFF

 4

 5    VERSUS                                CAUSE NO. 2022-73

 6

 7    RANKIN COUNTY, MISSISSIPPI, ET AL.      DEFENDANTS
     ****************************************************
 8              DEPOSITION OF MONICA R. LEE

 9   ****************************************************

10               APPEARANCES NOTED HEREIN

11

12              DATE: OCTOBER 19, 2023
        PLACE: LAW OFFICE OF TRENT WALKER, ESQ.
13             5255 KEELE STREET, STE A
                  JACKSON, MISSISSIPPI
14                TIME: 9:55 A.M.

15

16

17   REPORTED BY: TODD J. DAVIS
               CSR #1406, RPR
18

19

20
              DAVIS COURT REPORTING
21             Post Office Box 44
           Madison, Mississippi 39130
22         (601) 454.3298 (Call or Text)
          marytodd@daviscourtreporting.com
23          www.daviscourtreporting.com

24

25               EXHIBIT 2
```

```
                                                                    2

 1     APPEARANCES:

 2

 3         TRENT WALKER, ESQ.
           Attorney-At-Law
 4         5255 Keele Street, Ste A
           Jackson, Mississippi 39206
 5         trentwalker1968@yahoo.com

 6

 7         CATOUCHE J.L. BODY, ESQ.
           The Body Law Firm, PLLC
 8         Post Office Box 13007
           Jackson, Mississippi 39236-3007
 9         attybody@bodylawfirm.com

10

11         MALIK SHABAZZ, ESQ. - Via telephone
           The Law Office of Malik Shabazz, Esq.
12         1200 G Street NW #855
           Washington, DC 20005
13         attorney.shabazz@yahoo.com

14

15         JASON DARE, ESQ.
           Biggs, Ingram & Solop, PLLC
16         Post Office Box 14028
           Jackson, Mississippi 39236
17         jdare@bislawyers.com

18

19

20

21

22

23                  TODD J. DAVIS
                 DAVIS COURT REPORTING
24                Post Office Box 44
              Madison, Mississippi 39110
25                 (601.454.3298)
```

3

1                         INDEX
2     Style and Appearances .....................    1
3     Index .....................................    3
4     Examination by Mr. Dare....................    4
5     Certificate of Court Reporter .............  154
6     Certificate of Deponent....................  155
7
8     EXHIBITS:
9     Exhibit 1 .................................   20
10    Exhibit 2 .................................   21
11    Exhibit 3 .................................   25
12    Exhibit 4 .................................   81
13    Exhibit 5 .................................  115
14    Exhibit 6 .................................  115
15    Exhibit 7 .................................  133
16    Exhibit 8 .................................  133
17    Exhibit 9 .................................  133
18
19
20
21
22
23
24
25

4

1          MONICA R. LEE,
2   Having been first duly sworn, was examined and
3   testified under oath as follows:
4   EXAMINATION BY MR. DARE:
5       Q.   Can you state your full name, including
6   your maiden name, for the record please, ma'am?
7       A.   Monica Rochelle Cameron Lee.
8       Q.   Ms. Lee, my name is Jason Dare.  I'm
9   here to take your deposition.  Have you ever given
10  a deposition before?
11      A.   No.
12      Q.   So I'm sure your counsel have been over
13  this with you, and I just kind of want to go
14  through a few ground rules of depositions.
15      A.   Okay.
16      Q.   As you notice, we don't have a jury
17  here, and it's in a casual setting.  I'm going to
18  ask you questions.  One, if you don't understand a
19  question, ask me to rephrase it.  Attorneys have a
20  habit of asking very confusing questions.  So if
21  you don't understand it, just say, "Can you ask
22  that a different way?"  And it won't offend me.
23  Is that all right?
24      A.   That's okay.
25      Q.   Another one is that we in the south have

121

1   couldn't breathe?
2        A.    When I walked in, when he was in his
3   back, the whole time he couldn't breathe, he
4   couldn't breathe.  Never -- it was just he
5   couldn't breathe.
6        Q.    And that was when the first deputy was
7   on Damien's back, correct?
8        A.    He was -- correct, yes, sir.
9        Q.    And I believe you also said when he was
10  walking out of the house, he also said, "I can't
11  breathe.  I'm tired"; is that right?
12       A.    Correct.
13       Q.    And to David Ruth, you told that you
14  believed it was because of the tussle that they
15  were in; is that right?
16       A.    That's right, correct.  That's what I
17  told him, yes.
18       Q.    Did you personally yourself see either
19  deputy use any force on Damien once he was in
20  handcuffs and subdued?
21       A.    The only thing I witnessed is the
22  kneeling in the back and the neck.  That's the
23  only thing.
24       Q.    No, ma'am.
25              My question was, once he was

122

1    handcuffed and subdued, did you personally witness
2    either of the deputies use any force once or after
3    Damien was handcuffed and subdued?
4         A.   No, not that I can remember, no.
5         Q.   And you agree that Damien actually
6    walked out of the house, correct?
7         A.   Yes, with both officers on each side,
8    yes.
9         Q.   Right.  But Damien was walking and
10   talking at that point in time when he was going
11   out of the house?
12        A.   Correct.
13        Q.   Do you recall Damien pushing back
14   against the deputies and the deputies pushing
15   forward on him at all as he was walking out of the
16   house?
17        A.   No.
18        Q.   And to both MBI agents and David Ruth
19   you say that you didn't personally witness either
20   of the deputies put Damien into the patrol
21   vehicle; is that right?
22        A.   That's correct.
23        Q.   Because you would have gone back in the
24   house, right?
25        A.   Correct.

123

1  Q. The first time that you ever saw Damien
2  unresponsive was when the deputies had pulled him
3  back out of the vehicle; is that right?
4  A. Correct.
5  MR. DARE: Briefly off the record.
6  (A short recess was taken.)
7  BY MR. DARE:
8  Q. Okay. According to your statement to
9  the MBI agents, one of the deputies was crying
10 after Damien was found unresponsive; is that
11 right?
12 A. Yes, sir.
13 Q. Did you personally see him crying, or
14 was that just your mom that did?
15 A. I seen him standing at the back of the
16 car smoking a cigarette.
17 Q. Was he upset?
18 A. Pretty much, yes, sir.
19 Q. And when you saw him, did you believe
20 that he was genuinely upset about Damien's
21 wellbeing at this point?
22 MR. WALKER: Object to the form. You
23 can answer.
24 BY MR. DARE:
25 Q. Just from what you saw.

                                                                  128

1       A.   I don't remember.  I don't remember.
2       Q.   You would agree with me, would you not,
3  that Simpson General Hospital is much closer than
4  UMMC, right?
5       A.   Yes, sir.
6       Q.   As you already testified, Simpson
7  General had an ER, did it not?
8       A.   Yes.
9       Q.   With ER physicians?
10      A.   Yes, sir.
11      Q.   Good physicians at Simpson General
12  Hospital?  You work there.
13      A.   I wasn't there then.  I don't know.
14      Q.   If you know.
15      A.   I don't know.
16           MR. WALKER:  Would it help if I said
17      that we're not maintaining a lack of medical
18      treatment or a failure to render medical aid
19      on the part of Rankin County?
20           MR. DARE:  Or the deputies or with
21      anybody remaining?
22           MR. WALKER:  Or anybody remaining.  I
23      don't think that's part of our claim.
24           MR. DARE:  Got you.  I just wanted to
25      make sure.

                                                              129

1            MR. WALKER:  Catouche, am I missing
2        something here or not?  Okay, that's not part
3        of our claim.
4            MR. DARE:  That will help, and I will
5        move on.  Thank you.
6    BY MR. DARE:
7        Q.   Other than Pafford and the settlement
8    the plaintiff reached with Pafford and the GoFund
9    Me, has anybody else provided any money as a
10   result of Damien's passing?
11       A.   No.
12       Q.   You haven't named Sheriff Bryan Bailey
13   in this lawsuit that we're here on today.  The
14   defendants are Rankin County, Hunter Edward and
15   Luke Stickman.  I want to make sure, one, you
16   don't intend to sue Bryan Bailey; and two, if you
17   do, I want to determine if you have any testimony,
18   any evidence, any knowledge of anything that
19   Sheriff Bailey did or didn't do regarding Damien's
20   passing?
21           MR. WALKER:  Let me interject and say
22       that but for any allegations in our pending
23       amended complaint, I don't think we made any
24       allegations with regard to Bryan Bailey.  If
25       I am wrong, then that pending amended

```
 1                CERTIFICATE OF COURT REPORTER
 2                I, Todd J. Davis, Court Reporter and
 3    Notary Public in and for the County of Madison,
 4    State of Mississippi, hereby certify that the
 5    foregoing pages contain a true and correct
 6    transcript of the testimony of MONICA LEE, as
 7    taken by me in the aforementioned matter at the
 8    time and place heretofore stated, as taken by
 9    stenotype and later reduced to typewritten form
10    under my supervision to the best of my skill and
11    ability by means of computer-aided transcription.
12                I further certify that under the
13    authority vested in me by the State of Mississippi
14    that the witness was placed under oath by me to
15    truthfully answer all questions in this matter.
16                I further certify that I am not in the
17    employ of or related to any counsel or party in
18    this matter and have no interest, monetary or
19    otherwise, in the final outcome of this matter.
20                Witness my signature and seal this the
21    29TH day of OCTOBER, 2023.
22
                                  _____
23                                TODD J. DAVIS, CSR #1406
      My Commission Expires:
24    March 27, 2025
25
```