**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**MICHAEL COREY JENKINS, et al.**                         **PLAINTIFFS**

**v.**                         **CAUSE NO. 3:23cv374-DPJ-FKB**

**RANKIN COUNTY, MISSISSIPPI, et al.**                         **DEFENDANTS**

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS PREMISED, IN PART, ON QUALIFIED IMMUNITY**

**NOW COME** Defendants, Rankin County, Mississippi and Sheriff Bryan Bailey, in his individual and official capacities, by and through counsel, and in support of their Renewed Motion for Judgment on the Pleadings brought pursuant to FED. R. CIV. P. 12(c), state as follows:

I.     **INTRODUCTION & PROCEDURAL HISTORY**

Plaintiffs Michael Corey Jenkins ("Jenkins") and Eddie Terrell Parker ("Parker") filed their [1] Complaint on June 12, 2023, which contains federal and state law claims against Defendants Rankin County, Sheriff Bailey, and other Defendants relating to an incident occurring on or around January 24, 2023 in Braxton, Mississippi. Rankin County and Sheriff Bailey filed their [11] Answer and [12] Motion for Judgment on the Pleadings on October 6, 2023. Rankin County filed its [18] Supplemental Motion for Judgment on the Pleadings on October 27, 2023.

Both the [12] Motion and [18] Supplemental Motion were fully briefed when on November 20, 2023, Plaintiffs filed their [25] Motion for Leave to File an Amended Complaint. The [25] Motion was granted and Plaintiffs filed their [28] Amended Complaint on November 21, 2023. Rankin County and Sheriff Bailey have filed their Answer to the [28]

Amended Complaint and this Court has denied the [12] Motion and [18] Supplemental Motion as moot. *See* [30] Order.

Rankin County and Sheriff Bailey have now renewed their Rule 12(c) motion for judgment on the pleadings and submit that Plaintiffs' [28] Amended Complaint should be deemed their "best case" against these Defendants. *Bartz v. Roberts*, 320 So. 3d 1255, 1263 (¶ 26) (Miss. App. 2021) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)); *see also Matlock v. Bramlett*, No. 3:20cv381-HTW-LGI, 2021 WL 4434015, at *10 (S.D. Miss. Sept. 27, 2021) (quoting *Dark v. Potter*, 293 F. App'x 254, 257 (5th Cir. 2008)) ("A plaintiff has pleaded his best case after he is 'apprised of the insufficiency' of his complaint and has had an opportunity to make corrections.")

II. **STATEMENT OF FACTS**

Jenkins and Parker allege that on or around January 24, 2023, former deputies with the Rankin County Sheriff's Department illegally raided the residence where they were staying and employed "torture tactics" on Plaintiff, for which they "pled guilty to multiple felony charges in federal court for violating the constitutional rights of the plaintiff and several felony charges in Mississippi state court for violations of state law during the torture ordeal of the plaintiffs." [28] Amended Complaint, ¶ 69. Sheriff Bailey is not alleged to have personally participated in any of the criminal acts committed by the former deputies, and Plaintiffs only submit the conclusory allegation that he "had actual and/or constructive knowledge of the lawlessness engaged in by the so-called GOON SQUAD, which operated within the Sheriff's Office, openly and notoriously, before the plaintiffs' ordeal occurred." *Id.* at ¶ 89. Based on this conclusory allegation, Plaintiffs allege § 1983 theories against Sheriff

2

Bailey under theories of failure to train, supervise, and discipline. *Id.* at ¶¶ 86-89. They also allege a theory of ratification theory against Sheriff Bailey. *Id.* at ¶¶ 90-93. They allege similar theories against Rankin County under *Monell*, *Id.* at ¶¶ 90-99, as well as state law claims under the Mississippi Tort Claims Act ("MTCA") for allegedly unconstitutional customs, policies, and practices. *Id.* at ¶¶ 107-12.

For the following reasons, the federal claims against Sheriff Bailey should be dismissed based on qualified immunity. Further, there are no facts to support a *Monell* claim against Rankin County and it is immune from liability under the MTCA for the acts alleged in the [28] Amended Complaint.

III.  **LEGAL PRECEDENT & ANALYSIS**

    A.  <u>**Standard of Review**</u>

The standard under Rule 12(c) and Rule 12(b)(6) are "the same". *Vardeman v. City of Houston*, 55 F.4th 1045, 1049 (5th Cir. 2022). Where a complaint fails to contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" dismissal under Rule 12(c) is warranted. *Id.*, at 1050 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Accordingly, the Court cannot accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678-79, 129 S. Ct. at 1949-50.

    B.  <u>**Sheriff Bailey, Individually, is entitled to qualified immunity**</u>.

Plaintiffs do not allege that Sheriff Bailey personally participated in the events at issue. They also do not allege that the policies and procedures of the Rankin County Sheriff's

3

Department were facially unconstitutional, despite knowledge of the applicable policies. *See* [11-2]. Instead, Plaintiffs attempt to hold Sheriff Bailey liable under § 1983 on theories of failure to train, supervise, and discipline, and/or ratification. The Court's analysis of qualified immunity at this initial Rule 12(c) stage requires analysis of the pleadings, in which "Plaintiffs must plead facts showing: (1) that [Sheriff Bailey] violated their constitutional right; and (2) that the right at issue was clearly established at the time of the violation." *Tuttle v. Todd*, Nos. 22-20233, 22-20319, 2023 U.S. App. LEXIS 19831, at *5-6, 2023 WL 4884853 (5th Cir. Aug. 1, 2023) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Henderson v. Harris County*, 51 F.4th 125, 132 (5th Cir. 2022)). The Court is "free to decide which of the two prongs of the [QI] analysis to address first." *Buehler v. Dear*, 27 F.4th 969, 982 (5th Cir. 2022).

Sheriff Bailey cannot be liable under a theory of vicarious liability and/or *respondeat superior*, but instead can only be found individually liable under § 1983 on the basis of his own personal participation in the wrongful conduct. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citation omitted). "Supervisory officials are accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." *Id.* Any alleged conduct against the supervisory officials "must be based on more than the right to control employees, or simple awareness of employees' misconduct." *Laneri v. King*, No. 1:14cv234-LG-RHW, 2015 WL 5943013, at *3 (S.D. Miss. Oct. 13, 2015) (citing *Leary v. Daeschner,* 349 F.2d 888, 903 (6th Cir. 2003)).

Without evidence that Sheriff Bailey "affirmatively participate[d] in the acts that cause[d] the constitutional deprivation," Plaintiffs must show that he "implement[ed] unconstitutional policies that causally result[ed] in the constitutional injury" in order to

establish liability. *Chipley v. Yazoo County*, No. 3:16cv901-TSL-RHW, 2018 WL 1903202, at *7 (S.D. Miss. Apr. 20, 2018) (quoting *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)). "A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Chipley*, 2018 WL 1903202, at *7 (quoting *Porter*, 659 F.3d at 446). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Porter*, 659 F.3d at 446-47 (quoting *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011)) (internal marks omitted).

Plaintiffs have the burden under qualified immunity to show that "the unlawfulness of the defendant's conduct was clearly established at the time it occurred." *Buehler*, 27 F.4th at 981. To meet this burden, Plaintiffs "must point to authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Id.* (citations and internal quotations omitted). The Court's QI analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (citation omitted). None of the allegations in the [28] Amended Complaint are sufficient to overcome qualified immunity at this stage.

<u>Failure to Train, Supervise, and/or Discipline</u>

Under these theories of liability, Sheriff Bailey can only be liable for the actions or inactions of his subordinates where "(1) [he] either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to

5

deliberate indifference." *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017) (citations omitted). A plaintiff's failure to adequately plead any of these elements warrants dismissal premised on qualified immunity. *Id.*

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Davidson*, 848 F.3d at 397 (citations omitted). It may be demonstrated by either pleading that Sheriff Bailey "had notice of a pattern of similar violations," or alternatively, it may be "based on a single incident if the constitutional violation was the highly predictable consequence of a particular failure to train." *Id.* (citations and internal quotations omitted).

Plaintiffs generally allege that "[c]itizen complaints, lawsuits, public news, and public records verify that SHERIFF BAILEY is specifically aware that County deputies have committed and are likely to commit constitutional violations of the type plaintiffs suffered as described in this lawsuit." [28] Amended Complaint, ¶ 87. But these conclusory and/or threadbare allegations are insufficient at the pleading stage pursuant to *Iqbal* / *Twombly*.

In an attempt to plead a pattern of unconstitutional conduct at the Rankin County Sheriff's Department, Plaintiffs specifically allege two earlier incidents involving Elward – *i.e.*, a February 18, 2019 incident,[1] and a July 26, 2021 incident.[2] [28] Amended Complaint, ¶¶ 70-74. They mistakenly allege that Elward was denied qualified immunity in the 2019 case, even though his qualified immunity motion has not been ruled on by the Court to date.

---

[1] *See Barrett v. City of Pelahatchie*, No. 3:21cv124-HTW-LGI, 2023 U.S. Dist. LEXIS 45108 (S.D. Miss. Mar. 17, 2023).

[2] The affidavits of Elward and Monica Lee referenced at ¶ 81 of Plaintiffs' Complaint are attached in composite as **Exhibit 1**, and were filed in the civil action before the Rankin County Circuit Court, styled *Lee v. Rankin County* and bearing cause number 22-73-JM. *But see* Deposition of Monica Lee (**Exhibit 2**).

*See Barrett v. City of Pelahatchie*, No. 3:21cv124-HTW-LGI, [Dkt. 75] (S.D. Miss. Nov. 18, 2022). Plaintiffs also generally allege that McAlpin was previously denied qualified immunity by this Court, but do not allege the style or cause number of the earlier case, or the facts related to same. Plaintiffs finally allege that Middleton was earlier "convicted of vehicular homicide with culpable negligence," [28] Amended Complaint, ¶ 77, although public records show that their allegation are false. *See State v. Middleton*, No. 1:05cr954 (Hinds Circuit Court). Middleton was charged with culpable negligence stemming from a 2005 automobile accident while working with the Jackson Police Department, and the charges were non-adjudicated and dismissed in 2008. *Id.*

"A pattern requires similarity, specificity, and sufficiently numerous prior incidents." *Davidson*, 848 F.3d at 396. And two prior incidents, with the general allegation of a third instance,[3] in which excessive force[4] was allegedly used over a 13-year period are insufficient to show a pattern. *Id.* (Holding that three incidents over a three-and-a-half-year period are insufficient to show a pattern).

The incident alleged in *Barrett v. City of Pelahatchie* occurred on or around February 18, 2019, and involved the use of deadly force against a barricaded, active shooter who shot several times at deputies and, according to the allegations in the plaintiffs' complaint, presented at the front door of the residence with "a pistol in one of his hands." *Barrett*, 2023

---

[3] In their [1] Complaint, Plaintiffs allege a June 7, 2010 incident involving McAlpin. *See Gerhart v. Barnes*, 724 F. App'x 316 (5th Cir. 2018).

[4] It is unclear whether Plaintiffs allege an equal protection claim against Sheriff Bailey. Even if such claim is made against this Defendant, he is entitled to qualified immunity since there are no prior allegations of racially motivated acts by the former deputies.

U.S. Dist. LEXIS 45108, at *6-*8. Elward admittedly discharged his service weapon at Woods and was, in turn, struck by Woods' weapon. *Id*. at *16-*17.

The incident alleged in the affidavit of Monica Lee occurred on or around June 26, 2021, but the Lee Affidavit was not filed until April 14, 2023, thus could not have provided Sheriff Bailey with knowledge of the contents therein prior to the January 24, 2023 incident at issue in this litigation.[5]

These two specific prior incidents and one generally alleged prior incident, occurring over a 13-year period of time, are insufficient to put Sheriff Bailey on notice of a need for further training and/or supervision. *See Jackson v. Valdez*, 852 F. App'x 129, 135-36 (5th Cir. 2021), *cert. denied,* 211 L. Ed. 2d 569, 142 S. Ct. 863 (2022). Moreover, Plaintiffs specifically plead that the former deputies "wrote and submitted a report documenting [their] false cover story that they manufactured to justify their conduct." [28] Amended Complaint, ¶ 62, *see also Id.*, ¶ 68 ("During those interviews [with MBI], each of them stuck to the concocted

---

[5] In her deposition (Exhibit 2) taken on October 19, 2023, Monica Lee testified that the facts contained in her affidavit (Exhibit 1) are false. By way of example, *compare*:

> Q. And you agree that Damien actually walked out of the house, correct?
>
> A. Yes, with both officers on each side, yes.
>
> Q. Right. But Damien was walking and talking at that point in time when he was going out of the house?
>
> A. Correct.

Deposition (Exhibit 2), *with*:

> Deputy Elward was able to get one handcuff on Damien. At that time, Deputy Stickman ran in and kneeled across the back of Damien's neck choking him. It was clear to me Damien was being choked by Stickman. Indeed, Damien told the deputies that he could not breathe, but they did not shift positions. Damien never moved again.

Affidavit (Exhibit 1).

8

story and provided false accounts of the incident with the plaintiff to investigators.") These allegations, if accepted as true under Rule 12(c) standards, evidence a lack of notice to Sheriff Bailey based on the submission of "false cover stor[ies]" and/or "false accounts of the incident" provided to investigators. *Id.*

For all of the foregoing reasons, no clearly established legal Sheriff Bailey is entitled to qualified immunity on Plaintiffs' failure to train, supervise, and/or discipline claims against him.

Ratification

Ratification is a theory of municipal liability where "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Young v. Bd. of Supervisors*, 927 F.3d 898, 903 (5th Cir. 2019) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). It has a narrow scope since "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Carr v. City of Spring Valley Vill.*, No. 19-20373, 2022 U.S. App. LEXIS 13307, at *17-18 (5th Cir. May 17, 2022) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009)). Instead, municipal liability exists under a ratification theory only where a "policymaker ratified what it knew at the time to be unconstitutional conduct." *Id.* (citing *Praprotnik*, 485 U.S. at 127-30; *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (1992) ("finding that allegations that a municipality declined to punish an officer's conduct do not establish unconstitutional ratification"); *Berry v. McLemore*, 670 F.2d 30 (5th Cir. 1982) (same); *Piotrowski v. City of Houston*, 237 F.3d 567, 581-582 (5th Cir. 2001) ("Plaintiff's disagreement with a municipality's conclusions regarding alleged misconduct does not support a ratification claim.")).

9

In their earlier [1] Complaint, Plaintiffs concede that Sheriff Bailey pledged after this January 24, 2023 incident "to hold his officers accountable if there was wrongdoing by his deputies found in this ordeal." *Id.*, ¶ 200. Further, the January 24, 2023 incident was investigated by MBI, *see* [28] Amended Complaint, ¶ 67, and the former deputies "pled guilty to multiple felony charges in federal court for violating the constitutional rights of the plaintiff and several felony charges in Mississippi state court for violations of state law during the torture ordeal of the plaintiffs." [28] Amended Complaint, ¶ 69.

There are no allegations that Sheriff Bailey supported, condoned, and/or approved the former deputies' actions at a time when he knew the unconstitutional nature of same. Instead, they allege that "no adverse action was taken against the defendant officers before the instant lawsuit was filed, and it became apparent that the defendant officers were going to be charged with criminally related to their interaction with the plaintiffs." [28] Amended Complaint, ¶ 91. But Plaintiffs did not provide Sheriff Bailey with a copy of the [1] Complaint until September 7, 2023, *see* [7] Waiver, or months after the former deputies were terminated. And as noted *supra*, Plaintiffs allege that the former deputies provided "false cover stor[ies]" to the Rankin County Sheriff's Department and/or "false accounts of the incident" MBI investigators, thereby showing that there was no immediate knowledge of wrongdoing.

Plaintiffs fail to plead any facts to support a ratification theory of liability. Moreover, as recently as April 14, 2023, the Fifth Circuit held that it "lack[s] caselaw on how a municipality might 'ratify' the use of excessive force," *Allen v. Hays*, 65 F.4th 736, 750 (5th Cir. 2023), meaning that the there is no caselaw stated to a "sufficiently high level of

10

specificity to put [Sheriff Bailey] on notice that his conduct is definitively unlawful." *Buehler*, 27 F.4th at 981 (citations and internal quotations omitted).

For all of the foregoing reasons, Sheriff Bailey is entitled to qualified immunity on Plaintiffs' ratification claim against him.

### C. **Plaintiffs' official capacity claims should be dismissed as redundant of their claims against Rankin County.**

Sheriff Bailey is sued "in his official capacity," [28] Amended Complaint, ¶ 7, although there are no allegations against him separate and apart from the claims against Rankin County. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). District courts in the Fifth Circuit have consistently held that official capacity claims are redundant of a plaintiff's claims against a county and should, therefore, be dismissed. *Wilborn v. Holmes County*, No. 3:22cv187-DPJ-FKB, 2023 U.S. Dist. LEXIS 34717, at *7 (S.D. Miss. Mar. 2, 2023) (quoting *Brown v. City of Houston*, No. H-17-1749, 2019 U.S. Dist. LEXIS 218870, 2019 WL 7037391, at *3-4 (S.D. Tex. Dec. 20, 2019) (Rosenthal, C.J.) (collecting cases); *see also Blackmon v. Adams County*, No. 5:21cv62-KS-RHW, 2022 WL 1434652, at *6 (S.D. Miss. May 5, 2022). For this reason, any and all official capacity claims, including those against Sheriff Bailey, should be dismissed.

### D. **There are no facially plausible *Monell* claims against Rankin County.**

For Rankin County to be liable under § 1983, Plaintiffs must plead and prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (citation omitted). The third element requires a showing "either that 'the policy itself was unconstitutional' or that '[the policy] was adopted with deliberate indifference to the

11

known or obvious fact' that a specific constitutional violation would follow." *Edwards v. City of Balch Springs*, 70 F.4th 302, 307 (5th Cir. 2023) (citation omitted). With claims involving a failure to train and/or failure to supervise, a plaintiff "must show that the failure 'constituted deliberate indifference to the plaintiff's constitutional rights.'" *Id.* at 308 (citation omitted).

"[R]ecovery from a municipality is limited to acts that are, properly speaking, acts of the municipality - that is, acts which the municipality has *officially sanctioned or ordered*." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (emphasis in original). Under the *Monell* framework, "isolated unconstitutional actions by municipal employees will almost never trigger liability", which is why courts have consistently and "roundly rejected municipal liability based on a theory of respondeat superior." *Harris v. Jackson County*, 684 F. App'x 459, 463 (5th Cir. 2017) (citations omitted). Instead, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Id.*; *see also Jackson v. City of Hearne*, 959 F.3d 194, 204 (5th Cir. 2020).

There are no allegations of a facially unconstitutional policy officially maintained by the Rankin County Sheriff's Department. Instead, Plaintiffs attempt to hold Rankin County liable under a failure to train, supervise, and/or discipline theory,[6] similar to the theory against Sheriff Bailey. Under this theory, liability against Rankin County must be predicted on facts demonstrating that "(1) [it] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted

---

[6] Plaintiffs do not re-allege a ratification theory against Rankin County. Assuming *arguendo* that Plaintiffs pleaded a ratification theory against Rankin County, it incorporates herein by reference Sheriff Bailey's argument *supra*.

12

deliberate indifference to the plaintiff's constitutional rights." *Edwards*, 70 F.4th at 312. Pleading deliberate indifference for *Monell* liability is difficult, with the Fifth Circuit describing the standard as follows:

> "To show deliberate indifference, a plaintiff normally must allege a pattern of similar constitutional violations by untrained employees." [citation omitted] "A pattern requires *similarity and specificity*; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." [citation omitted] Because deliberate indifference typically requires a pattern, "we have stressed that a single incident is usually insufficient to demonstrate deliberate indifference." [citation omitted] The "'single incident exception' is extremely narrow," [citation omitted] and as an exception to the pattern requirement, it "is generally reserved for those cases in which the government actor was provided no training whatsoever."

*Edwards*, 70 F.4th at 312-13 (emphasis in original).

A failure to train or supervise theory "is a 'notoriously difficult theory on which to base a *Monell* claim[.]'" *Deleon v. Nueces County*, No. 23-40004, 2023 U.S. App. LEXIS 17523, at *4 (5th Cir. July 11, 2023) (quoting *Allen v. Hays*, 63 F.4th 307, *withdrawn and superseded on denial of panel reh'g*, 65 F.4th 736, 749 (5th Cir. 2023). Plaintiffs "must demonstrate that 'in light of the duties assigned to specific officers…, the need for more or different training [or supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need.'" *Id.*

"[I]solated unconstitutional actions by municipal employees will almost never trigger liability", which is why courts have consistently and "roundly rejected municipal liability based on a theory of respondeat superior." *Harris*, 684 F. App'x at 463 (quoting *Piotrowski*, 237 F.3d at 578); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, "the unconstitutional conduct must be directly attributable to the municipality through some sort

13

of official action or imprimatur." *Harris*, 684 F. App'x at 463; *see also Jackson v. City of Hearne*, 959 F.3d 194, 204 (5th Cir. 2020).

Plaintiffs do not allege a complete lack of training, thus the single-incident theory of *Monell* liability is inapplicable. *See Sauceda v. City of San Benito*, 78 F.4th 174 (5th Cir. 2023) ("[T]he 'single-incident method of proving deliberate indifference' is 'generally reserved' for cases in which 'no training whatsoever' occurred."). Instead, Plaintiffs generally allege that Rankin County "knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

> The use of excessive force on African-American citizens
>
> The use of excessive force on the citizenry at large
>
> 4th Amendment violations, unlawful searches, and seizures
>
> 14th Amendment equal protection violations
>
> Using torture tactics in the course of interrogation.
>
> Failing to ensure officers were adequately trained and supervised
>
> Failing to ensure that officers were vetted correctly and hired

[28] Amended Complaint, ¶ 95.

But there are no allegations in the [28] Amended Complaint, pleaded with any degree of specificity, which demonstrate a custom, policy, or practice of unconstitutional conduct attributable to Rankin County that is "so persistent and widespread as to practically have the force of law." *Jackson*, 852 F. App'x at 136 (quoting *Connick*, 563 U.S. at 61). And "to establish a pattern, '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.'" *Vardeman*, 55 F.4th at 1052 (quoting *Estate*

*of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). For these reasons, any and all § 1983 claims against Rankin County should be dismissed.

      E.      **<u>Plaintiffs' state law claim against Rankin County should be dismissed</u>**.

Plaintiffs state law claims against Rankin County[7] are contained in Count IV of the [28] Amended Complaint, ¶¶ 106-112, and are all-but identical to Plaintiffs' § 1983 claims against this Defendant. Specifically, Plaintiffs allege that prior to the incident at issue, Rankin County "knowingly maintained, enforced and applied … custom[s], polic[ies], and practice[s]" that were improper, *Id.*, ¶ 107, and that this Defendant "condoned, tolerated, and through actions and inactions, thereby ratified such policies." *Id.*, ¶ 110. These state law claims are barred by the Mississippi Tort Claims Act ("MTCA").

"[T]he MTCA is the exclusive remedy for suing the state government and its political subdivisions. *Burnett v. Hinds County*, 313 So. 3d 471, 477 (Miss. 2020). All of Plaintiffs' state law claims are premised on Rankin County's performance of discretionary functions, among them: whether to hire or not hire; whether to prepare or revise policies and training programs; and whether to train or re-train employees. As such, Plaintiffs' state law claims are subject to and barred by the by the exemptions found at MISS. CODE ANN. § 11-46-9(1)(d) & (g).

The MTCA provides that "[a] governmental entity … shall not be liable for any claim … [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity … whether or not the discretion be abused." MISS. CODE ANN. § 11-46-9(1)(d). In analyzing "whether governmental

---

[7] Unlike the [1] Complaint, there are no state law claims against Sheriff Bailey, individually, in the [28] Amended Complaint.

15

entities and their employees are entitled to discretionary function immunity, Mississippi courts apply the 'public policy function test,' also known as the '*Wilcher*' test. *J.W. v. City of Jackson*, No. 3:21cv663-CWR-LGI, 2023 U.S. Dist. LEXIS 50424, at *109-10 (S.D. Miss. Mar. 23, 2023) (citation omitted). This two-step test first requires a determination of "whether the activity in question involved an element of choice or judgment…;" then second "whether that choice or judgment involved social, economic, or political-policy considerations." *Id.* Allegations of "negligent hiring, training, or supervising" of law enforcement officers has long been held to fall under the discretionary function exemption. *Hawkins v. City of Lexington*, No. 3:19cv606-DPJ-FKB, 2021 U.S. Dist. LEXIS 219219, at *20-21 (S.D. Miss. July 9, 2021) (citing *City of Jackson v. Powell*, 917 So. 2d 59, 74 (Miss. 2005) ("The manner in which a police department supervises, disciplines and regulates its police officers is a discretionary function of the government."); *see also City of Clinton v. Tornes*, 252 So. 3d 34, 39-40 (Miss. 2018).

Moreover, under MISS. CODE ANN. § 11-46-9(1)(g), governmental entities cannot be liable for "the exercise of discretion in determining … the hiring of personnel…." Mississippi appellate courts recognize that employment decisions are discretionary. *See Levens v. Campbell*, 733 So. 2d 753, 764 (1999); *see also Bell v. Mississippi Dept. of Human Services*, 126 So. 3d 999, 1004 (Miss. App. 2013) (decision whether to retain an employee is entirely discretionary); *Patton v. Hinds County Juvenile Det. Ctr.*, No. 3:10cv138-CWR-LRA, 2011 U.S. Dist. LEXIS 77955, at *20 (S.D. Miss. July 18, 2011) ("Employment decisions … are classic discretionary functions … since they require 'personal deliberation, decision and judgment.'") (further citation omitted).

Thus, even if the [28] Amended Complaint properly alleges that Rankin County should not have hired the former deputies or should have re-trained them or should have modified its policies and procedures, all of these decisions are undoubtedly discretionary functions. The MTCA precludes liability for such claims and all state law claims against Rankin County should be dismissed.

IV.   **CONCLUSION**

Sheriff Bailey is entitled to qualified immunity from Plaintiffs' § 1983 claims. Plaintiffs failed to plead a *Monell* claim against Rankin County and this Defendant is immune from liability for any and all state law claims. For all of the reasons herein, Defendants Rankin County and Sheriff Bryan Bailey, in his individual and official capacities, respectfully request that they be granted judgment on the pleadings pursuant to Rule 12(c) on any and all federal and/or state law claims against them.

**RESPECTFULLY SUBMITTED,** this 13th day of December, 2023.

**RANKIN COUNTY, MISSISSIPPI & SHERIFF BRYAN BAILEY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES - DEFENDANTS**

BY:   */s/ Jason E. Dare*
          **JASON E. DARE**

**OF COUNSEL:**

Jason E. Dare (MSB No. 100973)
jdare@bislawyers.com
BIGGS, INGRAM & SOLOP, PLLC
Post Office Box 14028
Jackson, Mississippi  39236-4028
Telephone:   (601) 987-5307
Facsimile:     (601) 987-5307