**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL COREY JENKINS,** *et al.* | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action No.** |
| **v.** | : | **3:23-cv-374-DPJ-FKB** |
| | : | |
| | : | |
| **RANKIN COUNTY, MISSISSIPPI,** *et al.,* : | | |
| | : | |
| **Defendants.** | : | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO THE RENEWED MOTION OF DEFENDANTS**
**RANKIN COUNTY & SHERIFF BRYAN BAILEY FOR JUDGMENT**
**ON THE PLEADINGS PREMISED, IN PART, ON QUALIFIED IMMUNITY**

Come now the plaintiffs, by and through counsel, and hereby submit their opposition to the Motion for Judgment on the Pleadings Premised, In Part, On Qualified Immunity filed by defendants Rankin County and Sheriff Bryan Bailey. As more fully discussed below, the renewed motion of these defendants remains without legal basis under the Federal Rules or applicable law.

**BACKGROUND**

The plaintiffs in this case were the victims of planned torture by five (5) Rankin County Sheriff's Deputies and one (1) City of Richland Police Officer. These law enforcement officers subjected the plaintiffs to all kinds of debasement including threats, sexual assaults with a dildo, and racial mockery. In addition, they subjected them to beatings, multiple tasings, water boarding and culminated the ordeal by shooting plaintiff Jenkins in the mouth. As a result of these atrocities, the responsible law enforcement officers were criminally indicted and pled guilty to multiple felonies.

The victims of those atrocities filed the Amended Complaint in this action naming

Rankin County, Sheriff Bailey, former Deputies Hunter Elward, Brett McAlpin, Christian

Dedmon, Daniel

Opdyke, and Jeffrey Middleton of the Rankin County Sheriff's Office along with the City of

Richland, Mississippi and one of its former Deputy's, Joshua Hartfield.    None of the other

named defendants, although served with the amended complaint, have yet to file answers or

otherwise respond to plaintiffs' complaint.

## ARGUMENT

### I.  Standard of Review

F. R.C.P. 12(c) provides in relevant part as follows:

> After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.

A Rule 12(c) motion is designed to dispose of cases where the material facts are not in

dispute and a judgment on the merits can be rendered by looking to the substance of the

pleadings and any judicially noticed facts. The essential issue is whether, in the light most

favorable to the plaintiff, the complaint states a valid claim for relief.   The complaint should be

construed liberally, and judgment on the pleadings is appropriate only if there are no disputed

issues of fact and only questions of law remain.

A district court may dismiss a claim when it is clear that the plaintiff can prove no set of

facts in support of his claim that would entitle him to relief. In analyzing the complaint, the court

must accept all well-pleaded facts as true, viewing them in the light most favorable to the

plaintiff.   The issue is not whether the plaintiffs will ultimately prevail, but whether they are

entitled to offer evidence to support their claims. Thus, the court should not dismiss plaintiffs'

claims unless they would not be entitled to relief under any set of facts or any possible theory

that he could prove consistent with the allegations in the complaint. *Great Plains Trust Co. v.*

*Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-13 (5th Cir. 2002) (internal quotations

and citations omitted).

Federal courts follow a strict standard in ruling on motions for judgment on the

pleadings.5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE

AND PROCEDURE § 1368 (3d ed. 2004).   The standard for deciding a motion under Rule

12(c) is the same as the one for deciding a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6).  *See Great Plains, supra* at n8. In deciding a Rule 12(b)(6) motion, the Court

must "accept all well-pleaded facts as true, viewing them in the light most favorable to the

plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205B06 (5th Cir. 2007).

To state a claim upon which relief can  be granted, plaintiffs need only  plead "enough

facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief

above the speculative level." *Id*. at 555. "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Importantly, "to survive a motion to dismiss" under  *Twombly* and *Iqbal*, a plaintiff need

only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by

stating "simply, concisely, and directly events" that plaintiffs contend entitle them to relief.

*Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12, (2014) (per curiam) (citing Fed. R. Civ. P.

8(a)(2)-(3), (d)(1), (e)); accord *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781

F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does

not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief — including factual allegations that, when assumed to be true, raise a right to relief above the speculative level.")   **[A] plaintiff is not required to anticipate or overcome affirmative defenses**.  *Nobre  v. Louisiana Dep't of Pub. Safety*, 935 F.3d 437, 442 (5th Cir. 2019).

When viewed through the appropriate lens, the renewed motion filed by defendants Rankin County and Sheriff Bailey remains toothless.

## II.    Defendants' Motion Should Be Denied On Procedural Grounds

The plain language of Rule 12(c) clearly indicates why defendants' motion should be summarily denied.

> After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.

By its terms, Rule 12(c) allows for a party to file a motion for judgment on the pleadings "after the pleadings are closed." *Id.* The pleadings are closed for purposes of Rule 12(c) upon the filing of a complaint and an answer. *Mandujano v. City of Pharr*, 786 F. App'x 434, 436 (5th Cir. 2019) (per curiam) (citations omitted). At the time that the defendants filed its renewed 12(c) motion, the other defendants in this case, though served, have yet to file answers.  Consequently, the pleadings are  not  "closed," inasmuch as when there are multiple defendants, all must file an answer before a Rule 12 (c) motion can be filed.  *Horen v. Board of Educ. Of Toledo City Sch. Dist*. 594 F. Supp. 2d 833, 840 (N.D. Ohio 2009).

As such, defendants' motion is unequivocally premature and should be denied for this reason alone even though other reasons exist.

## III.    Plaintiffs Have More Than Set Forth Plausible Claims
## Against Defendants Rankin County And Sheriff Bailey

A municipality is liable under 42 U.S.C. § 1983 for acts that are directly attributable to it

through some official action or imprimatur. Therefore, to state a claim for municipal liability a

plaintiff must allege, facts identifying the following essential elements: (1) an official

policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving

force is the policy at issue." *Lincoln v. Clark*, No. CV H-22-1979, 2023 U.S. Dist. LEXIS 18728,

2023 WL 1767014, at *3 (S.D. Tex. Feb. 3, 2023) (citing *Piotrowski v. City of Hous.*, 237 F.3d

567, 578 (5th Cir. 2001) (cleaned up).

 For a failure-to-train-or-supervise claim, a plaintiff must allege that "1) the [city] failed

to train or supervise the officers involved; 2) there is a causal connection between the alleged

failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to

train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Pena

v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (quoting *Thompson v. Upshur Cty.*,

245 F.3d 447, 459 (5th Cir. 2001)).

> a.    **Plaintiffs' Amended Complaint**

In this case, plaintiffs' Amended Complaint sets forth the following pertinent allegations

associated with the clear liability of these defendants:

> 16.  In January 2023, the plaintiffs were residing at 135 Conerly Road in
> Braxton, Rankin County, Mississippi. The property is a four-bedroom ranch-style
> home ("the property") owned by Kristi Walley, a white woman. Plaintiff Parker
> was a long-time friend of Ms. Walley and was helping care for her while plaintiff
> Jenkins was residing at the property temporarily.
>
> 17.  On January 24, 2023, defendant MCALPIN received a complaint
> from one of his white neighbors in Braxton, Mississippi. The neighbor supposedly
> told him, among other things, that several Black males had been at the property
> and that he, the neighbor, had observed suspicious behavior. That evening,
> defendant MCAPLIN directed defendant DEDMON to take care of the problem.
>
> 18.  In response, defendant DEDMON reached out to a group of officers
> who called themselves "The GOON SQUAD" because of their willingness to use
> excessive force with impunity and otherwise abuse the authority provided by their

law enforcement badge and the cover it provided.

19.  The self-labeled GOON SQUAD was led by defendant MIDDLETON and consisted of defendants ELWARD, OPDYKE,  DEDMON,  MCALPIN,  and HARTFIELD,  among others.

20.  At approximately 9:28 pm, defendant DEDMON sent a group message to three members of the GOON SQUAD: defendants MIDDLETON, ELWARD, and OPDYKE. Defendant DEDMON's message read, "Are y'all available for a mission?"

80.  RANKIN COUNTY, under its budgetary authority, continued to finance the Sheriff's Office headed by defendant BAILEY without implementing any policy reforms, controls, or audits. The lack of oversight on the part of Defendant RANKIN COUNTY created an environment within the Sheriff's Office where the defendant law enforcement personnel operated with impunity, which is a proximate cause of the atrocities committed upon JENKINS and PARKER in this case.

89.  Defendant SHERIFF BAILEY had actual and/or constructive knowledge of the lawlessness engaged in by the so-called GOON SQUAD, which operated within the Sheriff's Office, openly and notoriously, before the plaintiffs' ordeal occurred. That group, which consisted of the defendant officers, among others, was allowed to imprison persons without probable cause, seize citizens without justification, and use excessive force and torture tactics as a way of enforcing "law and order" in Rankin County irrespective of the violations of constitutional rights that such actions entailed.

In addition to the above referenced  paragraphs of plaintiffs' Amended Complaint which,

clearly and in great detail, illuminates the basis of their claim for municipal liability based upon

failure to supervise and/or train the defendant officers, the plaintiffs' specifically expand on that

theory of liability in Count I & II of the amended complaint.  Amended Complaint at pgs. 17-20.

In those Counts, the plaintiffs plainly articulate why defendant Bailey is not entitled to qualified

immunity and defendant Rankin County is subject to municipal liability under *Monell v. Dep't of*

*Social Servs.*, 436 U.S. 658, 690-691 (1978).

The 5th Circuit has made it clear that;

In order to overcome a defendant's qualified immunity defense at the motion to

dismiss stage, a plaintiff must plausibly allege facts showing that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established at the time of the challenged conduct. . . This is a low bar, given that granting qualified immunity at the motion to dismiss stage is usually disfavored. Instead, even though we retain jurisdiction over this type of appeal, this Court generally denies qualified immunity at the motion to dismiss stage in order for the case to proceed to discovery, so long as the plaintiff states a plausible claim for relief. [citations and internal quotations omitted].

*Marvaso v. Sanchez*, 971 F.3d 599,605-06(5th Cir. 2020).  Plaintiffs' Amended Complaint far exceeds this standard.  For instance, ¶¶70-80 of plaintiffs' Amended Complaint paints a picture of a law enforcement department that is basically lawless and is headed by an individual that not only condones the lawlessness of the Sheriff's Deputies in that department he actually participates in the lawless conduct, on occasion,  at their side.  There is no dispute that the actions of the defendant deputies in this case violated the clearly established rights of the plaintiff inasmuch as they admitted that they did when they pled guilty to felony charges arising from their actions.  Plaintiffs' Amended Complaint, the allegations of which the court must accept as true and view them the light most favorable to the plaintiffs, *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011)[The test is whether, reading the complaint  in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right], is not subject to dismissal at this point because at a minimum, plausible claims have been alleged:

No heightened pleading requirement applies to our review of a motion to dismiss based on qualified immunity. [citations omitted].

*Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

### b.  The Defendants' Contentions

Despite the fact that it is now somewhat axiomatic that the Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule

Civ. Proc. 8(a)(2), and do not countenance dismissal of a complaint for an i\

\erfect statement of the legal theory supporting the claim asserted, *Leatherman v. Tarrant County*

*Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), the defendants pursue

dismissal of plaintiffs' complaint for failure to state a plausible claim for relief in any of its 162

numbered paragraphs.

**1. No Undisputed Facts Support Qualified Immunity for Sheriff Bailey**

Defendants begin their attack on plaintiffs' complaint by positing that Sheriff Bailey is

entitled to qualified immunity.  Notably, the defendants do not identify any undisputed material

facts  that would entitle Sheriff Bailey to qualified immunity instead, they assert that "None of

the allegations in Plaintiffs' Complaint are sufficient to overcome qualified immunity at this

stage."  Doc. 36 (Motion to Dismiss) at 5.  In support of its position in this regard, the defendants

identify *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017), for the proposition that

(1) [he] either failed to supervise or train  the subordinate officer; (2) a causal link exists between

the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to

train or supervise amounts to deliberate indifference.  Doc. 36 (Motion to Dismiss) at 5-6.  This

language from *Davidson*, however, is taken completely out of context rather disingenuously by

the defendants.  What the *Davidson* Court actually stated is the following:

> **In order to survive summary judgment against a § 1983 claim for
> supervisory liability**, a plaintiff is required to create a dispute of fact that (1) the
> supervisor either failed to supervise or train the subordinate officer; (2) a causal
> link exists between the failure to train or supervise and the violation of the
> plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate
> indifference. [emphasis added].

*Davidson, supra.*, 397.

 Notwithstanding the existence of the highlighted language, the defendants  submit to the

Court that "A plaintiff's failure to adequately plead any of these elements warrants dismissal premised on qualified immunity. Id." Doc. 36 (Motion to Dismiss) at 6. That simply is not what the *Davidson* Court said, nor is it the law. The Supreme Court has explained the law thusly:

> Our decisions in *Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U. S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) . . . concern the factual allegations a complaint must contain to survive a motion to dismiss. A plaintiff, they instruct, must plead facts sufficient to show that her claim has substantive plausibility. Petitioners' complaint was not deficient in that regard. Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim. See Fed. Rules Civ. Proc. 8(a)(2) and (3), (d)(1), (e).

*Johnson, supra.,* at12. This Court, in *Davis v. Hinds Cty.*, 2017 U.S. Dist. LEXIS 78022, *12-13 [Civil Action No. 3:16cv674-DPJ-FKB], put it this way:

> It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, LLC, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

It is abundantly clear that the plaintiffs' detailed, 162 paragraph Amended Complaint alleges conduct by Sheriff's Deputies that is unconstitutional, which is acknowledged by guilty pleas, and that Sheriff Bailey was aware of such conduct on the part of his deputies prior to plaintiffs' torturing ordeal:

> Defendant SHERIFF BAILEY had actual and/or constructive knowledge of the lawlessness engaged in by the so-called GOON SQUAD, which operated within the Sheriff's Office, openly and notoriously, before the plaintiff's ordeal occurred. That group, which consisted of the defendant officers, among others, was allowed to imprison persons without probable cause, seize citizens without justification, and use excessive force and torture tactics as a way of enforcing "law and order"

in Rankin County irrespective of the violations of constitutional rights that such
actions entailed.

Amended Complaint ¶89, and that discovery in this case is far more likely than not to uncover

the full extent, and duration of the unlawful actions and the full extent of Sheriff Bailey's

complicity therein.  This is another reason why defendants' motion should be summarily denied.

Yet, other reasons exist as well.  The defendants themselves provide another.  On page 6

of the instant motion, the defendants assert that deliberate indifference may be demonstrated "by

either pleading that Sheriff Bailey 'had notice of similar violations,' or alternatively it may be

'based on a single incident if the constitutional violation was highly predictable consequence of a

particular failure to train.'"  ¶89 of plaintiffs' Amended Complaint does exactly what the

defendants say plaintiffs are required to do.  Quarrel though they may with the facts alleged by

the plaintiffs, at this stage of the litigation,  plaintiffs are only required to plead a plausible claim

for relief, and as noted earlier,  **[A] plaintiff is not required to anticipate or overcome

affirmative defenses**. *Nobre, supra,* at 442.

In sum, the defendants do not contend that if the allegations of plaintiffs' complaint were

accepted as true, and all reasonable inferences therefrom were viewed in their favor, no plausible

claims for relief have been set forth instead,  they argue to the Court that plaintiffs' have not set

forth sufficient information to prove their claims in light of the fact that they have opposing

evidence.  There will be more than adequate time to sort out the veracity of the opposing

positions, but that time is not here, and not now.

In yet another attempt to litigate the merits of plaintiffs' case, the defendants' urge the

Court to dismiss plaintiffs' complaint because they only discussed three (3) incidents of

excessive force preceding the torture ordeal inflicted upon the plaintiffs, and they have case law,

10

*Davidson, supra.*, holding that three (3) prior incidents over a three-and-a-half-year period are insufficient to show a pattern of conduct. Once again, defendants' are trying to have the Court view this matter through the wrong lens. As noted earlier, *Davidson* was decided at the summary judgment stage not at the initial stage of litigation prior to any discovery being undertaken. A different standard applies which plaintiffs' complaint fully satisfies.

> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

With respect to the plaintiffs' claim regarding ratification, which is plainly set forth in ¶¶ 90-93 of their Amended Complaint, the defendants once more do not contend that if the allegations of the complaint are accepted as true, no plausible claim for relief exists, they instead dispute the accuracy of plaintiffs' allegations and attempt to explain the inaction of Sheriff Bailey until June 2023 when he fired the defendant officers shortly after this lawsuit was filed. The day after plaintiff Jenkins was shot in the mouth, it can be reasonably inferred that Sheriff Bailey knew that the shooting was improper; knew that officers who were in a home for more than two (2) hours without a warrant was improper; knew that the use of tasers by these officers 20-30 times as alleged in¶¶32,33, and 46 of plaintiffs' Amended Complaint was improper; and knew that the defendant deputies were not in communication with his office for more than two (2) hours, which which was also improper.

Based on these facts, which can easily be inferred from the allegations of plaintiffs' Amended Complaint, Sheriff Bailey knew or should have known that his deputies had violated the constitutional rights of the plaintiffs. And undoubtedly there is more, which will most assuredly come to light when plaintiffs are allowed to conduct discovery in this matter.

11

The allegations set forth in plaintiffs' Amended Complaint fully support their ratification

theory.  Sheriff Bailey had no intention of disciplining the defendant deputies and did not do so

until this lawsuit was filed and the criminal charges which led to guilty pleas by all of the

defendant deputies were imminent.   The fact that the defendants dispute the plaintiffs' theory

does not mean that the plaintiffs have failed to allege a plausible claim for which relief is

attainable, it simply means that there is a factual dispute in that regard which precludes

dismissal.

### 2.  Plaintiffs' Monell Claim Against Rankin County Is Unassailable

Contrary to the contention of the defendants, not only is plaintiff's Monell claim against

Rankin County facially plausible, it is unassailable.  Plaintiffs Monell claim is set forth in ¶¶94-

98 of plaintiffs' Amended :

94.  Plaintiffs hereby incorporate paragraphs 1-93 as if fully set forth herein.

95.  Based upon the principles set forth in Monell v. New York City Department
of Social  Services, 436 U.S. 658 (1978), on and for some time prior to January
24, 2023, and  continuing to the present date, defendant  RANKIN CO., acting
with reckless and deliberate  indifference to the rights and liberties of the public in
general, and of PLAINTIFF's  JENKINS and PARKER, and of persons in their
class, situation, and comparable position in  particular, knowingly maintained,
enforced and applied an official recognized custom,  policy, and practice of:

•The use of excessive force on African American citizens

•The use of excessive force on the citizenry at large

•4th Amendment violations, unlawful searches, and seizures

•14th Amendment equal protection violations

•Using torture tactics in the course of interrogation.

•Failing to ensure officers were adequately trained and supervised
96.   Because of the aforementioned policies and practices by RANKIN CO., the
Plaintiffs were  subjected to constitutional violations, beatings, torture,

humiliation, excessive force, other  torts, attempts to kill JENKINS, and other crimes described herein.

97.   Defendant RANKIN CO., together with various other officials, whether named or unnamed,  had either actual or constructive knowledge of the deficient policies, practices, and customs  alleged in the paragraphs above.

98.  Despite having knowledge as stated above, these defendants  condoned, tolerated, and through actions and inactions, thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies concerning the constitutional rights of JENKINS, PARKER,  Plaintiff, and other individuals similarly situated

The fact that no basis exists for dismissal of plaintiffs' Amended Complaint is highlighted by the defendants' repeated attempt to obscure the facts and the law.  No rational argument can be made that if the Court were to accept all of these alleged facts as true, no plausible claim for relief exists as to Rankin County.

Consequently, it is not surprising that the defendants make no attempt to make such an argument.  Instead, the defendants absuredly contend, while focusing exclusively on ¶95 of the Amended Complaint,  that plaintiffs' allegations regarding municipal liability have not been pled with "any degree of specificity, which demonstrate a custom, policy, or practice of unconditional conduct attributable to Rankin County that is 'so persistent and widespread as to practically have the force of law.'"  Doc. 36 (Motion to Dismiss) at 14.[1]

---

[1]  Plaintiffs' agree that their claims against Sheriff Bailey in his official capacity with respect to §1983 are governed by *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), and therefore, should be dismissed.  In all other respects, there is no basis for dismissal of any aspect of plaintiffs' complaint.

### 3.     Plaintiffs Have Properly Stated a Claim For
### Reckless Disregard Pursuant to the MTCA

The Mississippi Tort Claims Act, Miss. Code Ann. §§ 11-46-1 et seq., (MTCA), provides

the exclusive remedy for obtaining liability against a governmental entity for acts or omissions

which give rise to suit. *Watts v. Tang*, 828 So.2d 785, 791 (Miss. 2002). The MTCA further

provides that a governmental entity and its employees acting within the course and scope of their

employment duties shall not be liable for any claim . . .

> [a]rising out of any act or omission of an employee of a governmental entity
> engaged in the performance or execution of duties or activities related to police or
> fire protection **unless the employee acted in reckless disregard of the safety
> and well-being of any persons not engaged in criminal activity at the time of
> injury**.  [emphasis added].

Miss. Code Ann. § 11-46-9(1)(c).

Notably, the police exemption of the MTCA is designed to protect law enforcement

personnel from lawsuits arising out of the performance of their duties with respect to the victim.

*Miss. Dept. of Public Safety v. Durn*, 861 So. 2d 990, 997 (Miss. 2003). If the victim is engaged

in an illegal activity that is a cause of the harm, the government is immune from liability.

*Williams v. City of Jackson*, 844 So. 2d 1161, 1164 (Miss. 2003).  Government entities may be

held liable only if the complained of conduct amounts to recklessness. *Craddock v. Hicks*, 314 F.

Supp. 2d 648, 654 (N.D. Miss. 2003); *Maldonado v. Kelly*, 768 So. 2d 906, 909 (Miss. 2000).

While the statute itself does not provide a definition, the Mississippi Supreme Court has

described recklessness as where an "actor has intentionally done an act of unreasonable character

in reckless disregard to the risk known to him, or so obvious that he must be taken to have been

aware of it, and so great as to make it highly probable that harm would follow." *Maldonado*,

supra., 768 So. 2d at 910.

14

This is exactly what plaintiffs have alleged in ¶89 of the Amended Complaint, that Chief

Bailey did:

> Defendant SHERIFF BAILEY had actual and/or constructive knowledge of the
> lawlessness engaged in by the so-called GOON SQUAD, which operated within
> the Sheriff's Office, openly and notoriously, before the plaintiff's ordeal occurred.
> That group, which consisted of the defendant officers, among others, was allowed
> to imprison persons without probable cause, seize citizens without justification,
> and use excessive force and torture tactics as a way of enforcing "law and order"
> in Rankin County irrespective of the violations of constitutional rights that such
> actions entailed.

Clearly, plaintiffs' claim for reckless disregard is premised on the fact that Chief Bailey oversaw

a law enforcement office that was encouraged to suspend constitutional mandates in pursuit of

some convoluted sense of law and order in Rankin County, contrary to the suggestion by the

defendants' that plaintiffs' claim in this regard is barred by "discretionary function immunity."

Doc. 36 (Motion to Dismiss) at 16.

The fact of the matter is that despite defendants' contrary misapprehension, plaintiffs'

claim of reckless disregard does not qualify for the discretionary function immunity defense

because the action is not premised upon discretionary actions nor policy decisions. *J.W. v. City*

*of Jackson*, No. 3:21-CV-663-CWR-LGI, 2023 U.S. Dist. LEXIS 50424, at*109-10 (S.D. Miss.

Mar. 23, 2023).

Under the "Wilcher test" referenced by the defendants in advancing their position in this regard.

> the court must first ascertain whether the activity in question involved an element
> of choice or judgment. If so, the court must then decide whether that choice or
> judgment involved social, economic, or political-policy considerations. Thus,
> *Wilcher* established a two-step, conjunctive test, and required both steps to be met
> before immunity could attach. [internal quotation marks omitted].

*Id*. Plaintiffs' claim of reckless disregard is premised upon the fact that defendant Bailey

allowed, within the Sheriff's Office, a unit calling themselves the GOON SQUAD, to function as

15

a sort of law and order enforcement group with no allegiance to the U.S. Constitution  nor

otherwise lawful civil rights of the citizens of Rankin County.  There was no choice or judgment

involved in his conduct.  Chief Bailey had an obligation to abide by the mandates of the

Constitution and his failure to do so under the guise of promoting "law and order" does not

invoke immunity.

> the purpose of discretionary-function immunity is not to protect all decisions by
> governmental employees involving some level of discretion but instead only those
> functions that by their nature are policy decisions . . .

*Wilcher v. Lincoln Cty. Bd. of Supervisors*, 243 So. 3d 177, 182 (Miss. 2018).

> Moreover, even if the actions complained of could be seen as discretionary:

> The public-policy function test has two parts. This Court first must ascertain
> whether the activity in question involved an element of choice or judgment. If so,
> this Court also must decide whether that choice or judgment involved social,
> economic, or political-policy considerations. Only when both parts of the test
> were met did a government defendant enjoy discretionary-function immunity
> [citations and internal quotation marks omitted].

*Id*.  Enforcing law and order in Rankin County with a GOON SQUAD that operates outside

constitutional boundaries clearly does not involve social, economic, or political-policy

considerations.  The only thing that the actions complained of exhibit are  deliberate indifference

and reckless disregard for the rights and well-being and safety of the citizens of Rankin County.

Thus, it is indisputable that no basis for immunity from liability under the MTCA exists for

Rankin County.

Wherefore, for the reasons stated herein and in the record of this proceeding, the

plaintiffs urge the Court to summarily deny defendants' motion except as indicated by plaintiffs

in n.1.

16

Respectfully submitted on 1/4/ 2024 by:


 */s/*  MALIK SHABAZZ  ESQ /s/
**MALIK SHABAZZ, Esq.**
The   Law Office of Malik Shabazz, Esq.
D.C. Bar # 458434
6305 Ivy Lane,
Suite 608
Greenbelt, MD 20770
Email:Attorney.shabazz@yahoo.com
Tel: (301) 513-5445
Fax: (301) 513-5447
(Lead counsel for Plaintiff)


 /s/ TRENT WALKER ESQ /s/
**TRENT WALKER, Esq.**
The Law Offices of Trent Walker
M.S.B. #10475
5245 Keele Street
Suite A
Jackson, Mississippi
39206
Email:Trent@Trentwalkeresq.com
(Mississippi Local Counsel)
(601) 321-9540