IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MICHAEL COREY JENKINS AND EDDIE TERRELL PARKER**                                                                      **PLAINTIFFS**

VS.                                                 CIVIL ACTION NO.: 3:23-cv-00374-DPJ-FKB

**RANKIN COUNTY, MISSISSIPPI, ET AL.**                                                                       **DEFENDANTS**

### DEFENDANT THE CITY OF RICHLAND'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

In this case, there is no doubt that the individual defendants committed the abhorrent acts alleged in the complaint. They have pled guilty to them in cause number 3:23-cv-62-TSL-LGI and are awaiting criminal sentencing. One of those individuals, at the time, was an off-duty narcotics officer for Defendant the City of Richland. But the question here is whether the City can be held liable for that off-duty conduct. Settled law says "No."

Indeed, Plaintiffs Michael Corey Jenkins and Eddie Terrell Parker do not come close to satisfying the elements of municipal liability. They instead rely on allegations that the City allowed its former officer to run amuck with the Sheriff's Department, did not provide oversight, and did not take action until its hand was forced. The latter allegation is easily proven false by public records, and the former allegations do nothing to prove liability under *Monell*.

The individual defendants should – and will – be held liable. But the City should be dismissed from this suit. A Rule 54(b) final judgment is requested.

### BACKGROUND

On January 24, 2023, Joshua Hartfield, a former Richland Police Officer, was off-duty and attending a cookout at former Rankin County Sheriff Deputy Christian Dedmon's neighbor's home. *See United States v. Hartfield*, 3:23-cr-00062-TSL-LGI, at Doc. No. 83, p.85. While there,

Dedmon received a call from former Rankin County Sheriff's Department Chief Investigator Brett McAlpin, instructing Dedmon to get a group of deputies together to go to a house in Braxton, Mississippi. *Id.* Dedmon asked if Hartfield wanted to ride along, and Hartfield agreed. *Id.* Dedmon and Hartfield rode to the scene in Dedmon's Rankin County Sheriff's Office-issued truck. *Id.* at p.127.

Once the group of deputies and Hartfield arrived at the house, they tortured and arrested Michael Corey Jenkins and Eddie Terrell Parker, culminating in former Rankin County Sheriff Deputy Hunter Elward putting his gun in Jenkins' mouth and pulling the trigger. *See generally* Doc. No. 28. The deputies and Hartfield then attempted to cover up their crimes by threatening Plaintiffs and destroying evidence. *Id.*

The Mississippi Bureau of Investigation investigated the incident. All deputies and Hartfield lied to investigators to cover up their crimes. *See Hartfield*, 3:23-cr-00062-TSL-LGI, Doc. No. 83 at p.132-33. The City also conducted an Internal Affairs investigation, during which Hartfield also lied about the events of January 24, 2023. *See id.*; *see also* Board Minutes, Ex. A. After the investigation and before the full truth of what had occurred came to light, the City suspended Hartfield for two weeks and demoted him, holding any further discipline open pending the results of the MBI investigation. Board Minutes, Ex. A. Hartfield ultimately resigned on April 26, 2023. Resignation Letter, Ex. B; Board of Standards & Training Termination Form, Ex. C.

On June 12, 2023, Plaintiffs filed suit against only Sheriff Bryan Bailey, Christian Dedmon, Hunter Elward, Brett McAlpin, Rankin County, Mississippi, and John Doe Deputies 1-3. Doc. No. 1. The deputies and Hartfield were later arrested and pled guilty to the crimes in federal court on October 16, 2023. *See Hartfield*, 3:23-cr-00062-TSL-LGI, Doc. No. 83. They also pled guilty to the crimes in state court.

On November 21, 2023, Plaintiffs amended their complaint and added as defendants Hartfield and the City.  Doc. No. 28.

**STANDARDS OF REVIEW**

The Federal Rules of Civil Procedure offer a number of ways defendants can challenge a plaintiff's case, including a motion to dismiss under Rule 12(b)(6) and a summary judgment motion under Rule 56.  The City invokes both rules here.

Under Rule 12(b)(6), the central question is whether the complaint includes claims that provide a plausible basis for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-63 (2007).  This question is answered by comparing the legal claims that have been identified in the complaint with the factual allegations offered in support.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts may consider the complaint, documents attached to the complaint, documents central to the claims that are referenced in the complaint, and matters of public record, such as documents filed in state court.  *See*, *e.g.*, *Joseph v. Bach & Wasserman, LLC*, 487 Fed. App'x 173, 178 n.2 (5th Cir. 2012).[1]  Merely reciting the elements of a cause of action, or making conclusory factual or legal assertions, are insufficient to defeat a motion to dismiss.  *See*, *e.g.*, *Jordan v. Flexton*, 729 F. App'x 282, 284 (5th Cir. 2018).

Under Rule 56, the central question is whether the record evidence provides a viable basis for relief as opposed to looking to the pleadings alone.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  This question is answered by determining if there are genuine issues of material fact, such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

---

[1] A very recent en banc decision similarly explains what may be considered under Rule 12 without conversion. *See Villarreal v. City of Laredo, Tex.*, __ F.4th __, 2024 WL 244359, *2 n.2 (5th Cir. Jan. 23, 2024) (en banc) ("Villarreal's complaint relies on, and references, criminal complaints, a search warrant affidavit and magistrate approval, and arrest warrant affidavits and approvals. Those documents were not attached to the complaint, but they are publicly available documents Villarreal incorporated in her complaint by reference and are central to her claims.")

To avoid summary judgment, a plaintiff must produce evidence of "specific facts showing the existence of a genuine issue for trial." *Foulston Siefkin LLP v. Wells Fargo Bank of Texas, N.A.*, 465 F.3d 211, 214 (5th Cir. 2006). A factual issue is "material only if its resolution could affect the outcome of the action," *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007), and "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment," *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quotation omitted).

## ARGUMENTS AND AUTHORITIES

The governing legal standard is settled. Actions against municipalities are analyzed under a framework that requires a plaintiff to show both (1) that a violation of the Constitution occurred and (2) that a governmental policy or custom was the moving force behind the violation. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). Plaintiffs have not plausibly alleged prong two.

It is beyond settled that municipalities are not vicariously responsible for the actions or inactions of their employees under a theory of respondeat superior. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). There instead must be "something more" to impose liability on the municipality, i.e. a demonstration that the constitutional violation occurred <u>because of</u> a municipal policy or custom. *Id*. Plaintiffs have not plausibly pled, and certainly cannot prove, a basis for *Monell* liability in this case. *See*, *e.g.*, *Thomas v. State*, 2018 WL 1308275, *20-21 (N.D. Tex. 2018) (granting motion to dismiss on municipal liability claim); *McKinley v. Yarber*, 2015 WL 6554772, *3 n.2 (S.D. Miss. 2015) (same).

To start, to survive a motion to dismiss, Plaintiffs must do more than merely recite the elements of a *Monell* claim—they must "plead facts that plausibly support each element of § 1983

municipal liability." *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018). "Boilerplate allegations of municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient.'" *Vess v. City of Dallas*, 2022 WL 625080, *5 (N.D. Tex. Mar. 3, 2022). Facts in support of municipal liability are missing here.

It is clear that Plaintiffs seek to hold the City liable for the off-duty violations of its former officer. *See* Doc. No. 28. But such a theory is wholly incompatible with Section 1983. Municipal liability, of course, cannot be imposed "under a respondeat superior theory of liability." *See Longino v. Hinds Cty., Miss.*, 2014 WL 4545943, *6 (S.D. Miss. 2014). A municipality is responsible only for its own policymaking conduct, not the conduct of its employees. *Id*.

In attempt to get around the no-vicarious-liability rule, Plaintiffs do not allege that the City had any unconstitutional written policies, as none are identified. Plaintiffs also have not alleged that the City has a custom of the type of constitutional violations asserted here. Instead, it seems that Plaintiffs seek hold the City liable under failure-to-supervise and failure-to discipline theories. Both fail.

<u>Failure to Supervise</u>. For failure-to-supervise liability to attach, Plaintiffs must plead facts that would enable this Court to reasonably infer that supervision was inadequate, that the policymaker was deliberately indifferent to the need to supervise its officers, and that the deliberate indifference "actually caused" Plaintiffs' constitutional rights to have been violated. *See Peterson*, 588 F.3d at 850. "The threshold for pleading a failure-to-supervise claim is high," and it has not been met here. *Tuttle v. Sepolio*, 68 F.4th 969, 975 (5th Cir. 2023).

*Specificity*. To start, "to state a failure-to[-supervise] claim, Plaintiffs must specifically allege how the . . . supervision . . . is defective. *Skinner v. Ard*, 519 F. Supp. 3d 301, 316 (M.D. La. 2021). "The 'description of a policy or custom and its relationship to the underlying

constitutional violation . . . cannot be conclusory; it must contain specific facts.' . . . Naked assertions, labels and conclusions, and formulaic recitations are not sufficient to show that plaintiff has a substantially plausible claim." *Morris v. City of Fort Worth*, 2020 WL 2343151, *2 (N.D. Tex. May 8, 2020); *see also Villarreal*, 2024 WL 244359 at *3 (en banc).

Plaintiffs rest on just these kinds of formulaic, conclusory recitations. They baldly state that the City allowed Hartfield to "act as a free agent" and not monitor him, but they cite no facts to back up these allegations. Instead, they even refuse to admit that he was off duty on the night in question. Plaintiffs plainly have not met the specificity requirement.

*Policymaker Deliberate Indifference*. But even if Plaintiffs had met the specificity requirement, they must still show policymaker deliberate indifference. Although Plaintiffs generally plead that the City's actions and/or inactions amounted to a policy and or practice that exhibited deliberate indifference, they do not indicate who the City's policymakers are or what actions or inactions they allegedly took or failed to take. *See* Doc. No. 28 at ¶104. Policymakers are defined by state law, *see Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016), and, in Mississippi, the board of aldermen is the final policymaker. *See*, *e.g.*, *Riggins v. City of Indianola*, 196 F. Supp. 3d 681, 691-92 (N.D. Miss. 2016). Plaintiffs' municipal liability theory is a non-starter for the simple reason that the operative complaint does not say anything the board supposedly did wrong.

But there of course is no deliberate indifference in any event. Deliberate indifference is "an extremely high standard" in the context of individuals, *Domino v. Tex. Dep't of Justice*, 239 F.3d 752, 756 (5th Cir. 2001), but the standard is even more "stringent" when it comes to a governmental entity. *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *see also id*. (A "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on

a failure to train[.]") (emphasis added); *DeLeon v. Nueces Cty.*, 2023 WL 4447023, *2 (5th Cir. July 11, 2023) ("DeLeon's failure-to-train contention is a "notoriously difficult theory on which to base a *Monell* claim[.]" (cited case omitted)).[2]

To put the standard in context, the Supreme Court has never found governmental liability based on a failure-to-train or a failure-to-supervise theory. *Pena*, 879 F.3d at 624. Perhaps that is because, as Judge Easterbrook has reminded, "the Constitution does not require . . . every municipality to implement current understandings of best practices[.]" *J.K.J. v. Polk Cty.*, 960 F.3d 367, 386 (7th Cir. 2020) (Easterbrook, J., dissenting in part). And the Constitution certainly does not require that a municipality monitor every action taken by an off-duty employee. Quite differently, "[t]he duty is to avoid unconstitutional policies." *Id.* at 387.[3]

What's more is that it is settled that a pattern of similar incidents is "ordinarily necessary" to succeed in a failure-to-supervise case. *Bd. of Bryan Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997); *Goodman v. Harris Cty.*, 571 F.3d 388, 396 (5th Cir. 2009); *see also Skinner*, 519 F. Supp. 3d at 314 ("All failure to act claims, such as . . . failure to train [or] supervise ... involve the same basic elements: inadequacy, deliberate indifference, and causation."). Underscoring this rule is *Sanders-Burns v. City of Plano*, where no deliberate indifference could be found since the plaintiff "fail[ed] to allege another death similar to the one suffered by her son[.]" 594 F.3d 366, 382 (5th Cir. 2010). Plaintiffs have pled no facts alleging any prior incidents that would satisfy the requirement.[4]

---

[2] There is sparse law on failure to supervise by itself in the Fifth Circuit. Usually, failure to supervise theories are lumped in with failure to train theories. But the theories are "analogous." *E.g.*, *Murray v. LeBlanc*, 629 F. Supp. 3d 437, 457 (M.D. La. 2022).

[3] Notably, the Fifth Circuit has recognized that having no policy does not equal an unconstitutional policy. *Carbalan v. Vaughn*, 760 F.2d 662, 665 (5th Cir. 1985).

[4] Although Plaintiffs plead a few other civil actions filed against Sheriff Bailey or individual deputies, they make no similar allegations against Hartfield. *See generally* Doc. No. 28. And Plaintiffs have not invoked the extremely rare single incident exception of municipal liability. Even if they had, it would woefully fail in this case. The exception "is generally reserved for those cases in which the government actor was provided no training [or supervision]

*Causation*. But there is still another obstacle to Plaintiffs' attempt to hold the City responsible. Even if they had adequately alleged that the City failed to supervise Hartfield, there has to be sufficient causation proof. *Bd. of Bryan Cty. Comm'rs*, 520 U.S. at 415. The Supreme Court has ordered courts to apply a "rigorous" causation standard, *id*., and application of that standard presents a question of law. *Ratliff v. Aransas Cty. Tex.*, 948 F.3d 281, 285 (5th Cir. 2020). Plaintiffs have not pled any facts supporting an inference that any supposed lack of supervision actually caused Plaintiffs' alleged injuries. *See generally* Doc. No. 28. Mere conclusory allegations, again, do not suffice. *Ashcroft*, 556 U.S. at 678; *Ramsey*, 286 F.3d at 269.

<u>Failure to Discipline.</u> Plaintiff's also allege that, "after learning of defendant Hartfield's involvement with the plaintiffs in January 2023, no action nor discipline of defendant Hartfield occurred until after the co-defendant Rankin County officers were fired[,] until after the plaintiffs' original lawsuit was filed[,] and until after a criminal investigation had been launched and completed which led to guilty pleas by all of the officers involved." Doc. No. 28 at ¶103. This allegation suffers from both factual and legal problems.

Factually, the allegations are untrue. Upon learning that Hartfield was involved in an off-duty incident, the City performed an internal affairs investigation. Hartfield lied during that investigation, as he did to MBI. At the conclusion of the investigation, on February 7, 2023, the Board voted to suspend Hartfield without pay for two weeks, to issue a reprimand, and to demote him to patrol, all with the caveat that he may be subject to further disciplinary action depending on the conclusion of the MBI investigation. *See* Board Minutes, Ex. A. Before the investigation

---

whatsoever." *Pena*, 879 F.3d at 624. It is undeniable that training was provided here. What's more is that, even in situations where no training or supervision is provided, a plaintiff still must show that the specific injury in question was the "highly predictable consequence" of the failure to train. *Hutcheson v. Dallas Cty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021). Plaintiffs have not attempted to set forth facts supporting that standard, and the evidence would not support it anyway.

concluded and before any lawsuit was filed, Hartfield resigned. *See* Resignation Letter, Ex. B. Plaintiffs filed suit in June but did not name Hartfield or the City. Doc. No. 1. Hartfield was long separated from the City at the time he pled guilty and the complaint in this matter was amended to name him as a defendant.

Legally, in order to sustain a failure-to-discipline theory, Plaintiffs are required to prove the same elements as a failure-to-train or failure-to-supervise theory: a failure to discipline, policymaker deliberate indifference, and causation. *See Deville v. Mercantel*, 567 F.3d 156, 171 (5th Cir. 2009). As a Texas District Court explained in 2021, "[f]ailure to discipline isn't a common claim, with the Fifth Circuit appearing to have addressed it only eight times in the last twenty years." *Hunter v. City of Houston*, 564 F. Supp. 517, 529 (S.D. Tex. 2021). This is not a case where such an uncommon claim can succeed.

To start is the policymaker deliberate indifference. It fails for all of the reasons explained already, namely, that Plaintiffs have not made any allegations as to the Board. Neither have they have alleged any prior instances of a failure to discipline Hartfield.

And Plaintiffs' claim fails on causation too. Their claim is that the City should be held liable for failing to discipline Hartfield for <u>this</u> incident. But a failure to discipline him for this incident could not have <u>caused</u> the incident. *See Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004) ("[I]t is hard to see how a policymaker's ineffectual or nonexistent response to an incident, which occurs well <u>after</u> the fact of the constitutional deprivation, could have <u>caused</u> the deprivation.") (emphasis in original). The theory should be rejected.

<u>Ratification.</u> To the extent Plaintiffs' failure to discipline theory could be construed as a ratification theory, this case is not one that constitutes one of the "extreme factual situations" in which a ratification theory would be applicable. *See World Wide Street Preachers Fellowship v.*

*Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (quoting *Peterson*, 588 F.3d at 848). Plaintiffs' false assertion that Hartfield was not disciplined for this incident, even if true, is a red herring, for ratification does not result just because city officials defend an officer's behavior. *See, e.g.*, *Medina v. Ortiz*, 623 F. App'x 695, 701 (5th Cir. 2015) ("The only evidence of ratification Medina identifies is that Ortiz accepted the officer's use of force report, refused to turn over evidence until the lawsuit was filed, and defends the deputies' actions in this case. None of these allegations show that Ortiz approved of the use of excessive force or the denial of medical care.") (citation omitted). Plaintiffs' ratification theory cannot proceed.

* * *

Plaintiffs' failure-to-supervise and failure-to-discipline theories fail factually and legally due to lack of a particular inadequate policy and due to no policymaker deliberate indifference causing the alleged injury. *E.g.*, *Ratliff*, 948 F.3d at 285; *Carnaby*, 636 F.3d at 189.

## **PUNITIVE DAMAGES**

It seems that Plaintiffs seek punitive damages against the City, although it is not entirely clear. Count III states the claims against the City. *See* Doc. No. 28 at pp.20-21. Although at the end of Count III, Plaintiffs state that they seek $400,000,000 from the City in "compensatory damages plus interests and costs," *id.* at p.21, other counts reveal hey are seeking the same amount in "compensatory and punitive damages plus interests and costs" from the individuals, *id.* at pp.24, 25, 28, 31, 32. Because the City is immune from such damages, to the extent Plaintiffs seek punitives against the City, such request must be dismissed, even if any claims against the City could survive. *See, e.g.*, *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981) (a municipality is immune from punitive damages under § 1983).

## **CONCLUSION**

For all of the reasons explained here, Plaintiffs' claims against the City of Richland should be dismissed.

Dated: February 1, 2024.

                Respectfully submitted,

                PHELPS DUNBAR LLP

                BY:  /s/ *Mallory K. Bland*
                      G. Todd Butler, MB #102907
                      Mallory K. Bland, MB #105665
                      4270 I-55 North
                      Jackson, Mississippi 39211-6391
                      Post Office Box 16114
                      Jackson, Mississippi 39236-6114
                      Telephone: 601-352-2300
                      Telecopier: 601-360-9777
                      Email: butlert@phelps.com
                                mallory.bland@phelps.com

                **ATTORNEYS FOR THE CITY OF RICHLAND**

**CERTIFICATE OF SERVICE**

    I certify that, on February 1, 2024, I had this MEMORANDUM electronically filed with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record.

                                                           *s/ Mallory K. Bland*
                                                           Mallory K. Bland