IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MICHAEL COREY JENKINS,** *et al.* :
:
   **Plaintiffs,** :
: **Civil Action No.**
   v. : **3:23-cv-374-DPJ-FKB**
:
:
**RANKIN COUNTY, MISSISSIPPI,** *et al.*, :
:
   **Defendants.** :

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO THE CITY OF RICHLAND'S MOTION TO
DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Come now the plaintiffs, by and through counsel, and hereby submit their opposition to the Motion to Dismiss or, Alternatively, for Summary Judgment filed by defendant City of Richland [Doc's 48 and 50]. As more fully discussed below, the City of Richland's Motion wherein it is conceded that the actions taken by its narcotics detective, Joshua Hartfield, constituted police action consistent with his duties under the color of law, and which allegedly violated certain policies that it had in place, is without legal basis under the Federal Rules or applicable law. Moreover, because matters outside the pleadings have been submitted in support of its motion, the City of Richland's motion is in actuality a motion for summary judgment based upon the pleadings.

**BACKGROUND**

The plaintiffs in this case were the victims of planned torture by five (5) Rankin County Sheriff's Deputies and one (1) City of Richland Narcotics Detective. These law enforcement officers subjected the plaintiffs to all kinds of debasement including threats, sexual assaults with

a dildo, and racial mockery. In addition, they subjected them to beatings, multiple tasings, water boarding and culminated the ordeal by shooting plaintiff Jenkins in the mouth.  As a result of these atrocities, the responsible law enforcement officers were criminally indicted and pled guilty to multiple felonies.

The victims of those atrocities filed the Amended Complaint in this action naming Rankin County, Sheriff Bailey, former Deputies Hunter Elward, Brett McAlpin, Christian Dedmon, Daniel Opdyke, and Jeffrey Middleton of the Rankin County Sheriff's Office along with the City of Richland, Mississippi and one of its former Narcotics Detectives, Joshua Hartfield.

**ARGUMENT**

**I. Defendant's Motion To Dismiss Is Meritless**

**a. Standard of Review**

In deciding a Rule 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205B06 (5th Cir. 2007).

To state a claim upon which relief can be granted, plaintiffs need only plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Importantly, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need

only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that plaintiffs contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12, (2014) (per curiam) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)); accord *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief — including factual allegations that, when assumed to be true, raise a right to relief above the speculative level.") **[A] plaintiff is not required to anticipate or overcome affirmative defenses**. *Nobre v. Louisiana Dep't of Pub. Safety*, 935 F.3d 437, 442 (5th Cir. 2019).

### b. Plaintiff Has Done Far More Than Set Forth Viable Claims For Relief

A municipality is liable under 42 U.S.C. § 1983 for acts that are directly attributable to it through some official action or imprimatur. Therefore, to state a claim for municipal liability a plaintiff must allege, facts identifying the following essential elements: (1) an official policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy at issue." *Lincoln v. Clark*, No. CV H-22-1979, 2023 U.S. Dist. LEXIS 18728, 2023 WL 1767014, at *3 (S.D. Tex. Feb. 3, 2023) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (cleaned up).

For a failure-to-train-or-supervise claim, a plaintiff must allege that "1) the [city] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (quoting *Thompson v. Upshur Cty.*,

245 F.3d 447, 459 (5th Cir. 2001)).

In their amended complaint, the plaintiffs detail in vivid detail the atrocities that were inflicted upon them as well as the deliberately indifferent conduct of the municipal defendants that created the environment for such atrocities to occur.  With respect to defendant City of Richland in particular, the following is set forth:

> 81.  Defendant Hartfield was a City of RICHLAND narcotics officer at all times relevant herein, and he was also a member of the GOON SQUAD that was led by defendant Middleton, who was a Lt. with the Rankin County Sheriffs Office.
>
> 82.  While performing his duties as a narcotics officer with the City of RICHLAND police department, defendant Hartfield would occasionally perform "work" with the Rankin County GOON SQUAD.
>
> 83.  Defendant Hartfield's actions with the GOON SQUAD were never properly monitored by the City of RICHLAND, nor were they properly documented. The City of RICHLAND allowed him to roam with Rankin County officers, all in the name of crime fighting, on a routine basis.
>
> 84.  The actions of the City of RICHLAND in this regard amounted to an official policy and/or practice of allowing its officers to engage in law enforcement activities under the color of law that it provided, without oversight of any kind. This conduct was a proximate cause of the injuries suffered by the plaintiffs.

*Id*. at pg. 16.

In addition to the above referenced  paragraphs of plaintiffs' Amended Complaint which, clearly and in great detail, illuminate the basis of their claim for municipal liability against the City of Richland, the plaintiffs' expand on their theory of liability on pages 20-21in ¶¶101-105 of their amended complaint.

### c.  The Defendant's Contentions

Despite the fact that it is now somewhat axiomatic that the Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule

Civ. Proc. 8(a)(2), and do not countenance dismissal of a complaint for an imperfect statement of the legal theory supporting the claim asserted, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), the defendants pursue dismissal of plaintiffs' complaint for failure to state a plausible claim for relief.  In doing so, the defendants do not contend that if the allegations of plaintiffs' amended complaint were accepted as true, and all reasonable inferences therefrom were viewed in their favor, no plausible claims for relief have been set forth instead,  they misstate plaintiffs' position:

> It is clear that Plaintiffs seek to hold the City liable for the off-duty violations of its former officer.  Se Doc. No. 28.  But such a theory is wholly incompatible with Section 1983.  Municipal Liability, of course cannot be imposed 'upon a respondeat superior theory of liability . . .'

Mot. Mem. at 5.  While the actions of former detective Hartfield provide the predicate for this action, the theory of liability attributable to the City of Richland is not respondeat superior as contended by the defendant, it is the facts as alleged in ¶¶ 82-84 of plaintiffs' amended complaint that the City defendant knew that detective Hartfield " would occasionally perform "work" with the Rankin County GOON SQUAD;" the City defendant "allowed him to roam with Rankin County officers, all in the name of crime fighting, on a routine basis;"  and these actions amounted to the City defendant having "an official policy and/or practice of allowing its officers to engage in law enforcement activities under the color of law that it provided, without oversight of any kind." **These are not Boilerplate allegations of municipal policy, entirely lacking in any factual support that a municipal policy exists**, as suggested by the City defendant.  These are factual allegations specifically addressing the conduct at issue which if accepted as true, as they must be at this stage, provide an incontrovertible basis for liability under 42 U.S.C. §1983.

Indeed, the City defendant admits that "A municipality is responsible . . . for its own

policymaking conduct." Mot. Mem. at 5. The crux of plaintiffs' claim regarding the City defendant is that it allowed its police officers to participate with police officers from the County in which it is located, Rankin County, Miss., in police operations within the County, in and/or outside City limits, with and without prior approval and/or supervision, on a regular basis. Clearly, these allegations identify a theory of policymaking conduct and plaintiffs specifically allege in ¶84 that such conduct was a proximate cause of the injuries which they suffered.

> It is well established that governmental liability under § 1983 must be premised on a government policy or custom that causes the alleged constitutional deprivation. A policy may be a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. A custom is shown by evidence of a persistent, widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents government policy.

*Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 436 (5th Cir. 2008). To be sure, plaintiffs have precisely alleged a decision by the City defendant to adopt a persistent widespread practice that resulted in the foreseeable consequence of constitutional torts being suffered by members of the public. Strangely, the City defendant posits that "Plaintiffs have not alleged that the City has a custom of the type of constitutional violations asserted here, Mot. Mem. at 5, as if ¶¶82-84 of plaintiffs' amended complaint do not exist.

In Count III of plaintiffs' amended complaint it is plainly spelled out that the City defendant's liability is based on an unconstitutional custom, practice or policy. Clarifying right from wrong, the plaintiffs state in ¶¶101-102 of their amended complaint the following:

> 101. The City of RICHLAND, Mississippi, which is in Rankin County, operates a police force. Its officers exercise jurisdiction primarily within the boundaries of the city except on occasion when they conduct joint operations with other law enforcement agencies upon request or with task forces, etc. Whenever such operations are undertaken, there is a clear chain of command to ensure proper

>    supervision of the different law enforcement personnel.
>
>    102. Despite this common practice, the City of RICHLAND allowed defendant Hartfield to act as a free agent. It neither monitored his actions nor limited where he could engage in law enforcement activities or with whom.

Plaintiffs' claim for relief is predicated upon deliberate indifference associated with the custom, policy and/or practice of allowing City police officers to engage in law enforcement activities with other law enforcement agencies without prior knowledge of the municipality and supervision by the municipality. It is not predicated upon the failure of any individual to neglect a duty to supervise as was the case in *Tuttle v. Sepolio*, 68 F.4th 969, 975 (5th Cir. 2023)[A "supervisory official may be held liable under section 1983 for the wrongful acts of a subordinate when the supervisory official breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury], a case misguidedly relied upon by the City defendant.

In another attempt to befuddle the issues, the City defendant grasps hold of the following language from plaintiffs' amended complaint, **the city allowed Hartfield to act as a free agent and not monitor him**, Mot. Mem. at 6, and asserts that [plaintiffs] "cite no facts to back up these allegations.' *Id*. The City defendant makes this contention even though it misrepresents the actual language of the amended complaint which does exactly what the City defendant says that it does not do. In ¶101 the plaintiffs' amended complaint alleges facts indicating that while police officers employed by the City defendant primarily conduct law enforcement activities within its boundaries, working with other law enforcement agencies in joint operations outside city boundaries was not in and of itself is not unusual. Plaintiffs' point out, however, that when such operations were undertaken, **there is a clear chain of command to ensure proper supervision of the different law enforcement personnel**. In ¶102 of the amended complaint,

the plaintiffs' allege that despite the common practice alluded to in ¶101, the City defendant inexplicably allowed defendant Hartfield to act as a free agent, and neither monitored his actions nor limited where he could engage in law enforcement activities or with whom. This is a far cry from failing to cite no facts to back up their allegation that Hartfield was allowed to act as a free agent.

In yet another attempt to obscure the issue, the City defendant seemingly attempts to justify dismissal of plaintiffs' lawsuit because plaintiffs refuse to admit that he, meaning Hartfield, "was off duty on the night in question," Mot. Mem. at 6, as if that is an undisputed fact. In fact, as it stands now, there is no admissible evidence in the record of this proceeding indicating that Joshua Hartfield was "off duty" when he accompanied other members of the Goon Squad on the mission to terrorize the plaintiffs, under color of law on January 24, 2023.

The City defendant advances another meritless position when it reasons that its motion has a basis because of the failure of the plaintiffs to name its Board of Aldermen as the true party in interest. Mot. Mem. at 6. A cursory review of current precedent quickly dispenses with this argument.

> The Mississippi Supreme Court has said that a "suit against a public official in his official capacity is nothing more than a suit against the entity." *Mosby v. Moore*, 716 So. 2d 551, 557 (Miss. 1998) (upholding summary judgment for official capacity defendants). There is no need to retain defendants in their official capacity if the entity which they serve in that capacity is also a defendant . . . The board of aldermen have an additional reason to be dismissed. They are afforded absolute legislative immunity from civil liability for actions in furtherance of their official duties. *Dunmore v. City of Natchez*, 703 F. Supp. 31, 32 (S.D. Miss. 1988).

*Brown v. City of Hazlehurst*, 741 So. 2d 975, 982 (Miss. App. 1999).

> the Supreme Court has repeatedly emphasized that the identity of the policymaker is a question of law, not of fact—specifically, a question of state law. By combining Praprotniks holding that the identity of the policymaker is a question

-8-

> of state law with Johnsons holding that courts should not grant motions to dismiss § 1983 cases "for imperfect statement of the legal theory," we see that courts should not grant motions to dismiss for failing to plead the specific identity of the policymaker. Thus, to survive a motion to dismiss, Groden needed only to plead facts—facts which establish that the challenged policy was promulgated or ratified by the city's policymaker. Groden's complaint did not need to supply an answer to the legal question of the specific identity of the city's policymaker under the relevant statutory scheme. [citations and internal quotation marks omitted].

*Groden v. City of Dall.*, 826 F.3d 280, 284-85 (5th Cir. 2016). Succinctly stated, the City of Richland is the Board of Alderman and the Board of Alderman is the City of Richland for purposes of this litigation.

What is not addressed by the City defendant is the elephant in the room and that is that the plaintiffs have specifically alleged that the City of Richland allowed its police officers, such as Joshua Hartfield, to engage in police activities, and exercise police authority with other law enforcement agencies, outside the boundaries of the City, without prior approval, and without supervision. At no place in its motion does it argue that if this is true, such conduct would not amount to deliberate indifference, or that such conduct is not in and of itself an unconstitutional policy and/or practice even though it can be said that supervision in such circumstances is "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)

True to form, the City defendant prefers to nibble around the edges in an attempt to focus attention away from the actual issue sub judice. For example, the City defendant attempts to distort the plaintiffs' allegation about its failure to discipline defendant Hartfield. Mot. Mem. at 8. Plaintiffs position is not that the failure to discipline Hartfield after the torture event was the cause of the torture event instead, the failure to discipline Hartfield is evidence of the ratification

of his actions and the deliberate indifference that can be gleaned from such conduct. The City defendant attempts to litigate the merits of plaintiffs' allegations in this regard and submits exhibits in support of its contrary position. Having done that, the City defendant has converted its Rule 12(b)(6) motion to dismiss into a motion for summary judgment.

> If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . .

F. R. Civ. P.12(b)(6).

## II. No Factual or Legal Basis for Summary Judgment Exists

The City defendant has labeled its motion thusly: Motion to Dismiss or, Alternatively, For Summary Judgment. Summary judgment is only proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A factual dispute will preclude a grant of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The trial court may not weigh the evidence or make credibility determination s. *Id*. The only pleading that exists with respect to the City defendant's motion is the amended complaint, there are no depositions, interrogatory answers, admissions nor any affidavits. Other than in the heading of its motion and a statement providing the standard of review for a summary judgment motion, the City defendant never mentions summary judgment, let alone identify any undisputed material facts that provide a basis for summary judgment in its favor.

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

> portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

More importantly, however, this litigation is in its infancy. The City defendant has in its possession at a minimum 90% of the information that plaintiffs will be seeking to prove their case at trial. The City defendant has not even answered the complaint and no opportunity to obtain discovery has been provided. As such, summary judgment is premature.

> [a] grant of summary judgment is premature and improper when basic discovery has not been completed, particularly when the moving party has exclusive access to the evidence necessary to support the nonmoving party's claims.

*Phongsavane v. Potter*, No. SA-05-CA-0219-XR, 2005 U.S. Dist. LEXIS 12439, 2005 WL 1514091, at *5 (W.D. Tex. June 24, 2005) (citing CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2741 at 412-19 (3d ed. 1998)).

A nonmoving party must have had an opportunity to discover information necessary to its opposition to the summary judgment motion before summary judgment may be granted. *Anderson, supra.,* 477 U.S. 242, 250, n.5. And while it's true that a party may file a motion for summary judgment "at any time" until 30 days after the close of discovery, Fed. R. Civ. P. 56(b), the Supreme Court has made clear that the granting of summary judgment is limited until there has been "adequate time for discovery." *Celotex, supra.,* at 322. That is particularly true in this case where the plaintiffs have clearly set forth facts that will be, and in fact have been disputed by the City defendant, and the discovery necessary to prove their case is in the moving party's possession. At a minimum, prior to considering the City defendant's motion for summary

judgment the plaintiffs should be afforded the opportunity to conduct the following discovery:

    1. the depositions of the named defendants,

    2. written discovery from the named defendants, and

    3. the ability to obtain investigative reports from all sources.

It is only after affording the plaintiffs the opportunity to conduct discovery in the manner described above, will consideration of the City defendant's motion for summary judgment be appropriate.

Wherefore, for the reasons stated herein and in the record of this proceeding, the plaintiffs urge the Court to summarily deny the City defendant's motion to dismiss, and to summarily deny the City defendant's motion for summary judgment or alternatively to deny it as premature.[1]

Respectfully submitted on 3/6/ 2024 by:

_/s/_ MALIK SHABAZZ_ ESQ /S/_  
**MALIK SHABAZZ, Esq.**  
The Law Office of Malik Shabazz, Esq.  
D.C. Bar # 458434  
6305 Ivy Lane,  
Suite 608  
Greenbelt, MD 20770  
Email:Attorney.shabazz@yahoo.com  
Tel: (301) 513-5445  
Fax: (301) 513-5447  
(Lead counsel for Plaintiff)

_/S/ TRENT WALKER ESQ /S/_

---

[1] The City defendant also seeks to dismiss a plaintiffs' claim for punitive damages. Plaintiffs' make no claim for punitive damages against the City of Richland and to the extent that it appears that they do, that is an erroneous understanding.

**TRENT WALKER, Esq.**
The Law Offices of Trent Walker
M.S.B. #10475
5245 Keele Street
Suite A
Jackson, Mississippi
39206
Email:Trent@Trentwalkeresq.com
(Mississippi Local Counsel)
(601) 321-9540