UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL COREY JENKINS and
EDDIE TERRELL PARKER                                                              PLAINTIFFS

V.                                                        CIVIL ACTION NO. 3:23-CV-374-DPJ-ASH

RANKIN COUNTY, MISSISSIPPI, et al.                                               DEFENDANTS

ORDER

In this civil-rights case brought under 42 U.S.C. § 1983, Defendants Rankin County and

its Sheriff Bryan Bailey ("Rankin Defendants") ask for judgment on the pleadings, arguing that

the Sheriff has qualified immunity and that Plaintiffs Michael Jenkins and Eddie Parker fail to

state a claim against him or the County.  Mot. [36].  The City of Richland likewise moves to

dismiss for failure to state a claim, Mot. [48], and Defendant Jeffrey Middleton seeks dismissal

for insufficient service of process, Mot. [41].

For the reasons below, the Court will grant the City's motion but allow Plaintiffs to seek

leave to amend; deny Rankin Defendants' motion except as to the official-capacity claims, the

failure-to-hire claim, and the state-law claim; deny Defendant Middleton's motion as moot; and

deny two collateral motions [60, 62].

I.      Facts and Procedural History[1]

On January 24, 2023, a neighbor told Brett McAlpin, who was chief investigator for the

Rankin County Sheriff's Department, of "suspicious behavior" by black men at a house in

Braxton, Mississippi.  Am. Compl. [28] ¶¶ 9; *see id.* ¶¶ 16–17.  McAlpin asked Christian

Dedmon, a narcotics investigator for the Department, to address this "problem."  *Id.* ¶17.

---

[1] As explained in section II below, the Court evaluates the present motions by accepting the well-
pleaded allegations of the Amended Complaint [28] as true.

Dedmon understood this to be a matter for the self-identified "Goon Squad," a cadre of officers including himself and McAlpin who exhibited "willingness to use excessive force with impunity and otherwise abuse the[ir] authority." *Id*. ¶¶ 18–19. "The [Goon Squad] was so brazen and accepted that it had a LOGO." *Id*. ¶ 76.

Dedmon sent a text message to three Goon Squad members—its leader Jeffrey Middleton (a lieutenant in the Department) and two patrol deputies, Hunter Elward and Daniel Opdyke— asking, "Are y'all available for a mission?" *Id*. ¶¶ 10; *see id.* ¶¶ 12–13, 19–20. He advised them to avoid being caught on cameras and to "work easy," that is, knocking at the door rather than breaking it down. *Id*. ¶ 21. This precaution led Elward to reply with an emoji symbol of rolling one's eyes, while Opdyke replied with a clip of a crying baby. *Id*. If they saw no cameras, Dedmon said, the Squad should enter the house without a warrant. *Id*. ¶ 22. He also warned the Squad "[n]o bad mugshots," i.e., limit the injuries they committed to those not visible in a mug shot. *Id*. ¶ 23.

The Squad members met at a fire station, where Dedmon arrived with Joshua Hartfield, a narcotics investigator for the City of Richland who "would occasionally perform 'work'" with the Squad. *Id*. ¶¶ 26; *see id.* ¶ 82. Hartfield's task was to guard the back door at the house they planned to invade. *Id*. ¶ 25. The five men drove to the Braxton house and met McAlpin, who had been monitoring the place. *Id*. ¶ 27. Avoiding the front door because of a security camera, the men kicked their way in through the carport and back doors. *Id*. ¶¶ 28–29. They handcuffed and arrested Jenkins and Parker despite lacking any warrant to enter and any probable cause to arrest them. *Id*. ¶¶ 32–33. The Squad then spent about two hours torturing and degrading Jenkins and Parker as the Amended Complaint describes in detail. They were beaten, repeatedly tased, sexually assaulted with an object, threatened, and ridiculed. *Id*. ¶¶ 32–48.

Among the more serious abuses, Elward simulated an execution by making Jenkins kneel, putting a gun in Jenkins's mouth, and pulling the trigger. *Id.* ¶ 47.  The gun clicked but did not discharge.  *Id.*  Elward did it again, but this time the gun fired in Jenkins's mouth.  *Id.* ¶ 48.  Though the shot caused extensive injuries, Jenkins survived.  *Id.*

The officers then turned to their cover-up.  *Id.* ¶¶ 49–65.  They concocted a false version of events, *id.* ¶¶ 49–52, planted false evidence and removed actual evidence, *id.* ¶¶ 53–61, drafted false reports of what happened, *id.* ¶ 62, and swore out false affidavits accusing Jenkins of aggravated assault on a police officer, possession of methamphetamine, and disorderly conduct.  *Id.* ¶¶ 63–65.  An investigation by law enforcement eventually revealed the truth, and each officer who attacked Plaintiffs pleaded guilty to state and federal felony charges.  *Id.* ¶¶ 67–69.  The Rankin County officers had continued to be employed by Sheriff Bailey, who took no adverse action against them until after this suit was filed.  *Id.* ¶ 91.

Plaintiffs sued Rankin County and Sheriff Bailey, the City of Richland, and the individual officers.  Am. Compl. [28].  Rankin Defendants now seek judgment on the pleadings, arguing that (1) the Sheriff is entitled to qualified immunity, (2) the Amended Complaint fails to state a claim for municipal liability against the County, and (3) any state-law claims against the County are barred by state sovereign immunity.  Defs.' Mem. [36].  The City of Richland likewise moves to dismiss [48], also filing the same motion as one for summary judgment [50].

II.     Standard

A Rule 12(c) motion for judgment on the pleadings may be filed only "[a]fter the pleadings are closed."  Fed. R. Civ. P. 12(c).  Plaintiffs say that hadn't yet happened when the motion was filed because some Defendants had not answered the Amended Complaint.  Pls.' Mem. [43] at 4.  But as Plaintiffs note, "[t]he standard for deciding a motion under Rule 12(c) is

the same as the one for deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Id.* at 3 (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002)).  And courts may treat a Rule 12(c) motion as a Rule 12(b)(6) motion to dismiss if filed before all defendants have answered.  *Jung v. Ass'n of Am. Med. Colls.*, 339 F. Supp. 2d 26, 35 (D.D.C. 2004), *aff'd*, 184 F. App'x 9 (D.C. Cir. 2006); *Geltman v. Verity*, 716 F. Supp. 491, 492 (D. Colo. 1989) (citing 2A *Moore's Federal Practice* ¶ 12.15).  Assuming the pleadings have not closed, Plaintiffs identify no unfair prejudice they would suffer if the motions are considered under Rule 12(b)(6), so the Court proceeds under that rule.

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' "  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  But courts will not "presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Johnson v. Harris County*, 83 F.4th 941, 945 (5th Cir. 2023) (quoting *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023)).  "Conclusory" means "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." *Black's Law Dict.* (11th ed. 2019), *quoted in Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. 2024).

To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).[2]

"Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)).  Plaintiffs have the burden to allege sufficient facts but not to correctly state their legal theories in their complaint. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016) (citing *Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (per curiam)).

---

[2] Rankin Defendants and the City of Richland attach exhibits that were not filed with the Amended Complaint and that fall beyond the scope of review under Rule 12(b)(6).  ". . . Rule 12(b) gives a district court 'complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.'" *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 194 n.3 (5th Cir. 1988) (citation omitted).  Because Defendants' exhibits are irrelevant to the Court's ruling, it will not convert this motion to one under Rule 56 as Rule 12(d) contemplates.

III.    Discussion

Plaintiffs say Defendants violated their constitutional rights and are thus liable under 42 U.S.C. § 1983, a statute providing relief against any "person" who, "under color of" state law, deprives another of his or her "rights . . . secured by the Constitution and laws."  One reason Congress enacted § 1983, originally part of the Civil Rights Act of 1871, was to hold municipalities liable when "action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  The 1871 Act was necessary in part because, "through tacit complicity and deliberate inactivity, state and local officials were fostering vigilante terrorism" against their political and racial enemies."  Thus, "the Act was aimed at least as much at the *abdication* of law enforcement responsibilities by Southern officials as it was at the Klan's outrages."  *Miller v. Carson*, 563 F.2d 757, 761 n.8 (5th Cir. 1977) (quoting *Developments in the Law—Section 1983 and Federalism*, 90 Harv. L. Rev. 1133, 1153–54 (1977)).

A.    Rankin Defendants:  Official-Capacity Claims Against Sheriff Bailey

Plaintiffs sued Sheriff Bailey in his official and individual capacities.  But "[a] suit against the Sheriff in his official capacity . . . is equivalent to a suit against [the] County." *Thornhill v. Breazeale*, 88 F. Supp. 2d 647, 654 (S.D. Miss. 2000); *see Brooks v. George County*, 84 F.3d 157, 165 (5th Cir. 1996) (treating official-capacity claims against Mississippi sheriff as claims against county).  The Fifth Circuit considers such claims redundant when the plaintiff has also sued the county.  *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020) (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)).  Those claims are therefore dismissed as to the Sheriff but proceed against Rankin County and will be considered in section C below.

B.      Individual-Capacity Claims Against Sheriff Bailey

Plaintiffs allege in Count 1 that Sheriff Bailey is liable under § 1983 for failing to train, supervise, and discipline the officers who participated in the abuse.  Sheriff Bailey says Count 1 must be dismissed because he is entitled to qualified immunity.  *See* Defs.' Mem. [34] at 3.

Qualified immunity protects officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Its purpose is to give government officials "breathing room to make reasonable but mistaken judgments about open legal questions.  When properly applied, it protects '*all but the plainly incompetent or those who knowingly violate the law.*'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (emphasis added) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant raises qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense."  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).  And if it's raised in a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'"  *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (quoting *Harlow*, 457 U.S. at 819).  So to defeat an assertion of qualified immunity, a plaintiff must show "(1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct."  *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing *al-Kidd*, 563 U.S. at 735).

1.    *Whether Plaintiffs Pleaded a Constitutional Violation*

Sheriff Bailey was not present when Plaintiffs were abused, nor do Plaintiffs say he

participated in the planning.  "Under section 1983, supervisory officials are not liable for the

actions of subordinates on any theory of vicarious liability."  *Thompson v. Upshur County*, 245

F.3d 447, 459 (5th Cir. 2001) (citation omitted).  That said, Plaintiffs may still establish a § 1983

claim against the Sheriff by showing that his conduct deprived them of their rights:

> A sheriff not personally involved in the acts that deprived the plaintiff of his
> constitutional rights is liable under section 1983 if:  1) the sheriff failed to train or
> supervise the officers involved; 2) there is a causal connection between the
> alleged failure to supervise or train and the alleged violation of the plaintiff's
> rights; and 3) the failure to train or supervise constituted deliberate indifference to
> the plaintiff's constitutional rights.

*Id.*

Deliberate indifference in the supervisory context requires either actual or constructive

knowledge of violations.  *Yara v. Perryton Indep. Sch. Dist.*, 560 F. App'x 356, 360 (5th Cir.

2014) (citing *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011)).

> Usually, a failure to supervise gives rise to section 1983 liability only in those
> situations in which there is a history of widespread abuse.  Then knowledge may
> be imputed to the supervisory official, and he can be found to have caused the
> later violation by his failure to prevent it.

*Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982).

Constructive knowledge generally requires "a pattern of similar violations."  *Burge v. St.*

*Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Thompson*, 245 F.3d at 459). But

"[c]onstructive knowledge may be inferred from the widespread extent of the practices, general

knowledge of their existence, manifest opportunities and official duty of responsible

policymakers to be informed, or combinations of these."  *Pineda v. City of Houston*, 291 F.3d

325, 330 n.15 (5th Cir. 2002) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987)).

"There must be a 'persistent and widespread practice'" such that a responsible supervisor

arguably could not have overlooked it.  *Id.* at 329 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001)).

Such a pattern "may tend to show that the lack of proper training [or supervision] . . . is the 'moving force' behind the plaintiff's injury."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 408 (1997).  That showing requires there "at least be an affirmative link between the . . . inadequacies alleged[] and the particular constitutional violation at issue."  *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1409 (5th Cir. 1995) (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985)).

**Constructive Knowledge:**    Plaintiffs pleaded a plausible claim that the Goon Squad acted consistently with a widespread pattern of unconstitutional abuse.  To begin, when "the violations are flagrant or severe, the fact finder will likely require a shorter pattern of the conduct to be satisfied that diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation."  *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (en banc).  The violations here could not be more flagrant, and it is hard to imagine more severe violations of constitutional rights.

As for other incidents in the alleged pattern, Plaintiffs first lean into conclusory assertions that must be ignored when testing the sufficiency of their pleading.  *Johnson*, 83 F.4th at 946.  They assert, for example, that "[c]itizen complaints, lawsuits, public news, and public records verify that SHERIFF BAILEY is specifically aware that County deputies have committed and are likely to commit constitutional violations of the type plaintiffs suffered as described in this lawsuit."  Am. Compl. [28] ¶ 87.  This motion would have been easier to assess had Plaintiffs offered facts explaining those conclusory statements.

But the Amended Complaint does include specifics.  For example, three Goon Squad members pleaded guilty in federal court to violating the constitutional rights of a man identified as A.S.  Am. Compl. [28] ¶ 79.  That incident occurred December 4, 2022—just before this one. *Id.*  There, Defendant Dedmon fired a gun near the victim to scare and coerce him, and the victim was also punched, kicked, and tased.  *Id.*  Defendants did all of that in this case too. Plaintiffs say the County neither took corrective action nor provided any additional training following the incident.  *Id.*  Rankin Defendants ignored this similar incident in their memorandum [36] and in their Reply [47].

In a June 2010 incident, Defendants McAlpin, McLendon, and other members of the Rankin County Sheriff's Department allegedly victimized a family.  *Id.* ¶ 72.  Although Plaintiffs did not identify the case by name in their Amended Complaint, Defendants later confirmed that the case involved the Gerhart family.  *See* Defs.' Reply [47] at 5 n.6 (citing *Gerhart v. Barnes*, 724 F. App'x 316 (5th Cir. 2018); *Gerhart v. McLendon*, 714 F. App'x 327 (5th Cir. 2017)). According to the *Gerhart* plaintiffs, the defendants were investigating drug trafficking but went to the wrong house, kicked in the door without a warrant, forced the plaintiffs to the ground at gunpoint, kicked one of the plaintiffs in the head, fired a gun inside the home, and held a gun "to the temple of some Plaintiffs and the backs of other Plaintiffs."  *Gerhart v. Rankin County et al.*, No. 3:11-cv-586-HTW-LRA, Am. Compl. [206] ¶ 15; *see also id.* ¶¶ 27, 28.  The same abuses happened here too.

The similarities with this case continued after the defendants learned that they had raided the wrong house.  According to those plaintiffs, McAlpin had to be pulled off Mr. Gerhart even though McAlpin knew he had the wrong man.  *Id.* ¶ 33.  They also alleged that McAlpin and others covered it up like they did here:  "Defendant McAlpin was distraught, saying 'this is bad,

this is bad[]' and that the Sheriff is going to have to take care of this. . . .  McAlpin told [another officer] what had happened . . . to which she replied that they needed 'to get their **** together.'"  *Id.* ¶ 34.  And the Fifth Circuit noted on appeal that "McAlpin[ ] and McLendon gave inconsistent testimony."  *Barnes*, 724 F. App'x at 319.

Another incident Plaintiffs cite is less similar but could suggest a plausible pattern of excessive force followed by a cover-up.  In *Barrett v. City of Pelahatchie*, No. 3:21-cv-124-HTW-LGI, the plaintiffs sued Sheriff Bailey and Defendant Elward after an officer-involved shooting.  According to the complaint, the officers were called to a residence in February 2019 to respond to an armed suspect.  *Barrett*, No. 3:21-cv-124; Am. Compl. [45] ¶ 23.  The plaintiffs alleged that the gunman walked out with his hands raised, threw down his weapon, but was then "riddled" with bullets fired by Elward and others.  *Id.*  Unlike in this case, Bailey was at the scene.  District Judge Henry T. Wingate denied Bailey's motion for qualified immunity and noted inconsistencies in the officers' reports—including conflicts with video evidence.  *Id.*, Order [102] at 12–13.

Defendants say these incidents (and others Plaintiffs list in the Amended Complaint) are too isolated and distinguishable to plead a pattern.  Defendants support that argument with *Davidson v. City of Stafford*, where the plaintiff identified three incidents over three-and-a-half years.  848 F.3d 384, 396–97 (5th Cir. 2017), *as revised* (Mar. 31, 2017).  The Fifth Circuit concluded that "[w]ithout further context of the size of Stafford PD or the amount of arrests made over the corresponding period, these incidents are insufficient to establish a pattern of constitutional violations by the Stafford PD."  *Id.* (collecting cases where patterns were insufficient to survive summary judgment).

While the Court acknowledges *Davidson* and other similar cases, it was decided after discovery on a summary-judgment motion that required the plaintiff to offer admissible evidence creating a material factual dispute. *See* Fed. R. Civ. P. 56(c)(1). The Court also takes judicial notice that Rankin County is not comparable in size to the cities discussed in cases like *Carnaby v. City of Houston*, 636 F.3d 183, 189–90 (5th Cir. 2011) (finding that two incidents over four years failed to prove a pattern in Houston, Texas). And in any event, the Fifth Circuit has also held that constructive knowledge may be inferred through a "combination" of evidence. *Pineda*, 291 F.3d at 331 n.15.

The test under Rule 12(b)(6) is whether Plaintiffs' claim is "plausible." *Iqbal*, 556 U.S. at 678. In other words, can the Court form a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As noted, "[t]his standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (quotation marks omitted). Plaintiffs have plausibly pleaded a pattern that might have been ongoing for thirteen years and included a similar incident less than two months before this one.

Other pleaded facts buttress that finding. Plaintiffs say the "Amended Complaint paints a picture of a law enforcement department that is basically lawless." Pls.' Mem. [43] at 7. For starters, Defendants called themselves the "Goon Squad," indicating an intent to harass and a

pattern of conduct.  Am. Compl. [28] ¶ 18.  So engrained was the name that they drew a logo for

the group.  *Id.* ¶ 76.[3]

The details from January 2023 also suggest that they acted consistently with an existing

widespread pattern.  Dedmon started things by asking the others whether they were "available

for a mission."  *Id.* ¶ 20.  They knew what he meant.  Dedmon also advised the others to be

careful of cameras—if "we don't see cameras go."  *Id.* ¶ 22.  Viewed in the light most favorable

to Plaintiffs, the officers wanted no evidence of their "mission."  Equally damning is the message

that there should be "[n]o bad mugshots," indicating a "green light to use force only on parts of

the body not captured by a mugshot."  *Id.* ¶ 23.  Why would that message be necessary—before

the arrest—unless Defendants knew from experience that they intended to use excessive force?

The conduct was also brazenly unconstitutional and included sexual assault and a

simulated execution that ended with a gun being fired in Jenkins's mouth.  Yet none of the

Defendants apparently voiced any objection to the warrantless search or the grossly excessive

force.  The casual impunity with which they tortured Parker and Jenkins—for about two hours—

supports the reasonable inference that they routinely did this kind of thing.  *See Listenbee v. City

of Harvey*, No. 11-C-03031, 2013 WL 5567552, at *3 (N.D. Ill. Oct. 9, 2013) (finding plaintiff

pleaded municipal liability where he was brutally beaten in an unprovoked attack outside police

---

[3]The Court could have taken judicial notice of its own docket, which would include images of
the logo.  Though it declined to consider that evidence, the logo further supports this ruling:



headquarters, thus creating inference that officer expected no discipline and "had nothing to fear"). In sum, the Court can reasonably infer from the pleaded facts that constructive knowledge existed.

**Causation:** Even assuming constructive knowledge, Plaintiffs must still show causation to ultimately prove supervisory liability. *Thompson*, 245 F.3d at 459. Causation exists when proper supervision "would have . . . prevented or at least promptly remedied" the consequences of a subordinate law-enforcement officer's unlawful conduct. *Covington v. City of Madisonville*, 812 F. App'x 219, 228 (5th Cir. 2020); *see also Bowen*, 669 F.2d at 988 (constructive knowledge of failure to supervise suffices for causation because supervisor otherwise could have prevented harm). For the present motion, it is sufficiently alleged that, had the Sheriff adequately supervised his officers (who included a lieutenant and the Department's chief investigator, not only low-level personnel), the Goon Squad's rampages would have been cut short before January 2023. The alternative failure-to-train theory for establishing Count 1 presents a closer call because Plaintiffs never state in their Amended Complaint what was missing from the training. But given the egregious facts, it is plausible that better training would have prevented these acts. Likewise, given constructive knowledge of the Goon Squad's abuses, the failure to impose discipline for those abuses plausibly was a moving force behind the culmination of those abuses in the assault on Jenkins and Parker.

In short, the degree of indifference to public safety Plaintiffs allege goes well beyond vicarious liability for subordinate wrongdoing. The Sheriff is not said merely to have had a few bad apples in his Department; it is alleged that he allowed even senior officers to routinely

14

terrorize the people of Rankin County under color of state law.  For these reasons, Plaintiffs have

plausibly pleaded a claim for supervisory liability in Count 1.[4]

### 2.      Whether the Law Was Clearly Established

The next question is whether the rights were clearly established when the violations

occurred.  Supervisory liability under § 1983 requires that both the plaintiff's constitutional right

and the supervisor's "duty with respect to [that] right" be clearly established at the time of the

alleged infraction.  *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994) (en banc).

"To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the

right must be sufficiently clear that a reasonable official would understand that what he is doing

violates that right.'"  *Kinney v. Weaver*, 367 F.3d 337, 349–50 (5th Cir. 2004) (quoting *Anderson

v. Creighton*, 483 U.S. 635, 640 (1987)).  The test is objective—would "*all* reasonable officials

in the defendant's circumstances [have] known" that his conduct violated federal law—rather

than subjectively examining the Sheriff's actual beliefs.  *Thompson*, 245 F.3d at 457.  But

"[e]xamples of behavior that does (and does not) constitute deliberate indifference are relevant in

assessing the scope of clearly established law and [ ] therefore, are relevant in determining

whether the defendants' actions were objectively reasonable."  *Id*. at 459.  As summed up in

another case:

> the subjective deliberate indifference standard serves only to demonstrate the
> clearly established law in effect at the time of the incident . . . .  And, under that
> standard—the minimum standard not to be deliberately indifferent—the actions of
> the individual defendants are examined to determine whether, as a matter of law,
> they were *objectively* unreasonable.

---

[4] Whether Plaintiffs can prove those claims is a different question.  While the Goon Squad now
sits in jail having admitted that they violated Parker's and Jenkins's constitutional rights, the
civil claims against Sheriff Bailey are just plausibly pleaded.

*Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998).[5]

No reasonable officer could believe the Constitution allows warrantless searches, putting a gun in a detainee's mouth (much less firing it), sexually assaulting a detainee, repeatedly tasing a submissive detainee, kicking/punching a person for no reason, and making up charges against them. A badge does not allow you to torture people. Liability for deliberate indifference in tolerating the persistent, widespread use of excessive force by law-enforcement officers is also well established. *See, e.g.*, *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir.), *on reh'g*, 739 F.2d 993 (5th Cir. 1984) (en banc).

It is reasonable to infer that a failure to supervise and train that leads to a violation of this severity violates clearly established law. Thus, the Court denies Sheriff Bailey's motion to dismiss Count 1. He may reassert his right to qualified immunity under Rule 56 after adequate discovery. And that ruling makes it unnecessary to address Plaintiffs' argument that Rankin Defendants ratified the officers' misconduct.[6]

---

[5] In an unpublished opinion, the Fifth Circuit remarked on "the uncomfortable fit between qualified immunity and failure to train claims," given that a failure to train (or to supervise) "is not itself a violation of the Constitution; it is instead a basis for holding an employer liable when an employee violates the Constitution." *Smith v. Packnett*, 339 F. App'x 389, 393 n.1 (5th Cir. 2009). "Furthermore, the second prong seems inapplicable because an officer, having acted with deliberate indifference, can hardly be said to have acted with objective reasonableness." *Id*. Even so, the court conceded that "our cases have assumed, without addressing the incongruence, that qualified immunity mechanically applies to failure to train claims." *Id*.

[6] Had the Court concluded that the averments fell short, it would have allowed one last opportunity to amend. "[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citation omitted). "Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Id*. Today's holding is based on the pleaded facts, but the Court potentially could have taken judicial notice of other evidence discussed in the federal criminal cases against the individual Defendants. In addition, Plaintiffs mentioned news reports of other incidents in the Amended Complaint—the attack generated national news and investigations from the media—yet Plaintiffs failed to plead the facts conveyed in those articles.

C.      Section 1983 Claims Against Rankin County

In Count 2, Plaintiffs allege Rankin County has "an official recognized custom, policy and practice" of allowing deputies to use excessive force and torture and to commit violations of the Fourth and Fourteenth Amendments, as well as of failing to properly hire, train, and supervise deputies.  Am. Compl. [28] ¶ 95.

"Proof of municipal liability sufficient to satisfy *Monell* requires:  (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy (or custom)."  *Pineda*, 291 F.3d at 328 (footnote omitted).  As the word "custom" indicates, the policy need not be written out or formally promulgated.  "Cases have recognized that municipal custom can sometimes be proven through evidence of a persistent pattern of conduct."  *Milam v. City of San Antonio*, 113 F. App'x 622, 625 (5th Cir. 2004).

"It cannot be disputed" that a Mississippi sheriff is "the final policymaker with respect to all law enforcement decisions made in the county."  *Huddleston v. Shirley*, 787 F. Supp. 109, 112 (N.D. Miss. 1992).  And because the Sheriff is the County's policymaker for training and supervision of deputies, liability for his failure to train or supervise is imputed to the County. *Brown v. Bryan County*, 219 F.3d 450, 460 (5th Cir. 2000); *Huddleston*, 787 F. Supp. at 112. Having found a plausible claim against the policymaker (Sheriff Bailey), the Court finds, based on the same allegations discussed above, that Plaintiffs pleaded a plausible claim against the County.

---

In short, the Court is not convinced Plaintiffs pleaded their best case, but what they did plead suffices.

But there is more to Count 2.  Unlike Count 1, Count 2 also alleges failure to properly

hire.  Plaintiffs base that claim on the County's decision to hire Defendant Middleton even

though he had "been convicted of vehicular homicide with culpable negligence."[7]  Am. Compl.

[28] ¶ 77.  This does not state a claim.  Liability for "inadequate hiring . . . policies" requires that

"the municipal policy must have been adopted with 'deliberate indifference' to its known or

obvious consequences."  *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998).  Alleging

deliberate indifference in this context requires "a strong connection between the background of

the particular applicant and the specific violation alleged," such that "the hired officer was highly

likely to inflict the particular type of injury [the plaintiff] suffered."  *Gros v. City of Grand*

*Prairie*, 209 F.3d 431, 434 (5th Cir. 2000).  The Amended Complaint fails to allege how

Middleton's gross abuses against Parker and Jenkins were "known or obvious consequences" of

the earlier conviction for vehicular homicide.  *Snyder*, 142 F.3d at 795.

The claim of *Monell* liability for failure to properly hire employees is therefore

dismissed.  Otherwise, the Motion to Dismiss is denied as to Count 2 for much the same reasons

as given for Count 1.

D.      Rankin County:  State-Law Claims

The original Complaint pleaded state-law claims of false imprisonment (Count 11),

assault and battery (Count 12), and intentional infliction of emotional distress (Count 13).  Those

counts are gone from the Amended Complaint.  The only state-law claim now is Count 4,

"Reckless Disregard for the Rights and Safety of Others."  Plaintiffs allege that the County's

---

[7] Rankin Defendants dispute that allegation.  Defs.' Mem. [36] at 7 (citing state-court docket
number).  But factual disputes are not relevant on a Rule 12(b) motion.

policies and procedures led to Plaintiffs' injuries, thus "constitut[ing] a reckless disregard for the rights and safety of the Plaintiffs as defined under Mississippi law." Am. Compl. [28] ¶ 111.

Plaintiffs' briefing addresses "reckless disregard" under the Mississippi Tort Claims Act:

> (1)     A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . . .
>
> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury . . . .

Miss. Code Ann. § 11-46-9(1)(c); *see* Pls.' Mem. [43] at 14. Although he is an elected official, Sheriff Bailey is considered an "employee" under the MTCA. Miss. Code Ann. § 11-46-1(f).

The Mississippi Supreme Court foreclosed this state-law claim in *City of Jackson v. Powell*, 917 So. 2d 59 (Miss. 2005). In *Powell*, the plaintiff asserted that two Jackson police officers beat and threatened to shoot him following a traffic stop. *Id.* at 63–64. The trial court "held the city liable because it negligently supervised the [police] officers." *Id*. at 73. Applying its "two-part test[8] to determine if a function is discretionary," the Mississippi Supreme Court held: "The manner in which a police department *supervises*, *disciplines* and regulates its police officers is a discretionary function of the government and thus the city is immune to suit under [section] 11-46-9(1)(d)." *Id*. at 73–74 (emphasis added); *see City of Clinton v. Tornes*, 252 So. 3d 34, 39 (Miss. 2018) (applying *Powell* to hold city immune from failure-to-train claim).

Plaintiffs say the Sheriff's duty to uphold the law is mandatory, not a choice, and that there are no policy considerations in allowing officers to run amok. Pls.' Resp. [43] at 16. But

---

[8] The test is "(1) whether the activity involved an element of choice or judgment, and if so; (2) whether the choice or judgement in supervision involves social, economic or political policy alternatives." *Powell*, 917 So. 2d at 73 (quoting *Bridges v. Pearl River Valley Water Supply Dist.*, 793 So. 2d 584, 588 (Miss. 2001)).

under *Powell* and *Tornes*, the issue is not the legality of the supervisory choices; it's the fact of exercise of judgment in how to carry out public policy.  "Discretionary-function immunity shields the [County] from liability 'whether or not the discretion be abused.'"  *Tornes*, 252 So. 3d at 40 n.3 (quoting Miss. Code Ann. § 11-46-9(1)(d)).

Even if Plaintiffs' claim were construed to include the Defendant ex-officers, the Amended Complaint makes clear that they were intentionally committing crimes, not merely displaying a reckless indifference to consequences.  Section 11-46-5(2) of the MTCA expressly retains immunity for an employee's "criminal offense."  It remains theoretically possible that some of what they did was reckless disregard without being criminal, but Plaintiffs don't point out any such conduct, and the Court does not see that any is pleaded.  Because Plaintiffs identify no specific non-criminal conduct by County employees that rose to reckless disregard, they have failed to state a claim, and Count 4 will be dismissed.

E.     City of Richland's Motion to Dismiss

The City of Richland, whose police officer Hartfield joined in the assault on Plaintiffs, moves to dismiss the § 1983 claim against it (Count 3) on much the same grounds as advanced by Rankin Defendants.  Plaintiffs say the City insufficiently monitored Hartfield's doings, "allow[ing] him to roam with Rankin County officers, all in the name of crime fighting, on a routine basis," and moved too slowly against him when the facts of the assault on Plaintiffs came out.  Am. Compl. [28] ¶¶ 81–84; *see id.* ¶¶ 102–03; Pls.' Resp. [55] at 4–5.

These allegations are not enough to state a § 1983 claim against the City.  Unlike their claims against the County and its sheriff, Plaintiffs plead no facts showing the City's direct or constructive knowledge of Hartfield's unconstitutional conduct.  For example, Plaintiffs identify no other specific incidents involving Hartman.  Indeed, they assert that the City allowed Hartman

to work with Rankin County officers "in the name of crime fighting," at least tacitly conceding that's what the City thought Hartman was up to.  Am. Compl. [28] ¶ 83.

"For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Plaintiffs plead no such facts against the City.  And even if the City had a duty to keep tabs on Hartman and failed to do so, that would amount to mere negligence, which isn't enough to plead deliberate indifference.  *Farmer*, 511 U.S. at 835.

Plaintiffs' claim against the City offers no more than vicarious liability to establish municipal liability, which *Monell* excludes from § 1983's scope.  The City's Motion to Dismiss will be granted.  This resolution makes it unnecessary to consider the City's parallel Rule 56 Motion [50].  But because Plaintiffs have only attempted to plead this claim once, it is not yet clear whether they have pleaded their best case.  They may therefore seek leave to amend within 14 days of this Order.

G.      Middleton's Motion to Dismiss

Finally, the Court addresses Jeffrey Middleton's Motion to Dismiss.  Plaintiffs added Middleton as a Defendant in their Amended Complaint filed on November 21, 2023.  On January 2, 2024, he moved to dismiss under Federal Rule of Civil Procedure 12(b)(4) for insufficient service of process, saying he was served with only the summons—not the complaint—contrary to Rule 4(c)(1).  Middleton Mem. [42] at 2.  A week after his motion, return of service was filed stating that Middleton had been properly served on January 8 (six days after his motion).  Return

[44].  Plaintiffs say this service included both the summons and the Amended Complaint.  Pls.'
Resp. [46] at 1.  Middleton did not rebut, and the Court will deny his motion.

IV.     Conclusion

        The Court has considered all arguments presented.  Any not specifically addressed here
would not change the outcome.  The Motion for Judgment on the Pleadings by Rankin
Defendants [35], which the Court construes as a Rule 12(b)(6) Motion to Dismiss, is denied as to
Plaintiffs' claims of failures to supervise, train, and discipline against Sheriff Bailey (Count 1),
as to their like claims against the County (Count 2), and as to the Sheriff's claim of qualified
immunity.  The Motion is granted as to claims against Sheriff Bailey in his official capacity, as
to Count 2's claim of failure to properly hire, and as to Count 4 (state-law claims against
County).  The City of Richland's Motion to Dismiss [48] is granted.  The City's Motion for
Summary Judgment [50] is denied as moot.  Middleton's Motion to Dismiss [41] is denied.
Rankin Defendants' Motion [60] to supplement is denied as moot because the Court did not
consider Plaintiffs' evidence to which the motion was addressed.  Finally, Plaintiffs' Motion [62]
for an update is denied as moot.

        Rankin Defendants and Middleton are directed to contact United States Magistrate Judge
Andrew S. Harris as to case-management proceedings.

        **SO ORDERED AND ADJUDGED** this the 24th day of July, 2024.

                                        s/ *Daniel P. Jordan III*
                                        CHIEF UNITED STATES DISTRICT JUDGE