**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**MICHAEL COREY JENKINS,**                                              **PLAINTIFFS**
**EDDIE TERRELL PARKER**

**v.**                                                                    **CAUSE NO. 3:23-cv-374-DPJ-ASH**

**RANKIN COUNTY, MISSISSIPPI,**
**RANKIN CO. SHERIFF BRYAN BAILEY,**
**Individually, et al.**                                                       **DEFENDANTS**

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT PREMISED ON QUALIFIED IMMUNITY**

**NOW COMES** Defendant, Sheriff Bryan Bailey, in his individual capacity, by and through counsel, and in support of his Rule 56 Motion for Summary Judgment premised on qualified immunity, states as follows:

I.    **INTRODUCTION & PROCEDURAL HISTORY**

Plaintiffs' [1] Complaint was filed on June 12, 2023, in which they alleged federal § 1983 claims and state law claims against Defendants Rankin County, Sheriff Bailey, and other Defendants relating to an incident occurring on or around January 24, 2023. This Defendant moved for judgment on the pleadings premised on qualified immunity on October 6, 2023, after which Plaintiffs were granted leave to amend their complaint. [25] Motion; [30] Order. Plaintiffs' [28] Amended Complaint is, thus, the operative pleading in this litigation.

In the [28] Amended Complaint, Plaintiffs allege that Sheriff Bailey failed to supervise and/or train the former deputies regarding their use of excessive force, illegal searches and seizures, and their violations of citizen's equal protection rights. *Id.*, ¶ 87. Plaintiffs further allege that "SHERIFF BAILEY failed to immediately discipline and/or reprimand the [former

deputies]," which they claim "confirms that he condoned and/or ratified the misconduct admitted herein by the defendant deputies." *Id.*, ¶¶ 90 & 92.

Following the filing of the [28] Amended Complaint, Sheriff Bailey renewed his Rule 12(c) motion premised on qualified immunity, [35] Motion, which was granted in part[1] and denied in part by this Court on July 24, 2024. [63] Order. A [71] Case Management Order was entered on September 18, 2024, and discovery lasted from that date until March 3, 2025. *See* 01/31/2025 TEXT-ONLY ORDER. With discovery now complete, Sheriff Bailey moves for summary judgment premised on qualified immunity.

II.   **LEGAL PRECEDENT AND ANALYSIS**

   A.   **Rule 56 Standard of Review**

Summary judgment should be granted where the moving party demonstrates there exists no genuine issue of material fact precluding the granting of judgment in its favor. FED. R. CIV. P. 56.  When presented with a summary judgment motion, the court is to "examine each issue in the light most favorable to the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986). The moving party must demonstrate that summary judgment is justified; the non-moving party must then show that a genuine issue of material fact exists as to that issue. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Once the moving party makes its *prima facie* showing as to the absence of a genuine issue of material fact, the opposing party cannot rest on the allegations of the pleadings but must instead set forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 274-75 (5th Cir. 2015)

---

[1] "The Motion is granted as to claims against Sheriff Bailey in his official capacity, as to Count 2's claim of failure to properly hire, and as to Count 4 (state-law claims against County)." [63] Order, pg. 22.

2

(quoting *Anderson*, 477 U.S. at 249) ("No genuine issue of disputed fact exists 'unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"). The party opposing summary judgment must "not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

"Once defendants assert the qualified immunity defense, 'the plaintiff bears the burden of negating qualified immunity … but all inferences are drawn in his favor." *Brauner v. Coody*, 793 F.3d 493, 497 (5th Cir. 2015) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). To do this, Plaintiff is required to produce competent summary judgment evidence in opposition to Defendants' Motion for Summary Judgment. *Melvin v. Karman*, 550 F. App'x 218, 220 (5th Cir. 2013) (citing *Milton v. Tex. Dep't of Criminal Justice*, 707 F.3d 570, 572 (5th Cir. 2013)).

B. **Sheriff Bailey is entitled to qualified immunity**

In its analysis of Sheriff Bailey's qualified immunity defense, the Court asks two questions: (1) "whether the undisputed facts and the disputed facts, accepting the plaintiff's version of the disputed facts as true, constitute a violation of a constitutional right," and (2) "whether [Sheriff's] conduct was 'objectively reasonable in light of clearly established law.'" *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (citations omitted). A decision to grant immunity can be based "on either part of the analysis alone." *Batyukova v. Doege*, 994 F.3d 717, 724-25 (5th Cir. 2021).

Sheriff Bailey cannot be liable on any § 1983 claims under a theory of vicarious liability and/or *respondeat* superior. *Turner v. Driver*, 848 F.3d 678, 695 (5th Cir. 2017). And

3

because this Defendant "was not present when Plaintiffs were abused, nor do Plaintiffs say he participated in the planning," [68] Order, pg. 8, Plaintiffs must show that "(1) the [sheriff] failed to supervise or train the [former deputies]; (2) a causal connection existed between the failure to supervise or train and the violation of [Plaintiffs'] rights; and (3) the failure to supervise or train amounted to deliberate indifference to [Plaintiffs'] constitutional rights." *Winder v. Gallardo*, 118 F.4th 638, 647 (5th Cir. 2024) (citation omitted).

### i. **Allegations of Failure to Supervise**

To proceed past summary judgment on a failure to supervise claim against Sheriff Bailey, Plaintiffs must present competent summary judgment evidence that (1) [Sheriff's] … supervision [was] inadequate, (2) [he] was deliberately indifferent … in supervising the subordinates, and (3) the inadequate … supervision directly caused the plaintiff's injury." *Clyce v. Hunt County*, 515 F. App'x 319, 323 (5th Cir. 2013) (citing *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000) (per curiam); *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)). In order for liability to attach on a failure to supervise claim, "it must have been obvious that that the 'highly predictable consequence' of not supervising its officer[] was that he 'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk.'" *Peterson*, 588 F.3d at 850 (citing *Brown v. Bryan County*, 219 F.3d 450, 461 (5th Cir. 2000)).

**Adequate Supervision** – When Sheriff Bailey first took office in January of 2012, he implemented a use of force reporting system, whereby the events justifying the force were documented and the deputy's TASER would be downloaded, if a TASER was used. **Exhibit 1** (Sheriff Dep.), pgs. 30, 50, 162-63; **Exhibit 2** (Thornton Dep.), pgs. 22-23; **Exhibit 10**

4

(Dedmon UoF Reports). The TASER downloads used by the RCSD only reflect Safe, Armed, and Trigger, with Trigger indicating that the TASER was fired. **Exhibit 2**, pg. 23.[2]

The RCSD also purchased body worn cameras ("BWCs") in 2021 and required their use by "middle to late … 2021." **Exhibit 1**, pg. 132; **Exhibit 7** (Policies & Procedures), RC 48-50. The BWC policy and procedure (#7.1) was modeled after that used by the State of Texas, **Exhibit 1**, pg. 143, and contained the following exceptions to mandatory BWC use:

> BWCs shall be used only in conjunction with official law enforcement duties. The BWC shall not generally be used to record:
> …
> 2. Encounters with undercover officers or confidential informants….

**Exhibit 10**, RC 49-50.

Prior to January 24, 2023, complaints against deputies could be received by the RCSD via telephone, by U.S. mail, and/or in person. **Exhibit 1**, pg. 203. Sheriff Bailey would refer garden-variety complaints to department heads, which in or around January 24, 2023, included Chief Investigator Brett McAlpin and/or Chief Deputy Dwayne Thornton. *Id.*; **Exhibit 2**, pgs. 39-40; **Exhibit 11** (Complaints & Discipline). When review was conducted by then-Chief Deputy Thornton, he would typically look at the deputy's BWC video to determine if the deputy's actions were proper. **Exhibit 2**, pg. 40. More serious matters were referred to Steve Godfrey for an internal affairs ("IA") investigation. **Exhibit 2**, pg. 40; **Exhibit 3** (Godfrey Dep.), pg. 20. And Thornton recalled only one matter going to IA dealing with excessive force; which was self-reported to the FBI, the deputy was retrained, then later terminated. **Exhibit**

---

[2] Newer TASERs and technology provide departments a pulse graph, which if read correctly will indicate whether the TASER probes were deployed or whether it was used in drive stun mode. This recent technology also allows a department to determine how much electrical energy the suspect received, if any. *See e.g.*,
https://my.axon.com/s/article/TASER-7-Pulse-Graph-Overview?language=en_US.

**2**, pgs. 40-41, 53. For all officer involved shootings ("OIS"), the Mississippi Bureau of Investigation ("MBI") would be asked to investigate the matter. **Exhibit 3**, pg. 38.

No decision by the U.S. Supreme Court or the Fifth Circuit Court of Appeal clearly establishes the proper level, amount, and/or means of supervision to be provided at a sheriff's department. The foregoing measures implemented by Sheriff Bailey do not evidence a complete lack of supervision but, instead, show a modification in supervision over time as technology advances. Accordingly, Plaintiffs cannot show that Sheriff Bailey's supervision of the former deputies at issue was inadequate.

**Deliberate Indifference** – "Deliberate indifference is a 'stringent standard of fault,' requiring proof that an official 'disregarded a known or obvious consequence of his action.'" *Holmes v. Comm'r Pelicia Hall*, No. 3:22-CV-48-KHJ-MTP, 2024 U.S. Dist. LEXIS 168114, at *7-8 (S.D. Miss. Sep. 18, 2024) (quoting *Porter v. Epps*, 659 F.3d 440, 446-47 (5th Cir. 2011)). Put another way, "deliberate indifference exists where adequate scrutiny would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision [on means of supervision or training] would be the deprivation of a third party's constitutional rights." *Parker v. Blackwell*, 23 F.4th 517, 523 (5th Cir. 2022) (quoting *Gros v. City of Grand Prairie*, 209 F.3d 431, 433 (5th Cir. 2000); citing *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 411, 117 S. Ct. 1382, 1390 (1997)) (internal quotations omitted).

"Deliberate indifference in the supervisory context requires either actual or constructive knowledge of violations." [63] Order, pg. 8 (citing *Yara v. Perryton Indep. Sch. Dist.*, 560 F. App'x 356, 360 (5th Cir. 2014); *Porter*, 659 F.3d at 447. Constructive knowledge requires a pattern of previous incidents that were the "subject of prolonged public discussion or of a high degree of publicity." *Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir. 2002).

6

"A pattern requires similarity, specificity, and sufficiently numerous prior incidents." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017). But even a pattern of prior sufficiently similar incidents will not amount to constructive knowledge where "the facts of the events are concealed from policymakers." *Pineda*, 291 F.3d at 330 n.13.

Sheriff Bailey does not contest for the purposes of this motion that his former deputies lied to him in their reports and *Garrity* statements about the events that transpired on January 24, 2023. **Exhibit 1**, pgs. 50-51; **Exhibit 4** (Parker Dep.), pgs. 65-66; **Exhibit 12** (Incident Reports & *Garrity* Warnings). Moreover, Plaintiffs allege that the former deputies stole the modem that stored video security footage at 135 Conerly Drive in further attempts to conceal their actions from Sheriff Bailey and other investigators. **Exhibit 4**, pgs. 64-65. Plaintiff Parker even lied to MBI agents investigating the incident at the request of one of the former deputies. *Id.*, pgs. 58-61, 69-70. And none of the former deputies had their BWCs activated during the incident at issue and used "[e]ncounters with undercover officers or confidential informants" exception to the BWC policy as part of their cover story to conceal the truth. **Exhibit 2**, pgs. 12-13.

The facts detailed in the incident reports and use of force reports submitted by the former deputies, both in the incident at issue and prior cases, do not indicate that they ever used excessive force or conducted illegal searches and seizures. **Exhibit 10**. And the data collected from these reports does not evidence a violation of the equal protection clause of the Fourteenth Amendment.[3] **Exhibit 13** (Summary Data).

---

[3] To make out an equal protection violation, a party cannot merely prove disparate impact—he must "prove 'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury." … Specifically, "[d]iscriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and

7

There does not exist sufficient summary judgment evidence to create a pattern of prior bad acts in support of a deliberate indifference claim against Sheriff Bailey. Even assuming *arguendo* that such summary judgment evidence existed, the fact that (1) the former deputies lied and/or concealed the truth in incident reports and/or use of force reports to Sheriff Bailey and (2) allegations of other constitutional violations were not raised until after January 24, 2023, make summary judgment proper.

**Causation –** "[W]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat liability." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (citing *Brown*, 520 U.S. at 415). Of the prior incidents listed in Plaintiffs' [28] Amended Complaint, only the incident involving Alan Schmidt occurred after the Sheriff's implementation of use of force reports with TASER download review (2012) *and* use of BWC video and review (Fall 2021). Because the other incidents occurred prior to the Fall of 2021 and the RCSD's use of BWCs, the causal link between any prior bad acts bad and the incident at issue is broken.

Schmidt alleges that in December of 2022, he and his "family girl" (Peaches) stole work equipment from Schmidt's employer (Steven Sandifer) and sold it to Tom-Tom (a/k/a Thomas Stevens) for $30 cash, which was then used to buy gas, beer, and crack cocaine. **Exhibit 5** (Schmidt Dep.), pgs. 9-16, 18. Then on Sunday, December 4, 2022, Schmidt alleges he was pulled over by a "Deputy Andrew" and that multiple deputies (1) hit him 10-15 times in his face, (2) tased him three times, (3) Dedmon shot a gun by his head, and (4) a deputy with a "Mike Tyson" tatoo held him in an ant pile. *Id.*, pgs. 21-28. Christian Dedmon told him

---

not simply in spite of, the adverse impact it would have on an identifiable group." *Allen v. Hays*, 65 F.4th 736, 748 (5th Cir. 2023) (citations omitted).

8

"that if [Schmidt] said anything that he would have me killed in the jail, so I just kept my mouth shut." *Id.*, pg. 29. He was booked into the Rankin County Jail that same night, with no injuries being reported on his medical intake and his booking photograph not showing any signs of injury. **Exhibit 14**, RC 1745. Schmidt did not talk with anyone about the incident until February of 2023, **Exhibit 5**, pg. 36 – *i.e.*, after the incident at issue – and none of the deputies generated a use of force report following the Schmidt incident. Moreover, the incident report submitted by Dedmon makes no reference to any force being used on Schmidt. **Exhibit 14**, RC 1942.

In both the Schmidt incident and the Jenkins / Parker incident, the former deputies violated policy and procedure by either lying on incident reports and/or use of force reports or failed to generate use of force reports when required. Moreover, these deputies violated the BWC policy by not having their BWC activated during their interactions with Jenkins, Parker, and/or Schmidt. Where the deputies violate policy and procedure in causing any constitutional violation, such violation "breaks the causal connection between those official policies and the alleged constitutional violation." *Gallion v. Hinds County*, No. 3:12cv736-DPJ-FKB, 2015 U.S. Dist. LEXIS 68376, at *11 (S.D. Miss. May 27, 2015) (citing *Jackson v. Ford*, 544 F. App'x 268, 272 (5th Cir. 2013)).

For all the foregoing reasons, Sheriff Bailey cannot be liable under a failure to supervise theory, and he should be granted a final judgment on all such claims against him.

ii. **Allegations of Failure to Train**

Supervisory liability "for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011); *see Anderson v. Marshall County*, 637 F. App'x 127, 134 (5th Cir. 2016) (per

9

curiam) ("Even within the difficult world of [supervisory] liability, failure-to-train claims are especially difficult to establish."). To survive summary judgment on this claim, Plaintiffs must present competent summary judgment evidence showing "(1) that the [Sheriff's] training procedures were inadequate, (2) that the [Sheriff] was deliberately indifferent in adopting [his] training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls, Tex.,* 614 F.3d 161, 170 (5th Cir. 2010). A final policy maker, such as Sheriff, can be held liable under § 1983 for failing to train employees only if that failure "reflects deliberate indifference to the constitutional rights of [Plaintiffs]." *City of Canton v. Harris,* 489 U.S. 378, 392, 109 S. Ct. 1197, 1206 (1989). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017). It is not sufficient to show that an injury or accident could have been avoided if the employee had better or more training. *Canton*, 489 U.S. at 391.

"A pattern of similar constitutional violations by *untrained* employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62. Such a pattern is needed to demonstrate deliberate indifference because "[w]ithout notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Moreover, "for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of* Shreveport, 397 F.3d 287, 293 (5th Cir. 2005). "Mere proof that the injury could have been prevented if the officer received better or additional training cannot, without more, support liability." *Id.* Finally, where the state minimum standards for training

10

is met, "a plaintiff must affirmatively demonstrate that the legal minimum training is insufficient" in order to avoid summary judgment. *Deaton v. McMillin*, No. 3:08cv763-DPJ-FKB, 2012 U.S. Dist. LEXIS 13806, at *11-12 (S.D. Miss. Feb. 6, 2012) (citing *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992); *Abshure v. Prator*, 392 F. App'x 267, 270 (5th Cir. 2010) ("rejecting failure to train claim because sheriff's employees met state's legal minimum for training and plaintiff made no showing that legal minimum was insufficient").

**Adequate Training -** Each of the former deputies involved in the incident at issue graduated from the Mississippi Law Enforcement Training Academy (**Exhibit 8**, RC 58, 76, 132, 172, 243), and the Rankin County Sheriff's Department ("RCSD") held professional certificates from the Mississippi Board on Law Enforcement Officer Standards and Training for each former deputy. *Id.* at RC 51, 69, 88, 168, 203. Accordingly, the RCSD met the minimum training required by the State of Mississippi as to each former deputy. *See e.g.*, *Jones v. City of Hattiesburg*, No. 2:18-cv-84-TBM-MTP, 2021 U.S. Dist. LEXIS 121127, at *43 (S.D. Miss. June 28, 2021); *see also* **Exhibit 6** (Lawrence Affidavit), RC 1319 (¶ 7); **Exhibit 3**, pg. 143.

The RCSD not only met the State of Mississippi's minimum training requirement, it far exceeded them. The RCSD had a Field Training and Evaluation Program effective as of 2019, in which a field training officer ("FTO") would monitor and/or train a probationary officer ("PO") for five weeks on topics such the policies and procedures on use of force and searches and seizures. **Exhibit 8**, RC 216-35. Even after a deputy successfully completed the Mississippi Law Enforcement Training Academy and the RCSD had their professional certificate, the Sheriff or Undersheriff would designate supplemental classes for each deputy to attend. **Exhibit 3**, pgs. 67-68; **Exhibit 8**, RC 52-57, 59, 70-75, 93-101, 103-31, 135-40, 170-

71, 174-77, 187-88, 204-14. Such additional training included a wide range of topics, including firearms qualifications, TASER certification, and defensive tactics training. **Exhibit 3**, pgs. 64, 142. The RCSD also "contracted with the Virtual Academy, which is a private entity, to provide online training." *Id.* at pg. 67; **Exhibit 9** (Supp. Training), RC 1997-2052. Finally, the RCSD would train its deputies on all policies and procedures to ensure an adequate knowledge of what was expected. **Exhibit 9**, RC 2053-73.

None of the deputies involved in the incident at issue were untrained or ignorant of constitutional mandates. The training for each far exceeded the State minimum for training of a sheriff's deputy, and there is no indication from the summary judgment evidence that the training program at the RCSD was inadequate.

**Deliberate Indifference –** The same standard for deliberate indifference from § (b)(i) *supra* is applicable to a failure to train claim. The RCSD has had a qualified training director since before Bryan Bailey became sheriff – Richard Lawrence, an attorney, then Steve Godfrey, a former FBI agent. **Exhibit 3**, pgs. 10, 65; **Exhibit 6**. Training occurred on a wide-range of topics, including policies and procedures, report writing, proper TASER use, etc. **Exhibit 9**, RC 2053-73.

There was never any "prolonged public discussion or of a high degree of publicity" concerning any of the RCSD training until after January 24, 2023, nor was there any inference that deputies falsified reports or failed to generate mandatory reports prior to that time. *Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984). In short, Sheriff Bailey was not made aware of a need for further training through reports or collected data and cannot be held to have been deliberately indifferent to the need for further training.

**Causation** – The same standard for causation from § (b)(ii) *supra* is applicable to a failure to train claim. The use of force policy (#4.1) was revised in January of 2021, and deputies were trained on the use of force policy at least in October of 2019. The TASER policy (#4.5) was revised in November of 2018, and the former deputies who used a TASER during the incident at issue were certified to do so. **Exhibit 8**, RC 52, 75. McAlpin was even awarded an instructor certificate by the State of Mississippi in order to teach law enforcement classes. *Id.*, at RC 141.

No lack of training was the moving force behind any constitutional violations that occurred on January 24, 2023. Accordingly, Sheriff Bailey is entitled to summary judgment on all failure to train claims.

      iii.    **Ratification**

"[A] policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Carr v. City of Spring Valley Vill.*, No. 19-20373, 2022 U.S. App. LEXIS 13307, at *17-18 (5th Cir. May 17, 2022) (quoting *Peterson*, 588 F.3d at 848). Instead, under "the quite narrow scope of the ratification theory, … a municipality cannot be liable under the ratification theory unless its policymaker ratified what it knew at the time to be unconstitutional conduct." *Id. at *18* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)) (additional citations omitted).

Plaintiffs allege that Sheriff Bailey "failed to immediately discipline and/or reprimand the defendant Rankin County Deputies, who were under his direct supervision and control for their actions in this matter," but instead, "allowed the defendant officers in this case to remain in their positions without any adverse action being taken against them for months."

13

[28] Amended Complaint, ¶¶ 90-91. Further, Plaintiffs allege that "no adverse action was taken against the defendant officers before the instant lawsuit was filed, and it became apparent that the defendant officers were going to be charged with criminally related to their interaction with the plaintiffs." *Id.*, ¶ 91.

Contrary to these false allegations, Hunter Elward was "placed on administrative leave due to his involvement in an officer involved shooting at 135 Connerly Road" on January 25, 2023. **Exhibit 8**, RC 84. Christian Dedmon "was placed on desk duty," was ordered "not [to] engage in any investigator or law enforcement actions," and was "removed from any investigator on-call duties" on January 27, 2023. **Exhibit 8**, RC 68. The remaining former deputies were placed on administrative leave in early June of 2023, **Exhibit 11**, RC 2821, 2822, 2824, and all deputies involved in the incident at issue were terminated in June of 2023, immediately upon Sheriff Bailey learning the truth of what occurred on January 24, 2023. **Exhibit 1**, pgs. 11-13. This occurred prior to Sheriff Bailey being served with summons in the instant litigation and prior to the former deputies pleading guilty to various crimes in August of 2023.

At no time did Sheriff Bailey publicly defend the actions of the former deputies and he took immediate action upon learning the truth. No summary judgment evidence would support a ratification theory against Sheriff Bailey and this Defendant is entitled to judgment on such claim.

III.    **CONCLUSION**

For the foregoing reasons, Sheriff Bryan Bailey is entitled to qualified immunity and respectfully requests that this Court grant him summary judgment on any and all claims against him.

**RESPECTFULLY SUBMITTED,** this 17th day of March, 2025.

                                              **SHERIFF BRYAN BAILEY, IN HIS INDIVIDUAL CAPACITY - Defendant**

                              **BY:**     */s/ Jason E. Dare*
                                              **JASON E. DARE**

**OF COUNSEL:**

Jason E. Dare (MSB No. 100973)
jdare@bislawyers.com
Biggs, Ingram & Solop, PLLC
Post Office Box 14028
Jackson, Mississippi  39236-4028
Telephone:     (601) 987-5307
Facsimile:        (601) 987-5307

15